1   Stan S. Mallison (SBN 184191)
    Hector R. Martinez (SBN 206336)
2   Marco A. Palau (SBN 242340)
    LAW OFFICES OF MALLISON & MARTINEZ
3   1042 Brown Avenue, Suite A
    Lafayette, CA  94549
4   Telephone: (925) 283-3842
    Facsimile:  (925) 283-3426
5

6   Counsel for Plaintiff Erika Morales and Anonymous Plaintiffs One through Eight

7

8

9                          UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

11

12                                                  )Case No.  1:07-CV-01428-LJO-SMS
    U.S. EQUAL EMPLOYMENT                           )
13   OPPORTUNITY COMMISION,                          )**PLAINTIFF-INTERVENORS' REPLY TO**
                                                    )**DEFENDANTS' OPPOSITION TO**
14                Plaintiff,                         )**MOTION FOR INTERVENTION**
                                                    )
15   ERIKA MORALES and ANONYMOUS                    )Hearing Date: January 11, 2008
    PLAINTIFFS ONE THROUGH EIGHT,                   )
16                                                  )Time: 9:30 a.m.
                  Applicant – Intervenors,          )
17                                                  )Courtroom 7
         v.                                         )
18                                                  )Hon. Sandra M. Snyder
    ABM INDUSTRIES INCORPORATED and                 )
19   ABM JANITORIAL SERVICES, INC.; Does 1-         )
    10 inclusive,                                   )
20                                                  )
                  Defendants.                       )
21                                                  )
                                                    )
22   _____)

23

24

25

26

27

28

---

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION        Case No. 1:07-CV-01428

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION......................................................................................... 1

3   II.     SUMMARY OF FACTS............................................................................... 3

4   III.    ARGUMENT ................................................................................................ 3

5          A.   Dismissing Five of Morales' Claims for Relief at the Intervention Stage
                is Improper ........................................................................................... 3
6
7          B.   Morales' State Claims are not Time Barred Because the Respective
                Statutes of Limitations were Equitably Tolled While Morales Pursued
                her Federal and State Claims with the EEOC....................................... 4
8
9               1.   Morales Satisfies the Three-Pronged Equitable Tolling Test. ......................... 5

10              2.   The Preservation of Judicial and Party Resources, as Well as the
                     Avoidance of Inconsistent Rulings, Collateral Estoppel, and Res
                     Judicata are Justifications for Equitable Tolling................................. 10
11
12              3.   California Favors Equitable Tolling as a Matter of Policy ................................ 11

13         C.   Anonymous Plaintiffs have Properly Pleaded their Statutory Right to
                Intervene or, Alternatively, that they Should be Permitted to Intervene ..................... 11

14         D.   It is Procedurally Proper for Plaintiff-Intervenors to Proceed
                Anonymously, Because Doing so is Necessary to Protect them from
15              Stigma, Embarrassment, and Physical Harm........................................ 14

16              1.   Anonymous Plaintiffs' Claims are Readily Ascertainable from
                     the Pleadings Which Properly State Cognizable Claims for
17                   Relief...................................................................................... 15

18              2.   The Ninth Circuit does, Contrary to Defendants' Assertions,
                     Provide for Anonymous Pleading. ......................................................... 15
19
                3.   The Authorities Defendants Cite Do not Comport with the Ninth
20                   Circuit's Decision in Advanced Textile............................................... 18

21              4.   Proceeding Anonymously is not a Collateral or Extrinsic Issue
                     that Defeats Intervention........................................................................ 19
22
                5.   Whether Basic Fairness to Defendants is Grounds for Require
23                   Anonymous Interventors to Proceed by their Names is a
                     Question not at Issue at this Stage. ......................................................... 19
24
                6.   Plaintiffs' Complaint Properly Pleads the Basis for Doe
25                   Pleading.................................................................................... 20

26              7.   Plaintiffs Expect to Prevail in their Motion to Proceed.. ................................. 22

27                   a.   Plaintiffs will Suffer Severe Harm if Their Identities are
                          Disclosed.. .................................................................. 22
28
                     b.   Plaintiffs' Fears of Retaliation are Reasonable........................................... 24

c.   Plaintiffs are Particularly Vulnerable to Retaliation.. ................................ 26

d.   Plaintiffs Need for Anonymity Outweighs any Prejudice to Defendants at this Stage of the Litigation... ................................................. 26

e   The Public's Interest is Served by Maintaining Plaintiffs' Anonymity............................................................................................ 27

IV.   CONCLUSION ......................................................................................................... 28

1

2

## TABLE OF AUTHORITIES

3

<u>**Federal Cases**</u>

4

5
*Alexander v. Gardner-Denver Co.,*
*415 U.S. 36, 44 (1974)* ................................................................................................ 28

6
*Alaniz v. Tillie Lewis Foods,*
*572 F.2d 657, 650 (9th Cir. 1978)* .............................................................................. 1

7

8
*Alyssa C v. Palo Alto Housing Corp.,*
*2007 U.S. Dist. LEXIS 24183, at \*1-2 (N.D. Cal. Mar. 20, 2007)* ............................ 18

9
*American-Arab Anti-Discrimination Comm. v. Ridge,*
*2003 U.S. Dist. LEXIS 25100 (CD Cal. 2003)* ...................................................... 2, 17

10

11
*Arnold v. U.S.,*
*816 F.2d 1306 (9th Cir. 1987)* ................................................................................... 10

12
*Buckeye Sugars,*
*60 F.R.D. at 106* ........................................................................................................ 22

13

14
*Cervantes v. City of San Diego,*
*5 F.3d 1273, 1276  (9th Cir. 1993)* ..................................................................... 2, 4, 5

15
*Doe v. Bell Atlantic Bus. Sys. Servs., Inc.,*
*162 F.R.D. 418, 419 (D. Mass. 1995)* ................................................................. 12, 17

16

17
*Doe v. Hallock ,*
*119 F.R.D. 640, 641-42 (S.D. Miss. 1987)* ............................................................... 17

18
*Doe v. Merten,*
*219 F.R.D. 387 (E.D. Va. 2004)* ............................................................................... 18

19

20
*Doe v. Rasketer,*
*89 F.R.D. 158, 159 (N.D. Cal. 1981)* ........................................................................ 18

21
*Doe v. Stegall,*
*653 F.2d 180 (5th Cir. 1981)* ............................................................................... 17, 22

22

23
*Does I Through XXIII v. Advanced Textile Corp.,*
*214 F.3d 1058, 1067 (9th Cir. 1999)* ............................................... 2, 15, 16, 18, 20-27

24
*EEOC v. AT&T,*
*506 F.2d 735, 740 (3d Cir. 1974)* .............................................................................. 13

25

26
*EEOC v. Domino's Pizza, Inc.,*
*870 F.Supp. 655, 657 (D. Md. 1994)* ........................................................................... 3

27
*EEOC v. Victoria's Secret Stores, Inc.,*
*2003 U.S. Dist. LEXIS 1290, at \*3 (E.D. Penn. Jan. 13, 2003)* .................................. 15

28
*EEOC v. Westinghouse Electric Corporation,*

675 F.2d 164, 165 (8th Cir. 1982) ............................................................... 1

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048, 1051 (9th Cir. 2003) ........................................................ 17

*EW v. New York Blood Center,*
213 F.R.D. 108, 109-110 (E.D.N.Y. 2003) ..................................... 17, 27

*Femedeer v. Haun,*
227 F.3d 1244, 1246 (10th Cir. 2000) ..................................................... 18

*Free Market Compensation v. Commodity Exchange, Inc.,*
98 F.R.D. 311, 312 ..................................................................................... 18

*Free Speech v. Reno, No. 98 Civ. 2680 (MBM),*
1999 U.S. Dist. LEXIS 912, at *9-*10 (S.D.N.Y. Jan. 27, 1999) ................ 27

*Gomez v. Western Equipment, Inc.,*
3 C.R. 98 (D.N.M.I. 1987) ........................................................................ 22

*Guaranty Trust Co. of New York v. York,*
326 U.S. 99, 110 (1945) .............................................................................. 4

*Lake Investors Dev't Group, Inc. v. Egidi Dev't Group,*
715 F.2d 1256, 1258 (7th Cir. 1983) ........................................................ 12

*Leatherman v. Tarrant County Narcotics Intelligence,*
507 US 163 (1993) ..................................................................................... 20

*Lipsett v. U.S.,*
37 F.R.D 549 (S.D.N.Y. 1965) .................................................................. 19

*Lucchesi v. Bar-O Boys Ranch,*
353 F.3d 691, 694-95 (9th Cir. 2003) .................................................... 4, 5

*Lucero ex rel. Chavez v. City of Albaquerque,*
140 F.R.D. 455, 457 (D. N.M. 1992) ....................................................... 15

*M.M. v. Zavaras,*
139 F.3d 798, 799 (10th Cir. 1998) .......................................................... 18

*Mitchell v. Robert De Mario Jewelry, Inc.,*
316 U.S. 288, 292 (1960) ........................................................................... 28

*Mitchell v. Roma,*
265 F.2d 633, 637 (3rd Cir. 1959) ........................................................... 25

*Nat'l American Corp. v. Fed. Republic of Nigeria,*
425 F.Supp. 1365, 1372 (S.D.N.Y. 1977) ................................................ 19

*NLRB v. Robbins Tire & Rubber Co.,*
437 U.S. 214, 250-51 (1978) .............................................................. 26, 28

*Oneida Indian Nation v. State of New York*
732 F2d 261, 265 (2nd Cir. 1984) ............................................................ 27

*Plourde v. Mass. Cities Realty Co.,*
*47 F. Supp. 668, 670 (D. Mass. 1942)* ................................................................. 28

*Poe v. Ullman,*
*367 U.S. 497* ........................................................................................................ 16

*Rivera v. Nibco, Inc.,*
*364 F.3d 1057 (9th Cir. 2003)* ............................................................................. 23

*Roe v. Wade,*
*410 U.S. 113 (1973)* ............................................................................................ 16

*Schultz v. U.S. Dept. of Labor, No. 70-C-25,*
*U.S. Dist. LEXIS 12507 (S.D. Tex. Mar. 16, 1970)* ........................................... 25

*So. Methodist univ. Ass'n v. Wynne & Jaffe,*
*599 F.2d 707 (5th Cir. 1979)* ............................................................................... 20

*Southwest Center for Biological Diversity v. Berg,*
*268 F.3d 810, 818 (9th Cir. 2001)* ...................................................................... 12

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,*
*164 F3d 1080, 1081 (8th Cir. 1999)* .................................................................... 27

*United States v. 635.76 Acres of Land,*
*319 F.Supp. 763, 766 (W.D.Ark.1970), aff'd, 447 F.2d 1405 (8th Cir.1971)* ................. 12

*United States v. Doe,*
*655 F.2d 920, 922 n.1 (9th Cir. 1981)* ................................................................ 16

*Wilson v. Garcia,*
471 U.S. 261, 269 (1985) ....................................................................................... 4

*Wirtz v. Continental Finance & Loan Co. of West End,*
*326 F.3d 561 (5th Cir. 1964)* ............................................................................... 24

*Wolfchild v. United States,*
*62 Fed. Cl. 521, 553 (U.S. Fed. Cl. 2004)* ......................................................... 23

**State Cases**

*Collier v. City of Pasadena,*
142 Cal.App.3d 917 (Cal. Ct. App. 1983) ....................................... 5, 6, 9, 10, 11

*Elkins v. Derby,*
12 Cal.3d 410, 418 (1974) .......................................................................... 5, 9, 10

*Myers v. County of Orange,*
6 Cal.App.3d 626, 634 (1970) ................................................................................ 4

**Federal Statutes, R**

*42 U.S.C. § 2000e-5(f)(1)* ............................................................................. 12, 13

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION        Case No. 1:07-CV-01428

*Fed. R. Civ. P. 24* ............................................................................................... 12

*Fed. R. Civ. P. 8(a)(2)* ......................................................................................

**<u>Secondary Sources</u>**

*2A J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 12.08 (2d ed. 1982)* .................... 12

*Black's Law Dictionary at 243 (Seventh Ed.)* ............................................................ 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    Introduction

In evaluating a motion to intervene as of right conferred by statute, the only questions are whether the application is timely and whether a statute of the United States confers an unconditional right to intervene.  *See* FED. R. CIV. P. 24(a)(1).  Title VII of the Civil Rights Act of 164 as amended provides that "person or persons aggrieved <u>shall</u> have the right to intervene in a civil action by the Commission." 42 U.S.C. § 2000e-5(f)(1) (emphasis added).  As such, under Title VII an employer may intervene as a matter of right in an EEOC-initiated action.  *EEOC v. Westinghouse Electric Corporation*, 675 F.2d 164, 165 (8th Cir. 1982).  Therefore, the only issues on a motion to intervene in an EEOC proceeding is: 1) whether an intervention is timely, and 2) whether the person is "aggrieved."

A motion to intervene is timely if it is filed promptly such that there is no prejudice to defendants.  Alaniz v. Tillie Lewis Foos, 572 F.2d 657, 650 (9th Cir. 1978).  There is no question in this case that Plaintiff-Intervenors' filing is timely as the motion for intervention was filed less than two months after the EEOC initial filing in this case.  As such, Defendants cannot, and do not, contest the timeliness of plaintiffs' intervention.

The only other available grounds for objecting to Plaintiffs' intervention in this case is whether the person is aggrieved as defined by Title VII.  Plaintiffs have pleaded in their complaint that:

> Defendants have engaged in unlawful employment practices and in a pattern of such practices in violation of Section 703 and 707 of Title VII, 42 U.S.C. §2002e-2, by subjecting ERIKSA MORALES, ANONYMOUS PLAINTIFFS ONE THROUGH EIGHT, and similarly situated individuals to a sexually harassing hostile environment and quid pro quo sexual harassment.

As such, Plaintiff-Intervenors have clearly met their pleading obligations and are entitled to intervene as a matter of right in this proceeding.  Indeed, Defendants themselves admit that Ms. Morales has the right to intervene in this case.  Def. Brief at 1.

Defendants opposition therefore does not address any issue of relevance with regards to Plaintiff-Intervenors' motion.  Rather, Defendants are misusing this motion to prematurely test their motion to dismiss and motion for summary judgment theories.

However, even if this court were to consider Defendants' opposition as a veiled motion to

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

1

dismiss, such a motion would properly be denied.   Applicant-Intervenor Erika Morales'
(hereinafter "Morales") state law claims are <u>not</u> time barred, because the statutes of limitations for
such claims were equitably tolled while she pursued her federal and state claims with the Equal
Employment Opportunity Commission (hereinafter "EEOC") and Department of Fair Employment
and Housing ("DFEH").   Equitable tolling requires a factual determination inappropriate for
resolution on a motion to dismiss. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276  (9th Cir.
1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the
summary judgment or trial stage of litigation.")   Only where facts evident on the face of the
complaint support a conclusion that a plaintiff's claims fail *as a matter of law* may a dismissal be
upheld. *Id*.

In addition, controlling authority makes clear that Anonymous Plaintiff-Intervenors One
Through Eight (hereinafter "Anonymous Plaintiffs") may properly proceed anonymously in this
action.  Indeed, the Ninth Circuit has held:

> We join our sister circuits and hold that a party may preserve his or her
> anonymity in judicial proceedings in special circumstances when the party's
> need for anonymity outweighs prejudice to the opposing party and the
> public's interest in knowing the party's identity.

*Does I Through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 1999). At this
stage, preventing Anonymous Plaintiffs to intervene because they wish to do so anonymously is
improper.  Such a determination is not required to be made pre-filing as the Ninth Circuit "does not
require prior application." *American-Arab Anti-Discrimination Comm. v. Ridge*, 2003 U.S. Dist.
LEXIS 251002003 US Dist. Lexis 25100 (CD Cal. 2003).  Even if the matter was examined,
however, Anonymous Intervenors have properly pleaded facts sufficient to justify anonymous
pleading.

Plaintiff-Intervenors have also properly pleaded that they are aggrieved employees and may
alternatively be allowed to intervene *permissively* under FRCP Rule 24(b).  Because Plaintiff-
Intervenors claims have a common issue of law or fact with those in the EEOC complaint and
Defendants will not be prejudiced.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     Summary of Facts

Applicant-Intervenors assert in their proposed Complaint in Intervention (hereinafter "CI") several causes of action all arising from the wrongful actions perpetrated by supervisors employed by Defendants.  *See* CI ¶¶ 36, 41-151.  These wrongful actions included, *inter alia*, assault by way of unwelcome touching, forced sexual touching, rape and other physical harassment; derogatory comments by way of explicit sexual comments, unwelcome suggestive language of a sexual nature and other verbal harassment; requesting sexual favors by way of offers of special work benefits in exchange for sex and other requests for sexual favors; and visual forms of harassment by way of sexual exposure and other visual forms of harassment.  *See id*.  The CI alleges that these wrongful actions constitute a number of forms of sexual harassment and also certain torts under California law.  For example, "by subjecting [certain Plaintiff-Intervenors] to unwelcome and violent sexual touching, which include, but are not limited to the touching of genital areas, buttocks, hips and/or breasts," Defendants allegedly violated Title VII of the Civil Rights Act of 1964, California's Fair Employment & Housing Act, Gov. Code §§12900, et seq. ("FEHA"), and also committed assault under California law, since such conduct placed such Plaintiff-Intervenors in "apprehension of immediate offensive and harmful contact."  CI ¶ 121.  The unwelcome behavior alleged in the administrative claim clearly arises from the same wrong and is predicated upon identical facts.

## III.     Argument

### A. Dismissing five of Morales' claims for relief at the intervention stage is improper.

Defendants do not contest Morales' right to intervene in this action.  However, Defendants prematurely and improperly request that she be denied the opportunity to add five related claims for relief on grounds that they are time-barred under the applicable statutes of limitation.  Defendants' Opposition at 2-4.  In support of this proposition, Defendants rely solely on EEOC v. Domino's Pizza, Inc., 870 F.Supp. 655, 657 (D. Md. 1994), which dealt with the whether or not a Maryland Federal District Court would "accept a general rule that an intervenor seeking to add new claims, that are time-barred by applicable statute of limitations, may do so under the *relation back doctrine*."  Defendants' Opposition at 2 (emphasis added).  First, the Maryland Federal

District Court was required to apply *Maryland* substantive state law when determining whether or not that intervenor could add new claims to an existing case that would normally be time-barred by the applicable statute of limitations. Second, the issue in that case dealt with the *relation back doctrine*, not an equitable tolling test. Here, Plaintiff-Intervenors take the position that they should be allowed to add their tort causes of action because they clearly meet all the factors set forth in the California equitable tolling test as set forth below. However, before applying the test, they should be allowed to intervene. "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993). As such, Defendants' request should be denied from the outset.

However, in an abundance of caution, Plaintiff-Interventors will address Defendants arguments below as raised in their Memorandum of Points and Authorities in Opposition to Intervenor Plaintiffs' Motion for Leave to Intervene.

### B. Morales' State claims are not time barred because the respective statutes of limitations were equitably tolled while Morales pursued her federal and state claims with EEOC.

Because California law equitably tolls the applicable statutes of limitations when a litigant pursues one of several remedies, Defendants argument that Morales' state law claims are barred is flawed. Issues regarding statutes limitations in federal court are deemed substantive and are thus governed by state law. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 110 (1945). Tolling rules are treated as an integral part of statutes of limitations and, therefore, state law tolling rules apply in federal court. *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985). Under California law, equitable tolling applies when "an injured person has several legal remedies and, reasonably and in good faith, pursues one." *Myers v. County of Orange*, 6 Cal.App.3d 626, 634 (1970).

California courts have developed a three-part test to determine whether a plaintiff is entitled to equitable tolling. The three parts are: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694-95 (9th Cir. 2003) (citations omitted). Although "equitable

tolling is not applicable when a plaintiff has pursued a remedy as to only one of several distinct wrongs," *the three-pronged test cannot be bypassed*, because "It is the application of California's equitable tolling test itself that yields the 'final' conclusion as to whether two claims are 'similar' enough that the pendency of the one should toll the limitations period of the other." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993); *see also generally Collier v. City of Pasadena*, 142 Cal.App.3d 917 (Cal. Ct. App. 1983) (establishing the three-factor test as a *prerequisite* to determining whether equitable tolling applies).[1] Finally, California courts apply the equitable tolling doctrine liberally. *Elkins v. Derby*, 12 Cal.3d 410, 418 (1974).

### 1. Morales satisfies the three-pronged equitable tolling test.

Morales gave timely notice to Defendants of her claims in her Charge of Discrimination with California Department of Fair Employment and Housing ("DFEH") and EEOC[2]; Defendants are not prejudiced in gathering evidence to defend the second claim; and Morales acted in good faith and reasonably in asserting her tort claims now.

First, timely notice means that "defendant in the first claim is the same one being sued in the second." *Collier supra* at 924. Here, Morales' claims have been against ABM Defendants in both the discrimination charge and proposed complaint. Defendants have been on notice of the facts underlying both her discrimination claims and tort claims since on or about June 29, 2006, when the EEOC charge was filed. *See* Morales EEOC Charges. Morales' filing of her first claim was timely.[3]

---

[1] Even though the Ninth Circuit has suggested that, in certain rare instances where it is clear that the two claims involve distinct wrongs, the equitable tolling test need not be applied, *see e.g.*, *Lucchesi*, *v. Bar-O Boy Ranch, 353 F.3d 691* at 695, this is not the law in California. Neither the California case *Lucchesi* cites, *Loehr v. Ventura County Community College District et al.*, 147 Cal.App.3d 1071 (Cal. Ct. App. 1983), nor *Collier*, the California case establishing the three-factor equitable tolling test, have held that a court can determine the issue of equitable tolling without resorting to the test. *See Collier*, *supra*.

[2] The EEOC and the DFEH currently have a work-sharing agreement, under which each designated the other as its agent for receiving charges and agrees to forward the other agency copies of all charges potentially covered by the other agency's statute. 29 CFR §§ 1601.75, 1601.80.

[3] Plaintiff Intervenors' charges were filed well within one-year limitation as required by FEHA. In any case, where an employer is misidentified on the employee's W-2 form (tax and wage statement), the statutory period is extended "not to exceed one year" to enable the employee to substitute the actual employer. Gov. Code § 12960. In this case, the employer Defendants had misidentified themselves as

Second, lack of prejudice means that "the facts of the two claims be identical or at least so similar that the defendant's investigation of the first will put him in a position to fairly defend the second." *Id*. at 925.  Morales' discrimination charge earlier and her tort claims now are predicated on identical facts, such that Defendants are in a position to fairly defend the tort claims. Here, the facts and wrongs that are the basis for Morales' (and Palaintiff-Intervenors', for that matter) tort causes of action are the same ones prohibited by FEHA, California Gov. Code §12940 and 2 CCR § 7287.6. Specifically the wrongs Morales' discrmination charge concerned are defined in Gov. Code §12940 (J), as follows:

> It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> (J) (1) For an employer . . ., or any other person, because of . . . sex . . ., to harass an employee, an applicant, or a person providing services pursuant to a contract.  Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.  . . . An entity shall take all reasonable steps to prevent harassment from occurring.  Loss of tangible job benefits shall not be necessary in order to establish harassment. . . .
>
> (4)(C) for purposes of this subdivision, "harassment" because of sex includes sexual harassment, gender harassment based on pregnancy, childbirth, or related medical conditions.  . . .
>
> (k) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

The California Code of Regulations further provides:
> 2 CCR §7287.6(b) Harassment.
>
> (1)  Harassment includes but is not limited to:
>
> (A) Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act;
>
> (B)  Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act;

---

simply "ABM Janitorial Services" in their wage statements to the Plaintiff-Intervenors, extending the period to file another year.

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION        Case No. 1:07-CV-01428

(C)  Visual forms of harassment, e.g., derogatory posters, cartoons, or drawing on a bsis enumerated in the Act; or

(D) Sexual favors, e.g., unwanted sexual advances which condition an employment benefit upon an exchange or sexual favors.

These are the wrongs Defendants received notice of in Morales' discrimination charge and which she alleges in the CI.  *See*, *e.g.*, Morales' Discrimination Charges, Exhibits A-B to Defendants' Request for Judicial Notice In Support of Defendants' Opposition to Intervention (hereinafter "Morales EEOC Charges"; and CI ¶¶ 36-40, 116, 122, 127-29, 136-40, and 148-49. For example, the discrimination charge alleges "verbal and physical sexual harassment"; unwanted "touching of breasts, buttocks" and attempts to kiss; forcing Morales to touch his penis.

Moreover, the facts alleged in the proposed CI echo the FEHA language above. For example the CI alleges assault by way of unwelcome touching, forced sexual touching, rape and other physical harassment; derogatory comments by way of explicit sexual comments, unwelcome suggestive language of a sexual nature and other verbal harassment; requesting sexual favors by way of offers of special work benefits in exchange for sex and other requests for sexual favors; and visual forms of harassment by way of sexual exposure and other visual forms of harassment.  The Complaint In Intervention also alleges negligent causes of action based on facts Defendants knew or should have known concerning the alleges sexual harassment but failed to take action to prevent the alleged sexual harassment – "Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."  Gov. Code §12940(j)(1).  Further, the CI includes a False Imprisonment cause of action which is the same wrong and predicated on the same facts prohibited by the FEHA and applicable regulations, i.e., "impending or blocking movement."

The following chart lays out overlapping wrongs of both the FEHA and the tort causes of action set for the Proposed Complaint in Intervention, which are predicated on the same facts:

| Tort Allegations | FEHA Allegations | Facts | Relief Sought |
|---|---|---|---|
| False Imprisonment: restrained another in an enclosed environment | Sexual Harassment: impeding or blocking movement | Restrained Plaintiff-Intervenor and others in an enclosed environment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Assault: to suffer apprehension of immediate offensive and harmful contact | Assault: unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Battery: to suffer apprehension of immediate offensive and harmful contact and unconsented touching | Battery: unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Intentional Infliction of Emotional Distress | Sexual Harassment, Assault and Battery: impeding or blocking movement, unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Negligent Infliction of Emotional Distress | Sexual Harassment, Assault and Battery: impeding or blocking movement, unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |

| Negligence: Knew or should have known that a registered sex offender would and was sexually harassing employees | knows or should have known of this conduct and fails to take immediate and appropriate corrective action. | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
|---|---|---|---|
| | | | |

Given the clear overlap of "wrongs" that are to be addressed by Plaintiff-Intervenors' EEOC, DFEH and tort allegations, it would have been a hardship to compel them to pursue simultaneously several duplicative actions on the same set of *facts*.  See *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 926 (Cal. Ct. App. 1983).  This is especially true in under these circumstances because Plaintiff-Intervenors were required to exhaust their administrative remedies as required by Title VII and FEHA before they can file those claims.

Finally, Morales reasonably and in good faith pursued her claims with the EEOC and DFEH.  *See Elkin v. Derby*, 12 Cal.3d 410, 414.   As set forth above, their sexual harassment allegations stem from the same set of facts, which are the bases for the tort causes of action. Defendants were timely notified of those EEOC charges and the underlying facts were set forth in those charge, which provided them sufficient notice to investigate, obtain evidence, preserve that evidence and prepare their defense. Defendants cannot argue that they were not put on notice by the EEOC and DFEH charges.  Thus, they are not prejudiced.  Any delay in investigation is there own doing.

Plaintiff-Intervenors submit their equitable tolling claim based on reasonable principles and conduct as set forth above.  Statutes of limitations are not devices for sanctioning parties for subjective beliefs, reasoning or motivation.  As *Addison* sets forth, such statutes of limitations are aimed at preventing hardship to defendants based on an unexcused lapse of time, which did not happen here. *Addison v. State of California*, 21 Cal. 3d 313, 317 (1978).   Thus, Defendants cannot argue that they would be unfairly prejudiced if the Plaintiff-Intervenors were allowed to proceed

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION        Case No. 1:07-CV-01428

9

with their tort causes of action.  See *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 923.

Although the Ninth Circuit has held that the wrongs underlying Title VII sexual harassment and discrimination claims were distinct from those underlying state tort claims for assault, battery, false imprisonment and intentional infliction of emotional distress (*see Arnold v. U.S.*, 816 F.2d 1306 (9th Cir. 1987)), *Arnold*, a Ninth Circuit opinion on a matter of California law is not controlling.[4]

### 3.   The Preservation of Judicial and Party Resources, As Well As The Avoidance of Inconsistent Ruling, Collateral Estoppel and Res Judicata Are Justifications for Equitable Tolling.

As with California state courts, "'[T]his court is not powerless to formulate rules of procedure where justice demands it.  Indeed, it has shown itself ready to adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.'"  *Addison v. State of California*, 21 Cal.3d 313, 318-319 (1978) (quoting *Bollinger v. National Fire Ins. Co.*, 25 Cal.2d 399, 410 (1974).  As stated by the California Supreme Court in *Addison*, courts should  "discern no reason of policy which would require plaintiffs to file simultaneously two separate actions based upon the same facts in both state and federal counts since 'duplicative proceedings are surely inefficient, awkward and laborious.'"  *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978) (quoting Elkins v. Derby, 12 Cal.3d 410, 420 (1974).

The interest of efficiency is an important reason for the tolling of the statute of limitations in the case.  The logic behind the enactment of 28 U.S.C. § 1376 supplemental jurisdiction should be applied here, which is as follows:

> Supplemental jurisdiction can be seen as fostering the interest in litigation efficiency and convenience.  By allowing litigation to join related claims and parties in one lawsuit, supplemental jurisdiction avoids the inconvenience, burdens and costs of having to litigate separately in more than one court, and possibly avoiding the need to duplicate evidence in those separate proceedings.

---

[4] In any case, Arnold was decided before the Civil Rights Act of 1991 when neither compensatory nor punitive damages were recoverable under Title VII. Compensatory and punitive damages are now available under Title VII. 42 USC § 1981a.

16 Moore's Federal Practice ¶ 106.23 (3d ed. 2005).

In essence, Plaintiff-Intervenors' Title VII, FEHA, and tort causes of action arise from the same case or controversy.  Indeed, as demonstrated throughout, Plaintiff-Interventors claims easily meet the tougher "come nucleus  of operative fact" test that was applied prior to the enactment of the Section 1387 before claims could be joined in federal court.  Given this backdrop that lead to the enactment of Section 1387, it is reasonable for this Court to take into account the interest in efficiency and grant Plaintiff-Intervenors leave to add their tort cause of action.  To deny Plaintiff-Intervenors leave in this instance would require future litigants to expend unnecessary party and judicial resources , i.e, two dockets in separate jurisdictions, propounding and responding to discovery requests in both jurisdictions, allowing for two sets of depositions to all parties, litigation costs, etc.  Further, having duplicative proceedings on the same facts would create the danger of inconsistent rulings, collateral estopel or res judicata.  Thus, it is reasonable and within this Court's equitable powers to toll the statute of limitations and permit Plaintiff-Intervenors to prosecute their tort cause of action.

### 4.  California favors equitable tolling as a policy matter.

California policy considerations strongly favor equitable tolling.  Equitable tolling "avoids the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of *facts*." *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 926 (Cal. Ct. App. 1983)(emphasis added).  It also "lessens the costs incurred by courts and other dispute resolution tribunals, at least where a disposition in the case filed in one forum may render the proceeding in the second unnecessary or easier and cheaper to resolve."  *Id.* And, finally, equitable tolling "secures the benefits of the statutes of limitation for defendants without imposing the costs of forfeiture on plaintiffs" *Id.*

### C.  Anonymous Plaintiffs have Properly Pleaded their Statutory Right to Intervene or, Alternatively, that they should be Permitted to Intervene.

As a threshold matter, Defendants' opposition to Anonymous Plaintiffs' intervention fails

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

to raise any argument that would warrant denial of their motion to intervene.  In evaluating a

motion to intervene as of right conferred by statute, the only questions are whether the application

is timely and whether a statute of the United States confers an unconditional right to intervene.  *See*

FED. R. CIV. P. 24(a)(1).  Title VII of the Civil Rights Act of 164 as amended provides that "person

or persons aggrieved shall have the right to intervene in a civil action by the Commission." 42

U.S.C. § 2000e-5(f)(1).  And the Ninth Circuit has held that Rule 24(a) shall be construed liberally

in favor of potential intervenors. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810,

818 (9th Cir. 2001). In evaluating whether to grant intervention, "a district court is required to

accept as true the non-conclusory allegations made in support of an intervention motion."

*Southwest Center for Biological Diversity*, *supra*, at 819 (citations omitted).  Moreover, only where

"it appears to a certainty that the intervenor is not entitled to relief under any set of facts which

could be proved under the complaint" may it be denied. *Lake Investors Dev't Group, Inc. v. Egidi*

*Dev't Group*, 715 F.2d 1256, 1258 (7th Cir. 1983) (*citing* 2A J. Moore & J. Lucas, MOORE'S

FEDERAL PRACTICE ¶ 12.08 (2d ed. 1982); *United States v. 635.76 Acres of Land*, 319 F.Supp.

763, 766 (W.D.Ark.1970), aff'd, 447 F.2d 1405 (8th Cir.1971)).

Anonymous Plaintiffs have timely applied and Defendants do not contest timeliness. While

Defendants claim that Anonymous Intervenors are not aggrieved employees (Def. Opp. at 8).

However, this argument is flawed, because the Anonymous Intervenors are properly plead as

aggrieved employees under the meaning of Title VII.   In particular, the EEOC's lawsuit against

Defendants alleges that "Morales and similarly situated individuals were subjected to a hostile

environment and quid pro quo sexual harassment based on their sex," EEOC Complaint at 2, and

that the EEOC "issued Letters of Determination finding that the Charging Parties and similarly

situated individuals were subjected to unlawful employment discrimination based upon their sex,

female, of harassment in violation of Title VII." *Id.* ¶ 9.  Anonymous Intervenors state in their

motion to intervene that they are aggrieved under the meaning of Title VII, claiming

"discrimination and harassment on the basis of their sex." Applicant Intervenor's Motion to

Intervene (hereinafter "Motion to Intervene") at 2.  Further, as the proposed Complaint in

Intervention alleges, Anonymous Intervenors are the similarly situated individuals referred to by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the EEOC and one of them is the Charging party referred to in the EEOC's complaint at paragraph 9. *See e.g.* CI ¶¶ 8-15, 35-40. Indeed, the Anonymous Intervenors allege that they suffered sexual harassment and discrimination while employed by Defendants and that Defendants are liable. Their allegations demonstrate that, just like Morales, they are aggrieved employees entitled to intervene as a matter of right pursuant to Title VII.

Although Defendants appear to argue that to be aggrieved a person must actually file a charge, Defendants' Opposition at 8, this contention is not supported by 42 U.S.C. § 2000e-5(f)(1) or the case Defendants cite in support. In fact, the court in *EEOC v. AT&T* did not decide whether filing a charge was required in order to show that the intervenor is aggrieved, expressly stating that "Whether intervention must nonetheless be denied to one making such a showing [that his aggrievement relates back to the charges previously filed by the Commission] unless he himself has actually filed a charge of unlawful employment practices with the Commission we need not determine." *EEOC v. AT&T*, 506 F.2d 735, 740 (3d Cir. 1974). *AT&T* does not and should not control the determination of whether Anonymous Intervenors are aggrieved, because the case is inapposite and because intervention should be construed liberally in favor of intervenors. Therefore, this Court should grant intervention.

Alternatively, Anonymous Intervenors should be allowed to intervene under a permissive standard. Anonymous Intervenors' motion is timely, their claims the EEOC's have common questions of law or fact, and intervening will not unduly delay or prejudice the adjudication of the rights of the original parties. Defendants do not dispute timeliness. Further an evaluation of Anonymous Intervenors' allegations demonstrates that their claims and those of the EEOC share common issues of law and fact. For example, the EEOC's action alleges violation of Title VII on account to sex discrimination and harassment. *See generally* EEOC. Anonymous Intervenors' make the same allegation, that Defendants violated Title VII by discriminating against them based on sex and sexually harassing them. *See e.g.* CI ¶¶ 35-40 and First, Third, Fifth and Sixth Claims for Relief. Further, the EEOC alleges that Defendants subjected Morales and "similarly situated individuals to a sexually harassing hostile environment and quid pro quo sexual harassment", including without limitation "unwelcome touching, explicit sexual commentary and quid pro quo

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

13

sexual harassment"; a "supervisor repeatedly hugged female employees from behind and groped their private parts with his hands . . . exposed himself and tried to force the female employees to touch him sexually . . . repeatedly subjected the female employees to leering, suggestive and propositioning language." EEOC Complaint ¶ 10. Similarly, Anonymous Intervenors allege that "The sexually harassing behavior was perpetrated by supervisors and included, but was not limited to the following: unwelcome touching, explicit sexual commentary and quid pro quo sexual harassment . . . . ABM INC supervisor Jose Vasquez repeatedly hugged female employees, including INTERVENOR PLAINTIFFS from behind and groped their private parts with his hands . . . exposed himself and tried to force the female employees to touch him sexually . . . repeatedly subjected the female employees to leering, suggestive and propositioning language." CI ¶ 36. Finally, intervention by Anonymous Plaintiffs will not prejudice the adjudication of the rights of the original parties. The EEOC does not object to intervention and the real parties in interest are Morales and, as the EEOC alleges, all other similarly situated individuals, which clearly includes Anonymous Intervenors.  Similarly, Defendants have been on notice of the intervenors' claims since the first charge was filed, and Defendants were also on notice that Jose Vazquez was a perpetrator, including for the rape of an employee who wishes to proceed as one of the Anonymous Intervenors, and that other women had been subjected to similar physical and sexual harassment. *See e.g.* Morales Charge and Anonymous Employee Charge, attached to Plaintiffs' RJN as Ex. A. With or without intervenors' specific claims, Defendants are faced with adjudicating allegations as to Morales and other similarly situated individuals. The fact that eight of such similarly situated individuals seek to intervene anonymously will not prejudice Defendants. This Court should allow Anonymous Plaintiffs to Intervene.

> D. **It is Procedurally Proper for Plaintiff-Intervenors to proceed Anonymously, Because Doing so is Necessary to Protect them from Stigma, Embarrassment, and Physical Harm**

The issue of proceeding anonymously is not one to be evaluated at the intervention stage, since the allegations in the pleadings are to be taken as true and intervenors need only establish that their motion is timely and they are aggrieved, or alternatively, that their claims and those of the EEOC have a common question of law or fact and the original parties will not be prejudiced. The

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

decision of whether Anonymous Intervenors may proceed anonymously is more properly

adjudicated at a later stage for the following reasons:  First, the standard for evaluating intervention

is much more narrow than that governing pseudonym pleadings.  Second, the Ninth Circuit has

allowed plaintiffs to sue anonymously before deciding whether they may so proceed. *Does I*

*Through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 1999).  Finally,

Anonymous intervenors may be prejudiced by not having the ability to amend if their motion is

dismissed. In the abundance of caution, however, Anonymous Intervenors submit the following

discussion to address Defendants' arguments.

### 1.  Anonymous Plaintiffs' claims are readily ascertainable from the pleadings, which properly state cognizable claims for relief.

Defendants argue that Anonymous Plaintiffs should not be allowed to intervene because

Defendants need to know the identity of intervenors in order to ascertain the viability of their

claims.  Def. Brief at 4.  They cite *Lucero ex rel. Chavez v. City of Albaquerque*, 140 F.R.D. 455,

457 (D. N.M. 1992) for the proposition that the first step in determining whether to allow

intevention is to ascertain the validity of the intervenor's claim, and cite to *EEOC v. Victoria's*

*Secret Stores, Inc.*, 2003 U.S. Dist. LEXIS 1290, at *3 (E.D. Penn. Jan. 13, 2003) for the

proposition that failing to state a cognizable claim is grounds for denying intervention. *Id.* On a

basic level Defendants' argument is flawed, because it is not Defendants who need to ascertain the

validity of intervenors' claims for purposes of deciding whether intervention is allowed, but the

Court.  *See Lucero*, *supra*.  Moreover, neither case stands for the proposition that it is necessary to

know the identity of intervenors in order for the court to ascertain the validity of their claims or for

intervenors to state a cognizable claim.  Rather, at this stage of the proceeding, such determination

should be made based upon the allegations of the complaint which clearly plead that Plaintiffs have

standing to intervene.  Therefore, the motion should not be denied on this ground.

### 2.  The Ninth Circuit does provides for Anonymous Pleading.

Many federal courts including the Ninth Circuit have permitted parties to proceed

anonymously when special circumstances justify secrecy.  *See, e.g., Does I Through XXIII v.*

*Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 1999); *Roe v. Wade*, 410 U.S. 113 (1973)(implicitly endorsing use of pseudonym to protect plaintiff in abortion case); *Poe v. Ullman*, 367 U.S. 497 (1961)(implicitly endorsing use of pseudonym to protect plaintiff in case involving birth control). The Ninth Circuit has expressly recognized that such special circumstances are present when using pseudonyms is necessary "'to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1067-1068 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

Even though defendants recognize the Ninth Circuit's direct guidance on this point, defendants nevertheless assert that Anonymous Plaintiffs be denied permission to intervene because "there does not appear to be any specific statute or rule supporting the practice of filing a complaint under a pseudonym." Defendants' Opposition to Intervention ("Defendants' Brief") at 5. However, this contention is incorrect. However, the Ninth Circuit has expressly sanctioned doe pleading in *Advanced Textile Corp* which is binding precedent in this regard. The Ninth Circuit standard expressly rejected any hard and fast rule with regards to how to proceed anonymously, holding that such questions must be dealt with only as they arise in the litigation—"[t]he court must determine the precise prejudice at each stage of the proceedings to the opposing party." *Id*. at 1068. There is no indication that such issues should be dealt with at the intervention or even motion to dismiss stage where decisions presumable are made based upon the pleadings.

Further, Defendants' argue that, because doe pleading is not generally allowed in sex discrimination cases, notwithstanding the teachings in *Advanced Textile Corp.*, Anonymous Intervenors' motion should be denied. This argument is similarly flawed. On the one hand it ignores the procedural aspects discussed above and examined in *Advanced Textile Corp.* and, on the other, neither case arises under Ninth Circuit law or involves a motion to intervene. In fact, in both of those cases the anonymous party had already filed a complaint and had either moved to

1     proceed anonymously (*Doe v. Bell Atlantic Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 419 (D. Mass.

2     1995)) or was facing a motion to dismiss (*Doe v. Hallock* , 119 F.R.D. 640, 641-42 (S.D. Miss.

3     1987)).  Defendants' argument that for efficiency it should not be required to raise the argument in

4     a 12(b)(6) motion would seriously prejudice Anonymous Intervenors, as they would be denied the

5     opportunity to cure that they would be afforded under FRCP 15 and case law.[5]

6

7         Plaintiffs' procedural approach of moving to intervene as anonymous plaintiffs without

8     prior petition conforms with numerous other cases which have dealt with the issue of pleading

9     pseudonymously, deciding the issue after the filing of the case and not before.  *See, e.g.*, *Doe v.*

10    *Stegall*, 653 F.2d 180 (5th Cir. 1981) (granting protective order permitting use of pseudonym some

11    time after commencement of suit where class action suit was filed under pseudonym); *EW v. New*

12    *York Blood Center*, 213 F.R.D. 108, 109-110 (E.D.N.Y. 2003) (finding that failure of plaintiff to

13    bring action in her own name was not basis for dismissal because Fed. R. Civ. P. 17(a) permits

14    correction of the caption and courts have permitted later motions to provide a basis for continuing

15

16    the proceeding initially filed under a pseudonym.)[6]

17         Further, the Eastern District of California Local Rule 16-240 clearly envisions that issues

18    such as the propriety of proceeding as Does would be initially considered at the first case

19    management conference. In particular, Rule 16-240 provides that the following types of issues

20    should be dealt with at the status conference:

21

22            (10) modification of the standard pretrial procedures specified by this Rules because
           of the relative simplicity or complexity of the action;

23            (13) appropriateness of special procedures…

24

25    _____
    [5] *See e.g. Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)(expressing Ninth

26    Circuit's policy of granting leave to amend with "extreme liberality.")

    [6] Whereas the Tenth Circuit specifically requires plaintiffs to petition the district court before proceeding

27    anonymously, the Ninth Circuit does not.  *See American-Arab Anti-Discrimination Comm. v. Ridge,* 2003

    U.S. Dist. LEXIS 25100, at *23 ("Some circuits require that plaintiffs obtain leave of the court to file an

28    anonymous pleading before filing.  However, this Circuit does not require prior application …..".) (citations
    omitted).

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION      Case No. 1:07-CV-01428

1  (17) the appropriateness of any variance form the usual filing and service requirements applicable to the action, and

2

3  (18) any other matters that may facilitate the just, speedy and inexpensive determination of the action.

4
5  In conformance with these guidelines, Anonymous Intervenors are open to any protective orders or
6  procedures that would strike an adequate balance between Anonymous Intervenors' and
   Defendants' concerns.

7
8      ### 3.   The Authorities Defendants Cite do not Comport with the Ninth Circuit's Decision in Advanced Textile
       Defendants cite several cases in support of its contention that no statute or rule supports doe

9
10  pleading.  Defendants' opposition at 5.  In *M.M. v. Zavaras*, the party seeking to intervene had
11  already filed a complaint and was petitioning the court for leave to proceed under pseudonym,
12  according to Tenth Circuit procedure. 139 F.3d 798, 799 (10th Cir. 1998).  As noted in *Advance*
13  *Textile* and footnote 3 above, the Ninth Circuit's procedure differs significantly.

14      Indeed, *Femedeer v. Haun* is a Tenth Circuit case and does not involve intervention.
15  Rather, it concerned a constitutional challenge to Utah's sex offender registry scheme. 227 F.3d
16  1244, 1246 (10th Cir. 2000). *Free Market Compensation v. Commodity Exchange, Inc.* is a New
17  York District Court case involving motions to amend the complaint to add one named plaintiff and
18  one anonymous plaintiff. 98 F.R.D. 311, 312. *Doe v. Merten* is a Virginia District Court case in
19  which plaintiffs, after filing a complaint as does, sought permission to proceed anonymously. 219
20  F.R.D. 387 (E.D. Va. 2004). Finally, the two cases arising under the Ninth Circuit do not involve
21  intervention. *Doe v. Rasketer* predates *Advance Textile* and, although not brought after a post-filing
22  motion, went to the court at a status conference hearing in which both sides had briefed the issue.
23  89 F.R.D. 158, 159 (N.D. Cal. 1981). The other arises from a motion to proceed anonymously after
24
25  filing the complaint under a pseudonym, *AlyssaC v. Palo Ato Housing Corp.*, 2007 U.S. Dist.
26  LEXIS 24183, at *1-2 (N.D. Cal. Mar. 20, 2007).  That such motions are heard makes, and does
27
28  not break, Plaintiff Intervenors' position.

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION         Case No. 1:07-CV-01428

1

2

#### 4.   Proceeding anonymously is not a Collateral or Extrinsic issue that Defeats Intervention.

3

4

Defendants argue that "Defending Plaintiff Intervenors' 11 extra causes of action not

5

asserted by the EEOC's complaint would add yet another layer of collateral or extrinsic issues,"

6

prejudicing Defendants by delaying determination of their rights. Defendants' Opposition at 7.

7

However, it is unclear how additional plaintiffs who have the statutory right to intervene would add

8

collateral or extrinsic issues as to defeat intervention. Although as Defendants note, District Courts

9

in New York have denied intervention where collateral or extrinsic issues would be inserted, this is

10

not the case here.  Defendants cite *Lipsett v. U.S.*, 37 F.R.D 549 (S.D.N.Y. 1965), to argue that

11

adding collateral matters constitutes grounds for denying intervention. Defendants' Opposition at

12

7. However, that case is readily distinguishable. First, it involved a tax refund action whose nature

13

"involves in effect a reaudit of the individual taxpayer's return for the time period in question

14

(citation omitted) . . . and the validity of each item on fourteen different returns." *Id*. at 552.

15

Further the court notes that its decision is narrow—"Wile recognizing that intervention should be

16

liberally permitted (citation omitted) . . . in the context of this case, the granting of the requested

17

relief will run contrary to the very purpose of the rule." *Id.* Second, the case involved a "spurious

18

class action," a former category of class action which, by definition, was one "in which the

19

interests of class members are several, not interdependent."  BLACK'S LAW DICTIONARY at 243

20

(Seventh Ed.). Similarly, the Court in *Nat'l American Corp. v. Fed. Republic of Nigeria*, declined

21

to allow a party to intervene where intervenors were apt to inject collateral or extrinsic issues. 425

22

F.Supp. 1365, 1372 (S.D.N.Y. 1977). However, that case is also distinguishable.  There the court

23

refused to allow <u>permissive</u> intervention because the case involved a contract dispute and the

24

intervening plaintiff's contract with defendant "differed in several material aspects", including the

25

"choice of law provisions . . . assignability . . . Nigerian representative for the plaintiff and

26

intervenors," and the specific type of goods underlying the different contracts. *Id.* As discussed

27

above, it is unclear how protecting the identity of intervenors here presents any extrinsic or

collateral issues such as those dealt with by the courts in *Lipsett* and *Nat'l American Corp.*

28

#### 5.   Whether Basic Fairness to Defendants is Grounds for Requiring Anonymous Intervenors to Proceed by their Names is a Question not

1          **at Issue at this Stage.**

2          Defendants generally argue that on fairness grounds Anonymous Intervenors should not be

3  allowed to intervene anonymously.  Defendants' Opposition at 5-6. However, as discussed above,

4  the question of whether they should be allowed to proceed anonymously is not one for this motion,

5  even on fairness grounds. Moreover, none of them is controlling with respect to this motion.

6  Indeed, none of the cases Defendants cite in support of this argument are controlling, since none of

7  them involve a motion to intervene, and none of them are governed by Ninth Circuit law

8  announced in cases such as *Advance Textile. See Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137

9  (S.D. Ind. 1996); *So. Methodist univ. Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979); *and*

10 *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996).[7] While Defendants argues that they should not be

11 forced to defend this suit publicly while some plaintiffs proceed anonymously, aside from the fact

12 that at this stage of the litigation this does not prejudice Defendants, there is also the fact that one

13 plaintiffs are not proceeding anonymously and the fact that the allegations are on there behalf and

14 all others similarly situated.  Many similarly situated may never be named as plaintiffs yet they

15 may benefit from the lawsuit and Defendant will have to defend it as to those similarly situated.

16

17         **6.  Plaintiffs' Complaint Properly Pleads the Basis for Doe Pleading.**

18         All that FRCP Rule 8(a)(2) requires is that plaintiffs allege a "short and plain statement of

19 the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics*

20 *Intelligence*, 507 US 163 (1993).  As noted by the Supreme Court "the rule meant what it said

21 '[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

22 which he bases his claim.'" *Leatherman* (quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2

23

24 ─────────────────
   [7] *Southern Methodist* is easily distinguished.  There*,* an organization of women law students brought a class
25 action against two law firms alleging that they discriminated against women in hiring.  Four individual
   lawyers sought to join the lawsuit as anonymous plaintiffs because they feared job-related retaliation.
26 There, the Fifth Circuit refused to grant anonymity because the threatened retaliation was not extraordinary.
   Here, however, the retaliation *is* extraordinary.  Unlike *Southern Methodist*, where plaintiffs were attorneys
27 in possession of education and skills to obtain other jobs and have the ability to address any retaliation by
   employers, plaintiffs are low wage janitorial workers who lack employment options and the ability to take
28 recourse should their employers retaliate.  The threats to their livelihood and the survival of their families
   are substantial.

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

1   L.Ed.2d 80 (1957)).  Plaintiffs have clearly pled the need to proceed anonymously in conformance

2   with these notice pleading requirements.

3       The standard for proceeding anonymously has been enunciatetd by the Ninth Circuit in

4   *Advanced Textile Corp.*, *supra*, at 1068, where the court held that the district court must consider

5   the following factors: 1) "the severity of the threatened harm," 2) "the reasonableness of the

6   anonymous party's fears," and 3) "the anonymous party's vulnerability to such retaliation."  Here,

7

8   plaintiffs' complaint has expressly pled to the Ninth Circuit's standard by pleading:

9

10      . . . PLAINTIFF INTERVENORS are pled as "DOE Plaintiffs" in this action in
        conformity with the Ninth Circuit precedent <u>Does I thru XXIII v. Advanced Textile</u>
11      <u>Corp.</u>, 214 F.3d 1058 (9th Cir. 2000) to preserve their anonymity at this stage of the
        judicial proceeding.  Naming the Plaintiffs as "DOEs" is appropriate at this stage in
12      the proceeding because their need for anonymity outweighs any prejudice to the
        opposing parties as well as the public's interest in knowing any party's identity.  In
13      particular, the Plaintiffs should be identified here only as DOEs because: (1) the
        threatened harm includes serious physical violence by Defendant or Defendant's
14      agents based upon direct and indirect threats, (2) Defendant JOSE VASQUEZ has
        previously been convicted of a violent crime, (3) JOSE VASQUEZ has committed
15      violent crimes against PLAINTIFF INTERVENORS, (4) the Corporate Defendants
        hired and placed JOSE VASQUEZ in a supervisory position over women knowing
16      of his criminal record of sexual violence, (5) JOSE VASQUEZ has a reputation for
        violence so that PLAINTIFFS INTERVENORS subjectively fear that JOSE
17      VASQUEZ may harm them and this subjective fear is objectively based, (6) there is
        significant and well-documented economic threat to the livelihood of these low-
18      wage workers, who have no economic recourse other than to work in this low-wage
        industry in this geographical area, (7) the PLAINTIFF INTERVENORS are
19      particularly vulnerable due to their socio-economic status and because the economic
        coercion that historically has been applied in this industry would effectively
20      threaten their ability to survive and provide for their families, (8) the immigration
        status of janitorial workers and their family members historically has been used to
21      curtail these workers' fight for the protections of the labor laws and other civil
        rights, (9) the nature of the allegations make revelation of the identities of the
22      anonymous PLAINTIFF INTERVENORS highly prejudicial to them in relations
        with other and would create needless additional harm and prejudice.  Defendants do
23      not require knowledge of the identities of the "DOE Plaintiffs" at this stage of the
        proceeding.  Any future need for these names can be resolved by the District Court
24      through pretrial management procedures, including the issuance of protective orders
        limiting disclosure of a party's name to the greatest extent possible without
25      prejudicing the opposing party's ability to litigate the case.  Nonparties do not
        require the knowledge of the identities of "DOE Plaintiffs" at this stage of the
26      proceedings, if ever.  As noted by the Ninth Circuit, "it may never be necessary,
        however, to disclose the anonymous parties' identities to nonparties to the suit."
27      <u>Advanced Textile Corp.</u>, supra, 214 F.3d at 1058

28   CI ¶ 6.  Plaintiffs believe that this more than satisfies their notice pleading requirements

Further, as noted above, plaintiffs intend to either enter into a stipulation with defendants on this issue or file a motion on this issue to proceed on an interim basis as Does

### 7.  Plaintiffs Expect to Prevail in Their Motion to Proceed.

Plaintiffs believe that they will succeed in this motion because their need for anonymity outweighs any prejudice to the Defendants. In the event that it becomes necessary, Anonymous Intervenors are willing to discuss a protective order that will safeguard the parties' interests.  In particular, preservation of plaintiffs anonymity except pursuant to a protective order is mandated under *Advanced Textile Corp.*, 214 F.3d at 1069, because, inter alia, Anonymous Intervenors (1) face the threat of serious physical, economic and diginitary harm; (2) their fears are reasonable; (3) they are particularly vulnerable; (4) need for anonymity outweighs any prejudice to defendants at this stage of the proceedings; and (5) the public's interest is served by maintaining their anonymity.

### a)  Plaintiffs Will Suffer Severe Harm If Their Identities Are Disclosed.

Facts showing that plaintiffs may suffer reprisals by their employers are enough.  *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (anonymity allowed where plaintiffs "may expect extensive harassment and perhaps even violent reprisals"); *Buckeye Sugars*, 60 F.R.D. at 106 (anonymity allowed to "safeguard against any possible reprisals by their employers that might result from the filing of this lawsuit").  So long as plaintiffs face "greater threats of retaliation than the typical [employee] plaintiff," anonymity may be justified. *Advanced Textil Corp.*, 214 F.3d at 1070-1071.  Here, plaintiffs face significant threats including threats to their livelihood, threats of serious physical violence, and threats to their immigration status.  CI ¶ 6.  Such threats require the protection of plaintiffs through the use of pseudonyms.

In *Gomez v. Western Equipment, Inc.*, 3 C.R. 98 (D.N.M.I. 1987), in allowing plaintiffs to use assumed names, the court observed that "Defendant … would be hard-pressed to deny the

1    attractiveness of summary termination of an employee who has filed suit against an employer." *Id.*

2    at 100.  Here, plaintiffs require pseudonyms in order to protect against such retaliation.  Indeed, the

3    effect of termination on janitors like plaintiffs are extraordinary. If they are terminated by their

4    employers in retaliation for filing this lawsuit, they will have no other means to provide for

5    themselves or their families.  Their very survival will be at stake.  As recognized by the Ninth

6    Circuit, anonymity should be used to shield plaintiffs from economic injury under these

7

8    circumstances.  *See Advanced Textile Corp.*, 214 F.3d at 1070 (concluding that anonymity can be

9    used to shield plaintiffs from economic injury); *see also, Wolfchild v. United States*, 62 Fed. Cl.

10   521, 553 (U.S. Fed. Cl. 2004) (finding risk of economic harm a factor in granting anonymity to

11   plaintiffs).[8]

12        In addition to termination, the threatened harm to plaintiffs also includes serious physical

13   violence by Defendants and third parties.  CI ¶ 6.  Physical violence may be carried out against

14   plaintiffs because they are vulnerable by virtue of their socioeconomic status and the fact that they

15   are under the control of their employers and others who hold power in the janitorial industry.

16

17   Further, defendants may retaliate by revoking, changing or examining the immigration status of

18   plaintiffs or their families and friends.  *In Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th Cir. 2003), the

19   Ninth Circuit upheld a protective order barring discovery into the immigration status of plaintiffs

20   who filed lawsuits against their employers because it recognized that documented workers face the

21   possibility of retaliatory discharge for an assertion of their labor and civil rights, and may fear that

22   their immigration status would be changed or their immigration history examined.  *Id.* at 1064.

23

24   The Ninth Circuit also recognized that undocumented workers also face great retaliation because,

25

26   _____
     [8] Also, since Defendants control a large segment of the janitorial business in California and perhaps the

27   U.S., Defendants may harass or blacklist plaintiffs.  In *De La Fuente v. Interstate Commerce Commission of the United States,* 451 F. Supp. 867 (N.D. Ill. 1978), the court noted that anonymous complaints by

28   agricultural workers resulted in threats to "blacklist" plaintiffs from future employment. *Id.* at *3.

1  in addition to possible discharge, they may be reported to the INS (now ICE) and subjected to

2  deportation proceedings or criminal prosecution.  *Id*. at 1064-65.  If plaintiffs do not obtain a

3  stipulation with defendants, upon motion, plaintiffs will submit substantial objective evidence that

4  plaintiffs will risk the above types of risks.  As such, plaintiffs require anonymity.

5

6

7                              **b.   Plaintiffs' Fears of Retaliation Are Reasonable.**

8          In the Ninth Circuit, Plaintiffs "are not required to prove that the defendants intend to carry

9  out the threatened retaliation."  *Advanced Textile Corp.*, 214 F.3d at 1071.  Plaintiffs need only

10  "have an objectively reasonable fear of extraordinarily severe retaliation." *Id*. at 1063.  Plaintiffs'

11  fears of severe retaliation are reasonably based.  *In Wirtz v. Continental Finance & Loan Co. of*

12  *West End*, 326 F.3d 561 (5th Cir. 1964), the Fifth Circuit recognized that employees who complain

13  about wage and hour violations are "particularly susceptible to the fear of retaliation" and that "the

14  most effective protection from retaliation is the anonymity of the information" because "the

15  pressures which an employer may bring to bear on an employee are difficult to detect and even

16  harder to correct" and "the economic relationship of employer-employee makes possible a wide

17  range of discriminatory actions from the most flagrant to those so subtle that they may be scarcely

18

19  noticed."  *Id*. at 563-64.

20         Here, Plaintiff Intervenors have been sexual harassed, assaulted and raped.  Complaint in

21  Intervention ¶¶6.  Indeed, Jose Vasquez is registered sex offender.  Complaint in Intervention ¶22.

22  Plaintiffs are also vulnerable due to plaintiffs' vulnerable socio-economic status and the nature of

23  the threats, including physical violence and economic coercion, plaintiffs' fears of severe

24  retaliation are very real. ¶6.  "[B]ased on the extreme nature of the retaliation threatened against

25  plaintiffs coupled with their highly vulnerable status, … plaintiffs reasonably fear severe

26  retaliation."  *Advanced Textile Corp.*, 214 F.3d at 1069.

27

28

1

2

Additionally, the fact that Morales or other janitors may have filed similar complaints under

their own names does not mean that plaintiffs' fear of retaliation are unreasonable.  In *Advanced*

3

*Textile Corp.*, the Ninth Circuit found that protection of plaintiffs identities was still required

4

because, "[First, concealment of identities will provide protection to the remaining … plaintiffs.

5

6

Second, the fact that some employees chose to file … complaints under their true names does not

7

refute plaintiffs' evidence that they hold a reasonable fear of retaliation.  Past acts of bravery in the

8

face of danger is poor rationale for denying the courageous individual protection against future

9

harm.  [Third], whatever knowledge defendants have of plaintiffs' identities only lessens their

10

claims to be prejudiced by the use of pseudonyms."  214 F.3d at 1069 n.11.  These same reasons

11

apply here.

12

Moreover, according to the Ninth Circuit, "complaining employees are more effectively

13

protected from retaliation by concealing their identities than by relying on the deterrent effect of

14

15

post hoc remedies" such as anti-retaliation provisions.  *Advanced Textile Corp.*, at 1071.  *See also,*

16

*Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2003) (noting that "the existence of post hoc

17

legal remedies for retaliation do not necessarily provide adequate protection when plaintiffs

18

anticipate retaliation that would result in extraordinarily burdensome consequences.")  Numerous

19

other courts have reached the same conclusion.  *See, e.g., Mitchell v. Roma*, 265 F.2d 633, 637 (3rd

20

21

Cir. 1959) ("The statutory prohibition against retaliation provides little comfort to an employee

22

faced with the possibility of subtle pressures by an employer, which pressures may be so difficult

23

to prove when seeking to enforce the prohibition."); *Schultz v. U.S. Dept. of Labor*, No. 70-C-25,

24

U.S. Dist. LEXIS 12507 (S.D. Tex. Mar. 16, 1970) (preserving anonymity of employees who

25

complained that their employers were violating the wage and hour laws because the prohibition

26

against retaliation has never been entirely sufficient as an employer's retribution can be subtle and

27

28

1   very difficult to prove).  If plaintiffs do not succeed in obtaining a stipulation on this issue, then

2   they should be allowed to submit objective evidence that fear from retaliation is reasonable.

3              **c.    Plaintiffs Are Particularly Vulnerable to Retaliation.**

4           Courts have long recognized that the relationship between employer and employee is a

5   "delicate" one, and in labor cases plaintiffs are "particularly susceptible to employer … retaliation,

6   coercion or influence."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 250-51 (1978).  In

7   particular, most janitorial workers are poor and politically weak, vulnerable to exploitation and

8   retaliation. Anonymous Intervenors are eight individuals among an estimated work force of tens of

9

10  thousands.  CI ¶ 16.  Under these circumstances, plaintiffs' vulnerability to retaliation is enhanced

11  because they can be specifically targeted.  *See Advanced Textile Corp.*, 214 F.3d at 1072 (finding

12  that "plaintiffs' vulnerability to retaliation is enhanced at this stage of the litigation because they

13  are twenty-three individuals among an estimated workforce of 25,000.")  Plaintiffs are also

14  particularly vulnerable to retaliation because of their socioeconomic status, the fact that the

15

16  economic coercion that historically has been applied in this industry would effectively threaten

17  their ability to survive and provide for their families, and their immigration status. CI ¶ 7.  The

18  vulnerability of janitorial workers to retaliation and other abuse cannot reasonably be questioned,

19  particularly given the utterly egregious conduct they have been subjected to by ABM supervisors.

20

21

22              **d.  Plaintiffs' Need for Anonymity Outweighs Any Prejudice
                    to Defendants at this Stage of the Litigation.**

23          Plaintiffs' need for anonymity outweighs any prejudice to defendants at this early stage of

24  the litigation.  Contrary to defendants' argument, there is no current prejudice to defendants

25  resulting from their inability to ascertain the viability of Anonymous Intervenors' claims, because

26

27

28

as discussed at length above, that is not an issue before the Court at this time.[9]  Further, defendants are not precluded from conducting their own internal investigations.  Since the allegations clearly state Morales' and similarly situated individuals were harmed by Defendants.[10]  At this stage, Defendants argument that they should no be forced to defend this action publicly while some plaintiffs proceed anonymously is premature.

### e.   The Public's Interest is Served by Maintaining Plaintiffs' Anonymity.

As the Ninth Circuit stated, "[W]e fail to see how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case.  *Advanced Textile Corp.*, 214 F.3d at 1072-73, n.15.  While the public has a right to scrutinize government functioning, "'[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them.'"  *EW v. United Blood Services*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003), quoting *Stegall*, *supra*, at 185.  Moreover, the presumption of open proceedings is even less compelling in the context of actions brought on behalf of similarly-situated individuals asserting the same claims. Because plaintiffs "are essentially interchangeable with similarly situated persons, there appears little public interest in which particular persons have actually sued."  *Free Speech v. Reno, No. 98 Civ. 2680 (MBM)*, 1999 U.S. Dist. LEXIS 912, at *9-*10 (S.D.N.Y. Jan. 27, 1999).

Here, preserving plaintiffs' anonymity will serve, not undermine, the public's interest.  The public has an interest in seeing the case decided on the merits.  *Advanced Textile Corp.*, 214 F.3d at 1073.  Employee suits to enforce their constitutional and statutory rights benefit the public. *Id*.

---

[9]  Additionally, a motion to intervene should not be resolved by reference to the ultimate merits of the claims or defenses the intervenor seeks to assert unless they "are frivolous on their face." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,164 F3d 1080, 1081 (8th Cir. 1999); *Oneida Indian Nation v. State of New York* 732 F2d 261, 265 (2nd Cir. 1984).

[10]  Furthermore, any future need for these names can be resolved through pretrial management procedures and the issuance of protective orders.  *See Advanced Textile Corp.,* 214 F.3d at 1069 (advising district courts to use "powers to manage pretrial proceedings and to issue protective orders limiting disclosure of the party's name to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case.").

PLAINTIFF-INTERVENORS' REPLY TO OPPOSITION TO INTERVENTION          Case No. 1:07-CV-01428

Requiring plaintiffs to identify themselves will not only chill plaintiffs' and other employees' willingness to challenge employers' violations of their rights, but would in effect allow such employers to continue their unlawful practices. *Id.*; *see also*, *Mitchell v. Robert De Mario Jewelry, Inc.,* 316 U.S. 288, 292 (1960) ("It needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions."); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240, 57 L. Ed. 2d 159, 98 S. Ct. 2311 (1978) ("The danger of witness intimidation is particularly acute with respect to current employees … over whom the employer, by virtue of the employment relationship, may exercise intense leverage.")  By allowing plaintiffs to proceed anonymously, the public's interest is served because the case will go forward and will benefit not just plaintiffs but the public by dissuading oppressive employers from engaging in wrongful conduct.  *See Plourde v. Mass. Cities Realty Co.*, 47 F. Supp. 668, 670 (D. Mass. 1942) ("An employee, exercising his rights …, exercises them, not only for his own benefit, but also for the benefit of the general public."); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974) (stating that a private Title VII plaintiffs "not only redresses his own injury but also vindicated the important congressional policy against discriminatory employment practices")

**IV.     Conclusion**

For the foregoing reasons, Morales should be allowed to intervene and assert all her claims for relief, including claims Eight through Twelfth, and Anonymous Plaintiffs should be allowed to intervene.

Dated: January 4, 2007.                    LAW OFFICES OF MALLISON & MARTINEZ

By:     /S/ Hector Martinez
Stan S. Mallison
Hector R. Martinez
Marco A. Palau
Attorneys for Plaintiffs