Laura E. Hayward, SBN 204014
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA  94108.2693
Telephone: (415) 433-1940

Keith A. Jacoby, SBN 150233
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA  90067.3107
Telephone:     (310)553-0308

Attorney for Defendants
ABM INDUSTRIES INCORPORATED;
ABM JANITORIAL SERVICES, INC. and
ABM JANITORIAL NORTHERN
CALIFORNIA

(additional counsel listed on next page)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> ERIKA MORALES and ANONYMOUS PLAINTIFFS ONE THROUGH EIGHT, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> ABM INDUSTRIES INCORPORATED, et al.; Does 1 - 10 inclusive, <br><br> Defendants. | Case No. 1: 07 CV 01428 LJO-BAK GSA <br><br> **JOINT STATEMENT OF DISCOVERY DISAGREEMENTS RE: DEFENDANTS' MOTION TO COMPEL PLAINTIFF EEOC'S RESPONSES TO DEFENDANT ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** <br><br> **LOCAL RULE 37-251** <br><br> Date:       August 14, 2009 <br> Time:       9:30 a.m. <br> Judge:      Hon. Gary S. Austin <br> Courtroom:  10 |

1

2   Anna Y. Park, SBN 164242
    Victor Viramontes, SBN 214158
3   Lorena Garcia-Bautista, SBN 234091
    U.S. EQUAL EMPLOYMENT
4   OPPORTUNITY COMMISSION
    255 East Temple Street, 4th Floor
5   Los Angeles, CA 90012
    Telephone: (213) 894-1108
6   Facsimile: (213) 894-1301

7   Attorneys for Plaintiff
    U.S. EQUAL EMPLOYMENT
8   OPPORTUNITY COMMISSION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Joint Statement of Discovery Disagreement Re:        -2-
     Defendants' Motion to Compel Responses to
     Defendant's First Set of Requests for Production

1   Defendants ABM Industries, Incorporated, ABM Janitorial Services, Inc., and ABM

2   Janitorial Services Northern California ("Defendants") and Plaintiff Equal Employment

3   Opportunity Commission ("EEOC" and "Commission") submit this Joint Statement of Discovery

4   Disagreements for the Court's consideration in connection with Defendants' Notice of Motion

5   and Motion to Compel Plaintiff's responses to Defendant ABM Janitorial Services Northern

6   California's First Set of Requests for Production of Documents.

7                          I.    **INTRODUCTORY STATEMENTS**

8        A.    **DEFENDANTS' INTRODUCTORY STATEMENT**

9        After Defendants provided the EEOC with thousands of names of current and former

10   ABM employees, the EEOC distributed letters and questionnaires to these employees asking

11   whether *or not* they had ever witnessed or experienced sexual harassment during their

12   employment at ABM, in an attempt to obtain more information regarding its asserted sexual

13   harassment claims and identify potential new claimants.  Defendants have requested that the

14   EEOC produce copies of all forms of notices and questionnaires it sent out to ABM employees

15   as well as the responses thereto from all individuals whom it does not currently represent in this

16   lawsuit.  The requested documents reflect directly upon the core allegations in this suit and may

17   very well contain exculpatory evidence which supports Defendants' defenses to these

18   allegations.

19        Contrary to claims of the EEOC, the requested documents are neither protected by the

20   attorney-client privilege nor the attorney work-product doctrine.  The attorney-client privilege

21   does not protect communications between the EEOC and potential claimants unless the potential

22   claimants have taken some affirmative steps to enter into an attorney-client relationship with the

23   EEOC. Defendants are not seeking the responses from individuals who responded to the

24   questionnaires and consequently entered into an attorney-client relationship with the EEOC.

25   They are seeking, and are entitled to, the responses from individuals who took no such

26   affirmative steps to enter any such relationship.  Further, the questionnaires themselves are not

27

28   Joint Statement of Discovery Disagreement Re:                  -3-
     Defendants' Motion to Compel Responses to
     Defendant's First Set of Requests for Production

1   protected by the attorney work-product doctrine.  Once a communication is distributed to third-

2   parties in a non-confidential manner, as is the case here, work-product protection is waived.

3       The Parties have made efforts to resolve this discovery dispute informally without court

4   intervention.  However, because the EEOC has refused, and continues to refuse, to produce

5   highly relevant discoverable information that is not protected by privilege, Defendants have been

6   forced to file the instant motion.  For the foregoing reasons, explained in further detail below,

7   Defendants respectfully request that the Court grant their motion to compel.

8

9   ### B.   PLAINTIFF EEOC'S INTRODUCTORY STATEMENT

10       The EEOC sent out questionnaires to identify potential claimants or other victims of

11   sexual harassment or constructive discharge pursuant to the Court's orders and the EEOC's

12   broad power to seek group-wide relief under Title VII.  These questionnaires and the responses

13   are protected by the attorney work-product doctrine and attorney-client privilege.

14       First, the EEOC's potential claimant questionnaires and the responses are protected by

15   the attorney work-product doctrine because there is no dispute that the questionnaires and

16   responses were prepared for the purpose of this litigation because the EEOC was pursuing

17   claimant development.  Second, Defendants cannot show that they have a substantial need or an

18   undue hardship to overcome the work-product privilege because the EEOC has provided

19   Defendants with the names of the employees who responded to the questionnaire.  Despite

20   Defendants having the names and contact information for its own unrepresented employees,

21   Defendants have not contacted them and instead have chosen to invade the EEOC's work-

22   product and attorney-client privileges by demanding the production of the EEOC's potential

23   claimant questionnaire and the responses.  Thus, because the information at issue is so easily

24   accessible to Defendants in a multitude of ways, they can establish no substantial need and no

25   undue harm to overcome the work-product privilege.  Third, the EEOC's potential claimant

26   questionnaires and the responses are protected by the attorney-client privilege because the

27   potential claimants took affirmative steps to enter into an attorney-client relationship by

28   responding to the EEOC's questionnaire.

Joint Statement of Discovery Disagreement Re:                    -4-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

Moreover, Defendants' argument that the EEOC waived any claim of privilege with respect to the EEOC's potential claimant questionnaires is unavailing because (1) the EEOC's counsel has not engaged in any unethical misconduct in sending it out questionnaires to potential claimants pursuant to this Court's orders; (2) the EEOC has not voluntarily produced any letters or questionnaires to Defendants or any adverse party; (3) the EEOC has not produced the potential claimant questionnaires to the general public because the EEOC only distributed its questionnaire to current and former ABM janitorial employees.

Thus, the EEOC's work-product should be shielded from inquiry from Defendants. Because they are the employer or former employer of the recipients of the questionnaires, they can access the same information simply by sending a letter, making a call, or requesting a meeting.

## II.    STATEMENT OF THE NATURE OF THE CASE AND FACTUAL BACKGROUND

### A.    DEFENDANTS' FACTUAL BACKGROUND

#### 1.    Procedural History Of The Case And The EEOC's Claims.

On June 30, 2006, former ABM Janitorial Services - Northern California, Inc[1] employee Erika Morales filed a Charge with the EEOC against ABM Janitorial Services, Inc. alleging misconduct by her former supervisor at the Bakersfield location, Joe Vasquez. The Charge made no references to any misconduct by anyone other than Mr. Vasquez. On January 11, 2007, Morales amended her Charge but again did not refer to alleged misconduct by anyone other than Mr. Vasquez. On April 25, 2007, the EEOC issued its Determination decreeing that there "is reasonable cause to believe that Charging Party was subjected to sexual harassment and was constructively discharged. There is also reasonable cause to believe that similarly situated individuals were subjected to sexual harassment and/or subjected to constructive discharge..."

After an unsuccessful conciliation effort surrounding the EEOC Charge filed by Plaintiff

---

[1] ABM Industries, Inc. and ABM Janitorial Services, Inc are parent companies of ABM Janitorial Services-Northern California and have never employed Plaintiffs, or other janitorial employees. ABM Janitorial Services-Northern California is the proper employer of Plaintiffs.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production        -5-

1  Erika Morales in June 2006, the EEOC filed the instant Title VII action on September 28, 2007

2  alleging that "Erika Morales and similarly situated individuals" were subjected to a "sexually

3  harassing hostile environment and quid pro quo sexual harassment... perpetrated by supervisors,"

4  while working for Defendant ABM Industries, Inc. and ABM Janitorial Services, Inc.

5        In November 2007, the Law Offices of Mallison & Martinez filed a Motion to Intervene

6  on behalf of eight anonymous plaintiffs.  The motion was granted and Plaintiffs subsequently

7  filed their Complaint in Intervention on March 7, 2008, joining in the EEOC's claims and adding

8  several common law and state law claims and adding ABM Janitorial Northern California as a

9  party.  The Complaint in Intervention lists Erika Morales as a Plaintiff-Intervenor, and also

10 names "Anonymous Plaintiffs One Through Eight."[2]  With one exception, the Anonymous

11 Plaintiffs are, like Ms. Morales, ABM Janitorial Northern California employees who allege they

12 were subjected to sexual harassment from Mr. Vasquez.

13       The Court set March 20, 2009 as the final date for conducting "class discovery,"[3]

14 including discovery with respect to new potential claimants.  The EEOC initially sought the

15 identities and contact information for all of ABM's janitorial employees statewide, based solely

16 on the evidence of alleged harassment by one supervisor, Joe Vasquez, in one location, the

17 Bakersfield branch.  However, Magistrate Judge Theresa Goldner, recognizing that the EEOC's

18 powers are not unlimited, held that "the only purpose of statewide discovery at this point, would

19 be to allow Plaintiffs to search for other employees with colorable claims, with no factual nexus

20 other than the fact that they do or did work for Defendants.  In the Court's view this would

21 constitute a 'fishing expedition' and an inappropriate use of discovery."  (*See* December 23,

22 2008 Order: 13:6-11, attached to Hayward Decl. at ¶2 as Exhibit "A").  Accordingly, Magistrate

23 Goldner limited the EEOC requests for employee lists and complaints of sexual harassment to

---

25 [2] On May 7, 2009, this Court dismissed Anonymous Plaintiffs Seven and Eight from the litigation on the basis that
26 they had failed to prosecute their claims.  Neither Plaintiff appeared for their depositions despite being ordered by
   the Court to do so by October 31, 2008.

27 [3] The parties have since discussed with this Court that this case is not a class action subject to Federal Rule 23.

28 Joint Statement of Discovery Disagreement Re:                    -6-
   Defendants' Motion to Compel Responses to
   Defendant's First Set of Requests for Production

1  the eleven counties making up the Eastern District, i.e. Calaveras, Fresno, Inyo, Kern, Kings,

2  Madera, Mariposa, Merced, Stanislaus, Tulare, and Tuolumne. *Id.*

3          **2.      The EEOC Letter And Questionnaire Sent To Current And Former**

4                  **ABM Employees.**

5          After Defendants provided the contact information for over 4000 current and former

6  ABM employees employed from January 1, 2000 to present in the eleven counties that make up

7  the Eastern District, the EEOC sent a letter and questionnaire to current and former ABM

8  employees on or about January 28, 2009.  (See Exhibit "B" attached to Hayward Decl. at ¶3).

9  The letter, which was on government letterhead, purports to seek information regarding the

10 EEOC's claims in this case as well as identify new potential claimants.  *See id.*   The letter

11 requests that the recipient call the EEOC if the recipient feels that he or she was sexually

12 harassed while working at ABM to determine if he or she "has a viable claim for damages."

13 Additionally, the letter urges the recipient to "[p]lease fill out the attached questionnaire" and

14 demands that "[he or she] *must* respond to this questionnaire and to this letter by February 16,

15 2009."  *Id.*  The questionnaire enclosed with the EEOC's letter asks the reader whether he or she

16 has "ever been subjected to any form of sexual harassment by any employee....during your

17 employment at ABM."  It contains a blank for the reader to indicate "Yes" or "No."  Further, the

18 questionnaire asks whether the reader knows of any other employees who have been subjected to

19 harassment, and again asks for an affirmative or negative response.  Thus, it is very likely that

20 certain of the responses received by the EEOC contain "No" responses to these questions and

21 provide evidence in support Defendants' defenses.

22         Nothing in the letter or the questionnaire gives the reader the impression that he or she is

23 entering and attorney-client relationship with the EEOC.  The letter simply requests information.

24 Moreover, the general instruction to "fill out the attached questionnaire" is directed toward all

25 respondents to the questionnaire, not just those employees who may have experienced sexual

26 harassment.  *See id.*

27

28

Joint Statement of Discovery Disagreement Re:            -7-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

Defendants were made aware of the questionnaire when a current employee of ABM received the EEOC's letter and questionnaire and subsequently distributed it to another, higher level ABM employee. (Hayward Decl. ¶4 ).  The EEOC is aware that Defendants have seen its letter and questionnaire because defense counsel requested that the EEOC make changes to the language contained within the letter.  Specifically, Defendants believed that the statement in bold that "**You must respond to this questionnaire and to this letter by February 16, 2009,**" coupled with the use of government letterhead, would likely mislead the recipients into believing that they were required to return the form.  (Hayward Decl. ¶5 ).

Additional "Notices of Investigation" were also distributed by Plaintiff-Intervenors. Again, these notices sought information "concerning sexual harassment at ABM," but made no mention of entering into any attorney-client relationship with either the EEOC or Plaintiff-Intervenors' counsel. (See Exhibit C, attached to the Hayward Decl. at ¶6).

### 3.    Defendants' Discovery Requests And The Parties' Meet And Confer Efforts.

On or about May 4, 2009, ABM Janitorial Services Northern California served its First Request for Production of Documents on Plaintiff, which sought all notices, questionnaires and letters that were sent to current and former employees of ABM by the EEOC as well as any responses received to such questionnaires. (See Defendant ABM Janitorial Services Northern California's First Set of Requests for Production, attached to the Hayward Decl. at ¶7 as Exhibit "D").   The EEOC served its responses on or about June 4, 2009 by objecting to each of Defendant's requests for production of documents for the reasons stated in Section III, below. (See Responses to First Request for Production, attached to the Hayward Decl. at ¶8 as Exhibit "E").  Additionally, the EEOC attached a privilege log to its objections, which presumably lists each of the individuals who responded to its questionnaire. *See id.*  Accordingly, Defendants are seeking to compel the responses by the individuals listed in the EEOC's privilege log, other than those currently represented by the EEOC, by way of their Motion to Compel.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production                    -8-

On June 15, 2009, the parties had an in person meeting in the Eastern District Courthouse, which commenced the meet and confer process regarding the instant discovery dispute. (Hayward Decl. ¶ 9). As a follow up to the discussion that took place on June 15, 2009, counsel for Defendants sent a meet and confer letter to the EEOC on June 30, 2009. The June 30, 2009 letter restated Defendants' position and provided supporting authorities. (See June 30, 2009 Letter, attached to the Hayward Decl. at ¶10, as Exhibit "F"). Moreover, the June 30, 2009 letter requested that counsel for the EEOC contact Defendants' counsel no later than the end of the day on July 2, 2009 to discuss whether the EEOC would be willing to provide the requested documents. *Id.* In an email dated July 1, 2009, Mr. Viramontes, counsel for the EEOC indicated that he would review the authorities provided by Defendants and provide a response. However, on July 10, 2009 during a meet and confer phone conference between all parties, Defendants' counsel asked Mr. Viramontes to disclose the EEOC's position. Mr. Viramontes stated that he needed until Monday July 13, 2009 to review additional authorities. Defendants' counsel agreed to give Mr. Viramontes until Monday, but confirmed in an email after the phone call that if she did not hear from Mr. Viramontes that Defendants would move forward with their Motion. (See July 10, 2009 E-mail, attached to the Hayward Decl. at ¶11, as Exhibit "G"). The instant Motion to Compel followed.

**B.   PLAINTIFF'S FACTUAL BACKGROUND**

**1.   Procedural History of the Case and the EEOC's Claims.**

On September 28, 2007, Plaintiff EEOC filed suit alleging that Defendants ABM Industries Inc. and ABM Janitorial Services, Inc. violated Title VII by engaging in sexual harassment and discrimination against a class of similarly situated individuals. The EEOC filed this class suit and pattern or practice suit under Sections 706 and 707. (Docket # 1 (Complaint at ¶¶ 10, 12) attached to Lorena Garcia-Bautista Decl. at ¶2 as Exhibit "1.") Thus, the EEOC pursues class relief on behalf of the charging parties and a group of similarly aggrieved individuals under both Section 706 and 707. On July 17, 2009, the EEOC filed its First Amended Complaint to include ABM Janitorial Services- Northern California as a defendant.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1  (Docket # 118 (EEOC's First Amended Complaint) attached to Lorena Garcia-Bautista Decl. at

2  ¶3 as Exhibit "2.")

3       Prior to the filing of this suit, the Defendants were put on notice that the EEOC was

4  investigating on behalf of a group of aggrieved employees since both the charge and the

5  administrative findings alleged class-wide violations.

6          a.       **Defendants Hired a Convicted Rapist and Promoted Him to**

7                    **Supervise a Female Workforce, Working at Night in Empty**

8                    **Buildings.**

9       Defendants' pattern and practice of sexual harassment includes substandard hiring

10  decisions and deficient supervisory practices.  Defendants hired Jose Vasquez, a convicted rapist

11  in 2004.  During deposition, Jose Vasquez also revealed that he had been convicted of felonious

12  weapons and drug charges prior to his hiring at ABM.  His relative, Javier Vasquez, supervised

13  the convicted rapist.  ABM hired Jose Vasquez in the days after he got out of jail on a different

14  felony charge.  When it gave him a job, ABM asked Jose Vasquez to take cleaning supplies to

15  the largely female workforce, provided him access to the women working in empty buildings,

16  and gave him an ABM truck to visit the female workers.  Jose Vasquez used this opportunity to

17  sexually assault and to harass the women working at ABM.

18       Within a few months, ABM promoted Jose Vasquez to a supervisor position and

19  provided him with formal, unchecked access to the worksites of the female workers.  In his

20  management position, he continued his pattern of sexually assaulting and harassing ABM's

21  female employees.  Defendants also hired Ruben Vasquez in 2003 or 2004, a brother to the

22  convicted rapist, who was convicted of lewd and lascivious acts against a minor child.

23          b.       **ABM's Supervisor Rapes, Assaults, and Harasses Female**

24                    **Employees at the ABM Worksites.**

25       Class members testified that ABM supervisor Jose Vasquez subjected them to severe

26  sexual harassment.  One class member testified that the ABM supervisor used physical force to

27  rape her.  Another class member testified that the ABM supervisor used physical force and struck

28

Joint Statement of Discovery Disagreement Re:                    -10-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1  her while sexually assaulting her.  He also sexually harassed and inappropriately touched a

2  minor, and sexually harassed a second female teenager.  A larger group of class members further

3  testified to Jose Vasquez's severe sexual harassment.

4          **c.**       **District Court Has Allowed the EEOC to Pursue Discovery**

5                      **Regarding Class Beyond Bakersfield**

6        On August 20, 2008, the parties attended a preliminary scheduling conference.  (Lorena

7  Garcia-Bautista Decl. at ¶4.)  Counsel for the EEOC explained to the Court that the Commission

8  was intending to expand the class and add additional claimants to this suit.  *Id.*  As a result, U.S.

9  District Judge Lawrence J. O'Neill set a March 20, 2009 cut-off for discovery regarding the class

10  determination.  (Docket # 57 (August 20, 2008 Order) attached to Lorena Garcia-Bautista Decl.

11  at ¶5 as Exhibit "3.")  The EEOC may add additional claimants as they become known to the

12  Commission.  See *EEOC v. Scolari's Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1136 (D.

13  Nev. 2007).

14        On December 22, 2008, U.S. Magistrate Judge Theresa A. Goldner granted in part and

15  denied in part Plaintiff EEOC's Motion to Compel Responses to Plaintiff EEOC's Requests for

16  Production of Documents as follows: (1) the names and contact information of janitorial

17  employees employed by Defendants in the counties of Calaveras, Fresno, Inyo, Kern, Kings,

18  Madera, Mariposa, Merced, Stanislaus, Tulare, and Tuolomne, California; and (2) the names and

19  contact information of janitorial employees who have worked with or worked under Jose

20  Vasquez and Javier Vasquez.  (Docket # 67 (December 22, 2008 Order) attached to Lorena

21  Garcia-Bautista Decl. at ¶6 as Exhibit "4.")

22          **d.**       **The EEOC Has Identified Multiple ABM Supervisors Who**

23                      **Sexually Harassed Employees in Central California**

24        Pursuant to the Court's orders mentioned-above, the EEOC has conducted class

25  discovery and confirmed that ABM's pattern or practice of harassment goes beyond Kern

26  County.  The sexual harassment against female employees at ABM is a longstanding problem

27  with disturbingly similar allegations from many female workers.  In most cases, ABM

28  Joint Statement of Discovery Disagreement Re:         -11-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

supervisors used their authority and power to proposition, touch, and make sexual comments to the female workers of whom they were supervising. The harassment continued regardless of any verbal or written complaints made to ABM. After additional discovery, the EEOC's class currently includes 19 individuals who worked in Central California, including Fresno and Visalia.

     e.  **The EEOC Sent Potential Claimant Questionnaires to Current and Former ABM's Janitorial Employees.**

  After receiving ABMs' janitorial employee list, the EEOC sent out cover letters and blank questionnaires to all current and former janitorial employees with the exception of ABMs' current managers. The letter notified the individuals of the pending lawsuit and that the EEOC "would like to speak with [them] to determine if [they] have a viable claim for damages that can be pursued through this lawsuit." Further, the letter instructed the individuals to call the EEOC if they felt they were sexually harassed while working for ABM and/or fill out the questionnaire, which was attached to the cover letter.

     f.  **The EEOC Identified the Names of Individuals Who Responded to the Questionnaires to Defendants, but They Have Made No Attempt to Contact Them.**

  When Defendants served their discovery request seeking the questionnaires, the EEOC properly responded with names of individuals who responded to the questionnaires in its privilege log. During subsequent meetings, the EEOC invited Defendants to contact any of the individuals who were not represented by the EEOC. The EEOC did not attempt in any way to prevent the Defendants from speaking to those employees or former employees, but rather provided them a discreet list to identify exactly who had responded to the EEOC questionnaire. As far as the EEOC knows, Defendants have made no attempt to talk to these employees or former employees. They have not called them. They have not sent letters. They have not set up any meetings.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production   -12-

1

## 2.      The Parties' Meet and Confer Efforts.

2        On May 4, 2009, ABM Janitorial Services- Northern California improperly propounded

3   its First Set of Requests for Production of Documents on the EEOC.  The EEOC had not named

4   ABM Janitorial Services- Northern California as a defendant in this case at the time ABM

5   Janitorial Services- Northern California propounded such discovery on the EEOC.  It was not

6   until July 17, 2009, that the EEOC filed its First Amended Complaint adding ABM Janitorial

7   Services- Northern California as a defendant in this case.

8        Thereafter, on or about June 4, 2009, the EEOC objected to ABM Janitorial Services-

9   Northern California's First Set of Requests for Production of Documents on the grounds that

10  such requests is an improper invasion of the attorney work-product privilege and the attorney-

11  client privilege, and that such requests seeks documents neither relevant nor calculated to lead to

12  the discovery of admissible evidence.  The EEOC also identified the names of the employees

13  who responded to the EEOC's potential claimant questionnaire in its privilege log.

14       After receiving the EEOC's objections, the parties met and conferred in person regarding

15  ABM Janitorial Services- Northern California's requests for production of documents on or

16  about June 15, 2009.  Defense counsel and the EEOC's counsel were unable to reach agreement

17  regarding the EEOC's objections to ABM Janitorial Services- Northern California's requests for

18  production of documents.  The EEOC notified ABM that the parties were unable to reach

19  agreement on the week of July 13, 2009.

20

## III.    THE DISCOVERY REQUESTS AT ISSUE: ABM JANITORIAL SERVICES
21  NORTHERN CALIFORNIA'S FIRST SET OF REQUESTS FOR PRODUCTION OF
    DOCUMENTS
22

## REQUEST FOR PRODUCTION NO. 1
23

24       Exemplars of all form notices, letters, questionnaires, or other written communications

25  that YOU or YOUR attorneys distributed to any current or former ABM employee in connection

26  with this lawsuit requesting information regarding sexual harassment at ABM.

## EEOC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1
27

28  <small>Joint Statement of Discovery Disagreement Re:
    Defendants' Motion to Compel Responses to
    Defendant's First Set of Requests for Production</small>                    -13-

1   The EEOC objects to the term "form" as vague.   The EEOC objects to this request

2   because it is an improper invasion of the attorney work-product privilege and the attorney-client

3   privilege.   The EEOC also objects that the request seeks documents neither relevant nor

4   calculated to lead to the discovery of admissible evidence.

5   **CURRENT STATUS OF DISPUTE OVER REQUEST FOR PRODUCTION NO. 1**

6   Defendants seek all notices, letters, questionnaires, or other written communications that

7   the EEOC distributed to any current or former ABM employee in connection with this lawsuit

8   requesting information regarding sexual harassment at ABM.   Plaintiff, in reliance upon their

9   stated objections, objects to the disclosure of the requested information and documents.

10   **REQUEST FOR PRODUCTION NO. 2**

11   All DOCUMENTS received by YOU or YOUR attorneys in response to all notices,

12   letters, questionnaires, or other written communications that YOU or YOUR attorneys

13   distributed to any current or former ABM employee in connection with this lawsuit requesting

14   information regarding sexual harassment at ABM.

15   **EEOC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

16   The EEOC objects to this request because it is an improper invasion of the attorney work-

17   product privilege and the attorney-client privilege.   The EEOC also objects that the request seeks

18   documents neither relevant nor calculated to lead to the discovery of admissible evidence.

19   **CURRENT STATUS OF DISPUTE OVER REQUEST FOR PRODUCTION NO. 2**

20   Defendants have narrowed their request to all responses that the EEOC has received to all

21   notices, letters, questionnaires, or other written communications distributed to any current or

22   former ABM employee in connection with this lawsuit requesting information regarding sexual

23   harassment at ABM, *with the exception of any responses received by individuals the EEOC*

24   *currently represents.*   Plaintiff, in reliance upon their stated objections, objects to the disclosure

25   of the requested information and documents.

26   **REQUEST FOR PRODUCTION NO. 3**

27   All DOCUMENTS received by YOU or YOUR attorneys in response to all notices,

28   letters, questionnaires, or other written communications that YOU or YOUR attorneys

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production                    -14-

distributed to any current or former ABM employee in connection with this lawsuit requesting information regarding sexual harassment at ABM, which indicate that the respondent did not experience or witness sexual harassment while employed at ABM.

**EEOC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

The EEOC objects because the term "respondent" is vague and ambiguous.  The EEOC objects to this request because it is an improper invasion of the attorney work-product privilege and the attorney-client privilege.  The EEOC also objects that the request seeks documents neither relevant nor calculated to lead to the discovery of admissible evidence.

**CURRENT STATUS OF DISPUTE OVER REQUEST FOR PRODUCTION NO. 3**

Defendants seek all responses that the EEOC has received to all notices, letters, questionnaires, or other written communications distributed to any current or former ABM employee in connection with this lawsuit requesting information regarding sexual harassment at ABM.  Plaintiff, in continued reliance upon their stated objections, objects to the disclosure of the requested information and documents.

**IV.   PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES**

**A.   DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES IN SUPPORT OF THEIR POSITION**

**1.   A Motion to Compel Is Appropriate To Compel Plaintiff's Responses To Requests For Production Because Such Responses Are Relevant And Are Not Privileged.**

Under Federal Rule of Civil Procedure 26(b)(1), Defendants have the right to discover non-privileged information relevant "to the claim or defense of any party including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  A Motion to Compel may be brought pursuant to Federal Rule of Civil Procedure 37 (a) to compel discovery responses when a party fails to respond that inspection will be permitted or fails to permit inspection pursuant to Federal Rule of Civil Procedure 34, as the EEOC has done in this instance.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

-15-

1

2.     **The Discovery Sought By ABM Janitorial Services Northern**

2

**California's First Set of Requests for Production of Documents is**

3

**Relevant as it Directly Pertains to the EEOC's Allegations against**

4

**Defendants.**

5        The EEOC's objections to the requested discovery based on grounds of relevance are

6    simply without merit.    Federal Rule of Civil Procedure 26 (b) provides, in relevant part, the

7    following:

8            Parties may obtain discovery regarding any nonprivileged matter
             that is relevant to any party's claim or defense — including the
9            existence, description, nature, custody, condition, and location of
             any documents or other tangible things and the identity and
10           location   of   persons   who   know   of   any   discoverable
             matter...Relevant information need not be admissible at the trial if
11           the discovery appears reasonably calculated to lead to the
             discovery of admissible evidence.
12

13   Simply put, discovery relevance is "very broad" and "liberally" construed. *Heathman v. United*

14   *States Dist. Court for Cent. Dist.*, 503 F.2d 1032, 1035 (9th Cir. 1974); *United States v.*

15   *Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995).

16       The EEOC distributed its letter and questionnaire for the specific purpose of obtaining

17   information about its claims as well as to identify new potential claimants for this case. Because

18   the EEOC purports to bring their sexual harassment claims on behalf of "similarly situated"

19   employees, employee responses to questionnaires indicating whether an employee has been

20   sexually harassed while employed by ABM are directly relevant to the claims alleged in this case

21   as they go to the very core of the claims asserted.  Furthermore, to the extent that the EEOC

22   received responses from individuals indicating that they had never witnessed any harassment or

23   inappropriate conduct by Joe Vasquez while working at ABM, this type of exculpatory

24   information is directly relevant to the allegations set forth in the EEOC's complaint and is

25   directly relevant to Defendants' potential defenses in this matter.  Refusing to disclose the

26   documents on the grounds of relevancy, especially under the broad and liberally construed

27   relevancy standard, is improper.

28   Joint Statement of Discovery Disagreement Re:                    -16-
     Defendants' Motion to Compel Responses to
     Defendant's First Set of Requests for Production

1  **3.    The EEOC's Letter And Questionnaire Themselves Are Not Protected**
2  **By The Attorney Work-product Doctrine Because The Documents**
3  **Have Been Distributed To Third Parties.**

4        The work-product privilege protects information "prepared in anticipation of litigation or

5  for trial by or for another party or its representative." Fed. R. Civ. P. 26 (b)(3)(A); *Moreno v.*

6  *Autozone, Inc.*, 2008 U.S. Dist. LEXIS 90699, at *3 (N.D. Cal. April 1, 2008)[4].  It is a qualified

7  privilege that may be overcome if the party seeking disclosure of the claimed privileged

8  materials "shows that it has substantial need for the materials and cannot, without undue

9  hardship, obtain their substantial equivalent by other means." *Id.* at *4; Fed. R. Civ. P. 26

10  (b)(3)(A)(ii).   While a blank questionnaire may sometimes be protected by the attorney work-

11  product doctrine to the extent it reflects the opinions of counsel, courts have unanimously found

12  that this protection is waived once it is distributed to third parties or in a non-confidential

13  manner. *See, e.g. Moreno*, 2008 U.S. Dist. LEXIS 90699, at *6.  In *Moreno*, defendant sought

14  responses to questionnaires sent by plaintiff's counsel to non-party putative class members. The

15  court noted that, "Arguably, the blank questionnaires are opinion work-product, but that point is

16  moot since Plaintiff's former counsel voluntarily produced the blank questionnaires to

17  Defendant." *Moreno*, 2008 U.S. Dist. LEXIS 90699, at *6.  Furthermore, the court noted that

18  work-product protection may be waived where a party does not take reasonable steps to protect

19  its work-product. *Id.* at *15-16, *citing, United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D.

20  Cal. 2003) (work-product protection is waived where disclosure of the otherwise privileged

21  documents is made to a third party, and that disclosure enables an adversary to gain access to the

22  information).

23        The *Morisky* case is exactly on point with the facts before this Court.  In that case, the

24  court held that questionnaires distributed by plaintiff's attorneys to employees of defendant's

25  company prior to suit being filed were not protected by the work-product privilege. *Morisky v.*

26  *Public Serv. Electric & Gas Co.*, 191 F.R.D. 419, 420 (D.N.J. 2000).  The court relied on the fact

27  _____

[4] Federal Rule of Appellate Procedure 32.1 permits citation of unpublished opinions after January 1, 2007.

28  Joint Statement of Discovery Disagreement Re:                    -17-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1   that the blank questionnaires were not distributed in a "confidential manner" as they were given

2   to employees who then openly distributed them to numerous other employees. *Id.*; *See Also,*

3   *Hudson v. Gen. Dynamics*, 186 F.R.D. 271, 277 (D. Conn. 1999) (any claim of work-product as

4   to the blank questionnaire itself was waived by plaintiff's attorney when the questionnaire was

5   sent out to third party former employees).

6          Here, the EEOC distributed its questionnaire to potentially thousands of current and

7   former employees, at least one of whom openly distributed the letter and questionnaire to other

8   ABM employees.  As such, the EEOC clearly did not distribute its letters and questionnaires in a

9   confidential manner and has therefore waived the protection of any work-product privilege over

10  the questionnaires themselves. *See Morisky, supra*; *Hudson, supra*.

11         Furthermore, the EEOC did not take reasonable steps to ensure that it did not waive its

12  work-product protection with respect to the questionnaires. *See Moreno, supra*.  The EEOC is

13  well aware that Defendants have obtained the letter and questionnaire distributed to ABM

14  employees because counsel for Defendants have explicitly spoken with counsel for the EEOC

15  regarding the re-wording of certain provisions contained in the letter.  Once the EEOC was

16  aware that Defendants had obtained the letter and questionnaire, it did not take any remedial

17  steps to attempt to protect its alleged work-product privilege, such as attempting to protect

18  further disclosure of the letter and questionnaire.  This also serves as a clear indication that the

19  EEOC, like the plaintiff in *Morisky*, does not consider the questionnaire itself to be protected

20  work-product.

21         Ultimately, the EEOC distributed its letter and questionnaire in such a manner that

22  allowed Defendants to obtain access to these documents.  Furthermore, the EEOC made no

23  attempts to remedy the disclosure to Defendants once it learned that Defendants were in

24  possession of said documents.  Accordingly, the circumstances surrounding the EEOC's

25  distribution of the letter and questionnaire affirmatively demonstrate that the work-product

26  privilege does not apply to the letter and questionnaire sent to current and former employees.

27  Accordingly, reliance by the EEOC upon the work-product doctrine in refusing to disclose the

28  requested materials is misplaced and not supported by the law.

Joint Statement of Discovery Disagreement Re:                    -18-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1        **4.**    **Defendants Are Entitled To Discovery Of The EEOC's Questionnaire**

2            **And Responses, With The Exception Of Responses Received By Any**

3            **Individuals Whom The EEOC Currently Represents.**

4            **a.**    **The Questionnaire And The Responses Thereto Are Not**

5                  **Protected By The Attorney-Client Privilege Because There Is**

6                  **No Evidence That The Respondents Desired To Be**

7                  **Represented By The EEOC.**

8        In California, the attorney-client privilege applies to pre-employment communications

9 with an attorney by a prospective client with a view to employing the attorney. *Barton v. United*

10 *States District Court*, 410 F.3d 1104, 1108 (9th Cir. 2005). The word "client" is defined to mean

11 a person who consults a lawyer for the purpose of retaining the lawyer, securing legal advice, or

12 securing advice. *Id.* at 1111; Cal. Evid. Code § 951. In determining whether responses to

13 questionnaires sent to potential class members to gather information or identify new claimants

14 are subject to the attorney-client privilege, courts have decided that the critical inquiry is whether

15 individuals completed the questionnaire for the purpose of retaining the lawyer and whether the

16 individual respondents were ultimately represented by the lawyer. *See, e.g., Barton*, 410 F.3d

17 1104 at 1107 (Where law firm posted a questionnaire on the internet, seeking information about

18 potential class members, court relied heavily on the fact that the respondents were ultimately

19 represented by the law firm after completing the questionnaire in making its finding that

20 attorney-client privilege applied).

21        An attorney-client relationship does not exist across an entire potential class merely when

22 the EEOC has filed a case and identified the putative class. *EEOC v. Collegeville/Imagineering*

23 *Ent.*, 100 Fair Empl. Prac. Cas. (BNA) 154, at *3 (D. Ariz. Jan. 17, 2007) (The EEOC bears the

24 burden of establishing an attorney-client relationship with each class member), *citing, EEOC v.*

25 *Albertson's, Inc.*, 2006 U.S. Dist. LEXIS 72378, at * 18 (D. Colo. Oct. 4, 2006). Rather, an

26 attorney-client relationship commences when the aggrieved individuals take action to manifest

27 their intent to enter the relationship. *Id.; See Also, EEOC v. Int'l. Profit Assocs., Inc.*, 206 F.R.D.

28 Joint Statement of Discovery Disagreement Re:        -19-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

215, 218 (N.D. Ill. 2002) (interview notes between EEOC and potential class members held protected by the attorney-client privilege because each potential class member had affirmatively initiated contact with the EEOC and had affirmatively stated that she wished to be represented by the EEOC), *citing, EEOC v. Mitsubishi Motor Mfg.*, No. 96-1192, slip op. at 6 (C.D. Ill. Oct. 23, 2007) (attorney-client privilege applied because the identified claimants at some point identified themselves to the EEOC as persons seeking representation in the lawsuit).

Courts have found that nearly identical letters sent by the EEOC to potential class members do not result in the formation of an attorney-client relationship. In *Republic Servs.*, the letter sent by the EEOC to potential class members did not explicitly offer the EEOC's services and indicated only that it wished to determine if the recipient may be a witness or have a viable claim that could be pursued through the litigation. *EEOC v. Republic Servs., Inc.*, 2007 U.S. Dist. LEXIS 9729, at *5 (D. Nev. Feb. 5, 2007). Accordingly, the court found that although the idea of representation may have been implicit in the EEOC's letter, it was not the stated purpose of the letter and thus no attorney-client relationship existed between the EEOC and potential class members. *Id.* at 6. As a result, the court compelled the EEOC to identify whether it had sent a letter to potential class members and a list of its potential recipients. *Id.*

Likewise in *TIC-The Industrial Co.*, the Court held that the EEOC could not invoke the attorney-client privilege with respect to the questionnaire sent to potential claimants, with the stated purpose "to determine your legitimacy as a potential claimant." *EEOC v. TIC-The Industrial Co.*, 2002 U.S. Dist. LEXIS 22728 at *20 (E.D. La. Nov. 21, 2002). The questionnaire did not ask the respondents to indicate in any way whether they wished to be represented by the EEOC, had consented to be represented by the EEOC or considered the EEOC to be his or her attorneys and therefore held that the EEOC. *Id.* at *18.

By contrast, when the primary purpose of the questionnaire sent by the EEOC to potential class members was to ask if the claimants *wished to be represented by the EEOC* the responses thereto were privileged. *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D. Ill. 1990) (only

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

-20-

1   those individuals who desired to be represented by the EEOC were asked to complete the

2   questionnaire, which explicitly stated, "If you wish the Commission to seek relief on your behalf,

3   please complete and return the enclosed questionnaire.")

4   Here, the letter and questionnaires used are identical to those discussed in the *Republic*

5   *Services* and *TIC* cases, not like those used in *Bauman*. The surveys requesting information

6   about the recipient's employment at ABM does not explicitly offer the EEOC's services and

7   states that it only serves to determine whether a respondent may have a viable claim. Further,

8   the EEOC requests that respondents fill out the questionnaire attached to its letter, regardless of

9   whether or not they experienced or witnesses sexual harassment while working at ABM. The

10  letter does not even attempt to distinguish between individuals who wish the EEOC to seek relief

11  on their behalf – as stated, it is on government letterhead and includes the directive that the

12  reader "must" respond, which gives the impression that the reader has no choice but to respond.

13  Because the EEOC has made no showing that affirmative steps have been taken by each

14  of the respondents to its questionnaire indicating that they wish to be represented by the EEOC,

15  the questionnaire responses for individuals who are not current claimants are simply not

16  protected by the attorney-client privilege.

17        **b.**    **The Completed Questionnaires Are Not Protected By The**

18                    **Attorney Work-Product Doctrine Because They Contain Fact**

19                    **Work-product Only, Not The Opinions Of Counsel.**

20  It is well established that responses of putative class members to questionnaires are not

21  protected by the attorney work-product doctrine. Additionally, courts have found that even if

22  such questionnaires were protected, requiring defendant to obtain this type of discovery through

23  other methods would be overly burdensome and patently unfair.

24  For example, in *Moreno*, the court granted defendant's motion to compel the responses of

25  putative class members to questionnaires sent by plaintiff's counsel. 2008 U.S. Dist. LEXIS

26  90699, at *17. In reaching its decision, the court relied on the fact that the verbatim responses to

27  questionnaires constituted fact work-product only, rather than opinion work-product and were

28  Joint Statement of Discovery Disagreement Re:       -21-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

therefore subject to discovery.  *Id.* at *6, *citing, In re Qwest Commc'ns. Intl., Inc. Sec. Litig.*, 2005 U.S. Dist.  LEXIS 19129, at *16 (D. Colo. Aug. 15, 2005) (recorded statements by a witness constitute fact work-product subject to discovery); *see also, Young v. State of California*, 2007 U.S. Dist. LEXIS 97485, at *2 (S.D. Cal. Oct. 1, 2007) ("Questionnaires completed by third persons are not work-product.  The documents at issue are the verbatim statements of witnesses, not the thoughts or impressions of counsel"); *Hudson v. Gen. Dynamics*, 186 F.R.D. at 277 (questionnaires completed by former employees were not protected by the attorney-client privilege or work-product doctrine since the questionnaires were "simply witness statements with none of the indicia or purpose of any privilege"); *Searcy v. eFunds Corp.*, 2009 U.S. Dist. LEXIS 16986, at *7 (N.D. Ill. Mar. 5, 2009) (work-product doctrine does not apply to completed questionnaires that were sent to putative class members by plaintiff's counsel).

It is evident that based on the well established case law, the responses to the EEOC's questionnaire are not protected by the attorney work-product privilege.  The responses to the questionnaires are not the work of counsel and in no way reflect the thoughts or impressions of counsel.  Furthermore, obtaining the questionnaire responses by any other means would require the parties to take and/or defend an extensive amount of third party depositions to find out whether the respondents have experienced or witnessed harassment or to the contrary have worked at ABM and never witnessed any inappropriate conduct.  Particularly here, where Defendants are already faced with having to take over 20 depositions just to explore the allegations of claimants themselves, this would be unduly burdensome and costly for all parties involved.  Courts when faced with situations like the present one, do not hesitate in allowing discovery of such matters in order to save time, money and costs for all involved.  *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 652 (D. Alaska 1994) (noting that forcing defendants to depose each of the respondents to the questionnaire would be "the hard and expensive way" rather than the "more efficient and less costly way" and would serve only to elevate form over substance.); *Morisky*, 191 F.R.D. at 426 (granting defendant's motion to compel 141 questionnaires completed by potential class members, holding that it would be patently unfair

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production                    -22-

1    and burdensome to require the defendant to obtain this discovery through other means such as

2    deposing each of the 141 individuals or serving 141 sets of interrogatories); *see also, Agee v.*

3    *Wayne Farms, L.L.C.,* 2007 U.S. Dist. LEXIS 7339, at *13 (S.D. Miss. Oct. 1, 2007), *citing*

4    *Gates v. Rohm and Haas Co.*, 2006 U.S. Dist. LEXIS 85562, at *19 (E.D. Pa. Nov. 22, 2006)

5    (purely factual information contained on the completed questionnaires is not protected,

6    and...requiring the defense to go through the laborious process of using the already produced list

7    of employees for preparing and serving, and the plaintiffs and their counsel to go through the

8    equally laborious process of answering and/or defending, interrogatories or depositions would be

9    overly burdensome and unnecessarily expensive and time-consuming).

10

11   **B.     PLAINTIFF EEOC'S CONTENTIONS AND POINTS AND**

12          **AUTHORITIES IN SUPPORT OF ITS POSITION**

13          **1.     The Questionnaires and Responses are Privileged and Therefore**

14                 **Should Not be Discoverable**

15                 **a.     The Questionnaires and Responses are Protected from**

16                        **Disclosure by the Work-product Doctrine Because These**

17                        **Documents Were Prepared For Litigation**

     The EEOC's potential claimant questionnaires and the responses are protected by the

18   attorney work-product doctrine because there is no dispute that the questionnaire was sent to the

19   employees *after* the suit was filed.  Material is considered work-product if it "would not have

20   been generated but for the pendency or imminence of litigation."  *Kintera, Inc. v. Convio, Inc.*,

21   219 F.R.D. 503, 510 (C.D. Cal. 2003).  The work-product doctrine protects from disclosure

22   communications between the EEOC attorneys and claimants.  *See generally Hickman v. Taylor*,

     329 U.S. 495 (1947); *Upjohn Co. v. United States*, 449 U.S. 383, 397-42 (1981); Fed. R. Civ. P.

23   26(b)(3).

24          The work-product doctrine also extends beyond the attorney-client relationship and

25   extends to protect the attorney's communications with potential claimants or witnesses.  Here,

26   the EEOC sent out questionnaires in order to identify potential claimants pursuant to the Court's

27   orders and the EEOC's broad power to seek group wide relief under Title VII.  These potential

28

Joint Statement of Discovery Disagreement Re:                    -23-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

claimant questionnaires and the responses are protected regardless of whether the employee was identified as a claimant in this case. The EEOC's cover letter made it clear that the Commission was seeking potential claimants by stating "We would like to speak with you to determine if you have a viable claim for damages that can be pursued through this lawsuit." Further, the letter instructed the employees to call the EEOC if they felt they were sexually harassed while working for ABM and/or fill out the questionnaire, which was attached to the cover letter. The letter also gave the potential claimant a deadline in which to respond to the questionnaire given the Court's order.

Moreover, courts have extended the work-product privilege to cover questionnaires and responses to the questionnaires. *E.g., EEOC v. The Pasta House Co.*, 1996 WL 120648, *3, 70 Fair Empl. Prac. Cas. (BNA) 61 (E.D. Mo. 1996) (in a class sex hiring discrimination case, the court held that questionnaire responses deserve work-product protection). *EEOC v. General Motors Corp.*, 1997 WL 807862 at *2 (E.D. Mo. Nov. 24, 1997)(denying defendant's motion to compel production of completed damages questionnaires because the "questionnaire was protected under the work-product doctrine"); *Hoffman v. United Telecommunications, Inc.*, 1989 WL 81060 (D. Kan. March 6, 1989)(upholding prior order denying defendant's motion to compel plaintiff-intervenor EEOC's production of completed questionnaires by claimants in sex discrimination suit under work-product doctrine); *EEOC v. Plessey, Inc.,* 1981 WL 2441 (D. Kan. April 30, 1981)(denying defendant's motion to compel production of responses to questionnaire EEOC mailed to various employees comprising the group of affected individuals under work-product doctrine); *Connelly v. Dunn & Bradstreet, Inc.*, 96 F.R.D. 339, 342 (D. Mass. 1982) (questionnaires constitute work-product).

Furthermore, in *EEOC v. The Pasta House Co.*, the court held that notes of claimant interviews conducted by EEOC's attorney or paralegal assistant were protected as work-product, citing language from *Upjohn* that disclosing an attorney's notes of witness' oral statements would tend to reveal the attorney's mental processes. *EEOC v. The Pasta House Co.*, 1996 WL 120648, *3, 70 Fair Empl. Prac. Cas. (BNA) 61 (E.D. Mo. 1996). Similarly, EEOC interview notes obtained after a suit was filed are protected by the work-product privilege. *EEOC v. Int'l Profit Assocs., Inc.*, 206 F.R.D. 215, 219 (N.D. Ill. 2002). In that case, Defendant moved to compel the production of "notes of all interviews with current and former … employees, regardless of whether they are members of the purported class…" *Id.* at 218.

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

-24-

1    Further, in *Ford v. Phillips Electronics Instruments Co.*, the court held that defense

2 counsel's inquiry of nonparty deponent could not "include questions that tend to elicit the

3 specific questions posed to the witness by plaintiff's counsel [at earlier, private meeting], the

general line of inquiry pursued by plaintiff's counsel, the facts to which plaintiff's counsel

4 appeared to attach significance, or any other matter that reveal[ed] plaintiff's counsel's mental

5 impressions concerning th[e] case." *Ford v. Phillips Electronics Instruments Co.*, 82 F.R.D. 359,

6 361 (E.D. Pa. 1979); *see also Ceco Steel Products Corp. v. H.K. Porter* Co., 31 F.R.D. 142 (N.D.

7 Ill. 1962).

8    Here, the EEOC sent out questionnaires to identify other victims of sexual harassment

9 and/or constructive discharge pursuing to its broad power for seeking group wide relief.  The

10 EEOC uses two mechanisms to pursue this class case.  First, the EEOC brings a class suit under

11 Section 706.  The Supreme Court has recognized, "the EEOC need look no further than section

12 706 [of Title VII] for its authority to bring suit in its own name for the purpose, among others, of

13 securing relief for a group of aggrieved individuals." *General Tel. Co. v. EEOC*, 446 U.S. 318,

14 324 (1980).  The Supreme Court explained, "[w]hen EEOC acts... it acts also to vindicate the

public interest in preventing employment discrimination." *Id.* at 326.    Second, Congress

15 through Title VII has authorized a class vehicle specific to the EEOC under Section 707, "[t]he

16 EEOC is the only federal law enforcement entity that can pursue pattern or practice claims

17 against private entities." *EEOC v. Scolari's Warehouse Markets, Inc.*, 488 F.Supp.2d 1117,

18 1136 (D. Nev. 2007); *see also* 42 U.S.C. § 2000e-6 ("Section 707").    Federal courts have

19 determined that, "In a pattern or practice case, the EEOC acts both for the benefit of specific

20 individuals who are subject to discrimination by their employer and 'to vindicate the public

21 interest in preventing employment discrimination." *EEOC v. Mitsubishi Motor Mfg. of Am. Inc.*,

22 990 F. Supp. 1059, 1076 (C.D. Ill. 1998).

23    The responses to the questionnaires are also protected by the work-product doctrine even

24 though the potential claimants have filled out the responses themselves.  Defendants are entitled

25 to the underlying facts but are not entitled to the EEOC's work-product, the questionnaires and

26 the responses to the questionnaires.  The responses to the questionnaires are protected as opinion

27 work-product because the disclosure of such responses will disclose the EEOC's questionnaire,

28

Joint Statement of Discovery Disagreement Re:                   -25-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

which in turn reveal the EEOC's attorneys' mental processes. Thus, the disclosure of the EEOC's questionnaires and the responses will reveal the EEOC's attorney's mental impressions, conclusions, opinions, and/or legal theories. *Russell v. General Electric Co.*, 149 F.R.D. 578, 581-82 (N.D. Ill. 1993) (recognizing that witness responses to attorneys' questions reveal attorneys' mental impressions). Further, the Supreme Court has protected witness statements and such statements in questionnaires under the work-product doctrine. *Hickman*, 329 U.S. at 498. Thus, the EEOC potential claimant questionnaires, all responses, and the interview notes are all protected under the work-product doctrine.

### b. The EEOC Has Not Waived the Attorney Work-product Doctrine.

As previously stated, the EEOC's potential claimant questionnaire and the responses are protected by the attorney work-product doctrine. Under certain limited circumstances the attorney work-product doctrine may be waived. However, the EEOC has not waived the attorney work-product doctrine because (1) the EEOC's counsel has not engaged in any unethical misconduct when it sent out questionnaires to potential claimants pursuant to this Court's orders; (2) the EEOC has not voluntarily produced any letters or questionnaires to Defendants or any adverse party; (3) the EEOC has not produced the potential claimant questionnaires to the general public because the EEOC only distributed its questionnaire to current and former ABM employees.

Defendants' reliance on *Moreno v. Autozone, Inc.* is misplaced for the proposition that the questionnaires themselves are not protected by the attorney work-product doctrine because it has been waived. *Moreno v. Autozone, Inc.*, 2008 U.S. Dist. LEXIS 90699, at *6 (N.D. Cal. April 1, 2008). *Moreno* is distinguishable because the court found waiver of the attorney work-product privilege due to the former attorney's unethical conduct by initiating unauthorized contact with represented parties. *Id.* at *4. The court in that case held "This unauthorized contact by former counsel is what yielded the work-product at issue now—*i.e.*, the responses to questionnaires, witness statements, and correspondence from witnesses" and "[t]o correct the

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

-26-

1   harm to the adversary system caused by counsel's unethical conduct, there should be disclosure."

2   *Id.*

3       Further, the court in *Moreno* held that "[t]he blank questionnaires are opinion work-

4   product, but that point is moot since Plaintiff's former counsel voluntarily produced the blank

5   questionnaires to Defendant." *Id.* at *2. Here, the EEOC has not voluntarily produced any

6   letters or questionnaires to Defendants. Moreover, this case is distinguishable from *Moreno v.*

7   *Autozone* because the EEOC objected by asserting the privileges and providing Defendants with

8   its privilege log when Defendants requested the EEOC to produce the information.

9       Defendants also cite to *U.S. v. Bergonzi* to support its position that the work-product

10  protection is waived where disclosure of the otherwise privileged documents is made to a third

11  party, and that disclosure enables an adversary to gain access to the information. *U.S. v.*

12  *Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003). *Bergonzi* is also distinguishable because the

13  court found that the company's disclosure to the government of documents created by the law

14  firm in the course of its internal investigation constituted disclosure to an adverse party. *Id.* at

15  498. Here, the EEOC did not disclose the letters and/or questionnaires to an adverse party. The

16  EEOC only disclosed the letters and questionnaires to potential claimants, who are Defendants'

17  current and former employees.

18      Similarly, the *Morisky* case is distinguishable from this case. In that case, the court held

19  that the work-product doctrine did not protect the blank questionnaires because they were

20  distributed in a firehouse that was open to the general public where any person, even a person not

21  employed by the employer, could have attended. *Morisky*, 191 F.R.D. at 423. Here, the EEOC

22  distributed its questionnaire to current and former ABM employees. Further, *Morisky* is

23  distinguishable from this case because in that case the questionnaire was sent to the employees

24  *prior* to the suit being filed. Here, there is no dispute that the EEOC's questionnaire was sent to

25  the employees *after* the suit was filed.

26      In addition, the *Hudson v. General Dynamics Corp.* case is distinguishable from this

27  case. In that case, the plaintiff's attorney represented to the court that his purpose of obtaining

28

Joint Statement of Discovery Disagreement Re:                    -27-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1  the names of the employees was to contact them as potential witnesses and not to solicit them as

2  prospective clients. *Hudson v. General Dynamics Corp.*, 186 F.R.D. 271, 276 (D. Conn. 1999).

3  As a result, that court held that the attorney-client privilege did not apply because the

4  questionnaires were "[c]ompleted not for the purpose of obtaining legal advice, but solely to

5  serve as witness statements…" *Id.* at 277. Here, the questionnaires were not only sent out to

6  identify witnesses but they were sent out to identify potential claimants.

              c.       **Defendants Have Not Shown "Substantial Need" or "Undue**

7

8                         **Hardship" Because Defendants Already have the Names and**

9                         **Contact Information of Its Current and Former Employees.**

10        Federal Rule of Civil Procedure 26(b)(3) provides in pertinent part:

11            [A] party may not discover documents … that are prepared in

12            anticipation of litigation or for trial by or for another party… but

13            …, those materials may be discovery if: …the party shows that it

14            has substantial need for the materials to prepare its case and

15            cannot, without undue hardship, obtain their substantial equivalent

          by other means.

16

17        Because the work-product privilege attaches to the questionnaires, Defendants must

18  establish a "substantial need" and "undue hardship" for the questionnaires and the responses.

19  Fed. R. Civ. P. 26(b)(3). However, Defendants have failed to make a showing that it has a

20  substantial need for the material and that they are unable without undue hardship to obtain the

21  information by other means, because Defendants already have the names of the individuals who

      responded and Defendants have the contact information of its current and former employees.

22

23        In *In re Ashworth, Inc. Securities Litigation*, the district court found the defendants could

24  not show undue hardship or substantial need for the names of persons with whom plaintiffs'

25  counsel communicated because the "individuals [were], for the most part, defendant's own

26  employees." *In re Ashworth, Inc. Securities Litigation*, 213 F.R.D. 385, 390 (S.D. Ca. 2002).

27  Despite this authority, which allows a plaintiff to withhold the names, the EEOC has been

28

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production        -28-

1   reasonable by providing the names of Defendants' employees who have responded to the

2   EEOC's potential claimant questionnaire.  Defendants also have the contact information of its

3   current and former employees and can contact these individuals to obtain the facts.  Thus, the

4   information Defendants seek relates to its own employees or former employees and is

5   information which is under their own control and easily accessible.  Despite having this

6   information, Defendants have not contacted these individuals.  As such, Defendants cannot assert

7   undue hardship because they have at their disposal other ways to obtain the information without

8   infringing on attorney work-product doctrine and attorney client privilege.

9       Further, Defendants' claim that obtaining the questionnaires responses by any other

10  means would require them to take an extensive amount of depositions is unfounded.  If

11  Defendants truly want to know about the janitorial employees' knowledge of the issues in this

12  case, nothing prevents Defendants from contacting the individuals by telephone and/or sending

13  out their own questionnaire.  Thus, Defendants have no substantial need for the information and

14  would not experience any undue hardship in obtaining equivalent information, to justify

15  disclosure in light of the applicable privilege.

16       **d.     The Questionnaires and Responses are Protected from**

17            **Disclosure by the Attorney-Client Communications Privilege.**

18       Again, the EEOC sent out the potential claimant questionnaire in order to identify

19  additional claimants pursuant to the Court's orders and its broad power to seek group wide relief

20  under Title VII.  Federal common law controls the application of the attorney/client privilege in

21  cases brought under federal law.  *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th

22  Cir. 1992) (citations omitted).  The attorney/client privilege applies to confidential

23  communications between a client and his or her attorney.  *Id.*  The scope of the privilege includes

24  "confidential communications made by a client to an attorney to obtain legal services."  *Id.*

25  (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  As a result, "correspondence, bills,

26  ledgers, statements, and time records which also reveal the motive of the client in seeking

27  representation, litigation strategy, or the specific nature of the services provided, such as

28

Joint Statement of Discovery Disagreement Re:                    -29-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

1    researching particular areas of law, fall within the privilege." *Id.* (citing *In re Grand Jury*

2    *Witness (Salas & Waxman)*, 695 F.2d 359, 362 (9th Cir. 1982)).

3         Moreover, courts have applied the privilege to "[c]ommunications between prospective

4    class members and EEOC counsel and their agents." *EEOC v. Int'l Profit Assocs., Inc.*, 206

5    F.R.D. 215, 219 (N.D. Ill. 2002) (citing *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D.

6    Ill. 1990); *EEOC v. Chemsico*, 203 F.R.D. 432, 87 Fair Empl. Prac. Cas. (BNA) 278 (E.D. Mo.

7    2001) (same); *EEOC v. Georgia Pacific Corp.*, 11 Fair Empl. Prac. Cas. (BNA) 722 (D. Ore.

8    1975) (same); *see also Gormin v. Brown-Forman Corp.*, 133 F.R.D. 50, 53 (M.D. Fla. 1990).

9    In *Bauman v. Jacobs Suchard*, the Defendant requested from the EEOC (1) any letters sent from

10   the EEOC to current and former employees of Defendant; and (2) any documents received from

11   current and former employees in response to the EEOC's letter. *Bauman*, 136 F.R.D. at 461. The

12   letters in dispute were questionnaires sent to Defendant's former employees who were not

13   plaintiffs in that suit. The district court specifically found those communications between EEOC

14   counsel and potential claimants were privileged, even though the EEOC had not filed the ADEA

     suit at the time the communications occurred. *Id.* at 462.

15        Further, the attorney-client privilege applies to "communication… for the purpose of

16   securing primarily… legal services or assistance in some legal proceeding." *U.S. v. United Shoe*

17   *Machinery Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950); *accord Westinghouse Electric Corp. v.*

18   *Kerr-McGee Corp.*, 580 F.2d 1311, 1319 & n. 12 (7th Cir.), *cert. denied*, 439 U.S. 955 (1978)

19   ("fiduciary relationship existing between lawyer and client extends to preliminary consultation

20   by a prospective client with a view to retention of the lawyer, although actual employment does

21   not result.")

22        Here, the discovery sought, like that in *Bauman*, concerns letters the EEOC may have

23   sent to current and former employees of the Defendants. The information that Defendants seek

24   falls within the attorney/client privilege because it was between EEOC counsel and potential

25   claimants. Similarly, like the information sought in *Clarke*, the communications here could

26   reveal the motive of the potential class members in seeking representation, litigation strategy, or

27   the specific nature of the services provided because the letter specifically seeks information

28   

Joint Statement of Discovery Disagreement Re:                    -30-
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

relating to a "viable claim" and the cover letter specifically states "Please contact us ... if you felt you were sexually harassed while working for ABM" and "In addition, please fill out the attached questionnaires." (*See* Letter attached as Exhibit B to Hayward Decl.).

Further, the privilege covers "correspondence between attorney and client" and does not make a distinction as to whether the correspondence came from the attorney or from the potential client. *In re Grand Jury Witness (Salas & Waxman)*, 695 F.2d at 362. Hence, the privilege regarding a potential client's communications with counsel is designed to protect information that "reveals the client's motivation for creation of the relationship or possible litigation strategy." *Id.* Accordingly, the attorney/client privilege protects from disclosure the information sought by Defendants.

Defendants cite to *EEOC v. Collegeville/Imagineering Ent.* to support its position that an attorney-client relationship does not exist across an entire potential class merely because the EEOC has filed a case and identified the putative class. *EEOC v. Collegeville/Imagineering Ent.*, 100 Fair Empl. Prac. Cas. (BNA) 154, at *3 (D. Ariz. Jan. 17, 2007). However, the court in *Collegeville/Imagineering Ent.* found that "[a]n attorney-client relationship commences when the aggrieved individuals take action to manifest their intent to enter the relationship." *Id.* The court in *Collegeville/Imagineering Ent.* reiterated that "Courts have found such a relationship to exist when an individual contacted the EEOC through questionnaires and phone calls..., consulted the EEOC with an intent to seek legal advice,... or signed an affidavit stating a belief that an attorney-client relationship existed,... *Id.*

Finally, Defendants' cite to *EEOC v. Republic Servs., Inc.,* which is particularly helpful to the EEOC's position. There, the court instructed the agency to provide the names of the people to whom it sent questionnaires. The Court explained, "although courts have extended work-product status to EEOC questionnaire responses and interview notes, the names of those completing responses have not been protected." *EEOC v. Republic Servs., Inc.*, 2007 U.S. Dist. LEXIS 9729, at *8 (D. Nev. Feb. 5, 2007). The court cited with approval to *EEOC v. Pasta House Co. Id.* at *8. (citing to *EEOC v. Pasta House Co.*, 1996 WL 120648, 70 Fair Empl. Prac. Cas. (BNA) 61 (E.D. Mo. 1996)). The *Republic Services* court explained that the *Pasta House*

Joint Statement of Discovery Disagreement Re:
Defendants' Motion to Compel Responses to
Defendant's First Set of Requests for Production

-31-

1  court "reasoned that protecting the questionnaires would protect the EEOC from revealing its

2  work-product, but give the defendants an opportunity to obtain information by sending out its

3  own questionnaire." *EEOC v. Republic Servs., Inc.*, 2007 U.S. Dist. LEXIS 9729, at *8. Here,

4  this is precisely what the EEOC has done as it has already provided the Defendants with the

5  names so that they may conduct their own investigation. Thus, even in Defendants' own cases,

6  the courts would not compel production of the questionnaires or responses. *Id.*

7       Thus, ABM's current or former janitorial employees' responses are privileged because

8  such employees have taken an affirmative step by responding to the EEOC's potential claimant

9  questionnaire. Further, the EEOC's cover letter notified ABM's current and former janitorial

10  employees that the EEOC "would like to speak with [them] to determine if [they] have a viable

11  claim for damages that can be pursued through this lawsuit." The cover letter also instructed the

12  individuals to call the EEOC if they felt they were sexually harassed while working for ABM

13  and/or fill out the questionnaire, which was attached to the cover letter.

14  **V.   CONCLUSIONS**

15       **A.   DEFENDANTS' CONCLUSION**

16       For all the foregoing reasons, Defendants respectfully request that the Court grant its

17  Motion to Compel. The discovery sought by way of ABM Janitorial Services Northern First Set

18  of Requests for Production of Documents is directly relevant to the claims and defenses in this

19  action and, moreover, is neither protected by the attorney-client privilege, nor the attorney work-

20  product doctrine. Accordingly, Defendants are entitled to obtain all questionnaires sent to

21  current and former ABM employees as well as any responses thereto, with the limited exception

22  of responses made by individuals whom the EEOC currently represents.

23       **B.   PLAINTIFF EEOC'S CONCLUSION**

24       The EEOC respectfully requests that the Court deny Defendants' motion because the

25  questionnaires to potential claimants and the responses are privileged pursuant to under the

26  attorney work-product doctrine as it was prepared for litigation and Defendants can access the

27

28  Joint Statement of Discovery Disagreement Re:                    -32-
    Defendants' Motion to Compel Responses to
    Defendant's First Set of Requests for Production

1    same information by simply sending its own letter or making a call.  Thus, Defendants cannot

2    carry their heavy burden of establishing any undue hardship.  Similarly, the questionnaires and

3    responses are attempts to identify class members and any responses are subject to an attorney-

4    client privilege.

5

6    Date: August 11, 2009                              LITTLER MENDELSON

7

8                                           By:   _____

9                                                 Laura E. Hayward
                                                  Keith A. Jacoby
10                                                Attorneys for Defendants ABM
                                                  INDUSTRIES INCORPORATED;
11                                                ABM JANITORIAL SERVICES, INC.
                                                  and ABM JANITORIAL NORTHERN
12                                                CALIFORNIA

13                                                U.S. EQUAL EMPLOYMENT
                                                  OPPORTUNITY COMMISSION
14

15   Date: August 11, 2009                        By:   _____/s/_____

16                                                Anna Y. Park
                                                  Victor Viramontes
17                                                Lorena Garcia-Bautista
                                                  Trial Attorney
18                                                Attorneys for Plaintiff

19

20   Firmwide:90796059.1 054667.1005

21

22

23

24

25

26

27

28   Joint Statement of Discovery Disagreement Re:          -33-
     Defendants' Motion to Compel Responses to
     Defendant's First Set of Requests for Production