**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>ERIKA MORALES and ANONYMOUS PLAINTIFFS ONE THROUGH EIGHT,<br><br>　　　　Plaintiff Intervenors,<br><br>　　　　v.<br><br>ABM INDUSTRIES INCORPORATED and ABM JANITORIAL SERVICES, INC.; ABM JANITORIAL NORTHERN CALIFORNIA; JOSE VASQUEZ; and DOES 1 - 10 inclusive,<br><br>　　　　Defendants. | Case No. 1:07-cv-01428-LJO-BAK   GSA<br><br>ORDER GRANTING MOTION TO COMPEL PLAINTIFF EEOC'S RESPONSES TO DEFENDANT ABM JANITORIAL SERVICES NORTHERN CALIFORNIA'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS<br><br>(Doc. 119) |

On July 27, 2009, Defendants ABM Industries, Inc., ABM Janitorial Services, Inc., and ABM Janitorial Northern California ("ABM") filed the instant motion. Defendant's seek an order to compel Plaintiff United States Equal Employment Opportunity Commission (" the EEOC") to produce certain written documents ABM asked for in their Request for Production of Documents dated May 4, 2009. (Doc. 119.) In compliance with Local Rule 23-232, the parties met, conferred, and filed a Joint Statement of Discovery Disagreements (" Joint Statement") . (Doc. 123.) Based on representations made in that Joint Statement by the parties, the requested documents now in dispute are a specific cover letter and form of questionnaire sent from the EEOC to potential

1

claimants in the underlying action, as well as copies of the completed questionnaires received from current or former ABM employees who are not currently represented by the EEOC.  The EEOC objects to the disclosure of such documents on various grounds, including relevance, vagueness, attorney-client privilege, and attorney work product. The withheld material is described in a privilege/protection log appended to the EEOC's response to ABM's Request for Production.

This motion was taken under submission on September 8, 2009.

The Court has read and considered the pleadings and the arguments of counsel, and makes the following ruling.

**RELEVANT BACKGROUND**

On September 28, 2007, the EEOC commenced this civil action against Defendants ABM Industries, Inc. and ABM Janitorial Services, Inc.  (Doc. 1.)  ABM Janitorial-Northern California was added as a defendant by way of the First Amended Complaint filed July 17, 2009.  (Doc. 118.) The EEOC's complaint alleges unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, charging that ABM engaged in unlawful employment practices and in a pattern of such practices by subjecting Erika Morales and others similarly situated to a sexually harassing hostile work environment and quid pro quo sexual harassment by ABM supervisors and other employees at various ABM work sites. The complaint further alleges that ABM failed to exercise reasonable care to prevent and correct the sexually harassing behavior promptly.  Moreover, Erika Morales, and others similarly situated, were allegedly constructively discharged for complaining about, or rebuking, the sexual harassment.

On November 30, 2007, ABM filed an amended answer to the complaint, denying most of the allegations and raising various defenses.  (Doc. 15.)  On March 7, 2008, Erika Morales and eight anonymous plaintiffs filed a complaint in intervention against ABM and Jose Vasquez.  (Doc. 27.)  Answers to the complaint in intervention were subsequently filed by all named defendants. On August 5, 2009, ABM filed their answers to the First Amended Complaint, again denying the charging allegations and raising various defenses to those allegations.  (Doc. 122.)

1    Pretrial management efforts in this proceeding included an order setting a deadline of
2 March 20, 2009 by which all discovery regarding "class certification" was to be completed. (Doc.
3 57.) After another order of this Court resolved the parties' dispute over the scope of the "class" of
4 potential claimants (see Doc. 67), ABM produced a list of approximately 4,000 current or former
5 ABM janitorial staff employees who might fit within the parameters of that "class." (Declaration of
6 Laura E. Hayward ("Hayward Dec."), first page, paragraph 3.) It appears from the statements made
7 in connection with this discovery dispute that the EEOC sent those individuals – none of whom
8 were current ABM supervisors – a letter along with an enclosed questionnaire. The letter provided
9 the recipient with information regarding this lawsuit and invited the recipient to contact the EEOC
10 if the recipient felt that s/he was sexually harassed while working at ABM. The questionnaire
11 solicited from the recipient certain factual information relevant to the claims at issue in this action.

12    One of the ABM employees who received the letter and questionnaire was working for
13 ABM at the time. That employee gave the documents to a superior in the organization. (Hayward
14 Dec., first page, paragraph 4.) As a consequence, ABM gained access to the cover letter and form
15 questionnaire.

16    On May 4, 2009, ABM served a Request for Production of Documents on the EEOC,
17 seeking all notices, questionnaires and letters that were sent by the EEOC to current and former
18 ABM employees as well as any responses received to such questionnaires. (Hayward Dec., 2,
19 paragraph 7.) The EEOC responded by objecting to each of the requests on various grounds,
20 including claims of attorney-client privilege and attorney work product protection. (Doc. 123, 13-
21 15.) The documents withheld on the basis of privilege or protection were described in a log
22 appended to the EEOC's response to ABM's Request for Production. (Hayward Dec., 2, paragraph
23 8.) The names of the individuals who responded to the questionnaires are listed in that log.

24    On July 20, 2009, ABM brought this motion to compel the EEOC to respond to their
25 requests for production of documents. (Doc. 119.) In compliance with Local Rule 23-232, the
26 parties met, conferred, and filed their Joint Statement. (Doc. 123.) According to representations
27 made in the Joint Statement about the current status of their discovery dispute (see Joint Statement,
28

13-15), the requested documents now in dispute are the form of questionnaire sent by the EEOC to potential claimants in the underlying action, copies of the completed questionnaires received by the EEOC from current or former ABM employees who are not currently represented by the EEOC, and the form of cover letter sent by the EEOC to potential claimants which included the form of questionnaire.[1] The EEOC continues to object to the production of all these documents on the grounds of attorney-client privilege, attorney work-product protection, and lack of relevance. Additionally, the EEOC continues to object to the production of documents sought in two of the three Requests on the ground that the request is either vague or ambiguous.

## DISCUSSION & ANALYSIS

A.   *Discovery Overview.*

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible," United States v. Proctor & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983 (1958), and to narrow and clarify the issues in dispute, Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385 (1947).

Fed. R. Civ. P. 26(b)(1) establishes the general scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Although [discovery] does have its boundaries, the scope of discovery is broadly construed." Babbitt, et al. v. Albertson's Inc., 1992 WL 605652 at *5 (N.D. Cal. 1992) (citing Oppenheimer Fund v. Sanders, 427 U.S. 340, 98 S.Ct. 2380 (1978)). Furthermore, in Title VII cases, courts should avoid placing unnecessary limitations on discovery. Jackson v. Montgomery Ward & Co.,

---

[1] A court may rule on a work production objection only with reference to specific documents. A generalized work product objection cannot be heard, since any ruling would be a non-binding advisory opinion. (Handling Federal Discovery – 3-33)

173 F.R.D. 524, 526 (D. Nev. 1997). And, finally, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998); Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990).

B.  *Matters Not in Dispute.*

The parties claim that the original parameters of this discovery dispute have not been narrowed except as to those questionnaires completed by persons currently represented by the EEOC. (See Joint Statement at 13-15.) A careful reading of the contentions and arguments contained in the Joint Statement of Discovery Disagreements suggests otherwise. The EEOC's burden of persuasion would compel it to discuss its objections to ABM's requests on the grounds of relevance and vagueness. Oakes v. Halvorsen Marine Ltd., 179 F.R.D. at 283; Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. at 104. No such discussion appears. For that reason, the Court concludes that the EEOC has abandoned its objections based on relevance and vagueness.

C.  *Request for Production of Form of Cover Letter and Questionnaire (Request for Production No. 1) – Application of Attorney-Client Privilege.*

The EEOC objects to the production of the form of cover letter and the form of questionnaire it sent to current and former janitorial employees of ABM claiming that these documents are protected from disclosure by the attorney-client privilege.[2] (See Joint Statement at 13-14, 30-32, and first entry of privilege log attached to Hayward Dec. in Exhibit E.)

As noted earlier, Fed. R. Civ. P. 26(b)(1) protects privileged matter from discovery. Certainly, one of those privileges is that of attorney-client communications. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice ... as well as an attorney's advice in response to such disclosures." In re Grand Jury

---

[2] After carefully reading this section of the EEOC's argument several times, it is not clear to this Court that the EEOC has actually presented a separate argument for application of the attorney-client privilege to the form of questionnaire. Nor does it appear that such an argument has been integrated into the argument it makes with respect to the cover letter. The little attention that is paid to the questionnaire and its status as protected by the attorney-client privilege addresses only the completed responses, not the form of questionnaire itself.

5

1  Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992) (citations omitted).  "Whether a privileged
2  attorney-client relationship exists rests upon the client's intent to seek legal advice and the client's
3  belief that he is consulting an attorney, *i.e.,* someone who will keep the communications
4  confidential."  EEOC v. Johnson & Higgins, Inc., 1998 U.S. Dist. LEXIS 17612, at *11 (S.D. N.Y.
5  1998)(citation omitted).  Still, "[b]ecause the attorney-client privilege has the effect of withholding
6  relevant information from the factfinder, it is only applied when necessary to achieve its limited
7  purpose of encouraging full and frank disclosure by the client to his or her attorney."  Clarke v.
8  American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992) (citations omitted).
9      The EEOC argues that the subject correspondence is protected from disclosure by the
10 attorney-client privilege because (a) it was between EEOC counsel and potential claimants and (b)
11 disclosure of its contents could reveal the motive of the potential class members in seeking
12 representation, litigation strategy, or the specific nature of the services provided.[3]  As authority for
13 its position, the EEOC references the cases of EEOC v. International Profit Associates, Inc., 206
14 F.R.D. 215, 219 (N. D. Ill. 2002), Bauman v. Jacobs Suchard, 136 F.R.D. 460, 462 (N.D. Ill. 1990)
15 and Clarke v. American Commerce National Bank, 974 F.2d 127.  None of these are apposite here.
16     The threshold issue is the status of the professional relationship between the EEOC and the
17 ABM janitorial employees to whom the cover letter and questionnaire were mailed.  The EEOC
18 argues EEOC v. International Profit Associates, Inc., 206 F.R.D. 215, supports its position that the
19 correspondence involved in this case constituted privileged communications between EEOC
20 counsel and all prospective members of the class on whose behalf the EEOC pursued relief (i.e.,
21 the more than 4,000 recipients of the letter), on the basis of the attorney-client relationship.
22 International Profit Associates, Inc. involved a request for production of interview notes taken by
23 the EEOC after filing its lawsuit.  The interviewees were female employees of the defendant who
24 had first contacted the EEOC by returning questionnaires the EEOC had sent to them or by placing

---

[3] Curiously, in arguing this position, the EEOC quotes portions of the letter at issue and, as part of its argument, directs the Court's attention to the copy of the letter attached as Exhibit B to the declaration of ABM's counsel.  (Joint Statement at 30-32).  The EEOC does not request the Court order this letter protected from further use or disclosure in any way.

1  telephone calls in response to a solicitation sent them by the EEOC.  Sometime after these initial
2  EEOC outreach efforts, the women were interviewed by EEOC staff.  Those *later interview notes*
3  were the subject of the discovery dispute, not the initial cover letter, the questionnaire, nor the
4  responses to the questionnaire.  Moreover, during the course of these later interviews, each of these
5  women, identified as a class member, was asked if she wanted the EEOC to represent her in the
6  underlying action and each replied in the affirmative.  Critical to the court's conclusion that the
7  interview notes were protected by the claimed privilege was the women's expressed desire to be
8  represented by the EEOC.  Id. at 218, 219.

9        The facts in the motion at bar differ so dramatically from the facts before the International
10  Profit Associates court that the holding in International Profit Associates is not useful here, let
11  alone persuasive.  There, the communications sought were notes taken by the EEOC from persons
12  who had expressly stated their desire to be represented by the EEOC, in matters germane to the
13  lawsuit, at the time the notes in dispute were created.  Here, the correspondence was sent to a broad
14  class of persons, most of whom  – at least according to the proof presented in connection with this
15  dispute – had not asked the EEOC to represent them in the underlying action at the time the cover
16  letter and questionnaire were sent.  Furthermore, the cover letter involved in this case does not
17  make clear that its purpose was to solicit responses *only* from persons who wanted to be
18  represented by the EEOC in the underlying action.  A fair reading of this letter permits its reader to
19  conclude that the EEOC might also be attempting to identify non-victim witnesses for use in the
20  prosecution of its case.

21        At its core, the EEOC's argument regarding the existence of an attorney-client relationship
22  relies solely on the fact that it sent the letter in order to further develop the group of claimants on
23  whose behalf it sued.  That is not enough.  The mere fact that the letter and questionnaire was sent
24  to a group of potential claimants (and/or witnesses) does not suffice to create the privileged
25  professional relationship.  As noted in EEOC v. Collegeville/Imagineering Ent., 2007 U.S. Dist.
26  LEXIS 3764 at **2-3 (D. Ariz. 2007), when the EEOC brings a Title VII suit, "[a]n attorney-client
27  relationship does not exist across an entire potential class merely when the EEOC file[s] a case and
28

7

identifi[es] a class" (citations omitted).[4]

Similarly unavailing is the EEOC's reliance on the ruling in Bauman v. Jacobs Suchard, 136 F.R.D. 460.  Like this case, Bauman involved a dispute arising out of the requested production of letters sent to the defendant's former employees as well as the completed questionnaires received in response.  These employees were not parties to the Bauman suit.  However, they were persons on whose behalf the EEOC had brought its own separate ADEA action, against the same defendant, and apparently involving the same claims of discrimination.  The primary purpose of the sought-after letter from the EEOC to this group of former employees was to ask if they wished to be represented by the EEOC in its separate action and, if so, to complete the questionnaire.  See EEOC v. Republic Services, Inc., 2007 U.S.Dist. LEXIS 9729 at *5 (D. Nev. 2007).

The Bauman court concluded the requested documents were protected by the attorney-client privilege even though the documents were sent to, and received from, persons other than the Bauman plaintiffs and were actually generated prior to the EEOC's filing of its separate action. Apparently critical to the court's ruling were two facts – first, the letters and questionnaires whose production was sought were from those persons who had expressed a desire to be represented in the EEOC's action[5] and, second, under the ADEA, an individual's right to bring his or her own suit for age-based discrimination ends when the ADEA files suit.  Given this limitation on a person's right to sue when the EEOC brings suit and, apparently, the expressed interest of the respondents in securing representation, the Bauman court reasoned that the EEOC was acting as de facto counsel for the employees whose responses were sought by the discovery motion and those employees should be entitled to the same privilege protection as their employer enjoyed in such cases.  (See

---

[4] Although the Collegeville/Imagineering Ent. court interpreted the International Profit Associates, Inc. opinion as stating that an attorney-client relationship exists when an individual contacted the EEOC through questionnaires and phone calls (Collegeville/Imagineering Ent., 2007 U.S. Dist. LEXIS at *3), this Court cannot agree with that interpretation.  A close reading of International Profit Associates, Inc. shows that it was the *subsequent contacts* (i.e., those occurring after they initially called and/or returned the questionnaires) with the EEOC during which the interviewees expressly affirmed their intention to enter into an attorney-client relationship with the EEOC that established the creation of such a professional relationship.

[5] In EEOC v. Republic Services, Inc., 2007 U.S. Dist. LEXIS 9729 at *5, the court described the letter to potential claimants involved in Bauman as one whose primary purpose was to ask the recipient if s/he wished to be represented by the EEOC and that requested only those recipients who desired to be represented to complete the questionnaire.

8

1  EEOC v. TIC-THE Industrial Company, 2002 U.S. Dist. LEXIS 22728, **5-8 (E.D. La. 2002).)
2  On this basis, the Bauman court ruled that the communications between the EEOC and those
3  persons on whose behalf the EEOC brought its separate ADEA suit were protected by the
4  attorney-client privilege from disclosure.
5      Again, those facts are very different from the case at bar.  Here, the statutory scheme under
6  Title VII does not preclude a person's right to sue for the same alleged discrimination should the
7  EEOC bring a similar suit; the two cases can co-exist under Title VII.  Moreover, there has been no
8  adequate showing that the EEOC's cover letter or questionnaire expressly offered the recipient the
9  EEOC's legal services.  In describing the purpose of the letter, the EEOC – whose burden it is to
10 establish that the privilege applies to the correspondence – asserts that

> the communications here *could* reveal the motive of the potential class members in seeking representation, litigation strategy, or the specific nature of the services provided because the letter specifically seeks information relating to a "viable claim" and the cover letter specifically states "Please contact us ... if you felt you were sexually harassed while working for ABM" and "In addition, please fill out the attached questionnaires [sic]" (emphasis added).

15 (Joint Statement at 30-31.)  As for the contents of the questionnaires, the EEOC argues only that
16 disclosure of the form "will reveal the attorney's mental impressions, conclusions, opinions, and/or
17 legal theories." (Joint Statement at 26.)
18     In seeking to invoke the attorney-client privilege, the EEOC is required to provide the Court
19 with an explanation as to how the information contained in the documents fits within the privilege.
20 In re Grand Jury Witness (Salas and Waxman), 695 F.2d 359, 362 (9th Cir. 1982); Clarke, 974 F.2d
21 at 129.  Despite several readings of the EEOC's argument about why it believes the law supports the
22 claim that all prospective members of the class of injured employees should be treated as legal clients
23 of the EEOC based on the contents and distribution of its letter and questionnaire, the Court finds that
24 a complete and cogent argument has NOT been offered by the EEOC on this critical point.
25 Consequently, the EEOC's efforts do not meet its burden of persuasion.
26     The attorney-client privilege protects confidential communications made by a client to an
27 attorney to obtain legal services.  Fisher v. United States, 425 U.S. 391, 403, 96 S. Ct. 1569 (1976).
28

The Court's own review of the forms of cover letter and the questionnaire the EEOC seeks to shield from disclosure under the attorney-client privilege does not demonstrate a basis for such protection. The Court has found nothing in the form of cover letter that contains protected communications. What is there is information already in various public records, including a general description of the lawsuit, a broad and general description of the EEOC's role in prosecuting this and similar actions, and an assurance that federal law protects any respondent "providing information regarding this case" from retaliation; an invitation to telephone the EEOC if the recipient felt he or she had been sexually harassed while working at ABM; and a general explanation of the EEOC's purposes in filing the lawsuit and in soliciting information from all those receiving the letter, i.e., a desire to determine whether the recipient might have a viable claim for damages that could be pursued through the suit and/or whether the recipient might have been a witness to proscribed conduct, i.e., "sexual harassment in the workplace." Although it appears undisputed that the cover letter was sent, at least in part, to flesh out the group of claimants seeking relief through the EEOC in this action, a fair reading of the letter shows that neither the letter itself nor the questionnaire explicitly offers legal representation to those who respond. Because legal representation is not expressly offered to any of the recipients and because all recipients are directed to respond through answers to the questionnaires, respondents' motivations are, at best, a tangle of speculation. No specific services are offered except the very general representation that the EEOC desires to gather and evaluate information, including possible claims, relevant to the underlying action. These are not the kinds of information protected from disclosure under the attorney-client privilege. See Clarke, 974 F.2d at 129, 130. Similarly, nothing in the questionnaire offers, let alone assures, the respondent that he or she would be legally represented by the EEOC if he or she completed and returned the questionnaire or even that the responses would be kept confidential. Putting all this together, the Court is struck by the similarity between the cover letter in this case and the EEOC's cover letter in EEOC v. Republic Services, Inc., 2007 U.S. Dist. LEXIS 9729. The two are virtually identical. The Republic Services, Inc. court observed,

> In this case the Letter does not explicitly offer the EEOC's services, it indicates only that it wishes [to] determine if the recipient may be a witness or have a viable claim that could be pursued through this litigation. ... Though the idea of representation may be implicit in the Letter, it is not its

stated purpose. Id. at *5. The Republic Services court found that the EEOC's letter to potential claimants not protected by the attorney-client privilege.

Similarly, nothing asked in the questionnaire would be protected from disclosure even were the Court to find that an attorney-client relationship existed at the time the EEOC disseminated these letters and questionnaires. Not all communications between attorney and client are privileged. Clarke, 974 F.2d at 129. Privilege attaches only if the communications constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence. Here, the form of questionnaire is very short, less than two pages; it seeks identifying information (name, address, age, and telephone number); it asks for broad, general and limited information relevant to recipient's employment with ABM; and it seeks general and limited information about the claims pursued by the EEOC (e.g., did you witness or were you the victim of sexual harassment while working at ABM, etc.)  It does not promise or intimate in any way that information disclosed in completing the questionnaire would remain confidential.  These questions do not disclose strategies or theories or confidential client information relevant to the development of its action such that disclosure of the form of questionnaire could reasonably be said to have any chilling effect on the full and frank exchange of information between attorney and client.

Based on the foregoing, the Court concludes that the EEOC has not met its burden in demonstrating that the EEOC's cover letter commenced an attorney-client relationship between the recipients and the agency attorneys. The contents of the EEOC's letter appear virtually identical to the contents found insufficient to create the professional relationship in Republic Services, Inc. At most, the EEOC's cover letter intimates that the future creation of such a relationship might be appropriate but only  with some indeterminate portion of the letter's recipients. Moreover, even if an attorney-client privilege had been created by the distribution of the cover letter to potential class members, nothing in the letter itself or in the accompanying questionnaire reveals the kind of information the privilege is designed to protect.  In light of these facts, the Court finds the instruction in Fisher v. United States controlling: "[S]ince the privilege has the effect of withholding relevant information

from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege." Fisher v. United States, 425 U.S. at 403. For all these reasons, the Court concludes that the EEOC's cover letter and form of questionnaire at issue here are not protected by the attorney-client privilege.

D. *Request for Production of Form of Questionnaire (Request for Production No. 1) – Application of Attorney Work Product Protection.*[6]

The EEOC also resists production of the form of questionnaire that accompanied its cover letter, claiming that the document is protected from disclosure by the attorney work product doctrine.

Fed. R. Civ. P 26(b)(3) addresses the protection of trial preparation materials from discovery. It provides, generally, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" if they are relevant and not otherwise privileged, and if the party seeking discovery "shows a need for the material to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The purpose of the doctrine is to prevent one party from exploiting the other party's efforts to prepare for litigation and to give the parties the freedom and incentive to develop their own cases. O'Connor v. Boeing North American, Inc., 216 F.R. D. 640, 642 (C. D. Cal. 2003) (citations omitted); United States v. Fort, 472 F.3d 1106, 1130 (9th Cir. 2007). The threshold requirements of the protection are that the matter constitutes documents sought by a party that were prepared for trial by a party or a representative of a party. Holgrem v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576-577 (9th Cir. 1992). The party claiming protection under the doctrine has the burden of proving its applicability and that the protection has not been waived; the party seeking disclosure has the burden of showing that it has a substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii);

---

[6] Although the EEOC states at pages 13-14 of the Joint Statement that it claims disclosure of the cover letter is also protected by the attorney work product doctrine, nowhere in its opposition papers does it actually present an argument and authority for its position that the work product protection issue as it applies to the cover letter. That failure is construed as an abandonment of the argument inasmuch as the burden of proof and persuasion rested on the EEOC. _____

1  McMorgan & Co. v. First Cal. Mortgage Co., 931 F. Supp. 703, 709 (N.D. Cal. 1996); O'Connor,
2  216 F.R.D. at 642; Moreno v. Autozone, Inc., 2008 U.S. Dist. LEXIS 90699 *4 (N.D. Cal. 2008).

   The form of questionnaire was included with the cover letter sent to approximately 4,000 persons who were, or had been, janitorial employees of ABM during a certain time period and at specific geographic locations. As earlier noted, it appears there is no dispute that the cover letter and questionnaire were generated, at least in part, in response to an earlier order of this Court directing that the class of claimants be fleshed out by a certain date. Also apparent is the fact that the questionnaire was sent to gather additional facts relevant to the EEOC's claims and to identify witnesses who might not necessarily have, or wish to, pursue a claim against ABM. As already discussed, recipients of the cover letter were not asked to keep the correspondence confidential. Nothing in the questionnaire itself indicates that the document was confidential or that it should not be shared with anyone other than the EEOC. Although none of the addressees were then ABM managers, one of the recipients apparently gave ABM management access to both the letter and questionnaire. The EEOC is aware that ABM was given these documents by one of the recipients (Hayward Dec., first page, paragraph 5) but the EEOC has not requested that the document be somehow sequestered or limited, or that its further dissemination be prohibited.

   This questionnaire was clearly prepared by the EEOC's legal staff during the course of this litigation in order to pursue the interests it sought to vindicate by way of its lawsuit. As such, the questionnaire itself is covered by the attorney work product doctrine. The issue then becomes, did the EEOC waive the protection afforded by the doctrine when it mailed the questionnaire to approximately 4,000 current and former janitorial employees of ABM, excluding current managers?

   Disclosure to a third party does not automatically waive the protection of the work product doctrine. McMorgan & Co. v. First California Mortgage Co., 931 F.Supp. at 709. Because one of the primary functions of the work-product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigation, analysis, and strategies for developing and presenting the client's case, any analysis of work product waiver issues must focus on whether the subject disclosures increased the likelihood that a current or potential opponent in

1  litigation would gain access to the disputed documents. Durkin v. Resolution Trust Corp., 167 F.R.D.
2  447, 454 (S.D. Cal. 1995) (citations omitted); Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 508 (S.D.
3  Cal. 2003).

4  The EEOC argues that it did not waive the attorney work product doctrine because

> (1) the EEOC's counsel has not engaged in any unethical misconduct when it sent out questionnaires pursuant to this Court's orders; (2) the EEOC has not voluntarily produced any letters or questionnaires to Defendants or any adverse party; (3) [sic] the EEOC has not produced the potential claimant questionnaires to the general public because the EEOC only distributed its questionnaire to current and former ABM employees.

(Joint Statement at 26.) Assuming all of these statements to be true, they do not adequately answer the question of whether the EEOC's actions in drafting and disseminating the questionnaire increased the likelihood that a current or potential opponent in litigation would gain access to the disputed document. The fact that the EEOC did not voluntarily produce the questionnaire to ABM current management and that it limited dissemination of the questionnaire to less than the general population does not necessarily equate to the requisite degree of circumspection and care the law requires. It was the EEOC's burden to persuade the Court that waiver of the protection did not occur and it has not done so. Furthermore, given these facts, it is unlikely the EEOC could make such a showing. The EEOC sent the disputed questionnaire to approximately 4,000 current and former ABM janitorial employees before knowing their victimization or witness status, some of whom may have been former ABM managers, many of whom may have separated from their employer on favorable terms, and without any request to maintain the confidentiality of the questionnaire. In view of the number of persons surveyed, the law of probability suggests that some of them will not have interests aligned with those of the EEOC and some may have interests that would be advanced by disclosing the questionnaire to ABM management.

Common sense strongly suggests that the EEOC's actions in disseminating the subject questionnaire increased the likelihood of ABM management gaining access to the document, which is precisely what happened. A current ABM janitorial employee, one of the recipients of EEOC's letter, brought the cover letter and the enclosed questionnaire to more senior ABM staff who had not received the letter or questionnaire from the EEOC, thus enabling ABM's access to the documents.

14

1  (Hayward Dec., first page, paragraph 4.)

2  In light of the foregoing, the Court concludes that the EEOC has failed to demonstrate that it did not waive protection of the form of questionnaire under the attorney work product doctrine. Having arrived at this conclusion, the Court need not reach the issues of "substantial need" or "undue hardship."

E. *Requests for Production of Completed Questionnaires from Non-Clients (Requests for Production Nos. 2 and 3) – Application of Attorney-Client Privilege and Work Product Protection.*

As argued by the parties in their moving papers, at issue here is production of the completed questionnaires. The sought after documents are listed in the EEOC's privilege log that accompanied its responses to ABM's requests for production of documents. Expressly excepted from this request for production are any responses received by individuals whom the EEOC currently represents in this action. (Joint Statement at 14.) Consequently, the EEOC seeks to shield from discovery the responses it received to the questionnaires from persons who are potential claimants and/or witnesses[7].

Communications between an attorney and its client are privileged only if the requisite relationship exists. Regarding those questionnaire responses received from persons other than those whom the EEOC currently represents, the EEOC has not demonstrated that the persons who filled out and returned the questionnaires were seeking to become EEOC clients at the time they completed the document. All recipients of the questionnaire were asked to complete and return it to the EEOC regardless of the individual's status as a potential victim of sexual harassment in the ABM workplace. Nothing in the questionnaire (or letter) expressly invites the respondent to enter into an attorney-client relationship with the EEOC. No affidavits have been produced to show facts that would support a claim that the EEOC legally represents those persons whose questionnaire responses ABM seeks. Simply put, for the same reasons discussed above in section C, there has been no demonstration by the EEOC of a professional relationship sufficient to support the application of the attorney-client privilege to the questionnaire responses ABM seeks in its motion.

---

[7] Inasmuch as the questionnaire asks whether the respondent experienced sexual harassment while working for ABM or knew of anyone who did, respondents could include persons who might have information relevant to ABM's defense, as well as the EEOC's case-in-chief.

Nor would the questionnaire responses from this group of persons be protected by the work product doctrine. Having waived the protection with respect to the form of questionnaire, their responses are essentially verbatim witness statements made by third parties. As such, those responses are not protected by the work product doctrine. See Young v. State of California, 2007 U.S. Dist. LEXIS 97485 at **2-3 (S.D. Cal. 2007).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Compel Plaintiff EEOC's Responses to ABM Janitorial Services Northern California's First Set of Request for Production of Documents as modified in the Joint Statement, i.e., the cover letters and all questionnaires sent to current and former ABM janitorial employees by the EEOC, as well as any responses thereto, except for those responses made by individuals who have taken affirmative steps to enter into an attorney-client relationship with the EEOC in this action and, as a result, are represented by the EEOC herein.

No later than fifteen (15) days from the date of service of this Order, the parties shall identify and produce all documents as provided in this Order.

IT IS SO ORDERED.

Dated: **October 5, 2009**      /s/ **Gary S. Austin**
                                UNITED STATES MAGISTRATE JUDGE