# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>ERIKA MORALES and ANONYMOUS PLAINTIFF'S ONE THROUGH EIGHT<br><br>Plaintiff-Intervenors<br><br>v.<br><br>ABM INDUSTRIES INCORPORATED, et al.<br><br>Defendants. | 1:07-cv-01428 LJO JLT<br><br>ORDER DENYING MOTION FOR SANCTIONS<br><br>[Doc. 138] |

Before the Court is a "Motion for Sanctions" brought by the defendants (referred collectively here as "ABM") against plaintiff, the EEOC, and counsel for the intervenors, Stan Mallison and Hector Martinez. (Doc. 138) The EEOC opposed this motion on February 8, 2010. (Doc 167) On this same day, the intervenors filed a joinder in the opposition filed by the EEOC. (Doc. 162)

The Court held oral argument on this motion on March 2, 2010. After considering the moving and opposing papers and the argument of counsel, for the reasons set forth below, the Court DENIES the motion for sanctions.

**BACKGROUND**

The EEOC initiated this action on September 28, 2007 against Defendants ABM Industries, Inc.

1

and ABM Janitorial Services, Inc. (Doc. 1.) ABM Janitorial Services-Northern California was added as a defendant through the EEOC's First Amended Complaint filed on July 17, 2009. (Doc. 118.) The amended complaint alleges that ABM engaged in a pattern or practice of subjecting Erika Morales and a class of other similarly situated individuals to a sexually harassing, hostile work environment and quid pro quo sexual harassment at various ABMNC work sites. (Id.) The complaint alleges further that ABM failed to exercise reasonable care to prevent and correct the sexually harassing behavior promptly. (Id.) Finally, the complaint alleges that Erika Morales and others similarly situated were constructively discharged for complaining about or rebuking the sexual harassment. (Id.)

The Court issued its Scheduling Conference order on July 28, 2009. (Doc. 121). The order reads, "A settlement conference will not be set at this time. Counsel for the parties have represented that they are amenable to good faith settlement discussions and may participate in a private mediation session in September of 2009 under certain circumstances. The parties may later request that a settlement conference be set in this matter." Id. In December 2009, the parties engaged in mediation that was unsuccessful.

ABM asserts that the EEOC and intervenors' counsel refused to allow the mediator to present settlement offers and explain the basis for them directly to the plaintiffs. Based thereon, ABM argues that they are entitled to sanctions because, in essence, "good faith" mediation efforts required the mediator to be able to directly persuade the plaintiffs to the wisdom of the defendants' position.

To the contrary, the EEOC argues that the plaintiffs were primarily Spanish speaking and the evidence submitted by the EOC supports a finding that the mediator was not fluent in the language. The EEOC argues that requiring the attorneys to act as a translator for the mediator, placed them in the position of having to use their voice to try to convince the plaintiffs to a course of action with which they did not agree. In addition, the EEOC asserts that it did not refuse to allow the mediator to speak to the plaintiffs but that the attorneys were in the process of discussing this prospect with each of the claimants when the mediator became impatient and communicated the offer to the attorneys instead. The attorneys assert that they then communicated the offers made to each of the plaintiffs but the EEOC contends, due to ABM's decision to make individual, rather than one global settlement offer, settlement could not be achieved.

ABM seems to agree that the plaintiffs are not fluent in English and has presented no evidence that the mediator was fluent in Spanish.[1] Not explained is why, if the mediator felt it was necessary that he speak to the plaintiffs directly or why if ABM felt that this was a critical component of the mediation, they failed to ensure that a neutral, Spanish language translator was present. Instead, ABM asserts that it was the responsibility of the EEOC and counsel for the intervenors to understand that this need existed and to provide a translator for the mediation. However, there is no evidence that ABM made clear to the plaintiffs' counsel before the mediation that direct communication between the plaintiffs and mediator was a condition of conducting the mediation or that it would be the plaintiffs' responsibility to provide a translator to accomplish this task.

## DISCUSSION

**A.    The Court is authorized to sanction those who fail to comply with its orders**

ABM notes correctly that the Court has the authority under Federal Rules of Civil Procedure 16 (f) to impose sanctions on any party who "fails to obey a scheduling . . . order." This authority allows the Court to impose monetary sanctions on "the party, its attorney, or both" that include an amount to cover "reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule."

**1.    The Court's order**

Although, the Scheduling Order warned the parties that their "Failure to comply with this order shall result in the imposition of sanctions," the Scheduling Order the Court *did not* order the parties to engage in mediation. The Court did not set a settlement conference of any type but, instead, permitted the parties to request a settlement conference later. At the time of the making of the Scheduling Order, the parties indicated that they were "amenable to good faith settlement discussions and **may participate** in a private mediation session in September of 2009 **under certain circumstances**." (Doc 121, emphasis added.) The "certain circumstances" that would trigger the mediation were not set forth in the order. Rather than demonstrate an action that the Court required be completed by the parties upon pain of

---

[1] Although counsel for ABM reported at oral argument that the mediator *was* fluent in Spanish, there is no evidence to support this contention and the only evidence presented to the Court on this topic is that he was not fluent. Thus, the Court accepts this uncontradicted evidence as true.

3

sanctions, this language indicates only the Court's acquiescence in the *possibility* that mediation would occur.[2]

### 2. "Good faith" efforts at mediation does not require attorneys to give up their role as counselor to their clients

ABM has not cited to any authority that *required* plaintiffs' counsel to allow the mediator to talk directly to the clients. Although it is certainly most productive for clients to hear the unvarnished truth from the mediator about the likelihood of success at trial, the Court can find no authority for the proposition that the failure to allow this unfettered access is a breach of good faith.

On the other hand, ABM fails to explain how the defendants expected the mediator to talk directly to the plaintiffs given that he did not speak their primary language. The Court cannot fault the lawyers for understanding the importance of their clients understanding fully the settlement terms offered and the risks of failing to settle. Toward that end, the Court cannot conclude that refusing to allow settlement offers to be presented in a language in which the plaintiffs were not all fluent.

Finally, although ABM argues that the failure of the mediation was due to the inability of the mediator to talk to the plaintiffs directly, there is no evidence that this is the case. There is no declaration from the mediator that supports this inference. The parties' differing opinions of the value of the case seems a more likely explanation, especially in light of the fact that the parties continued to attempt settlement with the mediator after that time.

### 3. The defendants have cited no authority that requires an attorney to allow the mediator to directly present or explain an offer the client

ABM cites two district court cases from Missouri and Nebraska that it believes apply by analogy to support of its position that it is entitled to sanctions. Both are easily distinguishable.

In <u>Nick v. Morgan's Foods, Inc.</u>, 99 F.Supp.2d 1056, 1057-1058 (E.D. Mo. 2000), the court ordered the matter referred to the ADR program. The order referring the matter specifically required the parties to provide the neutral a pre-mediation brief. <u>Id.</u> Despite this, the defense counsel failed to provide the mediation brief. <u>Id.</u> Although the persons with settlement authority were ordered to be

---

[2] In fact, ABM's papers indicate that the mediation did not occur in September but occurred sometime in December.

present at the mediation, the defendant failed to have such a person present and, instead, sent a person who had little knowledge of the litigation. Id. Finally, although the plaintiff made two settlement offers at the mediation, the offers were rejected without a counteroffer because of the lack of settlement authority present at the mediation. Nick, at 1058.

The court issued sanctions against the defendants for failing to have a person with settlement authority present at the mediation and for failing to provide the pre-mediation brief that was ordered by the court when it referred the matter to ADR. Nick, 99 F.Supp.2d at1063-1064. In chastising the defendants for failing to have a settlement authoritarian present, the court noted,

> Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. Availability by telephone is insufficient because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's arguments, and the neutral's input. The absent decision-maker needs to be present and hear first hand the good facts and the bad facts about their case. Instead, the absent decision-maker learns only what his or her attorney chooses to relate over the phone. This can be expected to be largely a recitation of what has been conveyed in previous discussions. Even when the attorney attempts to summarize the strengths of the other side's position, there are problems. First, the attorney has a credibility problem: the absent decision-maker wants to know why the attorney's confident opinion expressed earlier has now eroded. Second, the new information most likely is too much to absorb and analyze in a matter of minutes. Under this dynamic it becomes all too easy for the absent decision-maker to reject the attorney's new advice, reject the new information, and reject any effort to engage in meaningful negotiations. It is quite likely that the telephone call is viewed as a distraction from other business being conducted by the absent decision-maker. In that case the absent decision-maker will be preoccupied with some other matter demanding her attention at the time she is asked to evaluate new information in a telephone call. Confronted with distractions and inadequate time to evaluate the new information meaningfully, the absent decision-maker's easiest decision is to summarily reject any offer and get back to the business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.

Id.

Likewise, in Brooks v. The Lincoln National Life Insurance Company, 2006 U.S. Dist. LEXIS 61114 at *3 (D. Neb. 2006), the court ordered the parties to participate in mediation and warned them that their failure to abide by the order or to participate in good faith in the process could result in sanctions. Id. at *3-4, 15. At the mediation, the defendants, through the mediator, communicated an offer to the plaintiff's attorney who rejected it out-of-hand and said that if the defendants did not make a "serious" offer within five minutes, the plaintiff would leave. Brooks, at *4-5. The attorney did not allow the mediator to explain the reasoning behind the offer and later unilaterally terminated the

mediation. Id. at *5-6. Based upon this conduct, the court sanctioned the attorney because, the court concluded, that this constituted a failure to participate in good faith. Id. at *16.

As noted above, here there was no Court order that the plaintiffs' attorneys violated. The parties were not ordered to attend mediation. There was no order that required that the mediation be conducted at all, let alone in any particular fashion. There was no order that required the attorneys to allow their clients to hear offers and persuasive argument directly from the mediator. Instead, this dispute boils down to a clear disagreement as to how the mediation would proceed.

Given that it was crucial to ABM that the mediator have unrestricted access to the clients, ABM fails to explain why it did not obtain the explicit agreement of counsel, before the mediation was scheduled, as to the ground rules. The plaintiffs' counsel cannot be expected to know of ABM's unexpressed need nor is the Court willing to accept that their failure to comply with this need is sanctionable conduct. Finally, although ABM claims that every successful mediation requires the mediator to present offers directly to the clients, this position is unsupported by evidence.

**4. Conclusion**

Settlement in this case seems to be not only a worthwhile object for all involved but appears to represent the best likelihood that the parties will be satisfied with the litigation's outcome. Nevertheless, the Court cannot find any basis to conclude that its sanction power under Rule 16 would be wielded properly on the facts outlined here. For these reasons, the Court DENIES the motion for sanctions under Rule 16.

**B.     The Court has broad, inherent authority to sanction those who act in bad faith**

The Court has the express power under 28 U.S.C. § 1927 to sanction attorneys who act "unreasonably and vexatiously" such that their conduct unnecessarily increases the costs, expenses or attorneys' fees in the action. Similarly, the Court has the inherent power to sanction acts of counsel that were taken in bad faith. Primus Auto. Fin. Servs. v. Batarse, 115 F.3d 644, 648-649 (9th Cir. 1997) The Court's inherent power to sanction counsel "is broad, but not limitless." Mendez v. County of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. Cal. 2008) To the contrary, given the deleterious impacts that a sanction order may have on the attorney sanctioned, courts are cautioned to wield this power, "with restraint and discretion." Id. Moreover, "A district court may not sanction an attorney under its inherent

powers if there is nothing in the local rules or norms of professional conduct "which would have placed [the attorney] on reasonable notice" that his conduct was not in conformance with the court's requirements."

There is no local rule that requires an attorney who participates settlement effort to allow direct contact between the neutral and the client. Local Rules 270, 271. Likewise, none of the parties have directed the Court to any authority that demonstrates a norm of professional or mediation conduct that would prohibit the action taken by the EEOC and counsel for the intervenors. Instead, California Rules of Professional Conduct Rule 3-510 requires the *attorney* to promptly communicate to the client "All amounts, terms, and conditions of any written offer of settlement made to the client in all other matters." Clearly the attorneys could have allowed the mediator to explain the terms of the settlement but the Court has located no authority, nor has ABM cited any, that counsel was required upon pain of sanctions, to allow this to happen.

The fact that the defendants believed that the mediator could convince the parties to settle, if they were not being counseled by their lawyers, does not provide a basis for imposing sanctions. Instead, in the Court's view *a primary reason that people hire lawyers* is so that they are not pressured into doing something that may not fully serve their interests. The plaintiffs were *entitled* to rely upon the advice of their counsel and the attorneys were *duty-bound* to zealously advocate for them. Because there is no evidence that would outline a professional norm that was breached by the attorneys for the EEOC or the intervenors, the Court refuses to exercise its discretion under 28 U.S.C. § 1927 to award sanctions against the plaintiffs' counsel and DENIES the motion on these grounds.

## **CONCLUSION**

The Court encourages the parties to continue to work toward settlement by evaluating the merits and value of the case realistically. The Court stands ready to conduct a settlement conference toward this end and reminds the parties to request one if they believe that it will assist toward resolution of the matter. For the reasons outlined above, the motion for sanctions is DENIED.

IT IS SO ORDERED.

Dated: **March 3, 2010**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE