IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>ERIKA MORALES and ANONYMOUS PLAINTIFF'S ONE THROUGH EIGHT<br><br>Plaintiff-Intervenors<br><br>v.<br><br>ABM INDUSTRIES INCORPORATED, et al.<br><br>Defendants. | 1:07-cv-01428 LJO JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR PROTECTIVE ORDER<br><br>[Doc. 155] |

Before the Court is a "Motion for Protective Order" brought by the defendants (referred collectively here as "ABM") against plaintiff, the EEOC. (Doc. 155) ABM has identified six disputed categories. As to these categories, the parties cannot agree if documents should be disclosed or, if disclosed, whether they should be maintained in confidence.

The Court held oral argument on this motion on March 2, 2010. After considering the moving and opposing papers and the argument of counsel, for the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion for the protective order.

**BACKGROUND**

In this litigation, the EEOC alleges that the defendants subjected certain employees to a pattern

or practice of sexual harassment, quid pro quo sexual harassment and a hostile work environment at its work sites. (Doc. 118) The EEOC asserts also that ABM failed to exercise reasonable care to prevent the sexually harassing and failed to promptly correct it. (Id.) The EEOC has taken the position that each of the three ABM entities are joint employers of the alleged harassers and have sought discovery toward this end. Likewise, at issue here, is the EEOC's attempt to discover information related to the worth of the defendants for purposes of supporting the punitive damage claim.

## DISCUSSION

**A.    The Court has the authority to forbid disclosure, to set the terms for disclosure and to require the parties maintain the confidentiality of disclosed information**

Federal Rules of Civil Procedure 26(c) provides,

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>   (A) forbidding the disclosure or discovery;
>   (B) specifying terms, including time and place, for the disclosure or discovery;
>   (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>   (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>   (E) designating the persons who may be present while the discovery is conducted;
>   (F) requiring that a deposition be sealed and opened only on court order;
>   (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>   (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

The Rule allows "extensive control" over the discovery process by the Court and allows the Court to make "'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' (emphasis added). Thus, as Wright and Miller note, 'a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule.'" United States v. CBS, Inc., 666 F.2d 364, 369 (9th Cir. 1982). A protective order is one such method of safeguarding information that otherwise would be subject to the broad reach of discovery. Id. at 368-369.

In their joint statement, the parties outline six categories of documents at issue.[1] They cannot agree if the documents should be disclosed or, if they should, whether they should be maintained as confidential records by the parties.

1.  Tax Returns and "auditor work papers"

ABM seeks an order prohibiting the disclosure of its tax returns filed since 2001 and "auditor work papers."[2] ABM argues that its tax returns should not be produced absent a compelling need. Without addressing this argument, the EEOC argues that the documents are relevant to the claim for punitive damages. (Doc 181 at 23.) As such, the EEOC seems to take the position that because the relevance of the documents has been established, this ends the discussion. To the contrary, this is the starting point.

Tax returns are not absolutely privileged. Premium Service Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. Cal. 1975). However, Courts are loathe to require their production based upon "a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." Id. To balance the competing interests of allowing liberal discovery and the public policy maintaining the confidentiality of tax returns, courts generally apply a two-pronged test. First, the Court must determine whether the tax returns are relevant to the litigation. Second, the Court must find that there is a compelling need for production of the tax returns "because the information sought is not otherwise available." Aliotti v. The Vessel Senora, 217 F.R.D. 496, 497-498 (N.D. Cal. 2003).

In a similar situation, in EEOC v. Cal. Psychiatric Transitions, 258 F.R.D. 391, 393-395 (E.D. CA 2009), the EEOC sought extensive financial documents, including tax returns, from the defendant to prepare it for its punitive damages claims. The Court evaluated the request and found that financial documents were relevant to the issue but that the types of documents requested were "excessive" and

---

[1] The EEOC identifies a seventh "catchall" category but, because the moving party does not raise this category as one that for which a protective order should issue, the Court does not address it here.

[2] Neither party explains exactly what these documents are but they agree that they are financial documents that bear on relative worth of the defendants. Presumably, "auditor work papers," are the notes, reports and recommendations of the auditor related to the ABM's "books" when it performed the audit. The Court does not consider that ABM's "audited" financial statements are a part of "auditor work papers."

limited production to "balance sheets, statements of income, and statements of cash flow." Id. at 395.

As to the auditor work papers, the parties agree that these are financial documents related to the operation of ABM's business. Although there is no federal common law privilege akin to the right of privacy, "'[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.'" Keith H. v. Long Beach Unified School Dist., 228 F.R.D. 652, 657 (C.D. Cal. 2005) (citations omitted); Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992), cert. denied, 507 U.S. 910, 113 S. Ct. 1255, 122 L. Ed. 2d 654 (1993). "Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." Keith H., 228 F.R.D. at 657; Johnson, 971 F.2d at 1497.

The EEOC does not explain how the "auditor work papers" documents bear on the issue of punitive damages. Presumably, the result of the auditor's efforts was the creation of audited financial documents. In the Court's view, it is the audited financial documents that are prepared according to generally accepted accounting principles, not the work papers of the auditors compiled during the audit, that would tend to yield information that is relevant to the issue of punitive damages.

Because the Court is convinced that information related to the issue of punitive damages is available in other 2009/2010 financial documents, such as audited balance sheets, statements of income, and statements of cash flow, the Court finds that there is no compelling need for the production of the tax returns. Therefore, the Court GRANTS the protective order related to the production of ABM's tax returns and the auditor work papers and orders that these documents will not be produced.

2.   Board Minutes

In Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir. 1992), the Court held that to determine whether a protective order for trade secrets is appropriate, courts must balance conflicting interests. Although discovering parties are entitled to all information "reasonably calculated to lead to the discovery of admissible evidence," responding parties are entitled to protection from "undue burden" in discovery, including protection from misuse of trade secrets by competitors. Id. at 1470.

The EEOC seeks the Board Minutes to support their contention that the defendants are joint employers of those involved in the alleged sexual harassment. ABM asserts that the Board Minutes contain highly sensitive and confidential information "not known by competitors, most employees or

4

the general public."

The cases cited by ABM are of little assistance. In Gordon, Wolf, Cowen Co., v, Indep. Halvah & Candies, Inc., 9 F.R.D. 700, 702 (S.D.NY 1949), the plaintiff sought the board minutes to address the issue related to whether the defendant set an unreasonably low price on its sales of halvah. However, the court determined that the other financial documents which demonstrated the profits on the sale of havlah more directly provided the information sought. Id. At most, the board minutes might reveal only if the board members themselves believed that the price was reasonable which was too attenuated to the issue to justify the disclosure. Id.

Likewise, in Disney v. Walt Disney Co., 2005 Del. Ch. LEXIS 94 at 12-16 (Del. Ch. June 20, 2005), at issue were ten documents which were made up of letters, e-mails an excerpt of a report, a memo and the minutes from a special meeting of a committee of the Board of Directors. The documents all related to executive compensation in some manner. Id. at 5-10. The records were being requested under Delaware's Corporation Code which set forth how a shareholder or director could inspect the "books and records" of the corporation and what documents could be reviewed. Id. at 1-3. The Court was not asked to decide whether the documents should be produced to the parties but, instead, whether one party could make the information known to the public through the use of the process outlined by the Delaware code. Id. In fact, the moving party, had been a member of the Board of Directors and already had lawful possession of the operative documents, unlike here. Id. at 12-13. In ordering the moving party to maintain the confidentiality of the documents, the Court determined that the communications were private, were developed with the intention that they remain private and related to deliberations of the members of the Board of Directors. Id. at 11.

Unlike in Gordon, Wolf, here there is a greater potential that the Board Minutes may lead to admissible evidence, specifically regarding whether the various defendants are joint employers. Therefore, ABM is ordered to produce any Board Minutes from 2003 (the year before Jose Vasquez was hired) through the present time that bear on whether the defendants are joint employers of the actors/parties at issue. ABM is permitted to redact the Minutes so that only responsive material is reflected on the produced document.

To the extent that the motion seeks a protective order prohibiting disclosure of the documents

1  as described by this order, the motion is DENIED. To the extent that the motion seeks to maintain the
2  confidentiality of the material after it is produced, the Court GRANTS the motion.

3        3.    <u>Identities of Officers and Managers</u>

4        ABM asserts that it has already produced the names of all supervisors within the direct chain of
5  command of the employees involved in this litigation.  ABM claims that requiring it to produce the
6  names of all officers and managers of all three corporations would reveal the identities of hundreds of
7  current and former employees, given the request is for this information beginning in 2000, without
8  regard for their connection to the current litigation.  For its part, the EEOC claims that it needs the names
9  of all of the officers and managers of all three corporations because this bears on the issue of joint
10 employment.

11       ABM asserts that no additional information should be required to be disclosed and cites <u>Earley</u>
12 <u>v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1084-1085 (11th Cir. 1990) for this proposition.  In <u>Earley</u>, the
13 plaintiffs complained that they were not allowed to conduct nationwide discovery regarding the names
14 of each of the company's employees and information about the company's various departments. The
15 plaintiff sought this information as a means of supporting their claim that their discharge, in connection
16 with a "reduction in force" (RIF), was motivated by age discrimination.  <u>Id.</u> at 1079-1080, 1084-1085.
17 In holding that the trial court did not err in refusing the discovery, the court held,

18 > "In the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination -- the employing unit or work unit." <u>Marshall v. Westinghouse Elec. Corp.</u>, 576 F.2d 588, 592 (5th Cir. 1978) (denial of division-wide discovery request which encompassed some 7,500 employees in thirty-two districts and three manufacturing plants); accord <u>EEOC v. Packard Elec. Div., General Motors Corp.</u>, 569 F.2d 315, 318-19 (5th Cir. 1978). While Champion's RIF was initiated at the national level, each plant was given considerable autonomy in drawing up its own RIF master plan. The decision to terminate Earley and Noe in the RIF -- as opposed to other employees -- was made at the local level. Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit. See, e.g., <u>Mack v. Great Atlantic and Pacific Tea Co., Inc.</u>, 871 F.2d 179, 187 (1st Cir. 1989).
>
> Plaintiffs' motion in the district court to compel discovery was conclusory in its statement of reasons for much broader discovery; and the district court was -- we think understandably -- unpersuaded. A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry. <u>Joslin Dry Goods Co. v. EEOC</u>, 483 F.2d 178, 183-84 (10th Cir. 1973). Denial of a motion to compel nationwide discovery will be reversed only if it constitutes an abuse of discretion, <u>Donovan v. Mosher Steel Co., Div. of Trinity Indus.</u>, 791 F.2d 1535, 1537 (11th Cir. 1986), and we

cannot say the district court abused its discretion.

Notably, however, the plaintiffs were given nationwide discovery on other issues such as the availability of other positions at the company, the efforts of the company to locate jobs within the organization for those who were downsized and full discovery related to their local business unit. Id. at 1084, n.6.

ABM relies also on James v. Newspaper Agency Corp., 591 F.2d 579, 582 (10th Cir. 1979) in which the court determined that a pretrial order limiting discovery to information related to the department in which the plaintiff worked, rather than the entire company. The court held,

> She filed a motion to compel answers to interrogatories and the production of certain company documents. The trial court granted this motion, although it did limit the discovery to the accounting/credit department and confined it to the four-year period of time from 1969 to 1973. James apparently sought records for an eight-year period, and from the advertising department as well as the accounting/credit department. The trial court held a hearing and by its ruling attempted to grant James her discovery rights and at the same time not cause the defendant to expend an inordinate amount of time producing material that was not really relevant to the issues in the case. James was a long-time employee in the accounting/credit department and the gravamen of her complaint was that when the assistant credit manager retired she failed to be promoted to his position. Viewed in context, the trial court's ruling regarding discovery played an insignificant role in this entire proceeding.

Id.

Unlike here, in neither of the cases cited was there a claim of joint employment. However, as is the norm, these cases make clear that discovery in employment cases should be allowed but limited to addressing the issues raised in the complaint. Thus, it appears that the EEOC is not entitled to information about every manager and officer employed by each defendant. However, the EEOC is entitled to the information about the managers and officers who act or have acted for more than one of the defendants at any one given time. Therefore, the Court orders ABM to produce responsive documents that identify the officers or managers who acted for more than one defendant entity at the same time. ABM is ordered to produce documents dating from 2003 (the year before Jose Vasquez was employed by ABM) to the present time. ABM is permitted to redact any nonresponsive information contained on the records produced. To the extent that ABM requests that the information produced remain confidential, the motion for protective order is GRANTED.

4.   Asset purchase agreements, contracts with customers, leases and licenses

ABM has agreed to produce responsive documents but seeks an order redacting pricing

information and requiring that the information remain confidential.  ABM notes that these documents reflect such confidential information as pricing strategies, customer information, revenue targets, and employee compensation and assert that they identify resources that ABM considers to be "critical" to its ongoing operation and the operation of its customers's businesses. In response, the EEOC concludes, without explanation, that ABM has failed to make a particularized showing that would justify maintaining the confidentiality of the information.

It is well-settled that the Court has the authority to shield proprietary information related to the ongoing operations of a business from public review.  Federal Rules of Civil Procedure 26(c)(1)(G) anticipates that the Court may require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  In <u>Carpenter v. United States</u>, 484 U.S. 19, 26 (U.S. 1987), the Supreme Court held,

> Confidential business information has long been recognized as property. See <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1001-1004 (1984); <u>Dirks v. SEC</u>, 463 U.S. 646, 653, n. 10 (1983); <u>Board of Trade of Chicago v. Christie Grain & Stock Co.</u>, 198 U.S. 236, 250-251 (1905); cf. 5 U. S. C. § 552(b)(4). "Confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy." 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, p. 260 (rev. ed. 1986) (footnote omitted).

As noted above, the Court must balance the parties' interests. <u>Brown Bag Software v. Symantec Corp.</u>, <u>supra</u>, 960 F.2d at 1470.  In doing so, the Court agrees with ABM's suggested approach which is to provide the EEOC the documents but prohibit their public disclosure.  Therefore, ABM is ordered to produce responsive documents dating from 2003 (the year before Jose Vasquez was employed by ABM) to the present time subject to a protective order that requires the materials to be held confidential and used only in connection with the instant litigation.  ABM is authorized to redact any non-responsive information and pricing information contained on the documents. Therefore, the Court GRANTS the motion for protective order related to these documents.

    5. <u>Documents related to parent holding company's involvement in creating, modifying or eliminating jobs at ABM Janitorial Northern California</u>

The joint statement filed by the parties, clarifies that the EEOC seeks documents from only from ABM Industries demonstrating its involvement in creating, modifying or eliminating jobs only at ABM

Janitorial Northern California. It appears clear that the EEOC is seeking information that would support its joint employer claim. ABM clarified in its oral argument, that it does not, necessarily, object to disclosure of these documents but requests that any documents produced be maintained as confidential.

For the reasons stated in headnote 4 above, ABM is ordered to produce responsive documents dating from 2003 (the year before Jose Vasquez was employed by ABM) to the present time subject to a protective order that requires the materials to be held confidential and used only in connection with the instant litigation. ABM is authorized to redact any non-responsive information contained on the documents. Therefore, the Court GRANTS the motion for protective order related to these documents.

      6.    <u>The "implementation" of the Service Agreement, Code of Conduct and Employee Handbook</u>

At oral argument, the EEOC clarified that it sought records related to the "implementation" of the Service Agreement, Code of Conduct and Employee Handbook. The Court gleaned EEOC's meaning to be that it seeks documents that described the operation of the Service Agreement, clarifications as to policies set forth in the Code of Conduct and Employee Handbook, any records explaining how the Code of Conduct and Employee Handbook would be provided to the employee and how the policies contained in Code and Handbook would enforced.

The parties clarified also that the Service Agreement is in the nature of a contract between the parent company and its holdings which outlined the services provided by the parent. Once again, ABM does not object to disclosure of documents related to the operation of the Service Agreement but requests that the parties keep the records confidential. Therefore, after weighing the interests of the parties, the Court orders ABM to produce responsive documents dated from 2003 through the present. Based on the authorities cited above, the Court agrees that the documents constitute commercial information that should be protected from dissemination. Therefore, the Court GRANTS the motion for protective order related to these documents.

Also, the Court orders ABM to disclose any documents from 2003 through the present, related to the "implementation" of the Code of Conduct and Employee Handbook (as the Court has outlined above). ABM is permitted to redact any information contained on these documents that are not responsive. However, the Court cannot determine any basis for maintaining the confidentiality of these

documents. ABM has already produced the Code and the Handbook without a protective order. Thus, the Court cannot find that the documents clarifying these policies should be subject to greater confidentiality. Thus, the Court DENIES the motion for protective order related to these documents.

## **CONCLUSION**

For the reasons stated above, the Court GRANTS the motion IN PART and DENIES the motion IN PART and ORDERS as follows:

1. The motion for a protective order prohibiting disclosure of tax records and auditor work papers is GRANTED;

2. ABM is ordered to produce any Board Minutes from 2003 through the present time that bear on whether the defendants are joint employers of the actors/parties at issue. ABM is permitted to redact the Minutes so that only responsive material is reflected on any produced document. The motion for a protective order prohibiting disclosure of the Board Minutes outside of the litigation, is GRANTED.

3. ABM is ordered to produce documents that identify the officers or managers who held positions with more than one defendant entity at the same time. ABM is ordered to produce documents dating from 2003 to the present time. ABM is permitted to redact any nonresponsive information contained on the records produced. The motion for a protective order prohibiting disclosure of the responsive documents outside of the litigation, is GRANTED.

4. ABM is ordered to produce asset purchase agreements, contracts with customers, leases and licenses dating from 2003 to the present time. ABM is authorized to redact any non-responsive information and pricing information contained on the documents. The motion for a protective order prohibiting disclosure of the responsive documents outside of the litigation, is GRANTED.

5. ABM is ordered to produce documents related to the parent holding company's involvement in creating, modifying or eliminating jobs at ABM Janitorial Northern California from 2003 to the present time. ABM is authorized to redact any non-responsive information contained on the documents. The motion for a protective order

prohibiting disclosure of the responsive documents outside of the litigation, is GRANTED.

6. ABM is ordered to produce documents from 2003 to the present time that describes the operation of the Service Agreement, any written clarification of the policies set forth in the Code of Conduct and Employee Handbook, any records explaining how the Code of Conduct and Employee Handbook would be provided to the employee and any records explaining how the policies contained in Code and Handbook would enforced. As to any documents related to the Service Agreement, the motion for a protective order prohibiting disclosure of the responsive documents outside of the litigation, is GRANTED. As to records related to the Code of Conduct and Employee Handbook, the motion for a protective order prohibiting disclosure of the responsive documents outside of the litigation, is DENIED.

7. The parties are ordered to submit a stipulated protective order that will maintain the confidentiality of the information contained in the records to be produced. The stipulated protective order must be filed no later than March 12, 2010. If, after conferring in good faith, the parties cannot agree on the content of the protective order, each party is ordered to file its own proposed protective order by the close of business March 12, 2010. No brief explaining the party's position shall be filed.

8. ABM is ordered to make the disclosures required by this order within five business days after the Court issues the protective order.

IT IS SO ORDERED.

Dated: **March 3, 2010**                                                   /s/ Jennifer L. Thurston
                                                                                    UNITED STATES MAGISTRATE JUDGE