Anna Y. Park (SBN164242)
Elizabeth Esparza-Cervantes (SBN 205412)
Lorena Garcia-Bautista (SBN 234091)
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 E. Temple St., 4th Floor
Los Angeles, CA. 90012
Telephone: (213) 894-1108
Facsimile: (213) 894-1301
E-Mail:  lado.legal@eeoc.gov


Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> ERIKA MORALES and ANONYMOUS PLAINTIFFS ONE THROUGH EIGHT, <br><br> Plaintiff-Intervenors, <br><br> vs. <br><br> ABM INDUSTRIES INCORPORATED, ABM JANITORIAL SERVICES, INC., and ABM JANITORIAL NORTHERN CALIFORNIA, <br><br> Defendants. | CIVIL NO. 1:07-CV-01428 LJO (JLT) <br><br> **PLAINTIFF EEOC'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS' MOTION TO SEVER THE FRESNO CLAIMANTS** <br><br> Date:      May 28, 2010 <br> Time:      8:30 a.m. <br> Judge:     The Honorable Lawrence O'Neill <br> Courtroom: 4 |

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………. 1

II.     FACTUAL BACKGROUND………………………………………………… 2

        A.  Defendants' Control of the Branch Offices……………………………….. 2

        B.  Defendants' Responsibility for the Problem of Sexual Harassment……………. 3

        C.  Relevant Procedural History………………………………………………7

III.    ARGUMENT…………………………………………………………….. 9

        A.  Defendants ABM Artificially Divide The Claimants Geographically, When Such
            Artifice Conflicts With The Reality That All The Employees Of The Central
            Valley Share Similar Working Conditions Due To Being Employed And
            Controlled By Defendants………………………………………….…… 9

        B.  Defendants' Request to Severe Parties and Claims under Fed. R. Civ. Proc. 21 is
            In Applicable when the EEOC is the Plaintiff of the EEOC Lawsuit with One
            Claim against Jointly Liable Defendants………………………………………10

        C.  Even If Fed. R. Civ. Proc. 21 is Applied, the Claimants' Right to Relief Rely on
            the Same Series of Transactions and Occurrences; and Share in Common Many of
            the Same Issues of Law or Fact…………………………………………… 11

                1.  EEOC's Pattern and Practice Theory Satisfies the Joinder Requirements
                    of the Same Transaction and Common Question of Law and Fact… 12

                2.  Independent of the Pattern or Practice Theory, Liability Based on a
                    Sexual Hostile Work Environment Also Requires the Analysis of the
                    Same Transaction and Same Issues of Law and Fact……………….. 14

                        a.  Even if a Claim Involves Employees Working at Different
                            Worksites, All Their Circumstances are Necessary to Assess a
                            Sexually Hostile Work Environment Claim…………………. 14

                        b.  Regardless of Whether Their Worksites were Through the Fresno
                            or Bakersfield Branch Offices, All the Claimants Share in
                            Common Transaction and Issues………………………………. 17

        D.  All Condition Precedents Have Been Met to Bring a Lawsuit to Seek Relief Not
            Only for the Bakersfield Claimants But Also the Fresno Claimants…………… 19

        E.  The Policy Considerations of Judicial Economy and Fairness Weighs in Favor of
            Denying Defendants' Motion to Sever…………………………………… 23

1

IV.   CONCLUSION………………………………………………………………… 24

## **TABLE OF AUTHORITIES**

*Andrews v. Philadelphia*,
    895 F.2d 1469  (3d Cir. Pa. 1990)…………………………………………… 16

*Barnes v. American Tobacco Co.*,
    497 F.2d 127 (3d Cir. 1998)…………………………………………………… 11

*Burlington Indus. Ind. v. Ellerth*,
    524 U.S. 742 (1998)………………………………………………………….. 18

*Davis v. Team Electric Co.*,
    520 F.3d 1080 (9th Cir. 2008)……………………………………………....... 15

*Dinkins v. Charoen Pokphand USA, Inc.*,
    133 F. Supp. 2d 1237, 1246 (M.D. Ala. 2001)………………………………… 22

*EEOC v. Burlington Medical Supplies, Inc.*,
    536 F. Supp. 2d 647 (E.D.Va. 2008)…………………………………………… 16

*EEOC v. Caterpillar, Inc.*,
    409 F.3d 831, 833 (7th Cir. 2005)……………………………………………… 22

*EEOC v. CRST Expedited, Inc.*
    2009 WL 1175169 (N.D. Iowa 2009)…………………………………………… 22

*EEOC v. Dial*,
    156 F. Supp. 2d 926 (E.D. Ill. 2001)………………………………………… 12, 13

*EEOC v. Federal Express Corp.*,
    558 F.3d 842 (9th Cir. 2009)…………………………………………………… 10

*EEOC v. Goodyear Aerospace Corp.*,
    813 F.2d 1539 (9th Cir.1987)…………………………………………………… 10

*EEOC v. Hearst Corp.*,
    553 F.2d 579 (9th Cir. 1977)…………………………………………………… 20

*EEOC v. Intern. Profit Associates*,
    2010 U.S. Dist. LEXIS 32647 (N.D. Ill. 2010)………………………………… 12

*EEOC v. Keco Indus., Inc.*,
    748 F.2d 1097 (6th Cir. 1984)……………………………………………….. 22

*EEOC v. Mitsubishi*,
    990 F. Supp. 1059 (C.D. Ill. 1998)…………………………………………… 12, 13

*EEOC v. NCL American, Inc., et. al.*,
   536 F.Supp.2d 1216, 1221-22 (D. Hawaii 2008)………………………………………… 22

*EEOC v. Occidental Life Ins. Co. of California*,
   535 F.2d 533 (9th Cir. 1976)……………………………………………………………… 20

*EEOC v. Plaza Operating Partners Ltd.*,
   95 Fair Empl. Cas. (BNA) 631, 2005 WL 309770 (S.D. N.Y. 2005)……………… 10-11

*EEOC v. Scolari Warehouse Markets, Inc.*,
   488 F. Supp. 2d 1117 (D. Nev. 2007)……………………………………………………… 12

*EEOC v. Venator Group Specialty, Inc.*,
   85 Fair Empl. Pract. Cas. (BNA) 497, 2001 WL 246376 (S.D.N.Y. 2001)…………… 10

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)………………………………………………………………………… 10

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)………………………………………………………………………… 18

*Georator Corp. v. EEOC*,
   592 F. 765, 767 (4th Cir. 1979)…………………………………………………………… 22

*Griffin v. City of Opa-Locka*,
   261 F.3d 1295 (11th Cir. 2001)…………………………………………………………… 16

*Hurly v. Atlantic City Police Dep't*,
   174 F.3d 95 (3d Cir. 1999)………………………………………………………………… 16

*King v. Pepsi Cola Metropolitan Bottling Co.*,
   86 F.R.D. 4 (E.D. Pa. 1979)……………………………………………………………… 13

*King v. Ralston Purina Co.*,
   97 F.R.D. 477 (W.D.N.D.C. 1983)………………………………………………........ 13

*League to Save Lake v. Tahoe Regional Planning Agency*,
   558 F.2d 914 (9th Cir. 1997)……………………………………………………………… 12

*Loring v. Universidad*,
   190 F. Supp. 2d 268 (D.P.R. 2002)……………………………………………………… 16

*Marshall v. Sun Oil Co. (Del.)*,
   605 F. 2d 1331, 1338 n. 5 (5th Cir. 1979)……………………………………………… 22

*McDonnell Douglas v. Green*,
   411 U.S. 792, 798 (1972)………………………………………………………………… 22

*Miller v. Hygrade Food Corp.*,
　　202 F.R.D. 142 (E.D. 2001)……………………………………………...... 11

*Mosley v. Gen. Motors,*
　　497 F.2d 1330 (8th Cir. 1974)…………………………………………….. 11

*National Railroad Passenger Corp. v. Morgan,*
　　536 U.S. 101 (2002)………………………………………………….. 14, 15

*Perry v. Ethan Allen Inc.,*
　　115 F.3d 143 (2d Cir. 1997)…………………………………………… 15

*Puricelli v. CNA Ins. Co.*,
　　185 F.R.D. 139 (N.D.N.Y. 1999)…………………………………….. 13

*Quinn v. Consolidated Freightways Corp.,*
　　283 F.3d 572 (3d Cir. 2002)……………………………………….......  15

*Sandoval v. American Building Maintenance Industries, Inc.*,
　　578 F.3d 787 (8th Cir. 2009)…………………………………………… 16, 17

*Sandoval v. American Building Maintenance Industries, Inc.*,
　　552 F. Supp. 2d 867 (D.Minn. 2008)…………………………………… 17

*Swinton v. Potomac Corp.*,
　　270 F.3d 794 (9th Cir. 2001)…………………………………………… 18

*United Mine Workers of America v. Gibbs*,
　　383 U.S. 715 (1966)…………………………………………………… 12

*Waterson v. Plank Road Motel Corp.*,
　　43 F. Supp. 2d 284 (N.D.N.Y. 1999)………………………………… 16

*Williams v. General Motors Corp.*,
　　187 F.3d 553 (6th Cir. 1999)………………………………………….. 15

*Woods v. Graphic Communications*,
　　925 F.2d 1195 (9th Cir. 1991)……………………………………….......  15

**Federal Statutes**

Federal Rule of Civil Procedure 20(a)……………………………………… 11

Federal Rule of Civil Procedure 21………………………………………… 11

Federal Rule of Civil Procedure 23(a)……………………………………… 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1:07-CV-01428 LJO (JLT)

# I.   __INTRODUCTION__

Defendants ABM Industries Inc. ("ABM Inc."), ABM Janitorial Services, and ABM Northern California ("ABM N. Cal.) employ and/or control employees throughout the country, including the Central Valley of California.  Because of this control, Defendants are responsible for protecting its employees from a sexually hostile work environment through distribution of understandable policies and procedures and training of its employees of their avenues to seek help and of its managers and human resources staff to ensure complaints are responded with proper investigation and remedial measures.  Unfortunately, Defendants failed in their responsibilities due to their pattern or practice of tolerating and condoning a sexually hostile work environment.  Because of Defendants' failure, the EEOC filed this lawsuit to vindicate the public interest and the interests of the Charging Party and class members throughout the Central Valley of California.

Defendants have filed their motion to sever the "Fresno Claimants" from the "Bakersfield Claimants."  Defendants argue that the Fresno Claimants are not part of the same transaction as the Bakersfield Claimants and they do not have any common issues of law and fact.

Defendants' motion is unwarranted.  First, Defendants artificially divide Defendants' employees into two groups when the reality is that they are all employed and controlled by Defendants.  Further, motion to sever claims or party is inapplicable when the EEOC is the plaintiff of its lawsuit with one claim of a sexually hostile work environment.  Even if Federal Rules of Civil Procedure 21 is applied, the claimants' right to relief rely on the same series of transaction and occurrences; and share in common many of the same issues of law and fact. EEOC's theory that Defendants have engaged in a pattern or practice of tolerating a sexually hostile work environment is sufficient to meet the requirements for joinder under Fed. R. Civ. P. 21.  Further, the totality of the circumstances is necessary to properly analyze a sexually hostile work environment claim, even if some of the employees work at different sites.  Further, the EEOC has provided proper notice through the administrative process so that Defendants were placed on notice that a class of similarly employees of its workforce, including those who worked in the Central Valley, may be part of the class for which the EEOC would seek relief. Under these circumstances, to sever the claimants into two groups wastes judicial resources and

prejudices the EEOC by substantially increasing its expenditures of resources and possibly limiting its presentation of its case.  Under these circumstances, Defendants' motion to sever should be denied.

## II.   FACTUAL BACKGROUND

### A.   Defendants' Control of the Branch Offices.

Defendant ABM N. Cal. is the direct employer of all the employees in the Central Valley of California.[1]  In the Central Valley, Defendant ABM N. Cal. has branch offices not only in Fresno and Bakersfield, but also in Visalia as well.  (Exh. 1, Algaheim Dep. 20:12-20)

While Defendant ABM N. Cal. is the direct employer of all the employees in the Central Valley, it does not operate independently.[2]  ABM N. Cal. is the wholly owned subsidiary of ABM Janitorial Services.  (Exh. 15, Miller Dep. 32:16-19)  Both businesses are subsidiaries of the corporate parent, ABM Inc.  (Exh. 15, Miller Dep. 32:20-33:5)

In the day to day control and employment of the Central Valley employees, the three Defendants operate together, even though Defendant ABM N. Cal. is the direct employer. Defendants provide to all employees of the Central Valley Defendant ABM Janitorial Services' employee handbook, which set forth the terms and conditions of employment.  (Exh. 5, Brekke Dep. 125:11-21)  Defendant ABM Inc. promulgates the Code of Business Conduct and Ethics, which sets forth the required conduct of all employees, including those employed by Defendant ABM N. Cal. throughout the Central Valley.  (Exh. 11, Hanson Dep. 76:17-77:8)  No one or branch has any discretion not to implement or to change the policy.  (Exh. 11, Hanson Dep. 74:20-75:22)  Through the service agreement with ABM N. Cal., ABM Inc. provides day-to-day

---

[1]   For the purpose of this opposition, the Central Valley corresponds to the Eastern District of California.  Exhibits referenced herein are the exhibits attached to the Decl. of EEOC Counsel Derek Li Supporting EEOC's Opposition to Def. Motion to Sever filed concurrently.

[2]   Defendants will assert that the claimants and their harassers were solely employed by ABM N. Cal.  However, the EEOC intends to show in its opposition to Defendants' pending Summary Judgment Motion on Fresno Claimants that ABM Inc. and ABM Janitorial Services are liable as joint employers.  While Defendants will dispute joint employer liability, the Court does not have to resolve this issue to decide on Defendants' motion to sever.  The factual point is that the Fresno, Bakersfield, and Visalia branch offices do not operate independently and are tightly controlled by Defendants.  The fact that there is a joint employer issue for each claimant is a common issue of law and fact to defeat the motion to sever.

human resources services, including training and advice on how to handle sexual harassment complaints.  (Ex. 38, Service Agreement between ABM Industries, Inc. and ABM Janitorial Services-Northern California dated January 1, 1999, attached to Li Declaration (hereinafter "Li Decl."))[3]  Additionally, ABM Inc. maintains the hotline for employees, including all in the Central Valley, to call to complain about sexual harassment problems.  (Ex. 7, Cazale Dep. 102:24-103:5)

Further, Defendants themselves do not distinguish the Fresno and Bakersfield offices as completely independent entities.  The same human resources department oversees all the ABM employees, regardless of whether they are in Fresno or Bakersfield.  (Ex. 7, Cazale Dep. 214:23-217:17, 230:3-231:6)  Tim Brekke, Senior Regional Vice President for ABM N. Cal., who investigated some of the sexual harassment complaints, oversees a large region, including the Central Valley.  (Exh. 5, Brekke Dep. 73:21-75:10)  Regional Human Resources Tom Cazale conducted sexual harassment training in Fresno, Bakersfield, and Visalia.  (Exh. 7, Cazale Dep. 38:9-13)  Regional Operations Manager Faisal Algaheim oversaw a vast region, including the branch offices in Fresno, Visalia, and Bakersfield together.  (Exh. 1, Algaheim Dep. 20:12-20)  Tony Bautista, a Fresno Branch Manager, oversaw Bakersfield in 2006-2007.  (Exh. 2, Bautista Dep. 166:8-167:4)  As an operational manager, Javier Vasquez, who hired Jose Vasquez, a convicted sex offender, reported to the District Manager in Bakersfield, the Branch Manager in Visalia, and the Branch Manager in Fresno.  (Ex. 23, Javier Vasquez Dep. 71:13-72:21; 74:6-12)

**B.**      **Defendants' Responsibility for the Problem of Sexual Harassment.**

Defendants ABM are responsible for promulgating their policies and procedures against sexual harassment.  Due to its large monolingual Spanish-speaking workforce, Defendants ABM are responsible for translating and distributing their policies and procedures into Spanish.

---

[3]      The exhibits are attached to the Declaration of EEOC's Counsel Derek W. Li, which authenticates the documents to be true and correct copies of the originals.

Yet, four supervising harassers[4] and many of the claimants[5] in this case –employees from both Fresno and Bakersfield—received their information about sexual harassment only in English, a language they hardly understand.  Non-management staff did not receive any training on Defendants' policies and procedures against sexual harassment.  (Ex. 10, Guerrero Dep. 58:12-22; Ex. 12, Juarez Dep. 182:18-20)  As a result, many female claimants did not know whether there were different avenues within the company to address sexual harassment.  (Exh. 14, Magana Dep. 157:16-20; Exh. 16, Erika Morales Dep. 28:13-17; Exh. 6, Cardiel Dep. 28:19-23)  Instead, the claimants endured sexual harassment for fear of losing their jobs.  (Exh. 14, Magana Dep. 243:11-246:6; Exh. 20, Gladys Sanchez Dep. 76:2-10; Exh. 6, Cardiel Dep. 61:11-62:9).  Among claimants who were brave enough to complain to management, many found themselves repeatedly complaining to the same supervisor or lead person who himself was engaged in sexual harassment towards other female employees or was uninterested in stemming the sexual harassment.  (Exh. 17, Reyna Morales Dep. 87:6-87:13, Exh. 16, Erika Morales Dep. 65:2-24; Exh. 21, Teresa Sanchez Dep. 132:14-23).

Defendants ABM are also responsible to ensure that their management and human resources staff know how to respond and investigate sexual harassment complaints.  (Exh. 2, Bautista Dep. 145:21-146:2; Exh. 1, Algahiem Dep. 52:24-53:16)  As stated before, four supervisors who harassed the claimants did not receive training against sexual harassment in a language that they could understand.  One mono-lingual Spanish speaking supervisor was known to have simply chatted with other supervisors during the training because he could not understand the sexual harassment materials that were presented in English.  (Exh. 10, Guerrrero Dep. 89:15-91:12).  Supervisor Guerrero acknowledged that he did not understand how to interview or conduct an investigation.  (Exh. 10, Guerrero Dep. 91:13-92:11.)  Supervisor Allen Juarez, who was one of the harassers, confirmed that he did not receive training on how to

---

[4]      Exh. 8, Cervantes Dep. 73:20-75:3; Exh. 19, Jimenez-Sanchez Dep. 57:6-59:15; Exh. 13, Morales-Lozano Dep. 75:18-77:0, 78:18-79:11, Exh. 18, Rodriguez Dep. 154:4-155:17.

[5]      Exh. 3, Birrueta Dep. 36:12-39:23; Exh. 4, Bravo Dep. 27:25-28:16; Exh. 6, Cardiel Dep. 26:19-17:15; Exh. 9, DeMejia Dep. 50:3-16.

conduct investigations of sexual harassment, but yet he gathered information regarding a female janitor's complaint of sexual harassment.  (Exh. 12, Juarez Dep. 190:19-191:18).  Even though the local managers participated in the investigation, Regional Operations Manager Faisal Algaheim stated that he understood that managers did not have any investigative duties related to sexual harassment complaints. (Exh. 1, Algaheim Dep. 54:1-14).

Even those formally charged with the responsibility of conducting investigation failed to follow proper investigatory protocols.  In June 2005, a church volunteer at Valley Bible Church reported to the police that he saw Jose Vasquez attempt to sexually assault one of the claimants. Defendants' Human Resource Director Cazale was involved in the investigation, but failed to interview the church volunteer and other potential witnesses.  (Exh. 7, Cazale Dep. 67:16-68:20, 88:10-89:17, 89:18-90:14)  He failed to keep the harasser away from the victim to prevent him from intimidating her.  (Exh. 24, Jose Vasquez Dep. 94:11-98:21)  Despite the corroboration from a credible third-party witness, Defendants failed to impose any disciplinary measures against Jose Vasquez.  (Exh. 24, Jose Vasquez Dep. 100:17-101:12)

Another example occurred in August and September 2005, Defendants' management received two anonymous letters complaining about sexual harassment by Jose Vasquez, a sex offender, who was related to his supervisor.  While upper management such as Assistant General Counsel Hanson and Senior Regional Vice President Brekke acknowledged knowing about the anonymous letters, they failed to check on Vasquez' criminal background.  (Exh. 5, Brekke Dep. 174:20-175:1; Exh. 11, Hanson Dep. 53:22-55:1)  Defendants did not discipline Vasquez at all until the EEOC notified Defendants in December 2006 that Jose Vasquez was a convicted rapist. (Exh. 11, Hanson 56:12-59:24)  Despite being placed on notice by the two letters, Defendants failed to investigate whether its anti-nepotism had been violated when the harasser, Jose Vasquez, was hired and supervised by his relative.

To underscore Defendants' failure to respond effectively to complaints of sexual harassment, LADO will introduce Michael Robbins, an expert witness in sexual harassment prevention and investigation.  (Ex. 26, Excerpts from Michael Robbins Supp. Rpt. Dated April 17, 2010 at 1, 13-14)  After reviewing Defendants' investigation of various complaints of sexual harassment, He found that Defendants' harassment policies and training materials were not

followed.  *Id.*  Defendants' investigations failed to meet basic standards of completeness, thoroughness, and impartiality.  Because the investigation was flawed, Robbins found that Defendants did not take appropriate disciplinary and remedial action.  *Id.*  Robbins concluded that there was a comprehensive failure to prevent sexual harassment on many levels.  *Id.* According to Robbins, the fact that employees at so many levels and at so many facilities were involved speaks to Defendants' wide-spread failure to prevent harassment from occurring.  *Id.*

As a consequence, numerous women were sexually harassed by many different harassers throughout Defendants' worksites in the Central Valley, including Fresno, Bakersfield, and Visalia.  The two charging parties and 19 other class members ("claimants")[6] are all female employees of Defendant ABM who worked as janitors in the Central Valley of California.  They are primarily Spanish-speaking employees who are not fluent in English.  They and other women were victimized by at least thirteen harassers, including their own supervisors and a convicted sex offender.   The claimants and other female janitorial employees were subjected to repeated sexually egregious acts, including being raped (Exh. 14, Magana Dep. 21:2-18); being slapped in the face for not relenting to sexual acts (Exh. 16, Erika Morales Dep. 56:17-57:6); having their breasts and rear ends groped (Exh. 16, Erika Morales Dep. 61:10-62:21); being forced to touch a supervisor's erect penis (Exh. 16, Erika Morales Dep. 54:21-55:21); being touched in the vaginal area (Exh. 7, Cazale Dep. 70:10-72:8); being inappropriately grabbed or touched on the hips, legs, shoulders, and face (Exh. 17, Reyna Morales Dep. 46:18-48:10).  The claimants also were subjected on a weekly basis to constant sexualized comments or propositioning language throughout their employment by ABM's managers, supervisors, or co-workers.  (Exh. 17, Reyna Morales Dep. 64:22-65:3; Exh. 16, Erika Morales Dep. 42:1-43:4)  Moreover, the sexual harassment is corroborated by various witnesses or other female janitors who testified that they were sexual harassed in a similar manner by the same individuals.

---

[6]     Eleven of the twenty-one claimants are plaintiff-intervenors represented by the same private counsel.  EEOC represents the interest of all twenty-one claimants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  Relevant Procedural History

On or about June 2006, Defendants were served with Charging Party Erika Morales' EEOC charge where she complains to being subjected to sexual harassment and constructive discharge and states that she "believe[s] a class of females have been discriminated against on the basis of their sex in violation of Title VII."  (Ex. 27, Morales EEOC Charge).  The charge does not limit "a class of females" to only those in Bakersfield or Fresno.  On or about April 25, 2007, Defendants were served with the EEOC's letter of determination finding "reasonable cause to believe that Charging Party [Erika Morales] was subjected to sexual harassment and was constructively discharged" and females as a class has been subjected to sexual harassment.

Exhibit 28, EEOC Letter of Determination.)  The Letter of Determination does not limit its

finding to only those who worked in Bakersfield or Fresno.  During the summer of 2007, the

EEOC and Defendants engaged in a conciliation process for all of the discrimination claims

contained in the EEOC's letter of determination.  On or about September 25-26, 2007, the

Defendants were served with EEOC's conciliation failure letter stating that conciliation efforts as

to all the discrimination charges contained in the EEOC's letter of determination had failed.

(Exhibit 29, EEOC Conciliation Failure Letter).

A second charge of sexual harassment was filed by the Law Offices of Mallison and

Martinez on behalf of Maria Magana, another ABM janitor.  (Ex. 25, Morales' Charge.)

Charging Party Erika Morales also amended her charge to indicate a claim of continuing action.

The EEOC found cause for Morales and a class of similarly situated individuals and

subsequently conciliated but without success.  (Ex. 37, Morales Letter of Determination; Ex. 36,

Conciliation Failure Letter).

Since the conditions precedents to the lawsuit were met, the EEOC filed its initial

complaint in 2007 and its amended complaint in 2009 in the public interest and in the interest of

the Charging Party and similarly situated individuals.  (Ex. 30, First Amended Complaint.)

Around April 21, 2009, Dejia Mejia, who worked for Defendants in Fresno, filed a charge

complaining of sexual harassment.  (Ex. 32, Mejia Charge of Discrimination.)  Around

December 14, 2009, a letter of determination was sent to Defendants finding reasonable cause

that the Charging Party and a class of employees were subjected by Defendants to sexual

harassment.  (Ex. 34, Mejia Letter of Determination.)  Then, on March 5, 2010, the EEOC sent a

letter to Defendants notifying that conciliation had failed.  (Ex. 33, Mejia Conciliation Failure

Letter.)

---

[21]    Another example of Defendants evading reality is that two of the claimants, Hilda Gomez and Martha Castaneda Garcia, were not part of either Fresno or Bakersfield branch office.  (cite) They were part of the Visalia branch office, which is around 44 miles south of Fresno and around 81 miles north of Bakersfield.

### III.   ARGUMENT

**A.   DEFENDANTS ABM ARTIFICIALLY DIVIDE THE CLAIMANTS GEOGRAPHICALLY, WHEN SUCH ARTIFICE CONFLICTS WITH THE REALITY THAT ALL THE EMPLOYEES OF THE CENTRAL VALLEY SHARE SIMILAR WORKING CONDITIONS DUE TO BEING EMPLOYED AND CONTROLLED BY DEFENDANTS.**

In its memorandum of points and authorities, Defendants frame the "allegations of two entirely separate and unrelated groups of claimants.   (Def. Mot. to Sever at 2.)  Defendants named one group as the "Bakersfield Claimants" and other group as the "Fresno Claimants." Defendants attempt to paint a picture that the two sets of claimants exist independently of each other.

Notwithstanding the names given, the reality is that all the claimants were Defendants ABM's employees.[21]  The two districts do not operate independently.  They are all controlled by Defendants.  Defendant ABM N. Cal. is the direct employer of all the employees in the Central Valley, including those working through the Fresno and Bakersfield branch offices.  Defendants provide to all Central Valley employees ABM Janitorial Services' employee handbook, which set forth the terms and conditions of employment.  Defendant ABM Inc. promulgates the Code of Business Conduct and Ethics, which sets forth the required conduct of all employees, including those employed by Defendant ABM N. Cal. throughout the Central Valley.  No one or branch has any discretion not to implement or to change the policy.  Through service agreements with ABM N. Cal., ABM Inc. provides day-to-day human resources services, including training and advice on how to handle sexual harassment complaints.  Additionally, ABM Inc. maintains the hotline for employees, including all in the Central Valley, to call to complain about sexual harassment problems.

Further, Defendants themselves do not distinguish the Fresno and Bakersfield offices as completely independent entities.  The same human resources department oversaw all the ABM employees, regardless of whether they are in Fresno or Bakersfield.  Tim Brekke, Senior Regional Vice President for ABM N. Cal., who investigated some of the sexual harassment complaints, oversee a large region, including the Central Valley.  Regional Human Resources

Tom Cazale conducted sexual harassment training in Fresno, Bakersfield, and Visalia.  Tony Bautista, a Fresno Branch Manager, oversaw Bakersfield in 2006-2007.  Juan Medina was the Branch Manager ofboth Bakerfield, Visalia, and Fresno.  As an operational manager, Javier Vasquez, who hired Jose Vasquez, a convicted sex offender, reported to the District Manager in Bakersfield, the Branch Manager in Visalia, and the Branch Manager in Fresno.

Despite Defendants' attempt to conjure an alternate universe, the reality is that Defendants treated the Central Valley as an integrated whole.  Due to being employed by the same employer and controlled by the same higher-level subsidiary and corporate parent, all the employees of the Central Valley have more in common with each other than differences.

**B.   DEFENDANTS' REQUEST TO SEVER PARTIES AND CLAIMS UNDER FED. R. CIV. 21 IS INAPPLICABLE WHEN THE EEOC IS THE PLAINTIFF OF THE EEOC LAWSUIT WITH ONE CLAIM AGAINST JOINTLY LIABLE DEFENDANTS.**

Defendants cite to Fed. R. Civ. P. 21 for the proposition that the court may sever any claim against any party.  (Def. Mot. P. & A. 11.)  Underlying its motion is the assumption that each claimant has a separate claim.  (*Id.*)

First, the EEOC and not the claimants is the plaintiff of the EEOC's lawsuit.[22]  The EEOC is "the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake."  *EEOC v. Waffle House, Inc.*, 534  U.S. 279, 291 (2002).  Further, the Ninth Circuit has consistently held that "[t]he EEOC's right of action is independent of the employee's private action rights."  *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1542 (9th Cir.1987); *EEOC v. Federal Express Corp.*, 558 F.3d 842, 852 (9th Cir. 2009).  The claimants represented by the EEOC are not "parties" to be severed.  *See EEOC v. Venator Group Specialty, Inc.*, 85 Fair Empl. Pract. Cas. (BNA) 497, 2001 WL 246376 at *1 n.2 (S.D.N.Y. 2001) (EEOC class members are not parties in the formal sense who were subject to the deadline to add parties or to be served with written interrogatories); *EEOC v. Plaza Operating Partners*

---

[22]    Nine of the claimants have exercised their right to intervene in the EEOC's lawsuit and considered to be "plaintiff-intervenors" to the EEOC lawsuit.  Defendants are not seeking to sever plaintiff-intervenors from Plaintiff EEOC.

*Ltd.*, 95 Fair Empl. Cas. (BNA) 631, 2005 WL 309770 at * 2 (S.D. N.Y. 2005) (EEOC class members are not parties "in the strict sense of the term" and allowed two individuals to be added as class members after the deadline for adding parties had expired).

Further, the EEOC is pursuing one claim of sex discrimination against Defendants by subjecting the charging parties and a class of similarly situated individuals to a sexually hostile work environment and quid pro quo harassment.  (Ex. 30 (First Amended Complaint).)  The EEOC pursues this case also on a theory that Defendants engaged in a pattern or practice of unlawful employment practices resulting in a sexually hostile work environment for the claimants.  (*Id.*)  Each claimant is not a separate "plaintiff" with their own claims to be severed.  Therefore, Rule 21 is inapplicable to this case to separate the claimants when the EEOC is the plaintiff pursuing a single claim against Defendants.

**C.    EVEN IF FED. R. CIV. 21 IS APPLIED, THE CLAIMANTS' RIGHT TO RELIEF RELY ON THE SAME SERIES OF TRANSACTIONS AND OCCURENCES; AND SHARE IN COMMON MANY OF THE SAME ISSUES OF LAW OR FACT**

While Rule 21 is applicable to sever claimants in an EEOC case, applying the rule does not warrant severance.  Fed. R. Civ. P. is silent as to the actual grounds for misjoinder.  However, parties are deemed misjoined when they fail to satisfy Fed. R. Civ. P. 20(1).  *Miller v. Hygrade Food Corp.*, 202 F.R.D. 142, 144 n. 2 (E.D. 2001).  To determine whether parties are property joined under Fed. R. Civ. P. 20(a), a district court must consider: (1) whether the right to relief asserted by each plaintiff arises out of same transaction, occurrence, or series of transactions or occurrences; and (2) whether any question of law or fact common to all plaintiffs will arise in the action.  Fed. R. Civ. P. 20(a).

To determine commonality, courts have considered Fed. R. Civ. P. 23(a) for an analogy, where the commonality requirement necessitates a "very low threshold."  *Barnes v. American Tobacco Co.*, 497 F.2d127, 141 n. 15 (3d Cir. 1998); *see also Mosley v. Gen. Motors,* 497 F.2d 1330, 1334 (8th Cir. 1974).  The plaintiff needs only share one common question of law or fact.  *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 145 (E.D. Pa 2001).

"Under the rules, the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims; parties and remedies is strongly

encouraged."  *League to Save Lake v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th

Cir. 1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)).  In

other words, a lawsuit should be kept together to promote fairness and efficiency.

## 1.   EEOC'S PATTERN AND PRACTICE THEORY SATISFIES THE JOINDER REQUIREMENTS OF THE SAME TRANSACTION AND COMMON QUESTION OF LAW AND FACT

As stated in its Complaint, the EEOC pursues a sexually hostile work environment claim

partially based on a pattern or practice theory.  Defendants created and maintained a sexually

hostile work environment from 2000 to the present because their standard operating procedure

was to tolerate numerous incidents of sexual harassment at its worksites as well as to fail on a

company-wide basis to take adequate measures to prevent and remedy the incidents of sexual

harassment.  Moreover, Defendants ineffectively disseminated their sexual harassment policy

and complaint procedures, which further inhibited complaints of sexual harassment by the

victims of harassment.  When their female employees complained, Defendants' management at

all levels repeatedly engaged in substandard investigation of sexual harassment complaints.

These substandard investigations resulted in inadequate discipline of sexual harassers, which

included supervisors and a convicted sex offender.  Additionally, Defendants' lack of oversight

of its hiring process led to the hiring and promotion of a convicted sex offender to supervisory

position.  Admittedly, such an individual should not have been hired in the first place.  Based on

the totality of these inadequate measures, Defendants created and maintained a sexually hostile

work environment which inevitably led to more sexual harassment.

To use a pattern or practice theory to establish a sexually hostile work environment has

been well-recognized by the courts.  *See, e.g., EEOC v. Mitsubishi*, 990 F. Supp. 1059, 1073

(C.D. Ill. 1998); *see also EEOC v. Dial*, 156 F. Supp. 2d 926, 957-958 (E.D. Ill. 2001); *see also*

*EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1130 (D. Nev. 2007); *EEOC v.*

*Intern. Profit Associates,* 2010 U.S. Dist. LEXIS 32647 (N.D. Ill. 2010).  In a pattern or practice

case, "the landscape of the total work environment, rather than the subjective experience of each

individual claimant, is the focus for establishing a pattern or practice of unwelcome sexual

harassment which is severe and pervasive.  *Mitsubishi*, 990 F. Supp. at 1074.

In Phase I, the EEOC must show that an objectively reasonable person would find the existence of the following: (1) a hostile work environment of sexual harassment within the company; and (2) a company policy of tolerating a workforce permeated with severe and pervasive sexual harassment. *EEOC v. Mitsubishi*, 990 F. Supp. 1059, 1073 (C.D. Ill. 1998); *see also EEOC v. Dial*, 156 F. Supp. 2d 926, 957-958 (E.D. Ill. 2001). If the EEOC is successful in establishing pattern or practice liability, then the district court is authorized to issue injunctive relief. In Phase II, the trier of fact will then decide whether each claimant is entitled to monetary relief. *Id.*

While the EEOC has ample evidence establishing at least a triable issue of a pattern or practice of tolerating and condoning a sexually hostile work environment, the EEOC does not need to prove at this stage that it will definitely prevail. Courts have held that *alleging* discrimination based on a common policy or practice can satisfy both requirements of Rule 20. *See, e.g.*, *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y. 1999); *King v. Pepsi Cola Metropolitan Bottling Co.*, 86 F.R.D. 4, 6 (E.D. Pa. 1979). "Common sense" says that claims *alleged* to be part of a "pattern or practice" satisfy both the transaction and common question requisites of Rule 20(a). *King v. Ralston Purina Co.*, 97 F.R.D. 477, 479-480 (W.D.N.C. 1983).

The *Ralston Purina Co.* case is illustrative of not severing a pattern or practice case even if it involves multiple plaintiffs. In *Ralston Purina Co*, three plaintiffs claim that defendant food company demoted them on the basis of a company-wide "pattern and practice of arbitrary, illegal age discrimination. *Id.* at 478. All three plaintiffs worked in different places and in different divisions of the company. The plaintiffs alleged discrimination as part of defendant's pattern and practice of unlawful age discrimination throughout its many regions and divisions. *Id.* at 480. In denying defendant's motion to sever, the district court noted that each plaintiff is entitled to put on evidence of the alleged pattern and practice. *Id.* If the claims were severed, then the same evidence, including, perhaps, the testimony of all three plaintiffs, would have to be presented in three separate trials. *Id.* Therefore, the district court concluded that it is more convenient and economical for this evidence to be heard in one trial and to avoid limiting plaintiff's ability to put on the evidence at all. *Id.*

Similarly, to artificially sever the Fresno claimants from the Bakersfield claimants would result in having the same witnesses, including all twenty-one claimants, to testify twice.  Further, when one considers all the management witnesses having to testify twice, the policy behind severance is not served and it will impose a tremendous burden on the court and on the parties.  On the basis of the EEOC's pattern or practice theory alone, Defendants' motion to sever should be denied.

    **2.**    **INDEPENDENT OF THE PATTERN OR PRACTICE THEORY, LIABILITY BASED ON A SEXUAL HOSTILE WORK ENVIRONMENT ALSO REQUIRES THE ANALYSIS OF THE SAME TRANSACTION AND SAME ISSUES OF LAW AND FACT.**

        **a.**    **Even if a Claim Involves Employees Working at Different Worksites, All their Circumstances are Necessary to Assess a Sexually Hostile Work Environment Claim.**

Defendant's attempt to isolate claimants into two groups ignores well-established legal authorities that harassment of other employees is relevant to determine a hostile work environment claim.  To properly analyze a hostile work environment claim, one must consider the totality of the circumstances since such "claims are based on the cumulative effect of individual acts.

Even if the claim involves more than one employees, the circumstances of all the employees are necessary to analyze a sexually hostile work environment claim.  In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court held that because hostile work environment "claims are based on the cumulative effect of individual acts," determining whether an actionable claim exists requires looking to "all the circumstances," such as "the frequency of the discriminatory conduct," "its severity," whether it is "physically threatening or humiliating," and whether it "unreasonably interferes with an employee's work performance."  *Morgan*, 536 U.S. at 116.  The *Morgan* Court further concluded that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice,' and that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be

considered by a court for the purposes of determining liability." *Id*. The "unlawful employment practice" therefore cannot be said to occur on any particular day, but occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a collection of single acts of harassment that may not be actionable on their own. *Id*. at 115. As well-stated by one circuit court of appeal,

> "[T]he totality-of-the-circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." "[A]ll allegations of harassment must be considered when determining whether the harassment created a hostile work environment. Each incident of harassment contributes to the context in which every other incident occurs . . . ."

*Williams v. General Motors Corp*., 187 F.3d 553, 563 (6th Cir. 1999). "The [severe or pervasive] analysis cannot carve the work environment into a series of discrete incidents and measure the harm adhering in each episode. Rather, a holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes." *Id* at 563 (citation omitted; insertions added by *Williams* court).

Further, "[o]ffensive comments do not need to be made directly to an employee for a work environment to be considered hostile." *Davis v. Team Electric Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008); *see also Woods v. Graphic Communications*, 925 F.2d 1195, 1202 (9th Cir. 1991) (same analysis in racially hostile work environment). Workplace harassment of others is admissible to prove the existence of a hostile work environment whether or not the plaintiff-employee is aware of such harassment. *See, e.g.*, *Quinn v. Consolidated Freightways Corp.*, 283 F.3d 572 (3d Cir. 2002) (district court committed error in excluding testimony of a co-worker about sexually charged worksite, other than the plaintiff's worksite, that co-worker complained about, where such testimony could establish atmosphere of condoned sexual harassment); *Perry v. Ethan Allen Inc.,* 115 F.3d 143, 151-152 (2d Cir. 1997) (evidence of harassment of other employees, even if not known to plaintiff, is relevant to whether hostile work environment

exists); *Waterson v. Plank Road Motel Corp.,* 43 F. Supp. 2d 284, 288 (N.D.N.Y. 1999) (testimony of another female regarding her own experience of alleged sexual harassment and discrimination while working for defendant company relevant and admissible in a sexual harassment case in showing hostile work environment exists).  As explained by the Third Circuit as to how to determine a sexually hostile work environment, "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."  *Andrews v. Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. Pa. 1990).

Evidence of prior harassment is also relevant to show that the employer knew about the alleged harassers' conduct and failed to properly address it.  *See e.g., Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001) (evidence of alleged harasser's sexual harassment of other women who worked under him may be relevant to show defendant had custom or policy of being indifferent to women); *Loring v. Universidad*, 190 F. Supp. 2d 268, 271-272 (D.P.R. 2002) (evidence of harasser's sexual harassment of female students relevant to proving an employee's sexual harassment claim that university administration knew or should have known that university administrator was acting in a way that created hostile work environment); *Hurly v. Atlantic City Police Dep't*, 174 F.3d 95, 110-112 (3d Cir. 1999) (evidence of sexual harassment of others of which plaintiff did not have personal knowledge relevant to determine employer's asserted reasons for its actions were pretext for discrimination).

Even when the employees may work in different worksites, all their circumstances are relevant in a sexually hostile work environment analysis.  *See Sandoval v. American Building Maintenance Industries, Inc.*, 578 F.3d 787, 801 (8th Cir. 2009); *EEOC v. Burlington Medical Supplies, Inc.*, 536 F. Supp. 2d 647 (E.D.Va. 2008) (in a case involving allegations of sexual harassment from sales representatives and other employees working throughout the United States, the court urged that "[c]ourts must scrutinize the totality of the circumstances 'of the entire hostile work environment and refrain from car[ving] the work environment into a series of discrete incidents and then measure[ing] the harm occurring in each episode.'")

For example, in *Sandoval*, the Eighth Circuit explicitly stated that "we view the 'totality of the circumstances' in determining whether there is a hostile work environment."  578 F.3d

787, 801 (8th Cir. 2009).  Like the instant case, the sex harassment of janitors in *Sandoval* occurred at geographically disparate worksites throughout Kentucky and by different supervisors.  *Sandoval v. American Building Maintenance Industries, Inc.*, 552 F. Supp. 2d 867, 900-905 (D.Minn. 2008).  Even though each claimant worked at separate worksites and had allegations of harassment against different supervisors, the Eighth Circuit held that "[w]hen judging the severity and pervasiveness of workplace sexual harassment, this court has long held harassment directed towards other female employees is relevant and must be considered." *Sandoval*, 578 F.3d at 803.  The Eighth Circuit also noted that the evidence of totality of circumstances is "highly probative of the type of workplace environment [the claimant] was subjected to, and whether a reasonable employer should have discovered the sexual harassment." *Id*.

Therefore, the authorities clearly support that evidence of harassment of employees working in other worksites is relevant to a claim of sexually hostile work environment.  The facts relating to each claimant are intertwined and should not be separated by severance.

> **b.     Regardless of Whether Their Worksites were through the Fresno or Bakersfield Branch Offices, All the Claimants Share in Common Transaction and Issues.**

Regardless of where the claimants worked, all their circumstances are relevant to be assessed together to determine the merits of their claims.  The common transaction is the series of occurrences which constitute the sexually hostile work environment from 2000 to the present.  They also share a number of common issues of law and fact.

As discussed in the prior section, to determine objectively whether each claimant is subjected to a sexually hostile work environment requires an examination of the totality of the circumstances, including those working at other worksites. Thus, for each claimant, the experiences of all the claimants and other witnesses and victims of harassment employed by Defendants are all relevant to this issue.

For each claimant who was harassed by a supervisor, there is a common issue as to whether the *Faragher / Ellerth* defense applies.  The defense involves an analysis of: (1) whether the defendant exercised reasonable care to prevent and promptly correct the sexually hostile

work environment; and (2) whether the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or unreasonably failed to otherwise avoid harm. *Burlington Indus. Ind. v. Ellerth*, 524 U.S. 742, 764-765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-807 (1998).

Therefore, there is a common issue for each claimant harassed by a supervisor as to whether Defendants ABM exercised reasonable care to prevent a sexually hostile work environment and to correct any sexually offense acts. Whether Defendants ABM exercised reasonable care requires an examination of Defendants' policy and procedure and the effectiveness of its distribution and dissemination to a largely Spanish-speaking workforce. Further, the issue requires an analysis of Defendants' training of its policy and procedures for non-managerial employees to know what recourse they have; and for managerial and human resources employees to know how to investigate sexual harassment complaints. To determine whether Defendants ABM reasonably to remedy the offensive conduct also requires an examination of what it did under similar investigations. For these factual issues to be addressed, the experience of the claimants, other victims, witnesses to the harassment, harassers, and management witnesses are all necessary to determine the claim for each claimant harassed by a supervisor.

Also, another common issue is whether the claimant acted reasonably or unreasonably to avoid or to prevent harm. What is reasonable is dependent partly on the effectiveness of Defendants ABM's policies and training in informing the claimants and other victims of harassment of their rights and recourse and in deterring harassers from further harassment. The fact that the harassment continued not only in Fresno but also in Bakersfield is relevant to consider

To the extent that the claimants were harassed by co-workers, there is an issue as to whether Defendants knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803-805 (9th Cir. 2001). The issue of notice is also important to the issue whether Defendants took reasonably care to prevent and promptly correct the sexual harassment problem. Here, there is an issue of when Defendants ABM knew or should have known that its

policies, procedures, and training were ineffective in dealing with the problem of sexual

harassment.  For example, the fact that Jose Vasquez were not adequately disciplined and

continued to sexually harassed numerous women even after Defendants received the anonymous

letters and the report by the volunteer at Valley Bible Church in 2005 should have placed

Defendants on notice that its sexual harassment training was ineffective in deterring harassment

and in encouraging victims to complain.  For these factual issues to be addressed, the testimony

of the claimants, other victims, witnesses to the harassment, harassers, and management

witnesses are all necessary to determine the claim for each claimant harassed by a supervisor.

Another issue common to all the claimants is whether Defendants ABM Inc. and ABM

Janitorial Services should be held liable as joint employer.  To assess this issue requires an

examination of issues such as the degree of interrelation of operations, common management,

centralized control of labor relations, and financial control.  This issue requires the examination

of policies, service agreements, and procedures of all three Defendants and requires the

testimony of the management witnesses of all three Defendants.

Additionally, each claimant has to confront the common issue of credibility.  To do so

requires knowing about the experiences of others.  For example, if a Spanish-speaking claimant

claims that she called the hotline and no one returned her calls, then the experience of other

victims of harassment when they called the hotline would be relevant.  If a manager claims not to

aware of a sexual harassment problem but he had been involved in an investigation of the

complaint from another claimant, then such information about others are relevant to the

determination of credibility of the witnesses.

Therefore, both the requirements of same transaction of a sexually hostile work

environment and common issues of law and fact are met.  Thus, even if Rule 21 is applicable,

Defendants' motion to sever should be denied.

**D.    ALL CONDITION PRECEDENTS HAVE BEEN MET TO BRING A LAWSUIT TO SEEK RELIEF NOT ONLY FOR THE BAKERSFIELD CLAIMANTS BUT ALSO THE FRESNO CLAIMANTS.**

Defendants claim that the EEOC's reasonable cause finding for Erika Morales and a class

of similarly-situated individuals does not extend to individuals who worked in Fresno.  (Def.

Mot. to Sever at 14-15.)  Defendants then raised a related argument that claimants discovered during the discovery phase of the litigation are not part of the EEOC's reasonable investigation of the Morales' charge.  On both points, Defendants are wrong.

In civil actions brought in its own name, the EEOC has the authority to seek relief for "any discrimination stated in the charge itself or discovered in the course of a reasonable investigation of the charge, provided that such additional discrimination was included in the EEOC 'reasonable cause' determination and was followed by compliance with the conciliation procedures of the Act."  *EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1977) (EEOC allowed to pursue case for females and other minority groups even though the EEOC only alleged discrimination towards males); *EEOC v. Occidental Life Ins. Co. of California*, 535 F.2d 533 (9th Cir. 1976) (EEOC was able to litigate additional charges where they are justified by new information during the investigation).  In other words, if the Respondent receives notice of its findings, then the EEOC has the right to proceed in accordance with those findings.

Here, the Morales charge notified Defendants that she and "a class of females" had been discriminated against and the subsequent letter of determination notified her of the EEOC's finding that "females as a class" have been subjected to sexual harassment.  However, there is nothing in the charge, letter of determination, or the conciliation suggesting that the class of females or similarly situated individuals would be restricted to those employees who worked only in Bakersfield.  Since those documents were directed to Defendants, those notices placed them on notice that the charge, investigation, and finding potentially could encompass any of their employees.

The premise behind Defendants' position is that the Fresno claimants are totally separate from the Bakersfield claimants.  However, Defendants are wrong.  As explained previously, the common thread tying all the employees of the Central Valley together is that they are employed and controlled by Defendants ABM.  The different branches do not operate independently when they have to abide by the dictates of the Defendants.

Defendant's claim that the Fresno class members should be severed from this action because these claimants were not identified by the EEOC at the investigatory or conciliation

stage lacks merit.  Once the EEOC finds cause on a "class" violation, notifies the respondent of its belief in the existence of a systemic problem, and attempts to conciliate on that basis, the EEOC need not identify all potential victims as a predicate for litigating those claims. *See EEOC v. Rhone-Poulenc, Inc.,* 876 F.2d 16(3d Cir. 1989) ("in a class action [age discrimination] suit, '[t]he EEOC is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant").  The rationale of courts finding such efforts adequate despite the failure to identify all victims, applies with equal force to the suggestion here that the EEOC should have named the Fresno individuals it sought to add at some earlier date.  As a district court recently observed in discussing the satisfaction of pre-suit requirements in a Title VII class gender and sexual harassment case, once the EEOC notifies the respondent that it is investigating possible discrimination against a class of employees, "it would be wasteful, if not in vain to attempt to conciliate the claims of numerous employees, all with the same grievance,"' since "[i]f it is impossible to reach settlement with one discriminate, what reason would there be to assume the next one would be successful."' *Dinkins v. Charoen Pokphand USA, Inc.,* 133 F. Supp. 2d 1237, 1246 (M.D. Ala. 2001) (quoting *Marshall v. Sun Oil Co. (Del.),* 605 F. 2d 1331, 1338 n. 5 (5th Cir. 1979)).

Whatever criticisms ABM has concerning the adequacy of the EEOC's investigation, they are misplaced in determining whether it is proper for the EEOC to seek relief for individual class members identified during the course of litigation. Many courts have made it clear that the scope of an EEOC investigation is not judicially reviewable. *See e.g. EEOC v. Caterpillar, Inc*., 409 F.3d 831, 833 (7th Cir. 2005); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984); *Georator Corp. v. EEOC*, 592 F. 765, 767 (4th Cir. 1979); *EEOC v. NCL American, Inc., et. al*., 536 F.Supp.2d  1216, 1221-22 (D. Hawaii 2008).  The reason is because Title VII proceedings are reviewed de novo. *McDonnell Douglas v. Green*, 411 U.S. 792, 798 (1972).

Furthermore, ABM's heavy reliance on a recent unpublished and out of circuit opinion from the Northern District of Iowa, *EEOC v. CRST Expedited, Inc.* 2009 WL 1175169 (N.D. Iowa) is wholly unavailing for the following reasons.  In *EEOC v. CRST*, the employer sought to dismiss class members at summary judgment under Rule 56 where the EEOC failed to identify these individuals at the administrative/investigatory stage, not to sever class members for

purposes of trial.  Second, *EEOC v. CRST* is not particularly persuasive because it is an umpublished district court opinion from the Northern District of Iowa.  Moreover, in *CRST*, the charging party did not include any class allegations in her charge and there was no class finding in her letter of determination.  In contrast, Morales placed Defendants on notice of a potential for liability for a class of females and the EEOC made a class finding as well.

To the extent that a finding regarding Fresno employees needed to be made, Delia Mejia, an employee reporting to the Fresno branch, filed a charge in 2009.  In its letter of determination, the EEOC made a class finding.  Thus, the technical findings have been made and the lawsuit should be allowed to proceed not only with the Bakersfield's claimants but on behalf of all the claimants.

**E.      THE POLICY CONSIDERATIONS OF JUDICIAL ECONOMY AND FAIRNESS WEIGHS IN FAVOR OF DENYING DEFENDANTS' MOTION TO SEVER.**

In the prior section discussing the common issues of law and fact, the EEOC asserts various common issues that need to be addressed for each claimant.  Numerous factual issues need to be resolved before issues relating to joint employer, the *Faragher / Ellerth* defense, Defendant's negligence and notice, and credibility.  If a motion to sever is granted, then to resolve all these issues require numerous witnesses that need to be introduced at least twice and numerous documents need to be admitted at least twice.  In light of the common transaction and issues of law and fact, such duplication wastes judicial economy and prejudices the EEOC in having to expend unnecessary resources.  Further, if the trial is severed, there is a danger that the severance will prevent the EEOC to present all the evidence to prove its case.  For example, Defendants are likely to argue that the EEOC cannot introduce evidence concerning the Fresno claimants to prove its case concerning the Bakersfield claimants, when all the circumstances must be considered to determine whether there is a pattern or practice of condoning and tolerating a sexually hostile work environment.  Because of the waste of judicial economy and the prejudice to the EEOC, Defendants' motion to sever should be denied.

IV.   **<u>CONCLUSION</u>**

For the reasons stated, the EEOC requests for Defendants' motion to sever to be dismissed.


Dated:  May 14, 2010                    Respectfully submitted,

                                        U.S. EQUAL EMPLOYMENT OPPORTUNITY
                                        COMMISSION



                                        <u>/s/ Derek W. Li</u>
                                        Derek W. Li
                                        Attorney for Plaintiff