1   LAURA E. HAYWARD, Bar No. 204014
    LITTLER MENDELSON
2   A Professional Corporation
    650 California Street, 20th Floor
3   San Francisco, CA 94108.2693
    Telephone:    415.433.1940
4   Email: lhayward@littler.com

5   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
6   A Professional Corporation
    2049 Century Park East, 5th Floor
7   Los Angeles, CA 90067.3107
    Telephone:    310.553.0308
8   Facsimile:    310.553.5583
    Email: kjacoby@littler.com

9
    Attorneys for Defendants
10  ABM INDUSTRIES INCORPORATED; ABM
    JANITORIAL SERVICES, INC. and ABM
11  JANITORIAL NORTHERN CALIFORNIA

12

13              UNITED STATES DISTRICT COURT

14            EASTERN DISTRICT OF CALIFORNIA

15

16  U.S. EQUAL EMPLOYMENT            Case No. 1: 07 CV 01428 LJO-JLT
    OPPORTUNITY COMMISSION,
17                                   **MEMORANDUM OF POINTS AND
                Plaintiff,           AUTHORITIES IN SUPPORT OF ABM
18                                   DEFENDANTS' MOTION FOR SUMMARY
                                     ADJUDICATION RE: BAKERSFIELD
19  ERIKA MORALES and ANONYMOUS     CLAIMANTS/ INTERVENERS**
    PLAINTIFFS ONE THROUGH EIGHT,
20                                   **[F.R.C.P. 56 (d)]**
                Plaintiff Interveners,
21                                   Hearing Date:  June 17, 2010
            v.                       Time:          8:30 a.m.
22                                   Judge:         Lawrence J. O'Neill
    ABM INDUSTRIES INCORPORATED      Courtroom:     4
23  and ABM JANITORIAL SERVICES,
    INC.; ABM JANITORIAL NORTHERN    **REDACTED VERSION**
24  CALIFORNIA; JOE VASQUEZ; Does
    1-10 inclusive,
25
                Defendants.
26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.                    1

CASE NO. 1:07 CV 01428 LJO (JLT)

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................ 1

II.   PART ONE: INTRODUCTION ........................................................................ 3

III.  PART ONE: STATEMENT OF FACTS .......................................................... 4

IV.   PART ONE: ARGUMENT ................................................................................ 5

    A.   An EEOC Charge Cannot Revive Stale State Law Claims ...................... 5

        1.   Many Of The Interveners' State Common Law Claims Are Time Barred ............................................................................................ 6

        2.   Claimant 3 And Claimant 2's FEHA Claims Are Time Barred ...................... 8

    B.   The EEOC May Not Obtain Individual Relief On Behalf Of Claimant 3, Claimant 2, Claimant 7 Or Claimant 8 Because Their Title VII Claims Are Time Barred. ......................................................... 9

    C.   Claimant 3, Claimant 2, And Claimant 7 May Not Pursue Time-Barred Title VII Claims ........................................................................... 12

    D.   Claimant 5's Title VII And FEHA Claims Must Dismissed Because She Was Not Employed By Defendants. ...................................... 12

V.    PART TWO: INTRODUCTION ...................................................................... 13

VI.   PART TWO: STATEMENT OF FACTS ........................................................ 14

    A.   ABMNC –Bakersfield Branch And Mr. Joe Vasquez ........................... 14

    B.   The Majority Of The Plaintiff-Interveners And Claimants Left ABMNC Voluntarily Or For Reasons Unrelated To Their Response To Any Alleged Harassment .............................................. 14

    C.   The Majority of the Plaintiff-Interveners and Claimants Failed to Complain Despite Having Acknowledged Receipt of Information Pertaining to ABMNC's Sexual Harassment Policies .......................... 16

        1.   ABMNC Diligently Informed and Trained Employees On Avoiding and Sexual Harassment and Reporting Inappropriate Conduct ...................... 16

        2.   Most Claimants Failed to Complain About Mr. Vasquez' Alleged Conduct ......................................................................... 16

    D.   The Majority of the Allegations Made by the Plaintiff-Interveners and Claimants are Insufficient to Rise to the Level of Severe Or Pervasive .......................... 18

VII.  PART TWO: ARGUMENT .............................................................................. 21

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.                    i.

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

A.   Plaintiff-Interveners and the EEOC Face Challenges Establishing  Prima Facie Claims of Sex Discrimination Or Retaliation Under Title VII or FEHA ................. 21

B.   Claims For Quid Pro Quo Harassment Pursuant To Title VII  Will Fail Because The Alleged Harassment Did Not Involve A Tangible Employment Action ....................................................................................................................... 23

C.   Certain Hostile Work Environment Claims Under Title VII And FEHA Will Fail ............................................................................................................................ 24

    1.   Any Claimant's Failure To Complain About The Alleged Harassment Establishes A Complete Defense To Her Title VII  Claim ............................ 24

    2.   Certain Claimants Cannot Show the Harassment Was Severe Or Pervasive. ................................................................................................... 27

D.   Certain Plaintiff-Interveners' False Imprisonment Claims Fail ................................ 29

E.   Certain Plaintiff-Interveners' Assault Claims Fail ................................................... 30

F.   Certain Plaintiff-Interveners' Battery Claims Fail.................................................... 30

G.   Certain Plaintiff-Interveners Cannot Prove The Prima Facie Elements Of A Claim  Of Intentional Or Negligent Infliction Of Emotional Distress Or Negligence. ............................................................................................................... 30

H.   Plaintiff-Interveners' Claims For Aiding And Abetting And Failure To Prevent Cannot Prevail If There Was No Underling FEHA Violation ...................... 31

VIII.   CONCLUSION ................................................................................................................ 32

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1

**TABLE OF AUTHORITIES**

2

PAGE

3

**CASES**

4

*Akers v. County of San Diego,*
    95 Cal. App. 4th 1441 (2002) ................................................................. 21

5

*Alch v. Superior Court,*
    122 Cal. App. 4th 339, 377 (2004) .......................................................... 8

6

7

*Alcorn v. Anbro Eng., Inc.,*
    2 Cal. 3d 493 (1970) ............................................................................... 30

8

*Anthony v. County of Sacr.,*
    898 F.Supp. 1435 (E.D. Cal. 1995) ......................................................... 28

9

*Arnold v. United States of America et al.,*
    816 F.2d 1306 (9th Cir. 1987) ................................................................. 7

10

*Austin B. v. Escondido Union School Dist.,*
    149 Cal. App. 4th 860 (2007) .................................................................. 30

11

12

*Brooks v. City of San Mateo,*
    229 F.3d 917 (9th Cir. 2000) ............................................................. 22, 29

13

*Burgess v. Superior Court,*
    2 Cal. 4th 1064, 1072 (1992) .................................................................. 31

14

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742 (1998) ................................................................. 22, 24, 25, 26

15

*Burmeister v. Automatic Data Processing, Inc.,*
    1999 U.S. Dist. LEXIS 2230 at *4-7 (N.D. Cal. Mar. 1, 1999) ............... 8

16

*Burnett v. Tyco Corp.,*
    203 F.3d 980 (6th Cir. 2000) ................................................................... 29

17

*Burrell v. Star Nursery, Inc.,*
    170 F3d 951956 (9th Cir. 1999) ......................................................... 24, 27

18

19

*Candelore v. Clark County Sanitation Dist.,*
    975 F.2d 588 (9th Cir. 1992) ................................................................... 29

20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................................ 14

21

*Clark County School Dist. v. Breeden,*
    532 U.S. 268 (2001) ................................................................................ 29

22

*Cole v. Fair Oaks Fire Prot. Dist.,*
    43 Cal. 3d 148 (1987) ........................................................................ 30, 31

23

*Daggitt v. United Food & Comm'l Workers Int'l. Union, Local 304A,*
    245 F.3d 981 (8th Cir. 2001) ................................................................... 13

24

*EEOC v. Burlington Med. Supplies, Inc.,*
    536 F. Supp. 2d 647 (E.D. Va. 2008) ................................................... 9, 10

25

26

*EEOC v. Custom Cos.,*
    2004 U.S. Dist. LEXIS 5950, at *11 (N.D. Ill. Apr. 8, 2004) ..... 9, 10, 11, 12

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*EEOC v. GLC Rests., Inc.*,
    2006 U.S. Dist. LEXIS 78270, at *9-10 (D. Ariz. Oct. 26, 2006)..........................10, 11

*EEOC v. Optical Cable Corp.*,
    169 F. Supp. 2d 539 (W.D. Va. 2001) ...................................................................10

*EEOC v. Sears, Roebuck & Co.*,
    490 F. Supp. 1245 (M.D. Ala. 1980) ....................................................................10

*EEOC v. Wyndham Worldwide Corp.*,
    2008 U.S. Dist. LEXIS 83558, at *18-20 (W.D. Wash. Oct. 3, 2008)........................11

*Ellison v. Brady*,
    924 F.2d 872 (9th Cir. 1991) ...............................................................................23

*Estes v. AlliedSignal Inc.*,
    1998 U.S. Dist. LEXIS 18206 (N.D. Cal. Nov. 12, 1998)........................................7

*Etter v. Veriflo*,
    67 Cal. App. 4th 457 (1998) ................................................................................28

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)................................................................22, 24, 25, 27

*Fermin v. Fedco, Inc.*,
    7 Cal. 4th 701 (1994) ..........................................................................................29

*Fisher v. San Pedro Peninsula Hosp.*,
    214 Cal. App. 3d 590 (1998) ...............................................................................28

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) .............................................................................................27

*Heath v. AT&T Corp.*,
    2005 U.S. DIST LEXIS 34334 at *18-19 (N.D. Cal. Sept. 12, 2005)..........................7

*Hocevar v. Purdue Frederick Co.*,
    223 F.3d 721 (8th Cir. 2000) ...............................................................................29

*Holly D. v. California Inst. of Technology*,
    339 F3d 1158 (9th Cir. 2003) .........................................................................23, 26

*Inda v. United Air Lines, Inc.*,
    83 F.R.D. 1 (N.D. Cal. 1979)............................................................................9, 12

*Jones v. Flagship Int'l*,
    793 F.2d 714 (5th Cir. 1986) ...............................................................................28

*Jordan v. Clark*,
    847 F.2d 1368 (9th Cir. 1988) .............................................................................21

*Kang v. U Lim American, Inc.*,
    296 F.3d 810 (9th Cir. 2002) .................................................................................8

*Karibian v. Columbia Univ.*,
    14 F.3d 773 (2nd Cir. 1994)................................................................................23

*Kortan v. Cal. Youth Authority*,
    217 F.3d 1104 (9th Cir. 2000) .............................................................................21

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.                iv.

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*League of United Latin American Citizens v. City of Salinas Fire Dept.*,
88 F.R.D. 533 (N.D. Cal. 1980)................................................................8, 12

*Lowe v. City of Sausalito*,
2007 U.S. Dist. LEXIS 8059 at *1-2 (N.D. Cal. Jan. 27, 2007) ..................8

*Lowry v. Standard Oil Co. of Calif.*,
63 Cal. App. 2d 1 (1944) ........................................................................30

*Manatt v. Bank of Am.*,
339 F.3d 792 (9th Cir. 2003) ..................................................................22

*Mathieu v. Norrell Corp.*,
115 Cal. App 4th 1174 (2004) ..................................................................7

*Mendoza v. Town of Ross*,
128 Cal. App. 4th 625 (2005) ..................................................................13

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57, 106 S.Ct. 2399, 2404 (1986) ...........................23, 26, 27

*Miranda v. Costco*,
1999 U.S. App. LEXIS 1510 at *4 (9th Cir. Feb. 2, 1999) ......................9

*Mixon v. Fair Employment and Housing Com.*,
192 Cal. App. 3d 1306 (1987) ................................................................21

*Molien v. Kaiser Found. Hosps.*,
27 Cal. 3d 916 (1980) ............................................................................31

*Movement for Opportunity and Equality v. Gen. Motors Corp.*,
622 F.2d 1235 (7th Cir. 1980) ................................................................9

*Nichols v. Frank*, 42 F.3d 503, 509
(9th Cir. 1984)........................................................................................23

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
212 F.3d 493 (9th Cir. 2000) ................................................................21

*Pennsylvania State Police v. Suders*,
542 U.S. 129 (2004)................................................................................22

*Rabidue v. Osceola Ref. Co.*,
805 F.2d 611 (6th Cir. 1986) ..................................................................28

*Scott v. Sears, Roebuck & Co.*,
798 F.2d 210 (7th Cir. 1986) ..................................................................28

*Semore v. Pool*,
217 Cal. App. 3d 1087 (1990) ................................................................31

*Thing v. LaChusa*,
48 Cal. 3d 644 (1989) ............................................................................30

*Trujillo v. North County Transit. Dist.*,
63 Cal. App. 4th 280 (1998) ..................................................................31

*Victa v. Merle Norman Cosmetics, Inc.*,
19 Cal. App. 4th 454, 463 (1993) ............................................................6

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Williams v. Missouri Dep't of Mental Health,*
 407 F.3d 972 (8th Cir. 2005) ................................................................. 27

*Williams v. Owens-Illinois,*
 665 F.2d 918 (9th Cir. 1982) ................................................................. 10

*Yanowitz v. L'Oreal USA, Inc.,*
 36 Cal.4th 1028 (2005) ........................................................................ 21

*York v. Ass'n. of Bar of City of New York,*
 286 F. 3d 122 (2d. Cir. 2002)............................................................... 13

**STATUTES**

42 U.S.C. § 2000e(f) .................................................................................. 13

42 U.S.C. § 2000e–2(a)(1)-(2) ............................................................... 4, 13

42 U.S.C. § 2000e–5(e)(1) ........................................................................... 9

Cal. Code Civ. Proc. § 335.1 .............................................................. 4, 6, 7

Cal. Code Civ. Proc. § 340(c) ................................................................. 3, 6

Cal. Gov't Code § 12926(c) ....................................................................... 13

Cal. Gov't Code § 12940(i) .................................................................... 1, 31

Cal. Gov't Code § 12940(j) ..................................................................... 4, 13

Cal. Gov't Code § 12940(k) ................................................................... 1, 31

Cal. Gov't Code § 12965(b) ...................................................................... 3, 8

Cal. Gov't Code § 12965(d) ........................................................................ 8

**OTHER AUTHORITIES**

Rest. 2d (Torts) § 46 .................................................................................. 30

Restatement (Second) of Torts § 16(1) ..................................................... 30

**RULES**

Fed. R. Civ. P. 56(d) ................................................................................. 14

**REGULATIONS**

29 CFR § 1604.11(a) ................................................................................. 23

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**I.    INTRODUCTION**

In this Motion, Defendants ABM Industries Incorporated, ABM Janitorial Services, Inc. and ABM Janitorial Services – Northern California, Inc. ("ABMNC") (collectively referred to as the "ABM Defendants") shall address two aspects of the claims brought by the EEOC on behalf of the Twelve Bakersfield Claimants, seven of whom are Plaintiff-Interveners.   In Part One, the ABM Defendants will address the time barred claims asserted by the EEOC and Plaintiff-Interveners. Those time-barred claims cannot survive summary adjudication and, contrary to the assertion of the EEOC and Interveners, were not revived by the filing of Plaintiff Erika Morales' June 30, 2006 EEOC Charge.

In Part Two, the ABM Defendants will address whether there exists any triable issue of fact as to the merits of any remaining claims. As set out herein, the ABM Defendants have meritorious defenses to most of the remaining claims. The following chart summarizes the defenses asserted by way of this motion.   Claims denoted by "***" are claims which the ABM Defendants have not moved on in this Motion.

|  | Title VII Discrim./ Retaliation | Title VII- Harassment: Hostile Environment & Quid Pro Quo | FEHA – Discrim./ Retaliation[1] | FEHA – Harassment - Hostile Environment | False Imprison. | Assault Battery IIED NIED Neg. |
|---|---|---|---|---|---|---|
| E. Morales | *** | *** | *** | *** | Time-barred | Time-barred |
| Claimant 6 | No adverse action; No protected activity | No complaint | No adverse action; No protected activity | *** | Time-barred | *** |
| Claimant 7 | Time-barred; No adverse action; No protected activity | Time-barred; No complaint; No quid pro quo; Not severe or pervasive | No adverse action; No protected activity | Not severe or pervasive | Time-barred; No prima face case | Time-barred; No prima face case |

---

[1] Plaintiff-Interveners also assert claims under Cal. Gov't Code § 12940(i) and (k), for "Aiding and Abetting, Discrimination, Harassment and Retaliation" and "Failure to Prevent Discrimination, Harassment and Retaliation." Because both of these claims are premised on there having been an underlying FEHA violation, if Defendants prevail as to the FEHA Discrimination, Harassment and Retaliation claims, these claims will also fail.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        1        CASE NO. 1:07 CV 01428 LJO (JLT)

1

| Claimant 3 | Time-barred; No adverse action | Time-barred; No quid pro quo; Not severe or pervasive | Time-barred; No adverse action | Time-barred; Not severe or pervasive | Time-barred; No prima face case | Time-barred; No prima face case |
|---|---|---|---|---|---|---|
| Claimant 2 | Time-barred; No adverse action | Time-barred; No quid pro quo; Not severe or pervasive | Time-barred; No adverse action | Time-barred; Not severe or pervasive | Time-barred; No prima face case | Time-barred |
| Claimant 5 | Not an employee | Not an employee; No complaint | Not an employee | Not an employee | *** | *** |
| Claimant 4 | No adverse action; No protected activity | No complaint; No quid pro quo; Not severe or pervasive | No adverse action; No protected activity | Not severe or pervasive | Time-barred; No prima face case | No prima face case |
| Claimant 8 | Time-barred; No adverse action; No protected activity | Time-barred; No complaint; No quid pro quo; Not severe or pervasive | | | | |
| Claimant 10 | No adverse action; No protected activity | No complaint; No quid pro quo; Not severe or pervasive | | | | |
| Claimant 9 | No adverse action; No protected activity | No complaint; No quid pro quo; Not severe or pervasive | | | | |
| Claimant 12 | No adverse action; No protected activity | No complaint; No quid pro quo; Not severe or pervasive | | | | |
| Claimant 11 | No adverse action; No protected activity | No complaint; No quid pro quo; Not severe or pervasive | | | | |

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          2          CASE NO. 1:07 CV 01428 LJO (JLT)

## II.    PART ONE: INTRODUCTION

Title VII of the Civil Rights Act of 1964, 42 U.S.C Sections 1983 *et seq.* (Title VII) is a carefully crafted matrix of rights and remedies, designed to foster the expeditious resolution of important legal rights conferred on all employees. Congress conferred upon the Equal Employment Opportunity Commission ("EEOC") wide ranging pre-litigation rights to investigate potential civil rights violations, and if they see fit, bring civil enforcement actions in Federal Court. The corresponding duty owed by claimants and the EEOC is to address claims in a timely fashion, through the administrative charge, and to participate in the conciliation process **prior** to instituting litigation.

Under the guise of the EEOC's self-styled class action Complaint, however, certain Intervener litigants in the instant action have attempted to do what no law permits, no case countenances and no valid judicial, Congressional or even EEOC policy could serve. They seek to use Erika Morales' June 30, 2006 EEOC Charge and the subsequently filed Title VII complaint to revive unquestionably time barred state claims. This is entirely improper.

Employers cannot be liable for any FEHA claims premised on conduct which occurred more than one year before a complaint is filed with the DFEH.   Cal. Gov't Code § 12965(b).  Claimant 3 and Claimant 2 last worked at ABMNC in May 2005.  They had one year, or until May 2006, to file a Charge with the DFEH, but chose not to do so.  Their FEHA claims are fatally stale, and the subsequent filing of the Erika Morales federal charge and complaint neither legally or equitably tolled those complaints and cannot now revive them.

Likewise, Interveners did not file their Motion to Intervene until November 2007. The common law claims which are governed by a one-year statute of limitations must be based on conduct which occurred in or after November 2006. **None of the Interveners was even employed at ABMNC in November 2006**.  As a result, their false imprisonment claims fail.  *See* Cal. Code Civ. Proc. § 340(c).[2]  Claims with a two-year statute of limitations must be based on conduct which occurred in or after November 2005.   Five of the seven Interveners had left ABMNC prior to

---

[2] Claimant 5, who was a minor at the time of the conduct, and whose statute of limitations would have been tolled until she turned 18 is a possible exception.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

1    November 2005.  Thus, these individuals' claims of assault and battery, negligence, negligent

2    infliction of emotional distress and intentional infliction of emotional distress are similarly time-

3    barred.  *See* Cal. Code Civ. Proc. § 335.1.

4               To assert, as Interveners do, that these time barred claims are somehow revivified by

5    the filing of Erika Morales' June 30, 2006 EEOC Charge, would have several consequences. It

6    would effectively mean that Title VII's administrative framework preempts all state law statutes of

7    limitations, with respect to FEHA's statutory claims and California's myriad common law claims.

8    Second, and just as importantly, it would irrevocably upend the balanced rights and remedies

9    expressly set out in Title VII.  The limitation on recovery, including the limitations on punitive

10   damages and attorneys fees, would have no meaning if interveners could, **after a claim has expired**

11   **as time barred,** revive time-barred state claims by the filing of a federal action. The law does not

12   permit this, equity would not allow it, and it should not be permitted here.

13              Further, the Title VII claims of Claimant 3, Claimant 2, Claimant 7 and Claimant 8

14   are time-barred.  The last alleged injury to any of these claimants took place more than 300 days

15   before June 30, 2006, the date on which Erika Morales' EEOC Charge was filed.  The law is clear

16   that time barred Title VII claims may not be revived by a later-filed claim, *even in a pattern and*

17   *practice case.*

18              Finally, Title VII and FEHA only protect employees, applicants, or persons providing

19   services pursuant to a contract.   42 U.S.C. § 2000e–2(a)(1)-(2); Cal. Gov't Code § 12940(j)(1),

20   (4)-(5).  Intervener Claimant 5 was never employed by ABMNC – it is undisputed that she simply

21   accompanied her mother to work.  Accordingly, she has no standing under Title VII or the FEHA.

22   **III.     PART ONE: STATEMENT OF FACTS**

23              For purposes of assessing whether a statute of limitations defense lies with respect to

24   claims alleged by the following Interveners and/or Claimants, the only material  facts are the last

25   date of employment and/or alleged misconduct by any defendant, and the filing or non-filing of a

26   administrative charge.  The following facts are undisputed:

27              •       Erika Morales last worked at ABMNC in September 2005. (UMF 11).  Erika

28   Morales filed an EEOC Charge on June 30, 2006. (UMF 3).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.         4         CASE NO. 1:07 CV 01428 LJO (JLT)

1          •        Claimant 2 left ABMNC in May 2005.  (UMF 1).  She concedes that she

2    never made a complaint to the DFEH.  (UMF 2).

3          •        Claimant 7 left ABMNC in June or July 2005. (UMF 30).  Nor did she file a

4    complaint against any of the ABM Defendants (or Joe Vasquez) with any government agency.

5    (UMF 31).

6          •        Claimant 3 left ABMNC in May 2005.  (UMF 4). Claimant 3 never filed a

7    complaint with the DFEH.  (UMF 5).

8          •        Claimant 4 stopped working at ABMNC in March 2006 pursuant to her

9    doctor's instructions.  (UMF 17).

10         •        Claimant 6 left ABMNC August 28, 2006 because, according to her, she

11   secured what she felt was a better job elsewhere.  (UMF 15).  A charge signed on January 23, 2007

12   was presented to the EEOC on behalf of Claimant 6.  (Claimant 6 Depo., Exh. 1121).

13         •        Claimant 8 started working for ABMNC in November 2004.  Her claim is

14   premised on a single negative interaction with Mr. Vasquez on December 4, 2004.  (UMF 36).  After

15   the December 4th incident Mr. Vasquez did not do anything else to her which she found

16   inappropriate.  (UMF 37). Claimant 8 did not file an administrative charge.  (UMF 38).

17         •        Over a three week span in November 2004, Claimant 5  accompanied her

18   mother Claimant 3 to work and, without authorization, helped her clean.  She was never employed

19   by any ABM entity. (UMF 40). Claimant 5 never filed a claim with the DFEH or EEOC.  (Claimant

20   5 Depo. 65:13-18).

21   IV.    **PART ONE: ARGUMENT**

22          A.     **An EEOC Charge Cannot Revive Stale State Law Claims**

23          Plaintiffs seek to use Erika Morales' June 30, 2006 EEOC Charge and the

24   subsequently filed Title VII class complaint to revive unquestionably time barred state law claims.

25   This argument holds no water.  First, to suggest that a federal charge somehow revives a time-barred

26   state claim would be a complete misapplication of the equitable tolling doctrine.  When a class

27   action is filed, for example, a member of the class may justifiably rely on the fact that this action is

28   pending and hold off on filing their own identical action.  As a result, the statute of limitations on

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          5          CASE NO. 1:07 CV 01428 LJO (JLT)

1    such claims is tolled until the class suit has been adjudicated.   There can be, however, no such

2    reliance claimed by someone whose claim is *already time-barred* when a class action is filed, and

3    therefore no tolling of any statute of limitations is appropriate.

4          Second, for Courts to allow an EEOC Charge to revive time-barred state law claims

5    would raise untenable conflict preemption issues between Title VII and the California Code of Civil

6    Procedure.   A Title VII claim is pursued under a different legal theory than a state law assault or

7    intentional infliction of emotional distress claim, and furthermore, Title VII permits different

8    remedies than state law claims.  *See Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454,

9    463 (1993) (confirming that the EEOC does not "possess standing to prosecute" plaintiff's state law

10   claims or seek state law remedies).   The law is clear that plaintiffs are simply not permitted to hold

11   off filing state tort actions while an EEOC investigation is pending.   While the work sharing

12   agreement between the EEOC and DFEH may permit a plaintiff to hold off filing a FEHA claim

13   while an EEOC Charge is pending, nowhere does it contemplate the *revival of stale FEHA claims*.

14   The California statute of limitations must be enforced and here they are fatal to certain Interveners'

15   common law and statutory claims.   The common law and statutory claims are addressed in turn:

16          1.    **Many Of The Interveners' State Common Law Claims Are Time Barred.**

17          The statute of limitations for a false imprisonment claim[3] is one year.  Cal. Code

18   Civ. Proc. § 340(c).   Therefore, any claims based on conduct which occurred prior to November

19   2006, one year prior to the date on which Interveners filed their Motion to Intervene, are untimely.

20   Since, as set forth above, all of the Interveners had ceased working for ABMNC prior to November

21   2006, their alleged false imprisonment claims expired long before the filing of their Complaint and

22   must be dismissed.

23          The limitations period for Interveners' claims of negligence, negligent infliction of

24   emotional distress and intentional infliction of emotional distress are governed by the two year

25   personal injury statute.  Cal. Code Civ. Proc. § 335.1.  The statute of limitations for their claims of

---

[3] While the false imprisonment, assault and battery claims appear to allege facts pertaining only to
Erika Morales and Anonymous Plaintiffs 1-3, it is unclear which Interveners are bringing these
causes of action. Thus, the claims are addressed with respect to all of the Interveners.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          6          CASE NO. 1:07 CV 01428 LJO (JLT)

1  battery and assault is also two years.  Cal. Code Civ. Proc. § 335.1.  As a result, these claims are

2  only timely to the extent that they are based on conduct occurring more recently than November

3  2005.  The following Plaintiff-Interveners ended their employment with ABMNC prior to November

4  2005: Erika Morales (September 2005); Claimant 2 (May 2005); Claimant 3 (May 2005); Claimant 7

5  (June or July 2005). Thus any claims carrying a two year statute of limitations brought by these

6  individuals were already untimely when they filed their Motion to Intervene, and must now be

7  dismissed.

8          Interveners have contended that Erika Morales' June 30, 2006 EEOC Charge tolled

9  the statute of limitations on their state common law claims.  They are wrong.  California law does not

10  "permit[] a plaintiff to delay filing a common law tort action because an alternative administrative

11  process has not yet been completed." *See Mathieu v. Norrell Corp.*, 115 Cal. App 4th 1174, 1189-90

12  (2004) (filing charges with DFEH did not toll statute of limitations on plaintiff's common law cause

13  of action for discharge in violation of public policy)

14          In *Arnold v. United States of America et al.*, 816 F.2d 1306 (9th Cir. 1987), a case

15  with nearly identical facts to this one, the plaintiff filed a timely EEOC charge alleging sex

16  discrimination and harassment from September 23, 1981 through February 1982 when her

17  employment was terminated.  On November 7, 1983 she filed an action for state tort law claims for

18  assault, false imprisonment, intentional infliction of emotional distress, and battery in addition to

19  bringing Title VII claims.  The Ninth Circuit dismissed her state law claims as untimely and held

20  that the applicable statutes of limitation had not been tolled by her EEOC charge. The Court

21  reasoned that neither California law nor federal policy mandated that plaintiff delay litigation on her

22  state law claims until her Title VII claims were resolved.  *Id.; see also Estes v. AlliedSignal Inc.*,

23  1998 U.S. Dist. LEXIS 18206 (N.D. Cal. Nov. 12, 1998) (dismissing plaintiff's argument that the

24  statute of limitations should be tolled with respect to his intentional and negligent infliction of

25  emotional distress claims while the EEOC and DFEH investigated his discrimination claims, even

26  though the discrimination and emotional distress claims arose from the same set of circumstances);

27  *Heath v. AT&T Corp.*, 2005 U.S. DIST LEXIS 34334 at *18-19 (N.D. Cal. Sept. 12, 2005) (doctrine

28  of equitable tolling did not save plaintiff's wrongful termination claim when plaintiff waited to file

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          7          CASE NO. 1:07 CV 01428 LJO (JLT)

1  claim until receipt of right to sue letter on statutory claims); *Lowe v. City of Sausalito*, 2007 U.S.

2  Dist. LEXIS 8059 at *1-2 (N.D. Cal. Jan. 27, 2007) (same); *Burmeister v. Automatic Data*

3  *Processing, Inc.*, 1999 U.S. Dist. LEXIS 2230 at *4-7 (N.D. Cal. Mar. 1, 1999) (negligence and

4  wrongful termination claims dismissed on same basis); *cf Kang v. U Lim American, Inc.*,  296 F.3d

5  810, 819 (9th Cir. 2002).

6         Because of the failure to file timely claims, the ABM Defendants request that this

7  Court summarily adjudicate each common law claim alleged by Erika Morales, Claimant 3,

8  Claimant 2, and Claimant 7, as well as the false imprisonment claims raised by Claimant 4 and

9  Claimant 6.  All of these claims are barred by the applicable statutes of limitations and none of these

10  claims were tolled by the filing of Erika Morales' EEOC charge in June 2006.   Summary

11  adjudication is therefore appropriate.

12         2.    **Claimant 3 And Claimant 2's FEHA Claims Are Time Barred**

13         Claimant 3 and Claimant 2 last worked at ABMNC in May 2005. They had one year,

14  or until May 2006, to file a Charge with the DFEH.  Cal. Gov't Code § 12965(b); *Alch v. Superior*

15  *Court*, 122 Cal. App. 4th 339, 377 (2004) (employers not liable for any discriminatory conduct that

16  occurred more than one year before a complaint is filed with the DFEH).   At no time did either

17  individual file a charge with the DFEH. (UMFs 2 & 5). While a FEHA action is equitably tolled

18  during an EEOC investigation, as a result of work sharing agreements between the EEOC and

19  DFEH, Claimant 3 and Claimant 2 cannot take advantage of this.  Erika Morales did not file her

20  EEOC charge until June 30, 2006, after the time for Claimant 3 and Claimant 2's time to file a

21  charge expired. The work sharing agreement says nothing about revival of stale claims.  *See* Cal.

22  Gov't Code § 12965(d).

23         Moreover, the filing of an EEOC charge by Erika Morales cannot revive another

24  individual's time barred *Title VII claim*, let alone a state law FEHA claim. *See League of United*

25  *Latin American Citizens v. City of Salinas Fire Dept.*, 88 F.R.D. 533, 537 (N.D. Cal. 1980)

26  ("Because an EEOC filing by one class member cannot revive the claims of others which were no

27  longer viable at the time of that filing, only members capable of having made a timely EEOC filing

28  on or after the date of that filing are eligible to join in a class action based on that person's filing

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        8        CASE NO. 1:07 CV 01428 LJO (JLT)

1   date."); *Inda v. United Air Lines, Inc.*, 83 F.R.D. 1, 10 (N.D. Cal. 1979)("...the definition of the

2   proper litigating class in a Title VII case includes those persons who were capable of filing EEOC

3   charges on or after the date the named representative filed.").

4          A timely filing of a state claim does not revive a time-barred federal claim.

5   *Miranda v. Costco*, 1999 U.S. App. LEXIS 1510 at *4 (9th Cir. Feb. 2, 1999) (unpublished) (filing

6   of a state cause of action arising from the same set of circumstances as a previously dismissed Title

7   VII claim within one year state statute of limitations does not revive time-barred Title VII claim).

8   There is no reason to think the reverse would prove true.  As a result, Claimant 3 and Claimant 2's

9   FEHA claims are time barred and must be summarily adjudicated.

10   **B.   The EEOC May Not Obtain Individual Relief On Behalf Of Claimant 3, Claimant 2, Claimant 7 Or Claimant 8 Because Their Title VII Claims Are Time Barred.**

11

12          Class membership in this EEOC pattern and practice suit is limited to those claimants

13   who could have filed a timely charge on the date Erika Morales filed her EEOC Charge, June 30,

14   2006.[4]  *Movement for Opportunity and Equality v. Gen. Motors Corp.*, 622 F.2d 1235, 1248 (7th Cir.

15   1980); *EEOC v. Custom Cos.*, 2004 U.S. Dist. LEXIS 5950, at *11 (N.D. Ill. Apr. 8, 2004) ("Class

16   membership [in an action brought by the EEOC] must be tethered to the earliest underlying EEOC

17   charge.")  The last inappropriate conduct Claimant 8 testified about occurred in December 2004,

18   over a year and a half before Erika Morales filed her EEOC Charge.  Claimant 3 and Claimant 2 last

19   worked at ABMNC in May 2005 and Claimant 7 left in June or July 2005.  Therefore, because more

20   than 300 days elapsed between the last date of any possible injury to these individuals and the filing

21   of Erika Morales' EEOC Charge on June 30, 2006, the EEOC may not recover on their behalf.

22          The EEOC's special statutory mandate does not entitle it to "expand substantive

23   rights, such as reviving stale claims" that would not otherwise be actionable under Title VII.

24   *EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008), *citing, Custom*

25   [4] Title VII actions cannot proceed in federal court unless discrimination charges were filed with the

26   EEOC within 180 days after the allegedly unlawful employment practice "occurred."  42 U.S.C.
     § 2000e–5(e)(1).  However, charges of conduct violating Title VII may also be initially filed with a

27   state agency that enforces the state's own anti-discrimination laws.  In this case, the time limit for
     filing is extended to 300 days or 30 days after notice that the state agency has terminated its

28   proceedings under state law, whichever is earlier.  *See id.*

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          9          CASE NO. 1:07 CV 01428 LJO (JLT)

1   *Cos.*, 2004 U.S. Dist. LEXIS 5950, at *10-11. "On the contrary, the EEOC's ability to secure

2   enforcement of Title VII on behalf of the public is primarily served through its ability to secure

3   injunctive relief, not bootstrapping individual damage claims into the EEOC's enforcement action."

4   *Id.*

5          Accordingly, while courts have noted that in a suit brought by the EEOC, it is not

6   necessary that all class members have filed charges with the EEOC, i.e. exhausted their

7   administrative remedies, it is absolutely necessary that all class members have timely claims. *See,*

8   *EEOC v. GLC Rests, Inc.*, 2006 U.S. Dist. LEXIS 78270, at *9-10 (D. Ariz. Oct. 26, 2006), *citing,*

9   *Williams v. Owens-Illinois*, 665 F.2d 918, 923 (9th Cir. 1982) (finding non-filing class members

10  governed by the statute of limitations of class representatives). By definition, a pattern and practice

11  of discrimination will always constitute a continuing violation. *Id.* at 659. However, section 707 of

12  Title VII provides that all pattern or practice actions "shall be conducted in accordance with the

13  procedures set forth in section 2000e-5 of this title." *Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d

14  at 659. "Thus a literal reading of the text would indicate that pattern or practice suits under § 2000e-

15  6(e) shall be conducted in accordance with the applicable limitations period prescribed in § 706. *Id.;*

16  *see also EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 546 (W.D. Va. 2001) (finding that 180

17  day statute of limitations applies to pattern and practice claims and further finding that the "filing"

18  dates for pattern and practice charges were the dates on which the EEOC notified defendant that it

19  was expanding its investigation to encompass these charges); *EEOC v. Sears, Roebuck & Co.*, 490 F.

20  Supp. 1245, 1260 (M.D. Ala. 1980).  Accordingly, even in a sexual harassment pattern and practice

21  claim brought by the EEOC on behalf of individuals, courts have held that "only those class

22  members experiencing injury within the 300-day limitations period will be entitled to individual

23  relief at trial." *Id.* (in claim for pattern and practice sexual harassment, brought pursuant to both

24  § 706 and § 707 of Title VII, the EEOC could not recover for those individuals whose Title VII

25  claims were already time barred based on the date of the EEOC charge of the filing class member).

26          Likewise, the timely filing by one individual and a subsequent lawsuit brought by the

27  EEOC does not revive already time-barred actions by other individuals, even in the case where the

28  EEOC has alleged a continuing violation based on hostile working environment. *EEOC v. Wyndham*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          10          CASE NO. 1:07 CV 01428 LJO (JLT)

*Worldwide Corp.,* 2008 U.S. Dist. LEXIS 83558, at *18-20 (W.D. Wash. Oct. 3, 2008); *see also Custom Cos.,* 2004 U.S. Dist. LEXIS 5950, at *26 (EEOC pattern and practice hostile work environment claim cannot include claims of employees who did not work at the employer during the filing period). It is well settled that "hostile work environment claims will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at *18. In *Wyndham,* the EEOC argued that this means that even though all acts toward a specific claimant fall outside the statutory filing period, his claims are still actionable if other acts toward different claimants fell within that period, thus fulfilling the "at least one act" requirement. *Id.*

However, the *Wyndham* court flatly rejected the EEOC's argument, finding that the language regarding continuing violations "applies to acts, not claimants." Furthermore, the court noted that the EEOC had not "cited to a single case in which additional claimants, whose stale claims would otherwise be time-barred, were bootstrapped into a Title VII case by acts directed toward other claimants which fell within the filing period." *Id.* In ruling, the *Wyndham* court expressly relied on a decision of another court within the Ninth Circuit. *See EEOC v. GLC Rests., Inc.,* 2006 U.S. Dist. LEXIS 78270 (D. Ariz. Oct. 26 2006) (dismissing claims of two EEOC "class members" because they could allege no conduct toward those individuals that occurred within the limitations period).

In *GLC Rests., Inc.,* the EEOC alleged a hostile work environment on behalf of eight people it claims were harassed from January 2001 to September 2002. *Id.* at *6. The four named Plaintiffs filed charges with the EEOC on March 17 and 20, 2003. "Under Title VII, the EEOC can assert hostile work environment claims on behalf of these individuals only if at least one of the acts that contributes to the hostile work environment occurred within the 300 days that preceded those filings – that is, after May 21 and 24, 2002, respectively." *Id.* However, two of the class members alleged harassment that occurred entirely before May 21, 2002 and neither filed a charge with the EEOC. The EEOC argued that as long as some harassment directed toward some of the plaintiffs occurred within 300 days of the filing of the charge, it could bring suit on behalf of any plaintiff, even if that plaintiff did not experience harassment within the 300 day period. *Id.* at *7. In ruling

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          11          CASE NO. 1:07 CV 01428 LJO (JLT)

1   against the EEOC, the court noted emphatically that although the EEOC has broader standing than a

2   private litigant, "its standing is not unlimited." *Id.* at *8. Furthermore, there is simply no case law

3   that supports the EEOC's argument that discrimination toward those two class members was

4   actionable simply because the claims of other class members was actionable. *Id.* at *9.

5          Moreover, courts have noted that to read out the statute of limitations in a pattern and

6   practice case brought by the EEOC would be contrary to the policy behind Title VII. *Custom Cos.*,

7   2004 U.S. Dist. LEXIS 5950, at *26. "When taken to its logical conclusion, the...argument would

8   eviscerate any limitations period in Title VII cases, so long as the plaintiff alleges a continuing

9   violation."  Any employer accused of a continuing violation or pattern or practice hostile

10  environment would face exposure to unlimited claims from long-departed employees. Courts have

11  refused to "nullify 42 U.S.C. § 2000e-5(e)(1) in this manner." *Id.* at *26-27.

12         Therefore, Claimant 3, Claimant 2, Claimant 7, and Claimant 8 cannot act as

13  claimants and pursue monetary remedies in this action – their role in the Title VII case is limited to

14  that of a witness.

15  **C.    Claimant 3, Claimant 2, And Claimant 7 May Not Pursue Time-Barred Title VII**
        **Claims**

16

17         Not only can the EEOC not pursue Title VII claims on behalf of Interveners

18  Claimant 3, Claimant 2, and Claimant 7; but Interveners cannot pursue these claims on their own

19  behalf. The filing of an EEOC charge by a class member does not revive time-barred Title VII

20  discrimination claims by other class members. *See League of United Latin American Citizens*,

21  88 F.R.D. at 537; *Inda*, 83 F.R.D. at 10. Thus, Claimant 3, Claimant 2, and Claimant 7 cannot pursue

22  their Title VII claims because they ceased working for ABMNC more than 300 days before Erika

23  Morales filed her EEOC Charge.

24  **D.    Claimant 5's Title VII And FEHA Claims Must Dismissed Because She Was Not**
        **Employed By Defendants.**

25

26         It is undisputed that Claimant 5 was never employed by ABMNC – she merely

27  accompanied her mother to work. (UMF 40). Accordingly, she is not a competent plaintiff for

28  purposes of Title VII or the FEHA.  Title VII only protects "employees or applicants for

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          12          CASE NO. 1:07 CV 01428 LJO (JLT)

1  employment." 42 U.S.C. § 2000e–2(a)(1)-(2). An "employee" is defined as "an individual

2  employed by an employer." 42 U.S.C. § 2000e(f). Compensation is an essential condition of an

3  employment relationship and an entity's power to hire and fire and control the manner and means by

4  which workers accomplish their tasks is evidence of an employment relationship. *Daggitt v. United*

5  *Food & Comm'l Workers Int'l. Union, Local 304A*, 245 F.3d 981, 987-989 (8th Cir. 2001).

6  Accordingly, persons who render services in an unpaid, volunteer capacity are not "employees" for

7  Title VII purposes. *York v. Ass'n. of Bar of City of New York*, 286 F. 3d 122, 126 (2d. Cir. 2002)

8  (clerical support, limited tax deductions and "networking opportunities" are not the sort of benefit

9  that constitute compensation for services rendered).

10      The FEHA similarly prohibits harassment of an employee, applicant, or a person

11  providing services pursuant to a contract. Cal. Gov't Code § 12940(j)(1), (4)-(5). By contrast, the

12  FEHA does not protect volunteers. *Mendoza v. Town of Ross*, 128 Cal. App. 4th 625, 637 (2005)

13  (where no financial benefit is obtained by the purported employee from the employer, no plausible

14  employment relationship of any sort can be said to exist). Likewise, the FEHA does not apply to a

15  person employed by her parents, spouse of child. Cal. Gov't Code § 12926(c).

16  **V.    PART TWO: INTRODUCTION**

17      The seven Plaintiff-Interveners [Erika Morales, Claimant 2, Claimant 4, Claimant 3,

18  Claimant 5, Claimant 6, and Claimant 7] and the five Claimants [Claimant 12, Claimant 9,

19  Claimant 8, Claimant 11, and Claimant 10] all claim that they were sexually harassed by utility

20  worker and later supervisor, Joe Vasquez while working for ABMNC in the Bakersfield area.

21  Mr. Vasquez denies all of the allegations against him. Even assuming, however, for the purposes of

22  this Motion, that their allegations are true, many claims are not actionable under Title VII, the

23  FEHA, or common law. Nearly all of the Claimants fail to allege any adverse employment action,

24  and therefore cannot make out any claims for sex discrimination or retaliation under Title VII or

25  FEHA. The vast majority of them admit that despite receiving ABMNC's harassment policy,

26  handbooks and information about its hotline, they never made a complaint. Other alleged conduct,

27  while against Company policy, was not severe or pervasive enough to be actionable. As a result,

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        13        CASE NO. 1:07 CV 01428 LJO (JLT)

1   these claims must be summarily adjudicated. *See e.g.,* Fed. R. Civ. P. 56(d); *Celotex Corp. v.*

2   *Catrett,* 477 U.S. 317, 322 (1986).

3   **VI.    PART TWO: STATEMENT OF FACTS**

4       **A.    ABMNC –Bakersfield Branch And Mr. Joe Vasquez**

5          ABMNC's Bakersfield Branch employs several hundred workers to service

6   ABMNC's clients in dozens of locations throughout Bakersfield. *See* Declaration of Tom Cazale

7   Decl. at ¶10.  With the exception of Claimant 5, Plaintiff-Interveners and Claimants were all

8   employed as janitors in the Bakersfield area.  Mr. Joe Vasquez, the individual defendant in this case,

9   applied and was hired by ABMNC as a utility worker on September 27, 2004 at the encouragement

10  of his cousin Javier Vasquez, who worked as an Operations Manager at ABMNC's Bakersfield

11  Branch. (Joe Vasquez Depo. 35:2-8; 41:10-15; 140:6-8; Exhibit 1004).  Joe Vasquez was promoted

12  to Supervisor effective February 1, 2005. (Joe Vasquez Depo. 43:8-9; 157:9-14; Exhibit 1024).  It is

13  undisputed that Joe Vasquez had a lengthy criminal history which he concealed from ABMNC

14  through the submission of a fraudulent resume, that documented an uninterrupted career in the

15  cleaning industry, working with family members and for other enterprises. He was also vouched for

16  by his relative, Javier Vasquez, an ABMNC manager in Bakersfield. Javier Vasquez conceded under

17  oath that he was aware of Joe Vasquez's criminal background, but told no one at ABMNC about it.

18         In December 2006, upon learning that ABMNC had become aware of his past and

19  wanted to discuss his potential past criminal history, which ABMNC had been alerted to by the

20  EEOC, Joe Vasquez immediately resigned. (Joe Vasquez Depo. 123:19-20)

21      **B.    The Majority Of The Plaintiff-Interveners And Claimants Left ABMNC Voluntarily Or
22         For Reasons Unrelated To Their Response To Any Alleged Harassment**

23         None of the Claimants in this case claim they were demoted, suspended or fired for

24  refusing to give in to Mr. Vasquez' advances or laugh at his jokes, or for making a complaint about

25  his conduct.  To the contrary, they each left of their own accord, or as a result of ABMNC losing a

26  contract, or, in one case, after being suspended for refusing to participate in a training.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        14        CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 2 | Claimant 2 and her mother voluntarily left ABMNC. (UMF 41) |
| Claimant 7 | Claimant 7 left ABMNC in June or July 2005 voluntarily because she didn't want to transfer after she and her co-worker were moved from an account after a customer complaint. (UMF 43) |
| Claimant 3 | Claimant 3 and her daughter Claimant 2 both quit in May 2005; Claimant 3 concedes that no one asked them to leave. (UMF 42) |
| Claimant 4 | Claimant 4 stopped working at ABMNC in March 2006 pursuant to her doctor's instructions. (UMF 44) |
| Claimant 6 | Claimant 6 left ABMNC August 28, 2006 because, according to her, she secured what she felt was a better job elsewhere. (UMF 45) |
| Claimant 5 | Claimant 5 was never employed by ABMNC. (UMF 46) |
| Claimant 8 | Claimant 8 stopped working at ABMNC due to medical issues. (UMF 48) Furthermore, Claimant 8 never received any performance warnings while at ABMNC and was always graded "in the green." (UMF 47) |
| Claimant 10 | While working at ABMNC, Claimant 10 did not receive any written warning for performance related issues. (UMF 49). Her employment at ABMNC ended when ABMNC lost a contract, however, she was hired on by the company who took over that contract. (UMF 50). |
| Claimant 12 | Claimant 12 never received a performance write up or suspension. (UMF 53). She quit in part because her hours were reduced due to ABMNC's loss of a contract. (UMF 54) |
| Claimant 11 | Claimant 11 claims she was terminated for refusing to stay at work for a few extra hours when requested by Mr. Vasquez. However, she concedes that when she told Javier Vasquez about this he told her to come back to work, but she opted not to go back. (UMFs 55-56) |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        15        CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 9 | Claimant 9 claims was told she was suspended for leaving early. (UMF 51). Other than this occasion she was never disciplined. (UMF 52). |

**C.**   **The Majority of the Plaintiff-Interveners and Claimants Failed to Complain Despite Having Acknowledged Receipt of Information Pertaining to ABMNC's Sexual Harassment Policies**

    **1.**   **ABMNC Diligently Informed and Trained Employees On Avoiding and Sexual Harassment and Reporting Inappropriate Conduct**

Pursuant to the Court's April 30, 2010 Order, to avoid unnecessary duplication, Defendants hereby incorporate Section III.B. Statement of Facts entitled "The ABM Defendants Are Committed to Providing Their Employees With a Safe and Professional Working Environment," as set forth in their Motion for Summary Judgment/Adjudication Re: Fresno Claimants. *See* (UMFs 106-117).

    **2.**   **Most Claimants Failed to Complain About Mr. Vasquez' Alleged Conduct**

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 7 | Claimant 7 never reported Mr. Vasquez or made a complaint about him while working at ABMNC. (UMF 125) |
| Claimant 4 | Claimant 4 signed the "Employee Information Regarding the Harassment Hotline" at the beginning of her employment. (UMF 128). Claimant 4 never complained to Javier Vasquez or any other manager at ABMNC. Nor did she use the hotline or complain to Human Resources. (UMF 129) |
| Claimant 6 | At the start of her employment, Claimant 6 signed various documents confirming her receipt of ABMNC's sexual harassment prevention policies. (UMF 121) Yet, despite the serious nature of the alleged misconduct, and her acknowledgment of receipt of ABMNC's sexual harassment policies, she never complained to anyone at ABMNC about the purported misconduct. (UMF 122) |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          16          CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 5 | Not surprisingly as she was not an employee, Claimant 5 never complained to anyone at ABMNC about these events. (UMF 118) |
| Claimant 8 | Claimant 8 concedes she was provided with and reviewed ABMNC's harassment policy and signed an acknowledgment regarding information about the harassment hotline.  (UMF 132) Despite this, Claimant 8 did not report the incident to anyone at ABMNC, including Human Resources, because she thought that she would lose her job.  She thought this because Javier Vasquez and Joe Vasquez  "looked related," although none of them ever told her that they were. (UMF 133) She did not report this incident to "the big boss" Ric Steiner (who did not look related to Joe Vasquez). (UMF 134) |
| Claimant 10 | At the start of her employment, Claimant 10 signed various documents confirming her receipt of ABMNC's sexual harassment prevention policies and handbook.  (UMF 138) She  did not complain to anyone with ABMNC about any of the conduct she alleged.  She claims she intended to complain to Javier Vasquez a few times, but that he was busy on those occasions and so she never told him anything about Joe Vasquez.  (UMF 139) |
| Claimant 12 | Claimant 12 signed an acknowledgment confirming her receipt of ABMNC's harassment policy.  (UMF 148).  Claimant 12 did not complain to anyone other than fellow co-workers, about Mr. Vasquez' alleged conduct. (UMF 149) |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          17          CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 11 | Claimant 11 signed an acknowledgment confirming her receipt of ABMNC's harassment policy and information regarding the hotline.   (UMF 153). Claimant 11 didn't complain to anyone about the shoulder touching because she felt "it was no big deal."  She did not complain to anyone at ABMNC about any other conduct by Mr. Vasquez because she was embarrassed. (UMFs 154-155) |
| Claimant 9 | Claimant 9 concedes she received an ABMNC handbook when she started her employment and she also signed several acknowledgements confirming her receipt of ABMNC's harassment policy and information regarding the hotline. (UMF 143)   Claimant 9 did not raise any complaint in part because Mr. Vasquez never touched her.  (UMF 144) |

**D.     The Majority of the Allegations Made by the Plaintiff-Interveners and Claimants are Insufficient to Rise to the Level of Severe Or Pervasive**

The majority of the conduct alleged by Plaintiff-Interveners and Claimants is insufficient to rise to the level of severe or pervasive as it was either isolated incidents over a short time frame or trivial in nature, such as occasional comments or a pat on the shoulder.  Only Erika Morales and Claimant 6 allege more serious conduct, and as a result, their claims are not being challenged on this ground.

| Claimant | Relevant Facts |
|----------|----------------|
| Claimant 2 | Claimant 2 only worked for ABMNC for three to four months, three days a week. (UMF 158) She contends that Mr. Vasquez touched her cheek once and massaged her shoulder on about three occasions and talked to her and her mother about sex and women while they worked.  (UMF 159) |
| Claimant 7 | Claimant 7 worked with Mr. Vasquez from about February or March 2005 until June or July 2005. (UMF 173) She asserts that Mr. Vasquez asked her |

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          18          CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|---|---|
| | personal questions, made comments that she married too young, was too pretty to have her job, and talked about women. He also invited her to go out dancing. (UMF 174) |
| Claimant 3 | Claimant 3 concedes she had few problems with Mr. Vasquez until her daughter Claimant 2 came to work at ABMNC in February 2005. (UMF 164-165) After Claimant 2 started at ABMNC (at Claimant 3's encouragement), Claimant 3 alleges that Mr. Vasquez increased his visits and began to comment about how pretty and tiny her daughter was, and talk about sex and women while they were working. (UMFs 166-169) Claimant 3 also claims to have observed Mr. Vasquez touch her daughter on the shoulder or chin on three occasions. In each case Claimant 2 moved away. (UMF 170) |
| Claimant 4 | Claimant 4's claims are limited solely to alleged sexual comments made to her or in her presence, often about other women. (UMF 176) |
| Claimant 8 | Claimant 8's claim is premised on a <u>single interaction</u> with Mr. Vasquez in which she asked Mr. Vasquez why he hadn't given her the day off as it was her birthday. He responded attempting to pull her onto his lap, touching her on the hip in the process. She testified that this lasted a "split second" and she pulled away and continued her work and he left shortly. (UMFs 179-180) Prior to this incident Mr. Vasquez made her uncomfortable by arriving unannounced but after she explained this to him he would yell her name to announce his arrival. (UMF 181) After the December 4th incident he did not do anything else to her which she found to be inappropriate. (UMF 182) |
| Claimant 10 | Claimant 10 complains Mr. Vasquez would make jokes with "double meanings" or sexual connotations once or twice a week. She also contends that two or three times he touched her shoulder for 5-10 seconds when saying "how are you," and once offered to let her sit on his legs if she was tired, but |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          19          CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|----------|----------------|
|          | she declined. (UMF 183) In addition, Claimant 10 claims she did not like when Mr. Vasquez observed her performing work or that he was always laughing. (UMF 184) Finally she claims to have seen Mr. Vasquez putting his arms around other co-workers and making jokes with them. (UMF 185) |
| Claimant 12 | Claimant 12 was employed with ABMNC for only <u>six months</u>. (UMF 190) She claims that Mr. Vasquez would tell her about sexual positions he wanted to use with her and otherwise use "strong words" 2-3 times a week. (UMF 191) Mr. Vasquez once hugged her and in doing so touched the area above her breasts. (UMF 192) Once when Claimant 12 was filling her car at a gas station during her shift, Mr. Vasquez followed her and said he wanted to be with her. (UMF 193) Finally, Claimant 12 claims a co-worker once told her that Mr. Vasquez had made a comment about her rear end while she was bending over cleaning. (UMF 194) |
| Claimant 11 | Claimant 11 spent only about 5 months working at ABMNC. (UMF 195)She claims that Mr. Vasquez once touched her shoulder and once blew on her neck or ear. Several times he told her that she smelled good or asked why she "dressed so good" for work and made comments about her mouth or liking big-breasted women. (UMF 196). She did not like the way he looked at her while she was cleaning. (UMF 197) On two or three occasions while she was cleaning he came up behind her and touched her on her hip. (UMF 198) She asked him to keep his distance and he responded by asking why women "play hard to get." (UMF 199) He once played a recording of an ex-girlfriend calling him to ask for money. (UMF 200) |
| Claimant 9 | Claimant 9 was only employed at ABMNC for about **one and a half months**, during which time she saw Mr. Vasquez about twice a week. (UMF 186). She contends that near the end of her employment, after commenting on her work, |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        20        CASE NO. 1:07 CV 01428 LJO (JLT)

| Claimant | Relevant Facts |
|---|---|
| | Mr. Vasquez asked her personal questions and looked at her chest. Later that night, he offered her a ride home, but she declined. (UMF 187). She also did not like that Mr. Vasquez asked her to train on a machine in a small dimly lit room. (UMF 188) |

## VII.   PART TWO: ARGUMENT

### A.   Plaintiff-Interveners And The EEOC Face Challenges Establishing Prima Facie Claims Of Sex Discrimination Or Retaliation Under Title VII Or FEHA

To prove sex discrimination under Title VII, a plaintiff must demonstrate that (1) she was a member of a protected group; (2) she was adequately performing her job; (3) she suffered an adverse employment action or was treated differently than others similarly situated. Adverse actions include stripping a worker of responsibilities, handing a worker different or more burdensome work responsibilities, terminating or suspending a worker, denying a raise, reducing a plaintiff's salary, or reducing any other work-related benefit. *Kortan v. Cal. Youth Authority*, 217 F.3d 1104, 1113 (9th Cir. 2000); *Mixon v. Fair Employment and Housing Com.*, 192 Cal. App. 3d 1306, 1318 (1987).

To prove retaliation, a plaintiff must establish that she engaged in protected activity, her employer subjected her to an adverse employment action, and there is a causal link between the protected activity and the employer's action. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002). Retaliation requires that one engage in protected activity. Resisting sexual advances is not protected activity. *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988). Furthermore, vague and abstract statements are insufficient to qualify as "protected activity" for the purposes of a retaliation claim. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1047 (2005) (vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct).

As set forth above, none of the Claimants in this case claim they were demoted or given less desirable assignments for refusing to give in to advances, laugh at jokes or otherwise.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          21          CASE NO. 1:07 CV 01428 LJO (JLT)

Only Claimant 9 claims she was suspended, but admits the suspension was due to her failure to agree to training on a particular machine. Claimant 11 claims she was fired for refusing to work extra hours but admits that she was told to show back up for work and refused. Even Claimants who allege they flatly rebuffed the advances can point to no adverse conduct. Accordingly, all claims of discrimination and retaliation must fail.

To the contrary, Claimant 7 admits she left voluntarily after being moved to a new work location at a customer's request. Both Claimant 4 and Claimant 8 left due to unrelated medical conditions. Claimant 12 and Claimant 10 both left after ABMNC lost a contract; Claimant 10 was actually hired on by the company who was awarded the contract. While the conduct alleged by Claimant 6 is severe, she admits that she left ABMNC because she received a better offer from another Company. Claimant 5 was never employed. Only Erika Morales, Claimant 3, Claimant 2 and Claimant 12 even claim to have left for reasons associated with Mr. Vasquez. Of these individuals, only Erika Morales may come anywhere close to being able to recast her resignation as a constructive discharge. Constructive discharge exists only where a reasonable person would feel compelled to resign because the employer intentionally caused objectively intolerable working conditions or knowingly allowed them to exist. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143-44 (2004). A plaintiff claiming harassment may establish constructive discharge when an "abusive working environment" is "ratcheted up" to "something more" than mere unlawful harassment, something "so intolerable" that the employee's resignation qualified as a fitting response. *Suders*, 542 U.S. at 148. Moreover, where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge.[5] *Manatt v. Bank of Am.*, 339 F.3d 792 (9th Cir. 2003); *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (affirming summary judgment dismissing constructive discharge claim where complaints about working conditions

---

[5] Furthermore, the *Suders* court held that the *Ellerth-Faragher* defense may be available to many claims of constructive discharge. This is because a constructive discharge may be effected in various ways, e.g. through "co-worker conduct, unofficial supervisory conduct, or official company acts." The Supreme Court concluded that the *Ellerth-Faragher* defense is available in the absence of an official company act, but is not available when a supervisor's "official act" precipitates the constructive discharge."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          22          CASE NO. 1:07 CV 01428 LJO (JLT)

ranged from "trivial "routine"; where plaintiff cannot prove hostile environment, it is "impossible ... to meet the higher standard of constructive discharge"). As discussed below, Claimant 3, Claimant 2, and Claimant 12 will be unable to meet the severe or pervasive harassment standard and thus, any constructive discharge claim must also fail.

In addition, Claimant 6, Claimant 5, Claimant 4, Claimant 7, Claimant 8, Claimant 12, Claimant 9, Claimant 10 and Claimant 11 concede that they never made a complaint about Mr. Vasquez prior to leaving their employment. Therefore, any retaliation claim by or on behalf of these individuals necessarily fails as there is no evidence that they engaged in any protected conduct.

**B.   Claims For *Quid Pro Quo* Harassment Pursuant To Title VII Will Fail Because The Alleged Harassment Did Not Involve A Tangible Employment Action**

The essence of the *quid pro quo* theory of sexual harassment is that a supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee. *Nichols v. Frank*, 42 F.3d 503, 509 (9th Cir. 1984). *Quid pro quo* sexual harassment occurs whenever "employers condition employment benefits on sexual favors." *Id.*; *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). To establish a Title VII violation on grounds of *quid pro quo* sexual harassment, a plaintiff must prove she was subject to unwelcome sexual advances, conduct or comments by a supervisor with immediate or successively higher authority over the employee; the harassment complained of was based upon sex; and her reaction to the harassment complained of affected tangible aspects of her compensation, terms, conditions or privileges of employment. *See* 29 CFR § 1604.11(a), *cited with approval in Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404 (1986); *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2nd Cir. 1994).

Where the alleged coercion was implied rather than express, courts require more than conclusory allegations that the supervisor proposed a sexual liaison and the employee agreed in order to retain her job. The mere fact that the supervisor was interested in sex generally and desired to have sex with the employee is "simply not enough" to make a valid claim for *quid pro quo* sexual harassment. *Holly D. v. California Inst. of Technology*, 339 F3d 1158, 1176 (9th Cir. 2003). Moreover, a plaintiff is only eligible for relief if she can show that a reasonable woman in the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

1   plaintiff's position would believe that her submission to the sexual requests was necessary to save

2   her job. *Id.* at 1175.

3   *Only* Claimant 6 and Erika Morales claim there was any attempt to force them to

4   engage in any sexual conduct with Mr. Vasquez. *Only* Claimant 5 testified that Mr. Vasquez even

5   inferentially promised anything in exchange for sex, and as explained below, her claims are not

6   cognizable under Title VII. None of the other nine Bakersfield Claimants have alleged any facts to

7   support a *quid pro quo* claim. Moreover, none of them suffered tangible employment action as a

8   result of a reaction to any of Mr. Vasquez' alleged conduct. (UMFs 83-105). A tangible employment

9   action means a significant change in employment status, such as "hiring, firing, failing to promote,

10  reassignment with significantly different responsibilities or a decision causing a significant change in

11  benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In most cases, a tangible

12  employment action inflicts direct economic harm. *Id.* at 762. Moreover, a plaintiff must show the

13  tangible employment action resulted from plaintiff's resisting the supervisor's harassment and not

14  from his or her own misconduct. *Burrell v. Star Nursery, Inc.*, 170 F3d 951, 956 (9th Cir. 1999).

15  Claimant 2, Claimant 3, Claimant 4, Claimant 7, Claimant 8, Claimant 12, Claimant 9, Claimant 10

16  and Claimant 11 will be unable to meet this burden. As a result, the Title VII *quid pro quo* claims

17  alleged by them and on their behalf must be dismissed.

**C.   Certain Hostile Work Environment Claims Under Title VII And FEHA Will Fail**

    **1.   Any Claimant's Failure To Complain About The Alleged Harassment Establishes A Complete Defense To Her Title VII Claim**

21  The *Faragher/Ellerth* defense provides the ABM Defendants with a complete defense

22  to the Title VII claims of any individual who failed to complain about Mr. Joe Vasquez' conduct in a

23  timely fashion. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca*

24  *Raton*, 524 U.S. 775 (1998). Here, the failure of Claimants to complain is critical. ABMNC janitors

25  work remotely at customers' workplaces scattered around the Bakersfield area. Because they are

26  cleaning the property of ABMNC clients, ABMNC does not have the same control over the

27  workplace like a retail store owner does. Moreover, many janitors work at night, under minimal

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        24        CASE NO. 1:07 CV 01428 LJO (JLT)

1   supervision.[6] Cazale Decl. at ¶8.  Thus, ABMNC relies even more on individuals coming forward if

2   they are experiencing a problem in the workplace.  As a result, ABMNC implemented a toll-free

3   multi-lingual hotline number for its employees to report complaints and notifies its employees in

4   both English and Spanish at the time of hire and on an ongoing basis of the methods and the

5   individuals to whom an employee may report harassment.  (UMFs 106-117)  If an individual does

6   not use any of these avenues to report an issue they seriously handicap ABMNC's ability to learn

7   about the situation.

8          According to *Faragher/Ellerth*, an employer cannot be held liable on a theory of

9   hostile work environment if no tangible employment action has been taken, and the employer can

10  demonstrate: 1) that the employer used reasonable care to prevent and correct promptly any sexual

11  harassment and 2) the plaintiff unreasonably failed to take advantage of any preventive or corrective

12  opportunities provided by employer, then.  *Id.*  Defendants can meet both of these prongs as a matter

13  of law with respect to the claims raised by or on behalf of Claimant 6, Claimant 5, Claimant 4,

14  Claimant 7, Claimant 8, Claimant 12, Claimant 9, Claimant 10 and Claimant 11.

15         For purposes of the *Faragher/Ellerth* defense, a tangible employment action means a

16  significant change in employment status, such as "hiring, firing, failing to promote, reassignment

17  with significantly different responsibilities or a decision causing a significant change in benefits.

18  *Ellerth*, 524 U.S. at 761.  In most cases, a tangible employment action inflicts direct economic harm.

19  *Id.* at 762.  Here, none of the Claimants were demoted, fired or suffered any tangible employment

20  action as a result of refusing to give in to advances, laugh at jokes or otherwise.  Only the facts

21  alleged by Erika Morales come close to being sufficient to support a constructive discharge claim.

22  While the conduct alleged by Claimant 6 is severe, she admits that she left ABMNC because she

23  received a better offer from another Company.  Claimant 9's suspension was a result of her refusal to

24  participate in training, and Claimant 11 admits she was told to come back to work after Joe Vasquez

25  fired her, and refused.

26

27  [6] As a supervisor, Mr. Vasquez was responsible for 30 to 40 sites.  He attempted to visit each site
    once a week (unless a client was particularly "picky"), but testified that he was generally able to get
28  to only 80% of them. (Vasquez Depo. 80:8-81:1;182:182:14-183:16)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          25          CASE NO. 1:07 CV 01428 LJO (JLT)

1         To show that it used reasonable care to prevent and correct sexual harassment an

2   employer may show that is has in place a preventive procedure "calculated to encourage victims of

3   harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).  The

4   question is not whether the employer's policy is perfect, but whether the employer's actions as a

5   whole created a reasonable mechanism for prevention and correction. *Holly D. v. California Inst. of*

6   *Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003).  Here, the ABM Defendants have gone above and

7   beyond the call of duty in attempting to provide their employees with a safe and harassment free

8   working environment and a mechanism by which to report complaints.  ABMNC has a zero

9   tolerance harassment policy which is distributed to all employees at the time they are hired, posted at

10   the office locations where employees pick up their paychecks, and is re-distributed to employees

11   with their paychecks.  ABMNC provides yearly training to all supervisory employees.  Further,

12   ABMNC has a toll-free hotline by which employees may call and report complaints anonymously in

13   numerous different languages.

14         Despite having signed acknowledgements of receipt of information setting forth

15   ABMNC's harassment prevention procedures and avenues for filing complaints, no Claimant with

16   the exception of Claimant 3 and Claimant 2, testified that they had availed themselves of these

17   processes.   Several claimants tried to justify their failure to complain on the basis that Javier

18   Vasquez was related to Mr. Vasquez, yet, **none** went to any other manager, or used the hotline, or

19   called human resources. For example, when asked why she did not complain to Ric Steiner, the "big

20   boss", Claimant 8's response was "just because." As a result, the ABM Defendants cannot be held

21   liable for any such harassment to any claimant who did not complain. *Ellerth*, 524 U.S. at 766;

22   *Holly D.*, 339 F.3d at 1158 (affirming summary judgment dismissing claim of sexual harassment

23   where employee did not seek relief from employer until full year of unwelcome sexual activity,

24   almost two years after first sexual incident).

25         Moreover, futility, to the extent any Claimant asserts it, does not thwart this defense.

26   An employee's belief that reporting the harassment would be futile does not excuse failure to report

27   such harassment. *Holly D.*, 339 F.3d at 1179. Subjective fears of confrontation, unpleasantness, or

28   retaliation do not alleviate the employee's duty to alert the employer to the allegedly hostile

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        26          CASE NO. 1:07 CV 01428 LJO (JLT)

1   environment. *Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 976-78 (8th Cir. 2005)

2   (shame, shock, and humiliation does not excuse failure to report). As a result, the ABM Defendants

3   have a complete defense as to the Title VII harassment claims alleged by and/or on behalf of

4   Claimant 6, Claimant 5, Claimant 4, Claimant 7, Claimant 8, Claimant 12, Claimant 9, Claimant 10

5   and Claimant 11.

6           **2.   Certain Claimants Cannot Show the Harassment Was Severe Or Pervasive.**

7           Under Title VII, only sexual harassment so "severe or pervasive" as to alter the

8   conditions of the victim's employment and create an abusive working environment violates

9   Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)*, citing, Meritor Sav. Bank,*

10   *FSB v. Vinson*, 477 U.S. 57, 67 (1986). In addition, a sexually objectionable environment must be

11   both objectively and subjectively offensive, one that a reasonable person would find hostile or

12   abusive, and one that the victim in fact did perceive to be so. *Harris v. Forklift Sys., Inc.*, 510 U.S.

13   17, 21-22 (1993); *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (Plaintiff must

14   allege a pattern of ongoing and persistent harassment that is both subjectively and objectively

15   perceived as abusive).

16           When determining whether conduct is severe or pervasive, courts consider all of the

17   circumstances, including "the frequency of the conduct; its severity; whether it is physically

18   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

19   an employee's work performance." *Harris*, 510 U.S. at 22-23. The law is well settled that

20   occasional, isolated, sporadic or trivial acts are not actionable. *Faragher*, 524 U.S. 775, 788 (1998)

21   ("[a] recurring point in these opinions is that 'simple teasing,' . . . offhand comments, and isolated

22   incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and

23   conditions of employment'"). Rather, a plaintiff must show a concerted pattern of harassment of a

24   repeated, routine or generalized nature. *Id.* at 787. "These standards for judging hostility are

25   sufficiently demanding to ensure that [the anti-harassment statute] does not become a 'general

26   civility code.'" *Id.* at 788.

27           FEHA's standards are similar, that a plaintiff must demonstrate that the harassment

28   was sufficiently severe or pervasive as to alter the conditions of employment and create an abusive

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          27          CASE NO. 1:07 CV 01428 LJO (JLT)

1   working environment. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1998);

2   *Etter v. Veriflo*, 67 Cal. App. 4th 457, 465-67 (1998). Plaintiff must also prove that the conduct

3   complained of would have interfered with a reasonable employee's work performance and would

4   have seriously affected the psychological well-being of a reasonable employee, and that she was

5   actually offended. *Fisher*, 214 Cal. App. 4th at 609-10. Whether the sexual conduct complained of

6   is sufficiently pervasive to create a hostile or offensive work environment must be determined from

7   the totality of the circumstances. *Etter*, 67 Cal. App. 4th at 463-64 (trivial, occasional, sporadic or

8   isolated incidents of verbal abuse not actionable); *see also Fisher*, 214 Cal. App. 3d at 609.

9         Courts have repeatedly held that the type and frequency of the conduct alleged by ten

10  of the twelve Bakersfield claimants not to be actionable under state or federal law. Claimant 7,

11  Claimant 3, Claimant 4, and Claimant 9 concede that Mr. Vasquez never touched them and that his

12  conduct was essentially limited to comments or looks which they contend made them uncomfortable.

13  It is well established that comments are the least severe form of harassment. *Anthony v. County of*

14  *Sacr.*, 898 F.Supp. 1435, 1447 (E.D. Cal. 1995). Suggestive remarks and requests for a date are

15  simply insufficient to meet the "severe or pervasive" standard. *See, e.g., Jones v. Flagship Int'l*, 793

16  F.2d 714, 716 (5th Cir. 1986) (supervisor's two suggestive remarks and a single proposition of

17  plaintiff not severe or pervasive); *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 615-22 (6th Cir. 1986)

18  (Even though coworker was extremely vulgar and crude with plaintiff and nude photos were present,

19  totality of the workplace was not affected); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 214 (7th

20  Cir. 1986) (isolated winks, suggestive remarks and a coworker's single request for a date with

21  plaintiff not severe or pervasive).

22        Five additional Claimants contend that, in addition to comments, in two to three

23  instances, Mr. Vasquez made contact with non-sexual body parts over their clothing: Claimant 2

24  (brushed her cheek or chin, rubbed one shoulder 2-3 times, but did not hurt her); Claimant 8

25  (unsuccessfully grabbed her shirt and tried to get her to sit on his lap); Claimant 12 (one hug lasting

26  seconds which resulted in him touching above her breasts); Claimant 10 (2-3 times touched her left

27  shoulder while saying "how are you?"); and Claimant 11 (touched her once on the shoulder, blew on

28  neck or ear, and 2-3 times touched her hip). These touchings are incidental isolated occurrences and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          28          CASE NO. 1:07 CV 01428 LJO (JLT)

1   again fall short of meeting the severe or pervasive standard.  *See, e.g. Candelore v. Clark County*

2   *Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (isolated instances of "sexual horseplay" over a

3   period of years is not sufficiently egregious to render work environment hostile).  A single, albeit

4   serious, incident involving physical touching by a co-worker is not sufficiently severe or pervasive

5   to establish a hostile working environment.  *Brooks v. City of San Mateo*, 229 F.3d 917, 924-25 (9th

6   Cir. 2000) (affirming summary judgment against 911 dispatcher whose male co-worker interrupted

7   her work to feel her stomach, comment on its sexiness, box her against office equipment, and force

8   his hand under her clothes to fondle her breast, while assuring her, "you don't have to worry about

9   cheating [on your husband], I'll do everything" because this conduct was not extremely severe or

10  pervasive).  No reasonable woman would believe that a single incident of physical touching by a co-

11  worker had permanently altered the terms or conditions of her employment.  *Id.* at 925; *see also*

12  *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 738 (8th Cir. 2000) (a few inappropriate comments

13  and an unwanted slow dance do not amount to a particularly severe conduct that was threatening or

14  humiliating); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (offhand comments

15  and isolated incidents, unless extremely serious, do not amount to discriminatory changes in the

16  "terms and conditions" of employment).  Moreover, one touching and two offensive remarks over a

17  six month period is not sufficient to amount to a hostile work environment.  *Burnett v. Tyco Corp.*,

18  203 F.3d 980, 984 (6th Cir. 2000).

19          As a result, the hostile environment sexual harassment claims made by and/or on behalf of

20  Claimant 2, Claimant 3, Claimant 4, Claimant 7, Claimant 8, Claimant 12, Claimant 9, Claimant 10

21  and Claimant 11 fail under both  Title VII and/or FEHA.

22      **D.      Certain Plaintiff-Interveners' False Imprisonment Claims Fail**

23          To prove false imprisonment, Plaintiff-Interveners must show that Defendants

24  intentionally exercised force or threat of force to restrain detain or confine her for an appreciable

25  length of time.  *Fermin v. Fedco, Inc.*, 7 Cal. 4th 701, 715-716 (1994).  There is no evidence that any

26  Plaintiff-Intervener was ever falsely imprisoned, except arguably Erika Morales and Claimant 6

27  (whose claims are time-barred).  Thus, the false imprisonment claims of Claimant 3, Claimant 7,

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          29          CASE NO. 1:07 CV 01428 LJO (JLT)

1   Claimant 4, and Claimant 2 should be dismissed because these claims have no merit. (UMFs 205-

2   209)

3       **E.   Certain Plaintiff-Interveners' Assault Claims Fail**

4           To prove assault, Plaintiff-Interveners must show that Jose Vasquez committed an act

5   with the intent to cause apprehension of immediate injury, coupled with reasonable apprehension of

6   immediate touching. *See Thing v. LaChusa*, 48 Cal. 3d 644, 649 (1989); *Lowry v. Standard Oil Co.*

7   *of Calif.*, 63 Cal. App. 2d 1, 6-7 (1944). Claimant 3, Claimant 7 and Claimant 4, all testified that

8   Mr. Vasquez made no threats of bodily injury to them and thus they cannot prevail on an assault

9   claim. (UMFs 210-216)

10      **F.   Certain Plaintiff-Interveners' Battery Claims Fail**

11          A battery requires intentional contact by one person with the body of another,

12  resulting in harmful or offensive contact. *See* Restatement (Second) of Torts § 16(1). Moreover, a

13  defendant may be held liable for battery only if he "intend[ed] to harm or offend the victim." *Austin*

14  *B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 872 (2007). There is no evidence that

15  Mr. Vasquez made any contact with Claimant 3, Claimant 7, or Claimant 4 and thus their battery

16  claims fail. (UMFs 217-219)

17      **G.   Certain Plaintiff-Interveners Cannot Prove The Prima Facie Elements Of A Claim Of**
        **Intentional Or Negligent Infliction Of Emotional Distress Or Negligence.**

18

19          Claimant 3, Claimant 7, Claimant 4, and Claimant 2 will likewise be unable to pursue

20  a claim for intentional infliction of emotional distress, as they cannot show that Defendants' conduct

21  exceeded "all bounds usually tolerated by a decent society, of a nature which is especially calculated

22  to cause, and does cause, mental distress." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155

23  n.7 (1987). To recover, they must show that the conduct was "so extreme and outrageous as to go

24  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

25  civilized community." *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 499 (1970). Liability "does not

26  extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . .

27  There is no occasion for the law to intervene . . . where someone's feelings are hurt." *Id.* (*quoting*

28  Rest. 2d (Torts) § 46, comment d). "Serious" emotional distress exists "if an ordinary reasonable

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.        30        CASE NO. 1:07 CV 01428 LJO (JLT)

1   person would be unable to cope with it." *Molien v. Kaiser Found. Hosps.,* 27 Cal. 3d 916, 928-928

2   (1980).  Mr. Vasquez' conduct towards Claimant 3, Claimant 7, Claimant 4 and Claimant 2 comes

3   nowhere within the scope of this stringent standard.  Moreover, there is no evidence that the alleged

4   conduct resulted in severe emotional suffering.  *Cole,* 43 Cal. 3d at 155, n.7.  Further, ABMNC has

5   made every effort to provide its employees a safe working environment through the promulgation of

6   its zero tolerance harassment policy.

7         A cause of action for negligence and negligent infliction of emotional distress

8   requires essentially the same elements.  A plaintiff must show that  (1) the defendant engaged in

9   negligent conduct (duty and breach); (2) the plaintiff suffered serious emotional distress; and (3) the

10   defendant's negligent conduct was a substantial factor in causing the emotional distress suffered by

11   the plaintiff.  *Burgess v. Superior Court,* 2 Cal. 4th 1064, 1072 (1992); *Semore v. Pool,* 217 Cal.

12   App. 3d 1087, 1105 (1990) (no claim for negligent infliction of emotional distress arising from

13   termination where there was no duty not to discharge plaintiff and any actions by employer were

14   intentional, not negligent).  While the conduct alleged by Claimant 3, Claimant 7, Claimant 4, and

15   Claimant 2 would violate ABMNC's sexual harassment policy, it does not rise to the level of

16   actionable conduct. (UMFs 220-227).

17   **H.   Plaintiff-Interveners' Claims For Aiding And Abetting And Failure To Prevent Cannot
         Prevail If There Was No Underling FEHA Violation**

18

19         Plaintiff-Interveners also assert claims under Cal. Gov't Code § 12940(i) and (k), for

20   "Aiding and Abetting, Discrimination, Harassment and Retaliation" and "Failure to Prevent

21   Discrimination, Harassment and Retaliation."  Because both of these claims are premised on there

22   having been an underlying FEHA violation, if the ABM Defendants prevail as to the FEHA

23   Discrimination, Harassment and Retaliation claims of any Plaintiff-Interveners, their respective

24   claims under these sections will also fail.  *See e.g. Trujillo v. North County Transit. Dist.,* 63 Cal.

25   App. 4th 280 (1998); Cal. Gov't Code § 12940(i). (UMFs 201-204)

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          31          CASE NO. 1:07 CV 01428 LJO (JLT)

1    **VIII.   CONCLUSION**

2           For all of the foregoing reasons, Defendants respectfully request that this Court grant

3    their Motion for Summary Adjudication with respect to the Bakersfield Claimants and Interveners.

4    Dated: May 2 0, 2010

5

6                                                    _____
                                                     KEITH A. JACOBY
7                                                    LAURA E. HAYWARD
                                                     LITTLER MENDELSON
8                                                    A Professional Corporation
                                                     Attorneys for Defendants
9                                                    ABM INDUSTRIES INCORPORATED;
                                                     ABM JANITORIAL SERVICES, INC. AND
10                                                   ABM JANITORIAL SERVICES—
                                                     NORTHERN CALIFORNIA, INC.
11
     Firmwide:95488426.1 054667.1005
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S MPA ISO MOT FOR SUMM. ADJ.          32          CASE NO. 1:07 CV 01428 LJO (JLT)