Anna Y. Park (SBN164242)
Derek W. Li (SBN 150122)
Elizabeth Esparza-Cervantes (SBN 205412)
Lorena Garcia-Bautista (SBN 234091)
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 E. Temple St., 4th Floor
Los Angeles, CA. 90012
Telephone: (213) 894-1108
Facsimile: (213) 894-1301
Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Stan S. Mallison (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
MALLISON & MARTINEZ
1939 Harrison Street, Oakland, CA  94612
Telephone: (510) 832-9999
Facsimile:  (510) 832-1101

Counsel for Plaintiff-Intervenors Erika XXX and Anonymous Intervenors

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>ERIKA XXX and ANONYMOUS PLAINTIFFS ONE THROUGH SIX,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>ABM INDUSTRIES INCORPORATED, ABM JANITORIAL SERVICES, INC.; ABM JANITORIAL NORTHERN CALIFORNIA; JOSE VASQUEZ and Does 1-10 inclusive,<br><br>Defendants. | CASE NO: 1:07-cv-01428-LJO-JLT<br><br>**OPPOSITION TO ABM DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS**<br><br>Date:        June 17, 2010<br>Time:        8:30 a.m.<br>Judge:       Lawrence J. O'Neill<br>Courtroom:   4 |

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

I.  INTRODUCTION........................................................................................... 2

II. ARGUMENT ................................................................................................ 6

A.  ABM Has Failed to Meet the Heightened Standard for Summary
    Judgment for the Hostile Work Environment Claim ................................ 6

B.  ABM is Responsible for a Sexually Hostile Work Environment ............... 8

C.  ABM is Liable for the Hostile Work Environment ................................... 10

D.  There are Triable Issues of Fact as to Whether the Harassment
    was Sufficiently Pervasive as to Alter the Conditions of Employment...... 12

III. THE APPLICABLE LIMITATIONS AND TOLLING FOR
     EEOC, FEHA AND RELATED STATE TORT CLAIMS ........................ 14

A.  The Plaintiffs' Claims are Not Time Barred Because the Claims
    Must be Viewed as one Continuous Act Under All Theories Brought
    By the Plaintiffs......................................................................................... 14

B.  The Statutory Construction of Title VII Mandates that
    the EEOC Can Seek Compensatory and Punitive Relief
    Beyond the 300-Day Limitation Period .................................................... 17

C.  The Single Filing Rule Provides an EEOC and FEHA Filing
    Date of June 30, 2006 for Intervenors .................................................... 22

D.  Individual Statute of Limitations Runs from the end of the Hostile
    Work Environment ..................................................................................... 24

E.  The Filing Date for FEHA and EEOC Claims Equitably
    Toll Based Upon Defendants' Administrative Process............................. 26

F.  The State Tort Claims Toll During the FEHA and EEOC Complaint
    Process ....................................................................................................... 28

    1.  The Alleged Violations of Title VII and Intervention Tort
        Claims Stem from the Same Wrongs and Predicated on the
        Same Facts........................................................................................ 31

    2.  The Alleged Violations of California's FEHA also Stem
        from the Same Wrongs and Predicated on the Same Facts.............. 34

    3.  The Preservation of Judicial and Party Resources, as well
        as the Avoidance of Inconsistent Ruling, Collateral
        Estoppel and Res Judicata are Justifications for Equitable Tolling .......... 37

IV. LIMITATIONS AND TOLLING ANALYSIS APPLIED TO THE
INTERVENOR'S CLAIMS................................................................... 39

    1.  Erika XXX was Harassed from Fall 2004 to September 2005.
       PUF 15 (Dep. 38:5-14; 40:17-21; 79:18-20)............................. 39

    2.  XXX was Harassed from June 2004 to August 2006.
       PUF 13 (Dep. 113:14-22; 118:1-4; 172:7-21)........................... 39

    3.  XXX was Harassed from November 2004; attained age of
       majority in 2008. PUF 19  (Dep. 12:19-24; 13:2-11)................ 40

    4.  XXX was Harassed from September 1999 to March 2006.
       PUF 14 (Dep. 19:15-17)............................................................ 40

    5.  XXX was Harassed from November 2004 to June/July 2005.
       PUF 17 (Dep. 29:17-20)............................................................ 40

    6.  XXX was Harassed from July 2004 to May 2005.
       PUF 5 (Dep. 38:3-6; 51:24-53:1) ............................................ 40

    7.  R. XXX was Harassed from February to May 2005.
       PUF 16 (Dep. 19:13-25; 20:20-24; 32:20-23)........................... 41

V.       CONCLUSION ................................................. 41

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4   Allen v. Intern. Truck and Engine Corp., 358 F.3d 469, 472.......................................  20

5   Allen v. United States Steel Corp., 665 F.2d 689, 695 (5th Cir.1982) ..........................  23

6   Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)  ...............................................  6

7   *Arnold v. U.S.*, 816 F.2d 1306 (9th Cir. 1987) .........................................................  31, 32

8   Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport,
      647 F.2d 256, 274 (2nd Cir. 1980 ........................................................................  21

9

10  Beard v. Flying J, Inc. (8th Cir. 2001) 266 F.3d 79.)  ................................................  10

11  Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000)...........................  18

    Burlington Industries, Inc. v. Ellerth,
12    524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998)  .........................  10, 11

13  Burns v. McGregor Electronic Industries, Inc., 955 F.2d 559, 564 (8th Cir. 1992)  ...................  9

14  Burrell v. Star Nursery, Inc., 170 F.3d 951 (9th Cir. 1999)  .......................................  8, 9

15  Celotex Corp. v. Catrett, 477 U.S. 317, 331n.2 (1986)  ..............................................  6

16  Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir.1993)............................  27, 30, 33

17  Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1175
      (9th Cir. 2006)......................................................................................................  17
18

19  Conner, 227 F.3d at 199  ............................................................................................  9

20  Davis v. Team Elec. Co. (9th Cir. 2008) 520 F.3d 1080, 1096.....................................  14

21  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001)(en banc). ..............  33

22  Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) .............................  6

23  Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1109 (9th Cir. 1998)  ......................  8, 9

24  EEOC v. Autozone, Inc., 258 F.Supp. 2d 822, 829-32 (W.D. Tenn. 2003) ..........................  18, 22

25  EEOC v. Chicago Miniature Lamp Works, 640 F. Supp. 1291, 1296 (N.D. Ill. 1986) .........  17, 21

26  EEOC v.  Crown Liquors of Broward, Inc., 503 F. Supp. 330, 332 (D.C. Fla. 1980)..................  19

27  EEOC v. Gilbarco, Inc., 615 F.2d 985, 988-90 (4th Cir. 1980) ...................................  15

28

EEOC v. Gurnee Inn Corp., 914 F.2d 815, 819 n.6 (7th Cir. 1990) .................................. 16, 20

EEOC v. Mitsubishi Motor Mfg. of Am., 990 F. Supp. 1059, 1070 (C.D. Ill. 1998)................... 16

EEOC v. Newspapers, Inc., 1985 WL 5252 (E.D. Wis. 1985) ................................................ 16, 20

EEOC v. Occidental Life Ins. Co. of California, 535 F.2d 533 (9th Cir. 1976) ...................... 15, 16

EEOC v. Peterson, Howell & Heather, Inc., 702 F. Supp. 1213, 1225-26 (D. Md. 1989) ........ 17, 21

EEOC v. Preferred Management Corp., 216 F.Supp.2d 763, 814 (S.D. Ind. 2002) ............ 15,16, 20

EEOC v. Rymer Foods, 1989 WL 88243 (E.D. Ill. 1989) .......................................... 17

EEOC v. Sears, Roebuck & Co., 490 F.Supp. 1245 (M.D. Ala. 1980) ........................................ 19

EEOC v. Waffle House Inc., 534 U.S. 279, 296 n.11, 122 S.Ct. 754 n.11,
    151 L.Ed. 2d 755 (2002) .................................................................. 14,18, 19

EEOC v. Warshawsky and Co., 1994 WL 384041, *2–3 (N.D. Ill. 1994) ............................... 16, 20

EEOC v. Wyndham World wide Corp., 2008 U.S. Dist. LEXIS 83558 (W.D.Wash. 2008) .......... 21

Ellison v. Brady, 924 F.2d at 978  ................................................................10, 12

Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275,
    141 L.Ed.2d 662 (1998) ..................................................................10, 11

Ferguson v. Chicago Housing Authority (N.D. III 2001) 155 F. Supp. 2d 913, 916 ...................13

Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1197 (10th Cir.2004)...........................................   23

General Telephone Co. of the Northwest v. EEOC, 446 U.S. 318 (1980)............................ .14, 19

Glass and EEOC v. IDS Financial Services, Inc., 778 F. Supp. 1029,
    1050-55 (D. Minn. 1991)  ............................................................. 17

Guaranty Trust Co. of New York v. York, 326 U.S. 99, 110 (1945)............................................   30

Guardians Assoc. of the New York City Police Dept., Inc. v.
    Civil Service Commission of the City of New York, 633 F.2d 232,
    251 (2nd Cir. 1980) ...................................................................   21

Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)...........................  27

Harris v. Amoco Prod. Co., 768 F.2d 669, 682-83 (5th Cir. 1985) ............................   15

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367 (1993) ..........................................  14

iv

Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1115 (1st Cir. 1989) .......................... 6

Horton v. Jackson County Bd. of County Comm'rs, 343 F.3d 897, 899 (7th Cir.2003)............... 23

Hostetler v Quality Dining (7th Cir.2000) 218 F.3d 798, 808   .................................... 13

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977)

Jenson v. Eveleth Taconite Co., 824 F. Supp. 847 (D.Minn. 1993)   ........................... 21

Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir. 1985)..................................... 6

*Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694-95 (9th Cir. 2003) .......... 30, 32

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399 (1986) ............... 8

Miller v. Department of Corrections, 36 Cal.4th at 462 ................................ 14

Moore v. City of Sam Jose, 615 F.2d 1265 (9th Cir. 1980) ........................ 7

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ...... 5, 7, 8, 14, 19, 20, 24-26

Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447 (1977) ....................6,15

Oncale v. Sundowner Offshore Services, Inc. (1998) 523 U.S. 75, 81-82  ............12, 14

Optical EEOC v. Crown, 169 F.Supp.2d 539, 547 ........................................19

Otto v. Heckler, 781 F.2d 754, 756-57 (9th Cir. 1986)................................... 31

Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) ........................       10, 13

Reeves v. Sanderson Plumbing Product, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000) ............... 6,7

Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396,
    401 (1st Cir. 1990) .........................................       17, 18, 22

Salgado v. Atlantic Richfield Co., 823 F.2d at pp. 1325-1326 ...................... 23

Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000).................................. 23

Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 605 (2nd Cir. 2006) ............ 7

Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1409 (9th Cir. 1996)        ........... 6

Shields v. Fort James Corp., 305 F.3d 1280, 1283 ........................       20, 25

Spriggs v. Diamond Auto Glass, 165 F.3d 179, 183-85 (4th Cir. 1999) ................... 8

Steiner, supra, 25 F.3d at 1463........................................ 14

*Stewart v. Thomas*, 538 F.Supp. 891, 895 (D.C. Cir. 1982) ................. 31, 32

Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1110 (10th Cir.2001) ................. 23

v

U.S. v. Fresno Unified School Dist., 592 F.2d 1088 (9th Cir. 1979)...................................... 16, 18

Wilson v. Garcia, 471 U.S. 261, 269 (1985) ................................................................................. 30

**STATE CASES**

Addison v. State of California 21 Cal.3d 313, 317, (1978)........................................ 27-29, 37, 38

Aguilar, 25 Cal.4th at 856  ................................................................................................       9

Beyda v. City of Los Angles, (1998) 65 Cal.App.4th 511, 517-518...........................       14

*Bollinger v. National Fire Ins. Co.*, 25 Cal.2d 399, 410 (1974) .................................       38

Collier v. City of Pasadena, 142 Cal.App.3d 917, 924, 191
     Cal.Rptr. 681 (1983)........................................................................... 27, 28, 30, 33, 37

Elkins v. Derby, 12 Cal.3d 410 (1974). ....................................................................26, 37, 38

Fisher, 214 Cal.App.3th at 609-610  ...................................................................................12, 13

Hull v. Central Pathology Serv. Med. Clinic, 28 Cal.App.4th 1328,
     1335, 34 Cal.Rptr.2d 175 (1994).................................................................................27

Lyle v. Warner Bros. Television Productions (2006) 38 Cal.4th 264, 283  ...............       12

McDonald v. Antelope Valley Community College District, 45 Cal.4th 88 ................... 26, 29, 40

Marcario v. County of Orange (2007) 155 Cal.App.4th 397, 408-409......................       29

Migliore v. Mid-Century Ins. Co., Inc. (2002) 97 Cal.App.4th 592, 604 .................       29

Myers v. County of Orange, 6 Cal.App.3d 626, 634 (1970).......................................       30

Richards v. CH2M Hill, Inc., 26 Cal. 4th 798 (2001) ...............................................       24

Romano 14 Cal.4th at pp. 493-494, 59 Cal.Rptr.2d 20, 926 P.2d 1114....................       24

Sheffield v. Los Angeles County Dept. of Social Services, (2003)
     109 Cal.App.4th 153, 164  ...................................................................................       13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FEDERAL STATUTES

28 U.S.C. § 1376 ............................................................................................. 38

42 U.S.C. § 1977A(b) ................................................................................... 18

42 U.S.C. § 2000e ..............................................................................throughout

Civil Rights Act of 1964, § 706(e)(1) ......................................... 22

## FEDERAL RULES

Federal Rule of Civil Procedure 56 ................................................ 6

## OTHER AUTHORITIES

Cal. Gov. Code 945.6 ........................................................................ 29

Cal. Gov. Code 12906(d) ................................................................ 26

Cal. Gov. Code 12920 ...................................................................... 29

Cal. Gov. Code 12940 ............................................................... 34, 35

Cal. Gov. Code 12940(J) ................................................................ 34

Cal. Gov. Code 12940(J)(1) .......................................................... 35

Cal. Gov. Code 12960 ...................................................................... 34

Cal. Gov. Code 29060(d)(2) ...................................................... 8, 23

29 CFR §§ 1601.75, 1601.80 ....................................................... 34

2 CCR §7287.6 ................................................................................ 35

2 CCR §7287.6(b) ........................................................................... 35

DLSE Enforcement Manual §43.6.7; DLSE Opinion Letter, 1988.10.27 .............................. 40

16 Moore's Federal Practice ¶ 106.23 (3d ed. 2005 ................................... 38

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

# I.   <u>INTRODUCTION</u>

Plaintiff Equal Employment Opportunity Commission ("EEOC") and Intervenors jointly submit the Memorandum in Opposition to Defendant ABM Inc's, ("ABM's") Amended Motion for Summary Adjudication.[1]

The EEOC filed this case on behalf of a class of women who were subjected to company-wide sexual harassment at one of the nation's largest janitorial companies.[2]   Although this case is limited to the Central Valley, there are numerous other EEOC and private cases across the country demonstrating ABM's pattern and practice of ignoring sexual harassment at its worksites and actively discounting and marginalizing any attempts by employees to remedy these problems. (*See e.g.* XXX De XXX Depo. at 112:4-19).   Although Defendants have attempted to focus this motion upon one harasser, Jose Vasquez, the violations at issue are part of a larger scheme evidenced by numerous other ABM harassers[3] and ABM's practice of permitting and ignoring their worker's claims of sexual harassment[4], discrimination based on sex and failing to take remedial action.[5] *See also* PUF 28 - 48, 52.

The sexual harassment by Jose Vasquez in Bakersfield and other harassers in the Central Valley was on-going for years and, with the exception of Mr. Vasquez who was finally relieved of his duty well after the complaint was filed, continues to this date.   ABM's conduct giving rise to this action is truly extraordinary in terms of the egregious way in which women were systematically denigrated, threatened and/or ignored.

Defendants hired Jose Vasquez, a convicted rapist (listed on California's registry of sex

---

[1] Plaintiffs and Plaintiff-Interveners incorporate by reference their opposition to Summary Adjudication Re Fresno & incorporate by reference the EEOC Statement of Uncontroverted Facts in Support of its Opposition to Defendants' Motion for Summary Judgment or in the Alternative Summary Adjudication Regarding Bakersfield and Fresno Claimants.

[2] In 2009, ABM had an annual revenue of $3.6 billion. http://www.abm.com/About-ABM/Pages/History.aspx (*Last visited June 1, 2010*).

[3] For example, Francisco Cervantes, Arturo Jimenez, Jose XXX Lozano, and Adalberto Rodriguez (list is not exhaustive).

[4] See e.g. XXX R. Depo. at 92:22 -93:6.

[5] See e.g. XXX R. Depo. at 100:14 - 101:20.

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

offenders)[6] to supervise young, female janitors working mostly in empty buildings at night. PUF 35, 49, 51, 50. Jose Vasquez was incarcerated for four years, from 1987 to 1991, for raping a woman he had met in the work place in 1987. ABM failed to notice that on his application, Jose Vasquez did not answer the question asking if he had ever been convicted of a felony. ABM also failed to notice that Vasquez did not answer the question asking if he had any relatives working for ABM. This omission by ABM lead to Jose Vasquez being hired to work at ABM by his cousin and supervisor, Javier Vasquez.

Defendants could have easily viewed his criminal conviction for sexual crimes on the Megan's Law website and should have done so to protect their workforce, young women working at night. See Cal. Penal Code 290.45(a)(8) (authorizing the use of website for purposes of protecting persons at risk). This convicted rapist, who began working for ABM not long after being released from prison, raped one of the claimants at an ABM jobsite and kept her quiet throughout her tenure by terrorizing, intimidating her, and threatening her after the rape to "watch her back" if she said anything. PUF 13. He beat another claimant on the job (PUF 15) and sexually attacked the claimants, repeatedly forcing himself on these women by touching or attempting to touch their vaginas and grope their breasts and buttocks. PUF 5, 13-15, 17, 19. Frequently he asked them to touch his penis or propositioned them for sex. *Id.* He also frequently and repeatedly talked dirty to his victims, both as he attacked them and as he carried on with his workday, staring them down as if undressing them with his eyes. *Id.* One of this man's victims was a 14 year-old girl who worked alongside her mom under Jose Vasquez' supervision. On at least one occasion, Jose Vasquez forcibly groped the 14 year-old girl as she worked at an ABM jobsite. PUF 19. That these acts created a hostile work environment for these women cannot be seriously disputed.

Moreover, ABM tolerated this discrimination. It not only placed these vulnerable women in a sexually hostile and violent environment, but also failed to take remedial action when ABM had the opportunity to do so, upon hearing numerous complaints by numerous women. As such, ABM failed to investigate numerous informal and formal complaints and failed to follow its own internal

---

[6] http://www.familywatchdog.us/ShowNameList.asp (*Last visited June 1, 2010*).

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

grievance procedure. PUF 35, 49-50.  Despite knowing about this company-wide sexual harassment for years, ABM failed to take any meaningful steps to implement adequate procedures to remedy the pervasive harassment or even to discipline or fire Javier and Jose Vasquez.  In sum, ABM workers were not told about ABM's internal grievance procedure, the 1-800 hotline or the human resources department, and the few documents they received were in English, despite the fact that these women were largely monolingual Spanish speakers.[7]  ABM perpetuated a corporate atmosphere of tolerance for sexual harassment, which served to foster and condone the sexually hostile work environment created by known perpetrators, ignoring complaint after complaint against Mr. Vasquez and other managers. PUF 5, 13-15, 17, 19, 35, 49-50. In short, harassers were allowed by ABM to sexually harass women on the job with impunity.

Based upon the severe and pervasive experiences suffered by these women while working at ABM, the EEOC and Intervenors have presented more than sufficient evidence to defeat summary judgment.  Jose Vasquez engaged in a pattern of sexual harassment creating a hostile work environment and ABM management, including Ric Steiner, District Representative, and Tom Cazale, Regional Director of Human Resources (Dep. 30:4) who took up the internal grievance procedure in response to anonymous letters, knew about these problems and did nothing to stop them, rendering ABM's written policy meaningless because sex harassment reports were not properly investigated and remedied.  PUF 34, 48. The Expert Report by Michael Robbins, Esquire, provides evidence of, *inter alia*, ABM's centralized corporate structure and "reporting-up" procedures, especially regarding personnel policies and other aspects of the business and management practices regarding corporate tolerance of sexual harassment at ABM.  PUF 48.  In the few instances when ABM did investigate complaints they inevitably came to the cursory conclusions that the investigation (which often consisted of simply talking to the harasser) was inconclusive or unmeritorious. (Letter by Tom Cazale, September 16, 2005).

Defendants subjected Plaintiffs to quid pro quo harassment. Contrary to Defendants'

---

[7] Supervisor Ruben Vasquez testified that ABM's employees are 99.9% Spanish speakers and are unable to speak English. Ruben Vasquez Depo. at 41:3-7.

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claims, ABM Defendants subjected women to quid pro quo sexual harassment.  Jose Vasquez suspended Claimant 9 because she refused to go into a small creepy room with him.  Claimant 9 insisted that they conduct a proposed training outside the small room because Vasquez's earlier stalking and sexually intimidating conduct had already frightened Claimant 9 too much to enter a small room with him.  In response, Jose Vasquez suspended her.  1.18  The day before Vasquez insisted that Claimant 9 enter the small room with him, she had already witnessed a distraught looking female co-worker exit that room with Vasquez.  1.19

Jose Vasquez then fired Claimant 11 when she, out of fear of his efforts to be alone with her, refused to work alone in a building until 4:00 a.m. even though she had already completed her normal shift.  Jose Vasquez hit a broomstick on the table and told her, "If you don't stay, you won't have a job tomorrow."  12.28.  Of course, her only recourse on this matter was Javier Vasquez who was less than helpful when she complained to him about his brother terminating her.  PUF 12.29-30.  Claimant 11 found herself without unemployed for refusing to be alone in a building at night with a sexual predator.

Defendants' statute of limitations arguments ignore controlling precedent, including law of this case.  First, all claims are timely because (1) they "piggy-back" on the timely claim of XXX (42 U.S.C.A. § 2000e-5(e)(1)); (2) the statute of limitations for hostile work environment does not begin to run until the hostile environment ends (*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117; 122 S.Ct. 2061, 2074; 153 L.Ed.2d 106 (2002); and (3) the limitations period tolled beginning on or before August 31, 2005 when the internal grievance procedure was initiated when employees attempted to avail themselves of internal remedies by complaining to District Manager Javier Vazquez.

This court has already determined that the state claims alleged arise from the same operative facts as the EEOC complaint in this case.  March 5, 2010 (Doc 25 at 4).   This provides a substantial basis for equitable tolling of the California Torts in this case after the filing of the EEOC/DFEH questionnaire with the EEOC on June 19, 2006.  Further, there can be no dispute that pattern or practice class-wide claims challenging the practices and policies that condoned a hostile

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

work environment and sexual harassment have no periods of limitations. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447 (1977).

## II.   ARGUMENT

### A.   ABM HAS FAILED TO MEET THE HEIGHTENED STANDARD FOR SUMMARY JUDGMENT FOR THE HOSTILE WORK ENVIRONMENT CLAIM

Summary judgment must be denied, as defendants have not met their burden to show that there is no genuine issue of material fact in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Under Federal Rule of Civil Procedure 56, a court may grant a summary judgment motion only if all of the evidence, viewed in the light most favorable to the non-moving party, is sufficient to show that there is no genuine issue of any material fact. A "genuine issue" must be decided at trial because the evidence would permit a rational factfinder to resolve the issue in favor of either party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 n.2 (1986). Moreover, a court "must draw all reasonable inferences in favor of the non-moving party." *Reeves v. Sanderson Plumbing Product, Inc.*, 530 U.S. 133, 150; 120 S.Ct. 2097, 2110; 147 L.Ed.2d 105 (2000). To defeat summary judgment, the EEOC and Intervenors need only present enough evidence from which a jury could return a verdict in plaintiff's favor. *Anderson*, 477 U.S. at 249.

Credibility issues and weighing of evidence must be left to the factfinder. *Anderson*, 477 U.S. at 255. Courts have added a particular cautionary note about granting summary judgment in cases involving employment discrimination, because these are cases that necessarily place motive and intent at issue. *See Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). Courts have recognized that "without a searching inquiry in these motives, those acting for impermissible motives could easily mask their behavior behind a complex web of post hoc rationalizations." *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985). The absence of "smoking gun" evidence does not mean that summary judgment is appropriate. *Hebert v. Mohawk Rubber Co.*, 872 F.2d, 1104, 1115 (1st Cir. 1989). Rather, "intent may be inferred from circumstantial evidence." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996). Moreover, the

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

"question of discriminatory motive may suffice to raise a question that can only be resolved by a factfinder. *Id*. In addition, the inquiry into hostile work environments is a fact-intensive one, particularly unsuitable for summary judgment because "hostile work environment claims present 'mixed question[s] of law and fact' that are especially well-suited for jury determination." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 605 (2nd Cir. 2006).

Here, Defendants seek summary adjudication against intervenors and claimants on grounds that various claims are barred by the applicable statutes of limitations. Like the factually-intensive nature of the claims themselves, the various doctrines extending the limitations periods are fact intensive as well. Defendants maintained an unlawful policy or practice of tolerating managers who created a hostile work environment against women. This systemic violation falls within the doctrine of continuing violation, and the statute of limitations does not begin to run until the policy or practice is discontinued. *Moore v. City of Sam Jose*, 615 F.2d 1265 (9th Cir. 1980). This theory of hostile work environment has been expressly upheld by the United States Supreme Court in Morgan.

Despite the overwhelming evidence, and with clear disregard for the burden required to have summary judgment granted, ABM repeatedly provides self-serving or partial evidence as though they were uncontested. By contrast, there is very little if any of Defendants' facts that are not in some way contested, or when taken in context, provides none of the relief which Defendants seek. Whether or not defendants will ultimately prevail in these factual determinations, the law clearly states that at the summary judgment stage the facts are to be viewed in the light most favorable to the non-moving party. *See Reeves*, 530 U.S. at 150; 120 S.Ct. at 2110.

When viewed in the light most favorable to the EEOC and Plaintiffs, substantial evidence exists from which a jury could find that defendant repeatedly and regularly tolerated sexual harassment and failed to take appropriate company-wide preventative or remedial action, which constitutes a hostile work environment and a pattern or practice of sexual harassment. Further, ABM's statute of limitation arguments cannot survive either of the hostile work environment, pattern or practice, or class action theories. As such, defendant has not met its burden of showing

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

1
2
disputed issues of material fact pursuant to these theories and its Motion should be denied.

3
Even if ABM could demonstrate that one or more individual claims could be struck as

4
presumptively untimely, there remains the issue of whether the state law claims were equitably

5
tolled by the filing of the EEOC and DFEH charges, a fact-intensive inquiry best reserved for a

6
trier of fact. Further, the DFEH claims are extended for a year based upon ABM Inc. failure to

7
properly admit their status as an employer in this case. Cal. Gov. Code 129060(d)(2).

8
### B.    ABM IS RESPONSIBLE FOR A SEXUALLY HOSTILE WORK ENVIRONMENT

9

10
    "To assert a Title VII claim based on a hostile work environment, a claimant must allege a

11
'pattern of ongoing and persistent harassment severe enough to alter the conditions of

12
employment.'" *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (quoting *Draper v.*

13
*Coeur Rochester*, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998)). Title VII provides a legal remedy to

14
victims who establish that abusive conduct was severe or pervasive." Meritor Sav. Bank, FSB v.

15
Vinson, 477 U.S. 57, 67 (1986)(emphasis added). A plaintiff can establish a prima facie Title VII

16
hostile work environment by alleging facts from which a reasonable jury could infer that the

17
defendant subjected the plaintiff to unwelcome harassment "sufficiently severe or pervasive to alter

18
the conditions of employment and create an abusive atmosphere." Spriggs v. Diamond Auto Glass,

19
165 F.3d 179, 183-85 (4th Cir. 1999).  Sex discrimination includes sexual harassment that is so

20
severe or pervasive as to alter the conditions of employment and create a hostile work

21
environment.  *Meritor v. Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399 (1986)

22
(citation omitted).  To determine whether sexual harassment is severe or pervasive, the trier-of-fact

23
must consider the "totality of the circumstances." *Meritor* 477 U.S. at 69; *Harris v. Forklift Sys.*,

24
*Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993).  This is because, "[a] hostile work environment claim

25
is comprised of a series of separate acts that collectively constitute one 'unlawful employment

26
practice.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117; 122 S.Ct. 2061, 2074;

27
153 L.Ed.2d 106 (2002).        Thus, "[u]nder the totality of the circumstances analysis, the district

28

- 8 -

1

2

court should not carve the work environment into a series of discrete incidents." *Burns v.*

*McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir. 1992).  Rather, "each successive

3

episode has its predecessors, that the impact of the separate incidents may accumulate, and that the

4

work environment created may exceed the sum of the overall scenario."  *Id*.  Moreover,

5

"[d]iscriminatory behavior comes in all shapes and sizes, and what might be an innocuous

6

occurrence in some circumstances may, in the context of a pattern of discriminatory harassment,

7

take on an altogether different character, causing a worker to feel demeaned, humiliated, or

8

intimidated on account of her gender." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th

9

Cir. 1998).

10

        While ABM's has clearly exposed the class members to insulting, denigrating harassment,

11

far less is required to defeat summary judgment in the Ninth Circuit. The Ninth Circuit has denied

12

summary judgment where a female alleged that her supervisor made "comments that contained

13

sexual references; saying he wanted to take a trip to the mountains with her; and making comments

14

about how plaintiff looked and how 'well built' she was." *Burrell v. Star Nursery, Inc.* 170 F.3d

15

951, 953, 957 (9th Cir. 1999).  Stating that there was a "genuine issue of material fact as to …

16

whether such conduct created a hostile work environment").  Thus, the Ninth Circuit's decision to

17

deny summary judgment with regard to the harassment by supervisor was based solely on the

18

supervisor's comments containing "sexual references." *Id*. at 956.

19

        Here, the harassing conduct was far more severe.  For example, Bakersfield workers were

20

raped, sexually assaulted (including a minor), propositioned, and offered quid pro qou.

21

        In sum, every intervenor and class member had at least the harassment levels which the

22

Ninth Circuit has stated prevents the imposition of summary judgment. Taking these facts in a light

23

most favorable to EEOC and Intervenors presents a "quintessential" "question of fact for the jury,"

24

from which it may find a hostile work environment. Conner, 227 F.3d at 199. At the summary

25

judgment phase, when a contrary interpretation is presented to the trial court, it raises a triable

26

issue of fact that can only be evaluated by a jury. ( Aguilar, supra, 25 Cal.4th at 856.)

27

28

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

Furthermore, the Ninth Circuit has cautioned against an attempt to take issues of sexual violence and threat away for the jury:

> We realize that there is a broad range of viewpoints among women as a group, but we believe that many women share common concerns which men do not necessarily share. For example, because women are disproportionately victims of rape and sexual assault, women have a stronger incentive to be concerned with sexual behavior. Women who are victims of mild forms of sexual harassment may understandably worry whether a harasser's conduct is merely a prelude to violent sexual assault. Men, who are rarely victims of sexual assault, may view sexual conduct in a vacuum without a full appreciation of the social setting or the underlying threat of violence that a woman may perceive."

*Ellison v. Brady*, *supra*, 924 F.2d at 879; see also McGinest v. GTE Service Corp. (9th Cir. 2004) 360 F.3d 1103, 1115; Beard v. Flying J, Inc. (8th Cir. 2001) 266 F.3d 792.)

## C.  ABM IS LIABLE FOR THE HOSTILE WORK ENVIRONMENT.

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court defined the standard for vicarious liability in Title VII hostile work environment cases.  The Supreme Court held that:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . .

*Ellerth*, 524 U.S. at 745, 118 S. Ct. at 2261.  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.  Thus, ABM's is strictly liable for any sexual harassment by a supervisor which resulted in a tangible employment action.

Abundant sworn testimony from claimants exists that they were subjected to sexual harassment by supervisor Jose Vasquez.  The claimants testified that Jose Vasquez was directly involved in a wide array of sexual harassment that they experienced in Bakersfield.  (CITES). The

- 10 -

claimants also testified about retaliation and other significant changes in their employment, such as being forced to resign or having their hours reduced as a result of the actions by Jose Vasquez.

Vicarious liability for sexual harassment may also exist when a tangible employment action is not involved.  In such cases, however, an employer may avoid liability only if it meets its burden of proving by a preponderance of the evidence that: 1) it reasonably exercised care in preventing and promptly correcting the harassment; and 2) the employee failed, unreasonably, to utilize the corrective or preventative measures offered by the employer.  *Ellerth*, 524 U.S. at 765, 118 S.Ct. at 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. at 2275.  In the present case, Defendant cannot meet its burden of proving either element of this affirmative defense.

First, the evidence creates an issue of material fact as to whether defendant failed to exercise care in preventing or correcting harassment to which it was repeatedly alerted.  (XXX R. Depo. at 92:22 -93:6, 100:14 - 101:20, 101:21 -103:18, 109:6 -110:19;).  In particular, Defendants Supervisor's own cousins (Ruben and Javier) hired Jose Vasquez – a registered sex offender - directly out of jail and directly supervised him.  Second, defendant cannot establish that any of the victims of harassment unreasonably failed to utilize corrective or preventive complaint mechanisms when, in fact, numerous employees state that they did not receive any sexual harassment training after their initial hiring orientation or did so only in English despite the fact that a majority of the workforce is mono-lingual Spanish speaking. Birrueta Depo. at 16:14-25; 17:1-20.  Finally, ABM's has not met its duty of remedying the systemic harassment it knew or should have known about.  ABM did not dismiss Jose Vasquez until months after charges were filed, and well over a year after receiving letters describing the sexual assaults and his convictions, and more than two and a half years after being hired by his brother.

Where there is evidence of tangible employment action taken against numerous women, ABM's is strictly liable. But even if there was no evidence of tangible employment action, ABM's is still liable because of its failure to take appropriate preventative and remedial action. Accordingly, a genuine issue of material fact exists as to whether ABM's is responsible for a sexually hostile work environment.

1

2
**D.    THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER THE**
3
**HARASSMENT WAS SUFFICIENTLY PERVASIVE AS TO ALTER THE**
**CONDITIONS OF EMPLOYMENT**

4

5
     The harassment was clearly pervasive such as to alter the conditions of employment.  First,

6
all Plaintiffs testified that Jose Vasquez' sexually harassing conduct was severe enough to

7
compromise their psychological well-being.  For example, Both Maria XXX and Erika XXX have

8
resulted in severe emotional distress.  Ex (Hy Malinek decl).  However, these acts cannot be taken

9
out of context from the entire case.  Other have all testified that the distress and how it impacted

10
their ability to work and work environment.  (*See e.g.* Reyna XXX Depo. 84: 19-85:2)

11
     In reviewing the allegations of sexual harassment against ABM, the trial court must take

12
into account the totality of the circumstances. Pursuant to *Lyle v. Warner Bros. Television*

13
*Productions* (2006) 38 Cal.4th 264, 283, the severity of the harassment should not be judged too

14
narrowly. " '[T]he objective severity of harassment should be judged from the perspective of a

15
reasonable person in the plaintiffs position, considering 'all the circumstances.' " (Id. at 283,

16
quoting *Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 81-82.) The factors

17
considered in evaluating the totality of the circumstances are: (1) The nature of the conduct; (2) the

18
frequency of conduct;(3) the total number of days which the conduct occurred; and, (4) the context

19
in which the sexually harassing conduct occurred. (Fisher, supra, 214 Cal.App.3th at 609-610.).

20
see also, Ellison v. Brady, supra, 924 F.2d at 978 ("the required showing of severity or seriousness

21
of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct

22
[citation]".)

23
     The harassing conduct in this matter occurred over several years spanning Bakersfield,

24
Visalia, and Fresno.  Due to defendants' failure to prevent and correct the harassment, much of the

25
harassing conduct was exacerbated, culminating in yet another sexual assaults and attacks in 2009.

26
Defendants' attempt to separate out the Bakersfield region from that the claimants in Visalia and

27
Fresno contradicts longstanding precedence in how cases of this nature are to be analyzed.   Each

28
of these acts standing alone may not be enough to support a hostile work environment claim,

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

however, viewed collectively they are clearly sufficient to raise a triable issue of fact as to whether the harassment was severe and pervasive enough to create a hostile working environment.  See, Ferguson v. Chicago Housing Authority (N.D. III 2001) 155 F. Supp. 2d 913, 916 ("A hand on the shoulder, a brief hug, or a peck on the cheek, or even more intimate or more crude physical acts - a hand on the thigh, a kiss on the lips, a pinch of the buttocks," although insufficient for sexual harassment in isolation, still "[c]umulatively or in conjunction with other harassment, might become sufficiently pervasive to support a hostile environment claim." quoting Hostetler v Quality Dining (7th Cir.2000) 218 F.3d 798, 808.

The fact that Jose Vasquez's campaign of harassment culminated in numerous physical assaults markedly changes the tone of the sexual harassment; it provides the trial court an additional reason to infer that Jose Vasquez harassing conduct was sufficiently severe.  See, Sheffield v. Los Angeles County Dept. of Social Services, (2003) 109 Cal.App.4th 153, 164, "... when violence or the threat of violence is added to the equation, a trier of fact could determine Appellant's conditions of employment had been drastically changed and that she was in a hostile work environment. [Fisher, supra, 214 Cal.App.3d at 608]." (See also Ray v. Antioch Unified School Dist. (2000) 107 F.Supp.2d 1165, 1171 ("the fact that the conduct directed against Plaintiff culminated into a violent confrontation, the Court has reason to infer that the harassing conduct was severe, pervasive, and objectively offensive. Drawing all inferences from the facts in favor of Plaintiff, the Court finds that the sexual harassment was severe, pervasive, and objectively offensive.").

A trial court must also consider the context of which the harassment occurred. The Bakersfield employees at issue are all supervised by Jose Vasquez who worked closely with and was required to communicate with them, provide supplies to these women, inspect their work and discipline them.  There was no reasonable method of avoiding contact with the harasser who could drop in on and continue the harassment unannounced while these women were working alone at night. See e.g. Depo.   A consideration of "all the circumstances" includes not only looking at the conduct itself but also the "surrounding circumstances, expectations, and relationships which are

- 13 -

not fully captured by a simple recitation of the words used or the physical acts performed...."
Oncale, supra, 523 U.S. at 82; see also Miller v. Department of Corrections, supra, 36 Cal.4th at
462; *25 Beyda v. City of Los Angles, (1998) 65 Cal.App.4th 511, 517-518.); See Steiner, supra,
25 F.3d at 1463, ("Sexual or gender-based conduct which is abusive, humiliating, or threatening
violates Title VII even if it does not cause diagnosed psychological injury to the victim [citation].
It is enough, rather, if such hostile conduct pollutes the victim's workplace, making it more difficult
for her to do her job, to take pride in her work, and to desire to stay on in her position." discussing
Harris v. Forklift Systems (1993) 510 U.S. 17.).)  In view of the 'totality of the circumstances',
even if the trial court were to believe that the severity of some of the harassing conduct was
questionable, it is more appropriate to leave the assessment to a fact finder rather than at summary
judgment (See Davis v. Team Elec. Co. (9th Cir. 2008) 520 F.3d 1080, 1096.)

     In addition, under a pattern and practice theory as well as under the totality of the
circumstances, the acts that culminated in Bakersfield cannot be isolated from the continuing acts
of harassment that were tolerated well into 2009 into the Fresno region.  Arguments and facts set
forth in accompanying brief are incorporated by reference herein.

### III.   THE APPLICABLE LIMITATIONS AND TOLLING FOR EEOC, FEHA AND RELATED STATE TORT CLAIMS

#### A.   THE PLAINTIFFS' CLAIMS ARE NOT TIME BARRED BECAUSE THE CLAIMS MUST BE VIEWED AS ONE CONTINUOUS ACT UNDER ALL THEORIES BROUGHT BY THE PLAINTIFFS.

     The Supreme Court has defined the EEOC's broad authority to pursue relief for classes of
harmed individuals, and this well-established legal tenet that the universe of wrongful acts are
viewed as one act for the purposes analyzing a hostile work environment claim. See Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002).  The Supreme Court has defined that the
EEOC's authority to eradicate workplace discrimination is broader than for private litigants.  The
EEOC is not merely a proxy for the victims of discrimination, but acts also "to vindicate the public
interest in preventing employment discrimination."  General Telephone Co. of the Northwest v.

- 14 -

EEOC, 446 U.S. 318, 326 (1980). "The EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief . . . ." Id. at 331.  The Commission's authority to seek relief for a class of individuals is inherent in its role as the agency designated by Congress to enforce Title VII. *Id.*

Because the EEOC does not merely stand in the shoes of a private litigant, but rather sues in the public interest, courts "have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims" because "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired."  EEOC v. Waffle House Inc., 534 U.S. 279, 296 n.11, 122 S.Ct. 754 n.11, 151 L.Ed. 2d 755 (2002) (interior citation omitted).  As a result, the Supreme Court has defined the EEOC's broad powers to seek relief on behalf of the public interest and on behalf of classes of harmed individuals.

The Supreme Court has held the EEOC can pursue a class action without complying with Rule 23, no statute of limitations applies to EEOC actions, and the EEOC is not bound by employer-employee arbitration agreements even when it seeks relief on behalf of employee signatories.  General Telephone, 446 U.S. 318, 100 S.Ct. 1698 (1980) (class actions); Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447 (1977) (statute of limitations); Waffle House, Inc., 534 U.S. 279, 122 S.Ct. 754 (2002) (arbitration agreements); see also, Harris v. Amoco Prod. Co., 768 F.2d 669, 682-83 (5th Cir. 1985) (EEOC can maintain class suit even after private class claims have been decertified); EEOC v. Gilbarco, Inc., 615 F.2d 985, 988-90 (4th Cir. 1980) (EEOC is not required to file a complaint which names all aggrieved individuals).

Moreover, it is undisputed that EEOC may bring suit for any violations that it discovers in the course of its administrative investigation into a charge.  "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." General Telephone, 446 U.S. at 331, 100 S.Ct. at 1706-06 (1980). The EEOC's broad remedial power "is consistent with the EEOC's role in the enforcement of Title VII. . . .".  EEOC v. Occidental Life Ins. Co. of California, 535 F.2d 533 (9th Cir. 1976), aff'd on other grounds, 432

- 15 -

U.S. 355, 97 S.Ct. 2447 (1977). Especially in the case of sexual harassment cases, the EEOC has represented a broad class of individuals for sexual harassment to carry out the Congressional mandate.  See EEOC v. Mitsubishi Motor Mfg. of America, 990 F.Supp.1059 (C.D. Ill. 1998); U.S. v. Fresno Unified School Dist., 592 F.2d 1088 (9th Cir. 1979); and EEOC v. Preferred Management Corp., 216 F.Supp.2d 763, 814 (S.D. Ind. 2002).

   The Ninth Circuit has noted that it would be illogical to apply the rule for individual administrative claims to remedy single violations to the Federal Government's suits which remedy long-standing policies and multiple violations.  Thus, the Ninth Circuit has already rejected the theory defendant asserts, because the EEOC's litigation is not limited in any way by the date of the filing of the individual administrative charge, as the Ninth Circuit has implicitly held that no individual administrative charge is even necessary to pursue suit.   The defendant erroneously argued that the Commission could not recover for individuals who left defendant's employment more than 300 days prior to the filing of the charge. Id. at 1083.  Like the Ninth Circuit, the Mitsubishi Court held that limiting the claims with a limitations period would be antithetical to the any challenge to an employer's long standing practice.

   Moreover, the EEOC's authority to seek relief for individuals harmed prior to the charge-filing period is well-established.  See EEOC v. Gurnee Inn Corp., 914 F.2d 815, 819 n.6 (7th Cir. 1990) (court permitted backpay recovery for four individuals constructively discharged more than 2 years prior to the individual charge); EEOC v. Preferred Management Corp., 216 F. Supp. 2d 763, 813-15 (S.D. Ind. 2002) (where EEOC has a single timely charge, it may proceed on pattern or practice claim on behalf of class members injured prior to 300 day filing period); EEOC v. Warshawsky and Co., 1994 WL 384041, *2–3 (N.D. Ill. 1994) ("EEOC is also not subject to the statute of limitations for charges contained in §2000e-5(e)(1) 300 day limitation)"); EEOC v. Newspapers, Inc., 1985 WL 5252 (E.D. Wis. 1985) (EEOC can pursue relief for class members denied employment prior to 300 days before charge was filed).

   This is especially true in the EEOC's case where the courts have allowed the EEOC to seek relief on behalf of persons injured prior to the charge filing period.  See, e.g., EEOC v. Peterson,

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

Howell & Heather, Inc., 702 F. Supp. 1213, 1225-26 (D. Md. 1989) ("relief will be afforded not only to those who suffered discrimination within the 180 day period, but to those who suffered discrimination before the 180 day period"); EEOC v. Rymer Foods, 1989 WL 88243, *2 (E.D. Ill. 1989) ("Victims of discrimination occurring beyond the 300 day filing period can become members of a class if one member alleges a violation within the 300 day period"); EEOC v. Chicago Miniature Lamp Works, 640 F. Supp. 1291, 1296 (N.D. Ill. 1986), rev'd on other grounds, 947 F.2d 292 (7th Cir. 1991) (court permitted EEOC to seek relief for claimants injured over 7 years before the initial individual charge was filed); Glass and EEOC v. IDS Financial Services, Inc., 778 F. Supp. 1029, 1050-55 (D. Minn. 1991) (authorizing EEOC to pursue ADEA claim on behalf of class member discharged more than 300 days before charge filed).

**B.     THE STATUTORY CONSTRUCTION OF TITLE VII MANDATES THAT THE EEOC CAN SEEK COMPENSATORY AND PUNITIVE RELIEF BEYOND THE 300-DAY LIMITATION PERIOD**

In 1972, Congress amended Section 706(g) to include a two-year backpay limitation for recovery. See 42 U.S.C. § 2000e-5(g).  A primary principal of statutory interpretation is that statutes are to be read in their plain language and interpreted to avoid surplusage, i.e., rendering statutory text meaningless. Courts are "obliged to give effect, if possible, to every word Congress used."  Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1175 (9th Cir. 2006) (internal quotation omitted).  Hence, courts reject "interpretations that would render a statutory provision surplusage or a nullity."  Id. (internal quotation omitted). In amending Title VII, Congress limited the period for recovering backpay to two years, an act which is only necessary if the EEOC could seek relief beyond the 300-day limitation period.  In backpay cases, the result of termination or failure to hire suits, if recovery was limited to only the 300 days preceding the administrative charge, there would be no reason to enact a twao-year limitation, a period encompassing more than 700 days.  See Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990) ("If in fashioning a remedy a court could not reach back beyond

- 17 -

the 300 day filing period, the two-year back pay limitation would be meaningless"); see also EEOC v. Autozone, Inc., 258 F.Supp. 2d 822, 829-32 (W.D. Tenn. 2003) (same).

Moreover, in 1991, Congress amended Title VII to include recovery for compensatory and punitive damages.  Unlike the two-year limit on backpay relief, however, Congress expressly declined to apply any limit to the amendment's compensatory and punitive damage provisions. "The incorporation of one statutory provision to the exclusion of another must be presumed intentional under the statutory canon of expressio unius."  Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000).  Because Congress did not apply the two-year limitation to compensatory and punitive damages under Title VII, compensatory and punitive damages are not capped by any particular period as courts can "reach back beyond the 300 day filing period." See Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d at 401.  Again, this reading is consistent with the statutory construction of the act, which already limits monetary recovery for compensatory and punitive relief through statutory caps, and excludes any timeframe limitations such as the one applicable to backpay.  See 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1977A(b). Thus, by including the caps in Title VII, Congress has already limited the relief available to the EEOC, and included a statutory protection for employers against excessively large awards. See 42 U.S.C. § 1977A(b).

In summary, because the EEOC can bring suit on its own behalf and at its own impetus, it would violate the basic tenets of Congress's mandate under Title VII by restricting the EEOC's remedial relief.  Longstanding Supreme Court precedence long ago established the EEOC's right to seek broad relief to remedy along longstanding employer practices that violate Title VII.  Limiting the EEOC's  ability to prosecute systemic discrimination has been something the courts "have generally been reluctant to [do]."  Waffle House Inc., 534 U.S. at 296 n. 11, 122 S.Ct. at 754 n. 11, and would violate a plain language interpretation of Title VII.  See Fresno Unified, 592 F.2d at 1096 n.5; Sabree, 921 F.2d at 401.

Defendant relies exclusively on authority outside of the Ninth Circuit, authority that does not follow the Ninth Circuit's Title VII ruling in Fresno Unified. While these courts were not

- 18 -

bound by the Ninth Circuit's exposition of the law, these cases are also off the mark because some of these cases involved discrete actions such as refusing to promote or hire based on a protected characteristic.  See Optical EEOC v. Crown, 169 F.Supp.2d 539, 547 (failure to hire and failure to promote); EEOC v.  Crown Liquors of Broward, Inc., 503 F. Supp. 330, 332 (D.C. Fla. 1980) (failure to hire, failure to promote, and maintaining segregated job classifications); EEOC v. North Hill Passavant, 455 F. Supp. 335, (termination and failure to hire); EEOC v. Sears, Roebuck & Co., 490 F.Supp. 1245 (failure to hire).   In contrast, in a sexual harassment context, longstanding Supreme Court precedence has established that the harassment must be viewed as one act

The Commission presents an EEOC "class" hostile work environment claim that, by definition is a continuing violation under 42 U.S.C. 2000e-5.  Defendants allege that since class member Erika XXX filed her EEOC charge on June 30, 2006, September 3, 2005 is the 300 day limitations date for which each individual in the EEOC's case must individually prove that she experienced harassment at the latest.  This is false.

The EEOC's broad authority to pursue relief for classes of harmed individuals is a well-established legal tenet distinct from any limitation period applicable to individual claims.  For a sexually hostile work environment under Section 706, Title VII allows the EEOC to challenge the entire hostile work environment, even those acts which preceded the 300-day window because the continuing hostile environment is a single violation. See Morgan, 122 S. Ct. 2061 (2002).  Courts "have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims" because "it is crucial that the Commision's ability to investigate charges of systemic discrimination not be impaired."  EEOC v. Waffle House Inc., 534 U.S. 279, 296 n. 11 (2002) (internal citation omitted).  This is again, because the EEOC does not sue simply as a "representative of the persons aggrieved."  General Telephone Company of the Northwest, 446 U.S. at 329.

As such, Defendants' efforts to limit the EEOC's suit to only the claims that class members would have if they were pursuing their own independent suit is inconsistent with the EEOC's role in the enforcement of Title VII.  Id. at 331.  In fact, the EEOC's authority to seek relief for

- 19 -

individuals harmed prior to the charge-filing period is well-established.  See, EEOC v. Gurnee Inn Corp., 914 F.2d 815, 819 n.6 (7th Cir. 1990) (court permitted backpay recovery for four individuals constructively discharged more than 2 years prior to the individual charge); EEOC v. Preferred Management Corp., 216 F. Supp. 2d 763, 813-15 (S.D. Ind. 2002) (where EEOC has a single timely charge, it may proceed on pattern or practice claim on behalf of class members injured prior to 300 day filing period); EEOC v. Warshawsky and Co., 1994 WL 384041, *2–3 (N.D. Ill. 1994) (allowing relief for persons terminated more than 300 days before filing of the charge); EEOC v. Newpapers, Inc., 39 Fair Empl. Prac. Cas. (BNA) 891, 892 (E.D. Wis. 1985) (EEOC can pursue relief for class members denied employment prior to 300 days before charge was filed).

Because EEOC alleges that ABM subjected a class of current and former female employees to a long standing pattern of hostile work environment, it is undisputed that EEOC's allegations include sex harassment occurring within 300 days before the filing of the Charge.  Under Morgan, the 300-day limitation is relevant only to the extent that some portion of the harassment must have taken place during the 300 days before the filing of the Charge.  The trier of fact's "task is to determine whether acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Morgan at 117 (emphasis added).

Post-Morgan courts have specifically rejected the notion that the continuing violation doctrine has no application to multi-victim harassment cases.  See Allen v. Intern. Truck and Engine Corp., 358 F.3d 469, 472 (7th Cir. 2004)("the existence of plant-wide racial animosity… collectively 'consititute[s] one unlawful employment practice.'") (quoting Morgan at 117); Shields v. Fort James Corp., 305 F.3d 1280, 1283 (11th Cir. 2002)(court "must consider whether plaintiffs' claims in their entirety present a genuine issue as to any material fact")(emphasis in original).  Pre-Morgan cases that applied the continuing violation theory in class-action harassment cases retain their validity.  See EEOC v. Gurnee Inn Corp., 914 F.2d 815, 819 (7th Cir. 1990)(in sexual harassment case, court permitted backpay recovery for four individuals constructively discharged

- 20 -

more than 2 years before the charge); Jenson v. Eveleth Taconite Co., 824 F.Supp. 847, 876-78 (D. Minn. 1993).  Members of the group, although not personally exposed to discrimination during the 300-day period, would nonetheless be entitled to relief if others of the group were exposed to discrimination during the 300 day period.  See EEOC v. Chicago Miniature Lamp Works, 640 F. Supp. 1291, 1294 n. 8 (N.D.Ill. 1986)  (given the continuing discrimination against Black employees, any person suffering discrimination before the 300 day filing period is a class member).

Defendants' motions for summary judgment ignore this long standing precedence when they argue that the EEOC may not obtain individual relief on behalf of Bakersfield claimants because their Title VII claims are time barred.  They rely on unpublished cases that seem to suggest that Morgan "applies to acts, not claimants."  EEOC v. Wyndham World wide Corp., 2008 U.S. Dist. LEXIS 83558 (W.D.Wash. 2008).  The cases cited by defendants ignore a line of cases which set out the exact opposite proposition, i.e., that the continuing violation doctrine of hostile work environment claims "permit recovery by class members victimized by defendants' discriminatory [] policies before the 300-day [or 180-day] limitations period."  Chicago Miniature Lamp Works, 640 F. Supp. at 1294.  In Guardians Assoc. of the New York City Police Dept., Inc. v. Civil Service Commission of the City of New York, 633 F.2d 232, 251 (2nd Cir. 1980) (rejected limitations period deeming that all plaintiffs injured by the discriminatory hiring policy are entitled to relief for the entire span of the policies' existence that post-dated Title VII's enactment); Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 274 (2nd Cir. 1980) (because charge filed no later than 300 days after the last act by the defendant pursuant to its policy, plaintiffs may recover for earlier acts of discrimination as well); EEOC v. Peterson, Howell & Heather, Inc., 702 F. Supp. 1213, 1226 (D.Md. 1989) (EEOC can recover for persons experiencing discrimination before the charge filing deadline if EEOC proves defendants engaged in a continuous course of discrimination extending into the timely filing period).  It is, thus, clear under the continuing violation doctrine applicable to a hostile work environment claim, courts look beyond the charge filing period to find that claims arising from before said period are valid and

- 21 -

applicable for liability determinations.

Here, clearly, the EEOC's claim is timely as to all claimants because the harassment is a continuum of Defendants' tolerating a companywide pattern of sexual harassment against its female employees.  Here, Defendants have had notice of harassment since at least 2000.  As shown in the Sandoval v. ABM Eighth Circuit case, ABM has failed to take necessary measures to correct the problem.  Gomez and any other claimant whose experience pre-dated the 300 day filing period are thus appropriately part of the EEOC's sexual harassment case.

Further many of the claimants' hostile work environment continued into the time period covered by the EEOC claim.  On these factual misrepresentations alone, Defendants' motions for summary judgment on this issue should be denied.  Further support against a time bar exists in 706(g) of Title VII's 2-year limitation on backpay liability.  Clearly, if relief were limited to violations occurring during the charge-filing period, there would have been no reason for Congress to set the 2 year limit.  See Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990) ("If, in fashioning a remedy, a court could not reach back beyond the 300 day filing period, the two-year back pay limitation would be meaningless."); see also EEOC v. Autozone, Inc., No. 00-2923, 2003 WL 1949804, at *9 (W.D. Mo. March 31, 2003).  Accordingly, EEOC's pursuit of claims for Gomez and any other claimants whose experience with harassment predated the charge filing period are statutorily appropriate, or at the very least, a matter for the trier of fact to resolve warranting denial of Defendants Motions for summary judgment.

## C.   THE SINGLE FILING RULE PROVIDES A EEOC AND FEHA FILING DATE OF JUNE 30, 2006 FOR INTERVENORS

The "single-filing" or "piggybacking" exception to the individual filing rule provides that in a multiple-plaintiff suit, if one plaintiff has filed a timely Equal Employment Opportunity Commission (EEOC) complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement. Civil Rights Act of 1964, § 706(e)(1), 42 U.S.C.A. § 2000e-

- 22 -

5(e)(1).  See also Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1197 (10th Cir.2004) (quoting Allen v. United States Steel Corp., 665 F.2d 689, 695 (5th Cir.1982)).

Filing a charge is deemed "useless" where the employer is already on notice that plaintiffs may file discrimination claims, thus negating the need for additional filings. Id. (citing Horton v. Jackson County Bd. of County Comm'rs, 343 F.3d 897, 899 (7th Cir.2003) and Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1110 (10th Cir.2001)). "The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC." Thiessen, 267 F.3d at 1110.

California is a "work-sharing" state with the DFEH, thus the period for filing a charge of employment discrimination with the EEOC can be 300 days.  Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000).  The work-sharing agreement between the EEOC and the DFEH, provides a basis for tolling Sec. 12965(b)'s one-year statute of limitations during the pendency of the EEOC's administrative process."  Salgado v. Atlantic Richfield Co., supra, 823 F.2d at pp. 1325-1326.  FEHA filings are satisfied by the filing of an EEOC charge and must occur within 365 days of the end of the continuing violations unless equitably tolled. Salgado v. Atlantic Richfield Co., supra, 823 F.2d at pp. 1325-1326.

Furthermore, with regards to ABM Inc., Plaintiff-Intervenors had two-years from the last date of any hostile work environment to submit their charge for purposes of the California Fair Employment & Housing Act ("FEHA").  California Government Code Section 12960(d)(2) provides that:

> For a period of time not to exceed one year following a rebutted presumption of the identity of the person's employer under Section 12928, in order to allow a person allegedly aggrieved by an unlawful practice to make a         substitute  identification of the actual employer.

From at least the beginning of 2005, Defendants have mislead its employees, including Plaintiff-Intervenors, with W-2s and wage statements listing the incomplete employer name of "ABM Janitorial Services" with the address "P. O. Box 193224, San Francisco, CA 94119-3224."   Erika

- 23 -

XXX W-2 Statement (2005).  Plaintiff-Intervenors were not provided any certainty as the identity of their employer for FEHA purposes given the incomplete employer name on their W-2s and the complex corporate structures set up by Defendants.

Erika XXX submitted her initial class-wide claims of sexual harassment and her formal class-wide charge with the EEOC against "ABM Janitorial Services, Inc." on June 19, 2006 and June 30, 2006.  XXX' filing is well within the two-year time to include all sexual harassment incidents and the hostile work environment that all Plaintiff-Intervenors were subjected to.

Defendants ardently argue that "ABM Janitorial Services, Inc." and "ABM Industries Incorporated" are not the appropriate defendant in this case and that "ABM Janitorial Northern California" is the appropriate defendant in this matter. Defendants may argue that Section 12960(d)(2) should not be interpreted to allow Plaintiff-Intervenor two years.  However, this section should be construed liberally for accomplishment of FEHA's purposes. See Richards v. CH2M Hill, Inc., 26 Cal. 4th 798 (2001) "("Equally without critical analysis, the majority invokes the admonition that provisions of the FEHA, including the statute of limitations, "shall be construed liberally for the accomplishment of [its] purposes ...." (§ 12993, subd. (a); see Romano, supra, 14 Cal.4th at pp. 493-494, 59 Cal.Rptr.2d 20, 926 P.2d 1114.) Liberal construction is a mandate to fully effectuate not a license to abrogate.")  Given the incomplete name on the W-2s and the numerous names utilized by the Defendants, Plaintiff-Intervenors had two-years from the last date of any incident and/or hostile work environment to submit a charge with the EEOC.

In sum, all intervenors' individual claims, unless otherwise tolled runs from

## D.   INDIVIDUAL STATUTE OF LIMITATIONS RUNS FROM THE END OF THE HOSTILE WORK ENVIRONMENT

The U.S. Supreme Court in Morgan, ruled that employers in hostile environment harassment cases may be liable for acts that took place before the 300-day limitation period. Though noting that discrete acts could not constitute a continuing violation, the Court found that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature

- 24 -

involves repeated conduct." Morgan, 536 U.S. at 115. The Court further explained: "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. Therefore, courts must look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id, (internal quotes and citation omitted).  When "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." Id. at 118.  "It does not matter, for purposes of the statute, that some of the component acts of the hostile environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." Id.  Morgan struck down only one particular variant of the continuing violation doctrine: the "serial violations" variant previously applied in some circuits, including the Ninth, from which Morgan arose. Morgan left open the completely separate variant of the continuing violation doctrine, applicable here, involving specific systemic policies that discriminate against an entire class.  "The statute does not separate individual acts that are part of the hostile [work] environment claim from the whole for the purposes of timely filing and liability." Id. at 2075.  Only the smallest portion of that "practice" needs to occur within the limitations period for the claim to be timely. See Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir.2002) ("Put simply, if the smallest portion of that 'practice' occurred within the limitations time period, then the court should consider it as a whole.").   As the Ninth Circuit explained, "under the continuing violation doctrine, a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Local 350*, 998 F.2d at 644.

Here, the EEOC and Intervenors allege that ABM subjected a class of current and former female employees to a hostile work environment.  It is undisputed that EEOC and Intervenor's

- 25 -

allegations include sex harassment occurring within 300 days before the filing of the original Class Questionnaire on June 19, 2006 and original charge on June 30, 2006.  Under Morgan "the entire time period" must be considered in determining liability.  Id. at 117.  In hostile environment claims, the 300-day limitation is relevant only to the extent that some portion of the harassment must have taken place during the 300 days before the filing of the Charge.   Morgan dictates that "[a] court's task is to determine whether acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  Id.

Class members who experienced harassment before the 300-day period prior to the filing of the administrative Charge can be included as part of a hostile environment continuing violation.  "A hostile work environment claim is comprised of a series of separate acts that collectively constitute 'one unlawful employment practice.'"  Id.  As the Ninth Circuit explained, "under the continuing violation doctrine, a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." Local 350, 998 F.2d at 644.   Thus, all of the defendant's violations are actionable.

## E.     THE FILING DATE FOR FEHA AND EEOC CLAIMS EQUITABLY TOLL BASED UPON DEFENDANTS' ADMINISTRATIVE PROCESS

Equitable tolling of the statute of limitations on a Fair Employment and Housing Act (FEHA) claim is available when an employee voluntarily pursues an internal administrative remedy prior to filing a FEHA complaint, even if exhaustion of the administrative remedy is not required. Cal.Gov.Code § 12960(d).  Pursuant to the U.S. Supreme Court's decision in Morgan, the EEOC charges must also follow state law equitable tolling principles.

In California, courts have applied equitable tolling in cases where the defendant receives timely notice of the claims under review by means of an administrative action commenced reasonably and in good faith by a plaintiff possessing a choice of remedies or forums. See, e.g., Elkins v. Derby, 12 Cal.3d 410 (1974).   Similarly, in McDonald v. Antelope Valley Community

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

College District, the court considered whether equitable tolling applied to plaintiff's pursuit of internal administrative procedures prior to filing a FEHA claim. 45 Cal.4th 88.

State claims are subject to the forum state's statute of limitations and tolling laws. Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir.1993).  Under California law, equitable tolling "relieves a plaintiff from the bar of a limitations statute when, possessing several legal remedies, he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." Addison v. California, 21 Cal.3d 313, 317, (1978).

The letter was sent to ABM management on August 31, 2005.  This letter notified ABM that the employees complaints to their supervisors regarding the sexual harassment they experienced was being ignored given the familial relationship between Javier and Jose Vasquez. The letter also informs ABM management that the employees who did speak up were laughed at upon voicing their concerns of the harassment and discrimination.  The supervisors communicated to the employees that they were immune from any disciplinary action against them by ABM management.

The second letter was sent to ABM management on September 7, 2005.  This letter communicated the failure of ABM management to take corrective action of the allegations previously made to supervisors directly and through the first anonymous letter, informs management of the criminal background of Supervisor Jose Vasquez and echoed the repeated

A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy three factors: (1) timely notice to the defendants in filing the first claim; (2) lack of prejudice to the defendants in gathering evidence for the second claim; and (3) good faith and reasonable conduct in filing the second claim. Collier v. City of Pasadena, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681 (1983); Hull v. Central Pathology Serv. Med. Clinic, 28 Cal.App.4th 1328, 1335, 34 Cal.Rptr.2d 175 (1994).

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

The court held that when an employee voluntarily pursues an internal administrative remedy prior to filing a complaint under the California Fair Employment and Housing Act ("FEHA"), the statute of limitations on the FEHA claim is subject to equitable tolling.  Here, Plaintiffs diligently and in good faith pursued ABM's internal administrative procedures. Collectively, Plaintiffs' followed ABM's 'Unlawful Harassment Policy'[8] by first asking their direct supervisor, Jose Vasquez to end all discrimination and sexual harassment.  When such efforts proved futile, Plaintiffs also reported the harassing conduct to Supervisor Javier Vasquez. When the latter effort also failed, Plaintiffs then sent two separate letters to ABM management. These letters were recognized as satisfying the internal complaint process.  Taken together, these letters notified ABM of Jose Vasquez's status as a convicted sex offender, the familial relationship between Jose and Javier Vasquez (in violation of ABM's nepotism policies), the persistent sexual harassment by Jose Vasquez, and the failure of ABM supervisors to take corrective and investigatory action as required by their own 'Unlawful Harassment Policy.'

## F. THE STATE TORT CLAIMS TOLL DURING THE FEHA AND EEOC COMPLAINT PROCESS

Equitable tolling has most often been applied in California when the plaintiff first files a claim before an administrative agency and then files a second proceeding after the limitation period has expired. Under these circumstances, courts have held the policy underlying the statute of limitations-prompt notice to permit complete and adequate defense-has been satisfied and that the period should be tolled in equity to preserve the plaintiff's claim. ( Collier v. City of Pasadena (1983) 142 Cal.App.3d 917, 926, 191 Cal.Rptr. 681 [filing of worker compensation claim tolls period for filing pension disability claim]; see also Addison v. State of California (1978) 21 Cal.3d

[8] ABM Unlawful Harassment Policy provides, in relevant part, "It is the responsibility of any employee who has been harassed or discriminated against…to immediately report it to their direct supervisor or to a senior supervisor…it is the responsibility of any supervisor who receives such a report to immediately communicate it to their management and to their human resource representative."

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 [running of six-month limitation period of Gov.Code § 945.6 tolled while plaintiff's action pending in federal court].)

  The issue before this court is whether, pursuant to its inherent power to formulate appropriate rules of procedure ( McDonald, supra, 45 Cal.4th at p. 100), this court should apply the doctrine of equitable tolling to Plaintiffs' state tort claims. That issue presents a pure question of law for this court based on the broad policy considerations outlined in Prudential and other cases. (See, e.g., *115 McDonald, supra, 45 Cal.4th at pp. 96, 100 [pursuant to its inherent power to formulate rules of procedure where justice demands it, Supreme Court decided as an issue of law that the statute of limitations on an FEHA claim is subject to equitable tolling for voluntary administrative claims].)

  The pure question of law has already been addressed by this court in is March 5, 2008 ruling which held that:

> …the Court concludes that Applicants' [Complaint in Intervention] contain the same federal causes of action as the EEOC's original complaint, and the additional state claims alleged in the [Complaint in Intervention] arise from essentially the same set of operative facts as the federal claims alleged in the [Complaint in Intervention].

In contrast, whether that law - as eventually determined by this court - supports a finding of equitable tolling under the circumstances of this case is a question of fact for the jury (or trial court) to decide. (Marcario v. County of Orange (2007) 155 cal.app.4th 397, 408-409 ["Equitable tolling is a fact intensive issue and it is determined based upon evidence"]; see also Migliore v. Mid-Century Ins. Co., Inc. (2002) 97 cal.app.4th 592, 604 [trial court instructed jury on elements of Prudential tolling].).

  Persuasive policy considerations support equitable tolling of the limitations period.  The Fair Employment and Housing Act, Gov. Code Sec. 12920 provides in relevant part, that is the public policy of California to, "…protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of…sex." Furthermore, "the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest

- 29 -

utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general.  Further, the practice of discrimination because of race, color, religion, sex, marital status, national origin, ancestry, familial status, disability, or sexual orientation in housing accommodations is declared to be against public policy.  It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices." Id. In fact, the purpose behind FEHA is so strong, that it, "…shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state." Id.

Issues regarding statutes limitations in federal court are deemed substantive and are thus governed by state law.  See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 110 (1945).  Tolling rules are treated as an integral part of statutes of limitations and, therefore, state law tolling rules apply in federal court.  See Wilson v. Garcia, 471 U.S. 261, 269 (1985).  Under California law, equitable tolling applies when "an injured person has several legal remedies and, reasonably and in good faith, pursues one."  Myers v. County of Orange, 6 Cal.App.3d 626, 634 (1970).

California courts have developed a three-part test to determine whether a plaintiff is entitled to equitable tolling.  The three parts are: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694-95 (9th Cir. 2003) (citations omitted).  Although "equitable tolling is not applicable when a plaintiff has pursued a remedy as to only one of several distinct wrongs," *the three-pronged test cannot be bypassed*, because "It is the application of California's equitable tolling test itself that yields the 'final' conclusion as to whether two claims are 'similar' enough that the pendency of the one should toll the limitations period of the other." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993); *see also generally Collier v. City of Pasadena*, 142 Cal.App.3d 917 (Cal. Ct. App. 1983) (establishing the three-factor test as a

- 30 -

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*prerequisite* to determining whether equitable tolling applies).[9] Here the claims all involve facts upon which Defendant was on 1) notice, 2) for which there is a lack of prejudice on the part of defendants, 3) and for which there was good faith and reasonable conduct in filing the second claim.

**1.  The Alleged Violations of Title VII and Intervention Tort Claims Stem from the Same Wrongs and Predicated on the Same Facts**

Although the Ninth Circuit has held that the wrongs underlying Title VII sexual harassment and discrimination claims were distinct from those underlying state tort claims for assault, battery, false imprisonment and intentional infliction of emotional distress (*see Arnold v. U.S.*, 816 F.2d 1306 (9th Cir. 1987)), that conclusion should not be applied in the instant case or as a general rule. First, the equitable tolling rule announced in *Arnold* does not follow California law.  Rather, it is based on dicta from the U.S. District Court for the District of Columbia in a case involving very different procedural and factual matters.  The magic language that *Arnold* adopts from the D.C. Circuit to conclude that the wrongs underlying a Title VII sex discrimination claim are distinct from those underlying state-law tort claims is that the former seeks to vindicate the "right to be free from discriminatory treatment at [the] jobsite," while the latter seeks to vindicate the "right to be free from bodily or emotional injury caused by another person." *Stewart v. Thomas*, 538 F.Supp. 891, 895 (D.C. Cir. 1982); *Otto v. Heckler*, 781 F.2d 754, 756-57 (9th Cir. 1986); *and Arnold*, *supra*, at 1313. However, *Stewart* is procedurally and factually inapposite.  Moreover, the proposition expressed in *Stewart* upon which *Arnold* relies does not involve statutes of limitations.

In *Stewart*, the plaintiff was a federal employee who sued two defendants under two separate theories. One defendant was the EEOC, which was sued for sex discrimination and

---

[9] Even though the Ninth Circuit has suggested that, in certain rare instances where it is clear that the two claims involve distinct wrongs, the equitable tolling test need not be applied, *see e.g.*, *Lucchesi*, *supra* at 695, this is not the law in California.  Neither the California case *Lucchesi* cites, *Loehr v. Ventura County Community College District et al.*, 147 Cal.App.3d 1071 (Cal. Ct. App. 1983), nor *Collier*, the California case establishing the three-factor equitable tolling test, have held that a court can determine the issue of equitable tolling without resorting to the test.  *See Collier*, *supra*.

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

harassment under Title VII. The other defendant was an individual who was sued for common law torts of, among other things, assault, battery and emotional distress. *Stewart*, *supra*, at 893.  The individual defendant moved to dismiss on several grounds, mainly that Title VII provided an exclusive remedy for plaintiff's harms. *Id.* at 893-94.  While the court in *Stewart* noted that plaintiff based her claims against the EEOC and the individual on two distinct and independent *rights*—to be free from governmental discrimination (EEOC) and to be free from physical and emotional injury (individual)—the court's statement had nothing to do with equitable tolling. Rather, *Stewart* was concerned with the question of whether the tort claims were subsumed by Title VII, which, if they were, would preclude remedies for tort injuries that otherwise had no redress under Title VII. *Id.* at 895-97.  Thus, the thrust of the opinion revolves around whether the torts and Title VII discrimination claims were separately actionable, not whether they stemmed from "distinct wrongs." Indeed, the *Stewart* court carefully outlines the reach of Title VII in evaluating whether tort claims are subsumed, carving out a large space for the physical and psychic damage to the person that Title VII does not redress, but that tort law does, and consequently refusing to dismiss the tort claims.  *Id.* at 896-97. Contrary to *Arnold's* conclusion, the fact that Title VII and tort claims are separately actionable does not compel the conclusion that they are "distinct wrongs" for purposes of equitable tolling under California law, and neither case cited by *Arnold* stands for that proposition.  *See Lucchesi*, *supra*, at 695 ("The fact that two claims may be separate, distinct and independent insofar as they are founded upon different laws, involve different procedures or seek different remedies does not compel the conclusion that they arise from separate wrongs").

Second, Plaintiff has found no California case holding that sex discrimination and harassment, on the one hand, and assault, battery, false imprisonment, intentional and negligent infliction of emotional distress, on the other, constitute distinct wrongs, let alone when those wrongs are predicated, such as here, on a single set of facts.  To the contrary, "California law does not require that the two claims seek the same remedies, involve the same procedures, or arise from the same laws in order for equitable tolling to apply." *Lucchesi*, *supra*, at 695.  Rather, the inquiry

- 32 -

revolves around whether the former and subsequent claims arise from the same wrong and are predicated upon identical facts. *Id.* This ensures that defendant receives sufficient notice of the wrong and the facts to enable defendant to gather evidence and identify witnesses. *Id*. citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001)(en banc).

Here, all of XXX' claims arise from the same wrong and are predicated upon identical facts—i.e., XXX was subjected to unwelcome verbal and physical conduct of a sexual and harassing nature that created a hostile work environment and had an adverse impact on her. *See, e.g.*, XXX' Discrimination Charges, Exhibits A-B to Defendants' Request for Judicial Notice In Support of Defendants' Opposition to Intervention (hereinafter "XXX EEOC Charges"; and CI ¶¶ 36-40, 116, 122, 127-29, 136-40, and 148-49. Defendants have been on notice of the facts/wrongs underlying both her discrimination claims and tort claims since on or about June 29, 2006, when the EEOC charge was filed. *See* XXX EEOC Charges. As noted above, so long as the earlier and later proceedings are predicated on the same facts/wrongs, the fact that the remedies sought under California tort law are different does not preclude equitable tolling. *Lucchesi*, *supra*, at 695.

Third, "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Cervantes*, *supra*, at 1276. Only where facts evident on the face of the complaint support a conclusion that a plaintiff's claims fail *as a matter of law* may a dismissal be upheld. *Id.* However, the analysis of whether two claims are distinct wrongs depends on application of the three-part equitable tolling test. *Id.* at 1277. Thus, the determination necessarily involves a fact-intensive inquiry that is inappropriate at the pleadings stage.

Finally, California policy considerations strongly favor equitable tolling. Equitable tolling "avoids the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of *facts*." *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 926 (Cal. Ct. App. 1983)(emphasis added). It also "lessens the costs incurred by courts and other dispute resolution tribunals, at least where a disposition in the case filed in one forum may render

- 33 -

the proceeding in the second unnecessary or easier and cheaper to resolve." *Id.* And, finally,

equitable tolling "secures the benefits of the statutes of limitation for defendants without imposing

the costs of forfeiture on plaintiffs" *Id.*  Here,

**2.      The Alleged Violations of California's FEHA Also Stem From the Same**

**Wrongs and Predicated on the Same Facts.**

Plaintiff-Intervenors have timely submitted their complaints to the California Department

of Fair Employment and Housing ("DFEH").[10]  The EEOC and the DFEH currently have a work-

sharing agreement, under which each designated the other as its agent for receiving charges and

agrees to forward the other agency copies of all charges potentially covered by the other agency's

statute.  29 CFR §§ 1601.75, 1601.80.

California's FEHA expressly prohibits the sexual harassment committed by Defendants.

Specifically, Gov. Code §12940 (J) provides in part:

> Gov. Code §12940.  It shall be an unlawful employment practice, unless
> based upon a bona fide occupational qualification, or, except where based
> upon applicable security regulations established by the United States or the
> State of California:
>
> (J) (1) For an employer . . ., or any other person, because of . . . sex . . ., to
> harass an employee, an applicant, or a person providing services pursuant to
> a contract.  Harassment of an employee, an applicant, or a person providing
> services pursuant to a contract by an employee, other than an agent or
> supervisor, shall be unlawful if the entity, or its agents or supervisors, knows
> or should have known of this conduct and fails to take immediate and
> appropriate corrective action.  . . . An entity shall take all reasonable steps to
> prevent harassment from occurring.  Loss of tangible job benefits shall not
> be necessary in order to establish harassment. . . .
>
> (4)(C) for purposes of this subdivision, "harassment" because of sex
> includes sexual harassment, gender harassment based on pregnancy,
> childbirth, or related medical conditions.  . . .

---

[10] Plaintiff Intervenors' charges were filed well within one-year limitation as required by FEHA.  In any case, where an employer is misidentified on the employee's W-2 form (tax and wage statement), the statutory period is extended "not to exceed one year" to enable the employee to substitute the actual employer. Gov. Code § 12960.  In this case, the employer Defendants had misidentified themselves as simply "ABM Janitorial Services" in their wage statements to the Plaintiff-Intervenors. Thus, Plaintiff-Intervenors filed their charges with the DFEH well within the required time period.

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

(k) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

The California Code of Regulations further provides:
2 CCR §7287.6(b) Harassment.

(1)  Harassment includes but is not limited to:

(A) Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act;

(B)  Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act;

(C)  Visual forms of harassment, e.g., derogatory posters, cartoons, or drawing on a bsis enumerated in the Act; or

(D) Sexual favors, e.g., unwanted sexual advances which condition an employment benefit upon an exchange or sexual favors.

Here, the same wrongs and same predicate facts that are the basis for Plaintiff-Intervenors' tort causes of action are the same ones prohibited by California Gov. Code §12940 and further defined by 2 CCR § 7287.6.  For example, these wrongful actions as alleged in the Plaintiff-Intervenors' Proposed Complaint In Intervention include, *inter alia*, assault by way of unwelcome touching, forced sexual touching, rape and other physical harassment; derogatory comments by way of explicit sexual comments, unwelcome suggestive language of a sexual nature and other verbal harassment; requesting sexual favors by way of offers of special work benefits in exchange for sex and other requests for sexual favors; and visual forms of harassment by way of sexual exposure and other visual forms of harassment.  The Complaint In Intervention also alleges negligent causes of action based on Defendants knew or should have known concerning the alleges sexual harassment but failed to take action to prevent the alleged sexual harassment – "Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."  Gov. Code §12940(j)(1).  Further, the Complaint In Intervention includes a False Imprisonment cause of action which is the same wrong and predicated on the same facts prohibited

- 35 -

1

2

by the FEHA and applicable regulations, i.e., "impending or blocking movement."

3

      The following is a chart laying out overlapping wrongs of both the FEHA and the tort

4

causes of action set for the Proposed Complaint in Intervention, which are predicated on the same

5

facts:

6

| Tort Allegations | FEHA Allegations | Acts | Relief Sought |
|---|---|---|---|
| False Imprisonment: restrained another in an enclosed environment | Sexual Harassment: impeding or blocking movement | Restrained Plaintiff-Intervenor and others in an enclosed environment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Assault: to suffer apprehension of immediate offensive and harmful contact | Assault: unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Battery: to suffer apprehension of immediate offensive and harmful contact and unconsented touching | Battery: unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Intentional Infliction of Emotional Distress | Sexual Harassment, Assault and Battery: impeding or blocking movement, unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Negligent Infliction of Emotional Distress | Sexual Harassment, Assault and Battery: impeding or blocking movement, unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| Negligence: Knew or should have known that a registered sex offender would and was sexually harassing employees | knows or should have known of this conduct and fails to take immediate and appropriate corrective action. | Unwelcome touching, forced sexual touching, rape, impeding or blocking movement, and other physical harassment | Compensatory, general and special damages, mental emotional distress damages, punitive damages, among other relief |
| | | | |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 36 -

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

Given the clear overlap of the "wrongs" that are to be address by Plaintiff-Intervenors'
EEOC, DFEH, and tort allegations in their Proposed Complaint in Intervention, it would have been
a hardship to compel them to pursue simultaneously several duplicative actions on the same set of
*facts*. See *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 926 (Cal. Ct. App. 1983).  This is
especially true in under these circumstances because Plaintiff-Intervenors were required to exhaust
their administrative remedies as required by Title VII and FEHA before they can file those claims.

Here, Plaintiff-Intervenors' reasonable and in good faith pursued their claim based on
sexual harassment committed by Defendants with the EEOC and DFEH.  See Elkin v. Derby, 12
Cal.3d 410, 414.   As set forth above, their sexual harassment allegations stem from the same set of
facts, which are the bases for the tort causes of action.  Defendants were timely notified of those
EEOC charges and the underlying facts were set forth in those charge, which provided them
sufficient notice to investigate, obtain evidence, preserve that evidence and prepare their defense.[11]
Defendants cannot argue that they were not put on notice by the EEOC and DFEH charges.  Thus,
they were not subjected to any hardships.  Any delay in investigation, which was not conducted by
Defendants until after August 8, 2007, is there own doing.

Plaintiff-Intervenors submit their equitable tolling claim based on reasonable principles and
conduct as set forth above.  Statutes of limitations are not devices for sanctioning parties for
subjective beliefs, reasoning or motivation.  As *Addison* sets forth, such statutes of limitations are
aimed at preventing hardship to defendants based on an unexcused lapse of time, which did not
happen here. *Addison v. State of California*, 21 Cal. 3d 313, 317 (1978).   Thus, Defendants cannot
argue that they would be unfairly prejudiced if the Plaintiff-Intervenors were allowed to proceed
with their tort causes of action.  See *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 923.

**3.      The Preservation of Judicial and Party Resources, As Well As The Avoidance
of Inconsistent Ruling, Collateral Estoppel and Res Judicata Are Justifications for Equitable**

---

[11] See E. XXX EEOC Questionnaire (June 19, 2006) and EEOC Charge (June 30, 2006).

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS

**Tolling.**

As with California state courts, "'[T]his court is not powerless to formulate rules of procedure where justice demands it.  Indeed, it has shown itself ready to adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.'"  *Addison v. State of California*, 21 Cal.3d 313, 318-319 (1978) (quoting *Bollinger v. National Fire Ins. Co.*, 25 Cal.2d 399, 410 (1974).  As stated by the California Supreme Court in *Addison*, courts should  "discern no reason of policy which would require plaintiffs to file simultaneously two separate actions based upon the same facts in both state and federal counts since 'duplicative proceedings are surely inefficient, awkward and laborious.'"  *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978) (quoting Elkins v. Derby, 12 Cal.3d 410, 420 (1974).

The interest of efficiency is an important reason for the tolling of the statute of limitations in the case.  The logic behind the enactment of 28 U.S.C. § 1376 supplemental jurisdiction should be applied here, which is as follows:

> Supplemental jurisdiction can be seen as fostering the interest in litigation efficiency and convenience.  By allowing litigation to join related claims and parties in one lawsuit, supplemental jurisdiction avoids the inconvenience, burdens and costs of having to litigate separately in more than one court, and possibly avoiding the need to duplicate evidence in those separate proceedings.

16 Moore's Federal Practice ¶ 106.23 (3d ed. 2005).

In essence, Plaintiff-Intervenors' Title VII, FEHA, and tort causes of action arise from the same case or controversy.  Indeed, as demonstrated throughout, Plaintiff-Interventors claims easily meet the tougher "come nucleus  of operative fact" test that was applied prior to the enactment of the Section 1387 before claims could be joined in federal court.  Given this backdrop that lead to the enactment of Section 1387, it is reasonable for this Court to take into account the interest in efficiency and grant Plaintiff-Intervenors leave to add their tort cause of action.  To deny Plaintiff-Intervenors leave in this instance would require future litigants to expend unnecessary party and judicial resources , i.e, two dockets in separate jurisdictions, propounding and responding to discovery requests in both jurisdictions, allowing for two sets of depositions to all parties, litigation

- 38 -

costs, etc.  Further, having duplicative proceedings on the same facts would create the danger of inconsistent rulings, collateral estopel or res judicata.  Thus, it is reasonable and within this Court's equitable powers to toll the statute of limitations and permit Plaintiff-Intervenors to prosecute their tort cause of action.

### IV.   LIMITATIONS AND TOLLING ANALYSIS APPLIED TO THE INTERVENOR'S CLAIMS

Defendants have attacked Plaintiffs' claims based upon statute of limitations.  As demonstrated above, the EEOC does not have the restrictions at issue.  Further, the individual claimants all conform to their filing requirements because of:  the single filing rule and equitable tolling rules under California law as follows:

**1.     Erika XXX was Harassed from Fall 2004 to September 2005. PUF 15 (Dep. 38:5-14; 40:17-21; 79:18-20).**

This Court has already found that the underlying EEOC, FEHA and state law claims are based on the same operative facts. See Order Granting Motion for Leave to Intervene at 4 (Docket #25).  Erika XXX' tort claims are not barred, because the limitation periods were tolled upon the undisputed timely filing of her EEOC charge.

As described a in the chart supra, the FEHA and tort claims require an almost identical showing and, thus, the facts that give rise to the underlying tort claims and FEHA violations are the same—i.e., the conduct of Jose Vasquez that cumulatively created a hostile work environment and that is set forth at length in PUF 15.

**2.     XXX was Harassed from June 2004 to August 2006. PUF 13 (Dep. 113:14-22; 118:1-4; 172:7-21).**

Title VII, DFEH and state law claims are not barred because (1) under the single filing rule (42 U.S.C.A. § 2000e-5(e)(1)) XXX's Title VII claim is deemed filed as of the date that XXX filed; (2) the continuing violation doctrine applies for the Title VII and FEHA claims, since XXX was subjected to a hostile work environment and to repeated and frequent acts of hostility that did not acquire permanence (PUF 13); and (3) equitable tolling of the state law claims (Docket #25).

**3.      XXX was Harassed in November 2004; attained age of majority in 2008. PUF 19 (Dep. 12:19-24; 13:2-11).**

Title VII, FEHA and state law claims are not barred because the statute of limitations did not begin to run until one year after XXX reached age of majority (2009), and she did not need to file a claim due to the single filing rule. The question of whether she was an employee is a triable issue. PUF 19 (Dep. 11:24-12:7). However, under California law she could not have been a volunteer because a "volunteer" is limited to a person who volunteers for religious, public service or humanitarian objective/organization. DLSE Enforcement Manual §43.6.7; DLSE Opinion Letter, 1988.10.27.

**4.      XXX was Harassed from September 1999 to March 2006. PUF 14 (Dep. 19:15-17).**

Title VII, FEHA and state law claims are not time barred due to (1) the single filing rule; (2) continuing violation doctrine; and (3) equitable tolling of the state law claims.

**5.      XXX was Harassed from November 2004 to June/July 2005. PUF 17 (Dep. 29:17-20).**

Title VII, FEHA and state law claims are not time barred due to (1) the single filing rule; (2) continuing violation doctrine; and (3) equitable tolling of the state law claims.

**6.      XXX was Harrassed from July 2004 to May 2005. PUF 5 (Dep. 38:3-6; 51:24-53:1).**

XXX's Title VII, FEHA and state law claims are timely because the limitation period tolled while class members initiated the ABM grievance procedure and gave notice to ABM. McDonald v. Antelope Valley Community College District, 45 Cal.4th 88. XXX complained to District Manager Javier Vasquez (PUF 5 (Dep. 70:2-71:17), and class members sent anonymous letters regarding the hostile work environment and sexual harassment perpetrated by Jose Vasquez. PUF 35. ABM acknowledged that the anonymous letters were part of the grievance procedure, which did or should have triggered an investigation. PUF 35, Ex. 1116.

As with the previous victims, XXX's claims are within the statute of limitations due to (1) the single filing rule; (2) continuing violation doctrine; and (3) equitable tolling of the state law claims.

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION RE: BAKERSFIELD CLAIMANTS/INTERVENERS

**7.    R. XXX was Harassed from February to May 2005. PUF 16 (Dep. 19:13-25; 20:20-24; 32:20-23).**

Like XXX, R. XXX complained to District Manager Javier Vasquez several times. PUF 16 Dep. 87:4–88:1; 101:21 -103:18. Her claims are further timely due to (1) the single filing rule; (2) continuing violation doctrine; and (3) equitable tolling of the state law claims.

For the above reasons, Defendants cannot prevail with regards to their statute of limitations summary judgments arguments.

## V.    Conclusion

For the above reason, the EEOC and Intervenors request that Defendants' motion for Summary Judgment be Denied.


Dated:  June 3, 2010                              Respectfully submitted,



                                                  U.S. EQUAL EMPLOYMENT OPPORTUNITY
                                                  COMMISSION


                                                  /s/ Elizabeth Esparza-Cervantes
                                                  Elizabeth Esparza-Cervantes
                                                  Attorney for Plaintiff


                                                  MALLISON & MARTINEZ

                                                  /s/ Stan Mallison
                                                  Stan Mallison
                                                  Attorney for Plaintiff Intervenors

- 41 -

OPPOSITION TO ABM DEFENDANTS' AMENDED MOTION FOR SUMMARY ADJUDICATION
RE: BAKERSFIELD CLAIMANTS/INTERVENERS